making the same.  If such notice, consent or demand is mailed to a party hereto, it shall be sent by United States certified mail, postage prepaid, addressed to such party's last known address as shown on the records of the Corporation.  The date of such mailing shall be deemed the date of notice, consent or demand.

15.    <u>Governing Law</u>.  This Agreement, and the rights of the parties hereunder, shall be governed by and construed in accordance with the laws of the State of Kansas.

IN WITNESS WHEREOF, the parties hereto have executed this Agreement, in duplicate, as of the day and year first above written.

BY : Synergy Pipeline Company, L.P.
its general partner
BY : Bishop Pipeline Company, its
general partner.

Kansas Pipeline Company

By _____
President

ATTEST:

_____
Secretary

"Corporation"

_____
Howard E. Lubow
"Employee"

SL01DOCS/511582.01                                      10

ENB 00515

EM001-006995

## EXHIBIT A

The following life insurance policies are subject to the attached Split-Dollar Agreement:

| | |
|---|---|
| Insurer: | Pacific Life Insurance Company |
| Insured: | Howard E. Lubow |
| Policy Number: | _____ |
| Face Amount:: | $1,047,619 |
| Death Benefit Option: | Increasing (c) |
| Date of Issue: | _____ |

| | |
|---|---|
| Insurer: | Northwestern Mutual Life Insurance Company |
| Insured: | Howard E. Lubow |
| Policy Number: | _____ |
| Face Amount:: | $637,753 |
| Dividend Option: | Purchase paid-up additions |
| Date of Issue: | _____ |

ENB 00516

EM001-006996

<u>HOWARD E. LUBOW\KANSAS PIPELINE COMPANY</u>

<u>BONUS PLAN AGREEMENT</u>

THIS AGREEMENT, made and entered into this 3ʳᵈ day of August, 1999, by and between Kansas Pipeline Company, a Kansas corporation, with principal offices and place of business in the State of Kansas (hereinafter referred to as the "Corporation"), and Howard E. Lubow, an individual residing in the State of Kansas (hereinafter referred to as the "Employee"),

WITNESSETH THAT:

WHEREAS, the Employee is employed by the Corporation; and

WHEREAS, the Corporation recognizes the value of the services performed by the Employee and wishes to encourage his continued employment; and

WHEREAS, the Employee wishes to be assured that under certain circumstances, he will be entitled to a certain bonus if he is living when such bonus is to be paid; and

WHEREAS, the parties hereto wish to provide the terms and conditions upon which the Corporation shall pay such bonus to the Employee; and

WHEREAS, the parties hereto intend that this Agreement be considered an unfunded arrangement, maintained primarily to provide deferred compensation benefits for the Employee, a member of a select group of management or highly compensated employees of the Corporation, for purposes of the Employee Retirement Security Act of 1974, as amended;

NOW, THEREFORE, in consideration of the premises and of the mutual promises herein contained, the parties hereto agree as follows:

SL01DOCS/511584.01

1

# EXHIBIT D

ENB 00517

EM001-006997

1.     **Deferred Compensation Bonus**.

    a.     **Eligibility for Benefit**.  On the ____ day of _____, 1999, the Corporation and the Employee entered into a Split-Dollar Agreement (the "Split-Dollar Agreement").  The Employee shall be entitled to receive the Deferred Compensation Bonus provided hereunder from the Corporation in the event of the termination of the Split-Dollar Agreement, for any reason other than the Employee's death or the Employee's failure to timely pay his portion of the premiums, if any, due under the Split-Dollar Agreement, as provided in the Split-Dollar Agreement (an "Eligible Termination").

    b.     **Amount of Deferred Compensation Bonus**.  The amount of the Deferred Compensation Bonus to be provided by the Corporation to the Employee under this Section 1 shall be determined as follows:

    i.     **Eligible Termination With Respect to Both Policies**.  If there is an Eligible Termination of the Split-Dollar Agreement with respect to both of the life insurance policies subject to the terms of the Split-Dollar Agreement, the amount of the Deferred Compensation Bonus to be provided by the Corporation to the Employee under this Section 1 shall be an amount equal to the greater of (1) $568,712 or (2) the total amount of the premium payments made by the Corporation under the terms of the Split-Dollar Agreement.

    ii.     **Eligible Termination With Respect to Only Northwestern Policy**.  If there is an Eligible Termination of the Split-Dollar Agreement with respect to only the policy issued by Northwestern Mutual Life Insurance Company which is subject to the terms of the Split-Dollar Agreement, the amount of the Deferred Compensation Bonus to be provided by the Corporation to the Employee under this Section 1 shall be an amount equal to the greater of (1) $288,712 or (2) the total amount of the premium payments

ENB 00518

EM001-006998

made by the Corporation under the terms of the Split-Dollar Agreement with respect to such life insurance policy.

        iii.    <u>Eligible Termination With Respect to Only Pacific Life Policy</u>.  If there is an Eligible Termination of the Split-Dollar Agreement with respect to only the policy issued by Pacific Life Insurance Company which is subject to the terms of the Split-Dollar Agreement, the amount of the Deferred Compensation Bonus to be provided by the Corporation to the Employee under this Section 1 shall be an amount equal to the greater of (1) $280,000 or (2) the total amount of the premium payments made by the Corporation under the terms of the Split-Dollar Agreement with respect to such life insurance policy.

        c.    <u>Payment of Deferred Compensation Bonus</u>.  Within 60 days of the date upon which the Employee becomes entitled to the Deferred Compensation Bonus, as provided above, the Corporation shall pay to the Employee an amount equal to the Deferred Compensation Bonus.

        d.    <u>No Trust Created</u>.  Notwithstanding anything in this Section 1, no action taken pursuant to its provisions by either the Corporation or the Employee shall create, or be construed to create, a trust of any kind, or a fiduciary relationship between the Corporation and the Employee, his beneficiary or beneficiaries, or any other person.

        e.    <u>Deferred Compensation Bonus Unfunded</u>.  Until the occurrence of any event which entitles the Employee to receive the Deferred Compensation Bonus provided under this Section 1, such benefit shall remain an asset of the Corporation which, in the event of the Corporation's insolvency, will be subject to the claims of general creditors of the Corporation. The parties intend this Deferred Compensation Bonus to be considered

SL01DOCS/511584.01

3

ENB 00519

EM001-006999

unfunded for federal income tax purposes, so as not to have the benefit provided hereunder be included in the Employee's income for such tax purposes prior to actual receipt thereof.

      e.   **Benefit Not Transferable**.  Neither the Employee nor any other person with a beneficial interest in this Agreement shall have any power or right to transfer, assign, anticipate, hypothecate or otherwise encumber any part or all of this Deferred Compensation Bonus.  No such amounts shall be subject to seizure by any creditor or any such beneficiary, by a proceeding at law or in equity, nor shall such amounts be transferable by operation of law in the event of bankruptcy, insolvency or death of the Employee, his beneficiary or beneficiaries, or any other person with a beneficial interest in this Agreement.  Any such attempt at assignment or transfer shall be void.

      2.   **Named Fiduciary, Determination of Benefits, Claims Procedure and Administration**.

      a.   The Company is hereby designated as the named fiduciary under this Agreement.  The named fiduciary shall have authority to control and manage the operation and administration of this Agreement through an Administrator designated by it, and it shall be responsible for establishing and carrying out a funding policy and method consistent with the objectives of this Agreement.  The Company shall also have the power to establish, adopt or revise such rules and regulations as it may deem advisable for the administration of the Agreement.  The interpretation and construction of the Agreement by the Company and any action taken thereunder, shall be binding and conclusive upon all parties in interest.  No officer, employee or agent of the Company shall, in any event, be liable to any person for any action taken or omitted to be taken in connection with the interpretation, construction or

SL01DOCS/511584.01                 4

ENB 00520

EM001-007000

administration of the Agreement, so long as such action or omission to act is made in good faith.

b.    (1)    <u>Claim</u>.

A person who believes that he is being denied a benefit to which he is entitled under the Agreement (hereinafter referred to as a "Claimant") may file a written request for such benefit with the Company, setting forth his claim.  The request must be addressed to the President of the Company at its then principal place of business.

(2)    <u>Claim Decision</u>.

Upon receipt of a claim, the President shall advise the Claimant that a reply will be forthcoming within ninety (90) days and shall, in fact, deliver such reply within such period.  The President may, however, extend the reply period for an additional ninety (90) days for reasonable cause.

If the claim is denied in whole or in part, the President shall adopt a written opinion, using language calculated to be understood by the Claimant, setting forth:  (i) the specific reason or reasons for such denial; (ii) the specific reference to pertinent provisions of this Agreement on which such denial is based; (iii) a description of any additional material or information necessary for the Claimant to perfect his or her claim and an explanation why such material or such information is necessary; (iv) appropriate information as to the steps to be taken if the Claimant wishes to submit the claim for review; and (v) the time limits for requesting a review under Section 6.01(b)(3) and for review under Section 6.01(b)(4) hereof.

SL01DOCS/511584.01                              5

**ENB 00521**

**EM001-007001**

(3)    **Request for Review**.

Within sixty (60) days after the receipt by the Claimant of the written opinion described above, the Claimant may request in writing that the Secretary of the Company review the determination of the President.  Such request must be addressed to the Secretary of the Company, at its then principal place of business.  The Claimant or his or her duly authorized representative may, but need not, review the pertinent documents and submit issues and comments in writing for consideration by the Secretary.  If the Claimant does not request a review of the President's determination by the Secretary within such sixty (60) day period, he or she shall be barred and estopped from challenging the President's determination.

(4)    **Review of Decision**.

Within sixty (60) days after the Secretary's receipt of a request for review, he will review the President's determination.  After considering all materials presented by the Claimant, the Secretary will render a written opinion, written in a manner calculated to be understood by the Claimant, setting forth the specific reasons for the decision  and containing specific references to the pertinent provisions of this Agreement on which the decision is based.  If special circumstances require that the sixty (60) day time period be extended, the Secretary will so notify the Claimant and will render the decision as soon as possible, but no later than one hundred twenty (120) days after receipt of the request for review.

ENB 00522

EM001-007002

2.    <u>Miscellaneous</u>

a.    <u>No Contract of Employment</u>.  Nothing contained herein shall be construed to be a contract of employment for any term of years, nor as conferring upon the Employee the right to continue in the employ of the Corporation in any capacity.

b.    <u>Amendment of Agreement</u>.  This Agreement may not be amended, altered or modified, except by a written instrument signed by the parties hereto, or their respective successors or assigns, and may not be otherwise terminated except as provided herein.

c.    <u>Notice</u>.  Any notice, consent, or demand required or permitted to be given under the provision of this Agreement shall be in writing, and shall be signed by the party giving or making the same.  If such notice, consent, or demand is mailed to a party hereto, it shall be sent by United States certified mail, postage prepaid, addressed to such party's last known address as shown on the records of the Company.  The date of such mailing shall be deemed the date of notice, consent, or demand.  Either party may change the address to which notice is to be sent by giving notice of the change of address in the manner aforesaid.

d.    <u>Governing Law</u>.  This Agreement shall be governed by and construed in accordance with the laws of the State of Kansas and any applicable federal laws.

e.    <u>Gender, Singular and Plural</u>.  All pronouns and any variations thereof shall be deemed to refer to the masculine, feminine, or neuter, as the identity of the person or persons may require.  As the context may require, the singular may be read as the plural and the plural as the singular.

SL01DOCS/511584.01                                7

ENB 00523

f.   Inurement.  This Agreement shall be binding upon and inure to the benefit of the Corporation and its successors and assigns, and the Employee, his successors, heirs, executors, administrators and beneficiaries.

g.   Captions.  The captions of the sections and paragraphs of this Agreement are for convenience only and shall not control or affect the meaning or construction of any of its provisions.

h.   Validity.  In the event any provision of this Agreement is held invalid, void, or unenforceable, the same shall not affect, in any respect whatsoever, the validity of any other provision of this Agreement.

IN WITNESS WHEREOF, the parties hereto have executed this Agreement, in duplicate, as of the day and year first above written.

Kansas Pipeline Company
By: Syncr021 Pipeline Company, L.P., its general partner
By: Bishop Pipeline Company

By _____
President

ATTEST:

_____
Secretary

"Corporation"

_____
Howard E. Lubow,
"Employee"

SL01DOCS/511584.01                          8

ENB 00524

EM001-007004

Date


Office of Employee Benefits Security
Labor Management Service Administration
U.S. Department of Labor
Washington, D.C. 20216

Re:     Notice of Plan(s) of Deferred Compensation

Dear Sir or Madam:

Pursuant to DOL Reg. Sec. 2520.104-23, the undersigned Employer hereby files the following information with respect to its plan(s) of deferred compensation.

1.     Name and Address of Employer:
Kansas Pipeline Company
8325 Lenexa Drive, Ste. 400
Lenexa, KS  66214

2.     Federal Employer Identification No. (EIN):

_____

3.     The Employer maintains \_\_\_ plan(s) of deferred compensation primarily for the purpose of providing deferred compensation to a select group of management or highly-compensated employees.

4.     \_\_\_\_ employee(s) is/are covered by such plan(s).

Very truly yours,

KANSAS PIPELINE COMPANY


By:_____
    Title:_____

SL01DOCS/511584.01                                    9

ENB 00525

EM001-007005

## SPLIT-DOLLAR AGREEMENT

THIS AGREEMENT made and entered into this 3ʳᵈ day of AUGUST, 1999, by and between Kansas Pipeline Company, a Kansas corporation, with principal offices and place of business in the State of Kansas (the "Corporation"), and Howard E. Lubow, an individual residing in the State of Kansas (the "Employee"),

WITNESSETH THAT:

WHEREAS, the Employee is employed by the Corporation; and

WHEREAS, the Employee wishes to provide life insurance protection for his family in the event of his death, under policies of life insurance insuring his life (individually, a "Policy" and collectively, the "Policies"), which are described in Exhibit A. One of the Policies is being issued by Northwestern Mutual Life Insurance Company and the other is being issued by Pacific Life Insurance Company (individually, an "Insurer" and collectively, the "Insurers"); and

WHEREAS, the Corporation is willing to pay a portion of the premiums due on the Policies as an additional employment benefit for the Employee, on the terms and conditions hereinafter set forth; and

WHEREAS, the Employee is the owner of the Policies and, as such, possesses all incidents of ownership in and to the Policies; and

WHEREAS, the Corporation wishes to have the Policies collaterally assigned to it by the Employee, in order to secure the repayment of the amounts which it will pay toward the premiums on the Policies;

NOW, THEREFORE, in consideration of the premises and of the mutual promises contained herein, the parties hereto agree as follows:

# EXHIBIT D

ENB 00526

EM001-007006

1.    **Purchase of Policies**. The Employee will contemporaneously purchase the Policies from the Insurers which have an aggregate face amount of $1,685,372. The Policy issued by Pacific Life Insurance Company has an Increasing Death Benefit (as defined in that Policy). The parties hereto have taken all necessary action to cause the Insurers to issue the Policies, and shall take any further action which may be necessary to cause the Policies to conform to the provisions of this Agreement. The parties hereto agree that the Policies shall be subject to the terms and conditions of this Agreement and of the collateral assignments filed with the Insurers relating to the Policies.

2.    **Ownership of Policies**. The Employee shall be the sole and absolute owner of the Policies, and may exercise all ownership rights granted to the owner thereof by the terms of the Policy, including, but not limited to, the right to elect and to change the death benefit and, with respect to the Policy issued by Pacific Life Insurance Company, the Death Benefit Option and the investment options of the Policy, except as may otherwise be provided herein.

3.    **Policy Dividends**. Any dividend declared on the Policy issued by Northwestern Mutual Life Insurance Company shall be applied to purchase paid-up additional insurance on the life of the Employee. The parties hereto agree that the dividend election provisions of such Policy shall conform to the provisions hereof.

4.    **Payment of Premiums**.

a.    Thirty (30) days prior to the due date of each Policy premium, the Corporation shall notify the Employee of the exact amount due from the Employee hereunder, which shall be an amount equal to the annual cost of current life insurance protection on the life of the Employee, measured by the lower of the PS 58 rate, set forth in Revenue Ruling 55-747 (or the corresponding applicable provision of any future Revenue Ruling), or the current

SL01DOCS/511582.01           2

ENB 00527

EM001-007007

published premium rate for annually renewable term insurance for standard risks of the Insurer which issued such Policy.  The Employee shall pay such required contribution to the Corporation prior to the premium due date.  If the Employee fails to make such timely payment, the Corporation, in its sole discretion, may elect to make the Employee's portion of the premium payment, which payment shall be recovered by the Corporation as provided herein.

    b.   On or before the due date of each Policy premium, or within the grace period provided therein, the Corporation shall pay the full amount of the premium to the Insurer which issued the Policy, and shall, upon request, promptly furnish the Employee evidence of timely payment of such premium.  Except with the consent of the Employee, the Corporation shall not pay less than $70,000 per year in premiums with respect to the Policy issued by Pacific Life Insurance Company during the first four Policy years or less than $36,390 per year in premiums with respect to the Policy issued by Northwestern Mutual Life Insurance Company during the first eight Policy years (taking into consideration the Employee's contributions toward premium payments), but it may, in its discretion, at any time and from time to time, subject to acceptance of such amount by the Insurer which issued a Policy, pay more than such amount or make other premium payments on such Policy.  The Corporation shall annually furnish the Employee a statement of the amount of income reportable by the Employee for federal and state income tax purposes as a result of the insurance protection provided the beneficiary or beneficiaries of the Policies.

   5.  **Collateral Assignment.**  To secure the repayment to the Corporation of the amount of the premiums on the Policies paid by it hereunder, the Employee has, contemporaneously herewith, assigned the Policies to the Corporation as collateral, under the forms used by the Insurers for such assignments.  The collateral assignments of the Policies to

**ENB 00528**

**EM001-007008**

the Corporation hereunder shall not be terminated, altered or amended by the Employee, without the express written consent of the Corporation.  The parties hereto agree to take all action necessary to cause such collateral assignments to conform to the provisions of this Agreement.

6. **Limitations on Employee's Rights in Policies**.  The Employee shall not sell, assign, transfer, borrow against or withdraw from the cash surrender value of a Policy, surrender or cancel the Policy, change the beneficiary designation provision thereof, or, with respect to the Policy issued by Pacific Life Insurance Company, decrease the death benefit or change the Death Benefit Option provisions without, in any such case, the express written consent of the Corporation.

7. **Collection of Death Proceeds**.

a. Upon the death of the Employee, the Corporation shall cooperate with the beneficiary or beneficiaries designated by the Employee to take whatever action is necessary to collect the death benefits provided under the Policies; when such benefits have been collected and paid as provided herein, this Agreement shall terminate.

b. Upon the death of the Employee, the Corporation shall have the unqualified right to receive a portion of the insurance benefits provided under each Policy equal to the total amount of the premiums paid by it hereunder with respect to such Policy, reduced by any outstanding indebtedness which was incurred by the Corporation and secured by such Policy, including any interest due on such indebtedness.  The balance of the insurance benefits provided under such Policy, if any, shall be paid directly to the beneficiary or beneficiaries designated by the Employee, in the manner and in the amount or amounts provided in the beneficiary designation provision of such Policy.  In no event shall the amount payable to the Corporation hereunder with respect to a Policy exceed the insurance benefits payable under such Policy at the

SL01DOCS/511582.01                                                    4

ENB 00529

EM001-007009

death of the Employee. No amount shall be paid from the insurance benefits payable under a Policy to the beneficiary or beneficiaries designated by the Employee until the full amount due the Corporation hereunder with respect to such Policy has been paid. The parties hereto agree that the beneficiary designation provisions of the Policies shall conform to the provisions hereof.

      c.     In the event that, for any reason whatsoever, no death benefit is payable under a Policy upon the death of the Employee and in lieu thereof the Insurer which issued such Policy refunds all or any part of the premiums paid for such Policy, the Corporation and the Employee's beneficiary or beneficiaries shall have the unqualified right to share such premiums based on their respective cumulative contributions thereto.

      8.     **Termination of the Agreement During the Employee's Lifetime**.

      a.     This Agreement shall terminate, during the Employee's lifetime, without notice, upon the occurrence of any of the following events: (a) total cessation of the Corporation's business; (b) bankruptcy, receivership or dissolution of the Corporation; (c) termination of Employee's employment by the Corporation (other than by reason of his death); or (d) failure of the Employee to timely pay the Employee's portion of the premiums, if any, due under this Split-Dollar Agreement, unless the Company elects to make such payment on behalf of the Executive as provided herein.

      b.     In addition, the Corporation and the Employee may terminate this Agreement, with respect to either or both Policies, by mutual written agreement, which termination shall be effective as of the date specified in such agreement.

      c.     Unless this Agreement has been terminated in accordance with Section 8.a or 8.b above, then in the event of a Change in Control, the Employee, in his discretion, may terminate this Agreement by providing written notice of such termination to the

ENB 00530

EM001-007010

Corporation. The Employee's right to terminate this Agreement may be exercised by the Employee at any time after a Change in Control occurs, but must be exercised, if at all, within 60 days of a Change in Control. For purposes of this Agreement, a Change in Control shall be deemed to have occurred if Dennis M. Langley ceases to hold more than fifty percent (50%) of the voting power of the Company, or would cease to hold more than fifty percent (50%) of the voting power of the Company if all outstanding rights, options, warrants or other rights to obtain voting power of the Company, whether or not presently exercisable, were exercised.

9. **Disposition of the Policy on Termination of the Agreement During the Employee's Lifetime.**

a. For sixty (60) days after the date of the termination of this Agreement during the Employee's lifetime, the Employee shall have the option of obtaining the release of the collateral assignment of either or both of the Policies to the Corporation, or, if the Agreement has terminated with respect to only one of the Policies, the Employee shall have the option of obtaining the release of the collateral assignment of such Policy to the Corporation. To obtain such release with respect to a Policy, the Employee shall repay to the Corporation the lesser of the total amount of the premium payments made by the Corporation hereunder or the then cash surrender value of such Policy, less any indebtedness secured by such Policy which was incurred by the Corporation and remains outstanding as of the date of such termination, including any interest due on such indebtedness. Upon receipt of such amount, the Corporation shall release the collateral assignment of such Policy, by the execution and delivery of an appropriate instrument of release.

b. If the Employee fails to exercise such option with respect to any Policy within such sixty (60) day period, then, at the request of the Corporation, the Employee shall

ENB 00531

EM001-007011

execute any document or documents required by the Insurer which issued such Policy to transfer the interest of the Employee in such Policy to the Corporation. Alternatively, the Corporation may enforce its right to be repaid the amount of the premiums on such Policy paid by it from the cash surrender value of such Policy under the collateral assignment of such Policy; provided that in the event the cash surrender value of such Policy exceeds the amount due the Corporation, such excess shall be paid to the Employee. Thereafter, neither the Employee nor his respective heirs, assigns or beneficiaries shall have any further interest in and to such Policy, either under the terms thereof or under this Agreement.

10. **Insurers Not Parties**. Each Insurer shall be fully discharged from its obligations under the Policy it issued by payment of the insurance benefits to the beneficiary or beneficiaries named in such Policy, subject to the terms and conditions of such Policy. In no event shall either Insurer be considered a party to this Agreement, or any modification or amendment hereof. No provision of this Agreement, nor of any modification or amendment hereof, shall in any way be construed as enlarging, changing, varying, or in any other way affecting the obligations of an Insurer as expressly provided in the Policy it issued, except insofar as the provisions hereof are made a part of such Policy by the collateral assignment executed by the Employee and filed with such Insurer in connection herewith.

11. **Named Fiduciary, Determination of Benefits, Claims Procedure and Administration**.

a. The Corporation is hereby designated as the named fiduciary under this Agreement. The named fiduciary shall have authority to control and manage the operation and administration of this Agreement, and it shall be responsible for establishing and carrying out a funding policy and method consistent with the objectives of this Agreement.

SL01DOCS/511582.01                      7

ENB 00532

EM001-007012

b.     (1)     <u>Claim</u>.

A person who believes that he or she is being denied a benefit to which he or she is entitled under this Agreement (hereinafter referred to as a "Claimant") may file a written request for such benefit with the Corporation, setting forth his or her claim.  The request must be addressed to the President of the Corporation at its then principal place of business.

(2)     <u>Claim Decision</u>.

Upon receipt of a claim, the Corporation shall advise the Claimant that a reply will be forthcoming within ninety (90) days and shall, in fact, deliver such reply within such period.  The Corporation may, however, extend the reply period for an additional ninety (90) days for reasonable cause.

If the claim is denied in whole or in part, the Corporation shall adopt a written opinion, using language calculated to be understood by the Claimant, setting forth:  (a) the specific reason or reasons for such denial; (b) the specific reference to pertinent provisions of this Agreement on which such denial is based; (c) a description of any additional material or information necessary for the Claimant to perfect his or her claim and an explanation why such material or such information is necessary; (d) appropriate information as to the steps to be taken if the Claimant wishes to submit the claim for review; and (e) the time limits for requesting a review under subsection (3) and for review under subsection (4) hereof.

(3)     <u>Request for Review</u>.

With sixty (60) days after the receipt by the Claimant of the written opinion described above, the Claimant may request in writing that the Secretary of the Corporation review the determination of the Corporation.  Such request must be addressed to the

ENB 00533

EM001-007013

Secretary of the Corporation, at its then principal place of business.  The Claimant or his or her duly authorized representative may, but need not, review the pertinent documents and submit issues and comments in writing for consideration by the Corporation.  If the Claimant does not request a review of the Corporation's determination by the Secretary of the Corporation within such sixty (60) day period, he or she shall be barred and estopped from challenging the Corporation's determination.

        (4)     **Review of Decision**.

        Within sixty (60) days after the Secretary's receipt of a request for review, he or she will review the Corporation's determination.  After considering all materials presented by the Claimant, the Secretary will render a written opinion, written in a manner calculated to be understood by the Claimant, setting forth the specific reasons for the decision and containing specific references to the pertinent provisions of this Agreement on which the decision is based.  If special circumstances require that the sixty (60) day time period be extended, the Secretary will so notify the Claimant and will render the decision as soon as possible, but no later than one hundred twenty (120) days after receipt of the request for review.

    12.    **Amendment**.  This Agreement may not be amended, altered or modified, except by a written instrument signed by the parties hereto, or their respective successors or assigns, and may not be otherwise terminated except as provided herein.

    13.    **Binding Effect**.  This Agreement shall be binding upon and inure to the benefit of the Corporation and its successors and assigns, and the Employee, his successors, assigns, heirs, executors, administrators and beneficiaries.

    14.    **Notice**.  Any notice, consent or demand required or permitted to be given under the provisions of this Agreement shall be in writing, and shall be signed by the party giving or

SL01DOCS/511582.01

9

ENB 00534

EM001-007014

making the same. If such notice, consent or demand is mailed to a party hereto, it shall be sent by United States certified mail, postage prepaid, addressed to such party's last known address as shown on the records of the Corporation. The date of such mailing shall be deemed the date of notice, consent or demand.

15.    **Governing Law**. This Agreement, and the rights of the parties hereunder, shall be governed by and construed in accordance with the laws of the State of Kansas.

IN WITNESS WHEREOF, the parties hereto have executed this Agreement, in duplicate, as of the day and year first above written.

BY : Synergy Pipeline Company, L.P.
     its general partner
BY : Bishop Pipeline Company, its
     general partner

Kansas Pipeline Company

By _____
                    President

ATTEST:

_____
Secretary

"Corporation"

_____
Howard E. Lubow
                    "Employee"

SL01DOCS/511582.01                    10

ENB 00535

EM001-007015

<u>EXHIBIT A</u>

The following life insurance policies are subject to the attached Split-Dollar Agreement:

| | |
|---|---|
| Insurer: | Pacific Life Insurance Company |
| Insured: | Howard E. Lubow |
| Policy Number: | _____ |
| Face Amount:: | $1,047,619 |
| Death Benefit Option: | Increasing (c) |
| Date of Issue: | _____ |

| | |
|---|---|
| Insurer: | Northwestern Mutual Life Insurance Company |
| Insured: | Howard E. Lubow |
| Policy Number: | _____ |
| Face Amount:: | $637,753 |
| Dividend Option: | Purchase paid-up additions |
| Date of Issue: | _____ |

SL01DOCS/511582.01                    11

ENB 00536

EM001-007016

08/02/00  10:54 FAX 7136536710          MIDCOAST ENERGY RES INC                    @001

```
                         *********************
                         ***   TX REPORT   ***
                         *********************

        TRANSMISSION OK

        TX/RX NO              3148
        CONNECTION TEL                  915169315327
        SUBADDRESS
        CONNECTION ID
        ST. TIME              08/02 10:53
        USAGE T               00'56
        PGS. SENT             3
        RESULT                OK
```

# MIDCOAST ENERGY RESOURCES, INC.

1100 Louisiana Street, Suite 2900, Houston, Texas  77002
Post Office Box 61865, Houston, Texas  77208 - 1865
(713) 650-8900,   FAX: (713) 653-6710

## F A X   C O V E R   S H E E T

**DATE:**  August 2, 2000

| | | | |
|---|---|---|---|
| **TO:** | K-Pipe Merger Corporation C/O SCALP | **PHONE:** **FAX:** | 212-826-0077 |
| **TO:** | Howard Teig, CPA K-Pipe Merger Corporation | **PHONE:** **FAX:** | 516-931-5327 |
| **FROM:** | Chris Kaitson General Counsel | **PHONE:** **FAX:** | (713) 650-8900 (713) 653-6710 |

**RE:**    Asset Purchase Agreement

Number of pages including cover sheet:    3

## MESSAGE:   PLEASE   SEE   ATTACHED   LETTER
REQUESTING SELECTION OF AN ACCOUNTING FIRM TO
RESOLVE ANY REMAINING OBJECTIONS.

ENB 00537

EM001-007017

08/02/00  10:52 FAX 7136536710          MIDCOAST ENERGY RES INC                    ☑001

```
                    ***********************
                    ***    TX REPORT    ***
                    ***********************

         TRANSMISSION OK

         TX/RX NO            3147
         CONNECTION TEL             912128260077
         SUBADDRESS
         CONNECTION ID
         ST. TIME            08/02 10:51
         USAGE T             00'58
         PGS. SENT           3
         RESULT              OK
```

# MIDCOAST ENERGY RESOURCES, INC.

**1100 Louisiana Street, Suite 2900, Houston, Texas  77002**
**Post Office Box 61865, Houston, Texas  77208 - 1865**
**(713) 650-8900,  FAX: (713) 653-6710**

## F A X   C O V E R   S H E E T

**DATE:**   August 2, 2000

| | | | |
|---|---|---|---|
| **TO:** | K-Pipe Merger Corporation<br>C/O SCALP | **PHONE:**<br>**FAX:** | 212-826-0077 |
| **TO:** | Howard Teig, CPA<br>K-Pipe Merger Corporation | **PHONE:**<br>**FAX:** | 516-931-5327 |
| **FROM:** | Chris Kaitson<br>General Counsel | **PHONE:**<br>**FAX:** | (713) 650-8900<br>(713) 653-6710 |

**RE:**     Asset Purchase Agreement

Number of pages including cover sheet:   **3**

# MESSAGE:   PLEASE SEE ATTACHED LETTER REQUESTING SELECTION OF AN ACCOUNTING FIRM TO RESOLVE ANY REMAINING OBJECTIONS.

**ENB 00538**

EM001-007018

# MIDCOAST ENERGY RESOURCES, INC.

1100 Louisiana Street, Suite 2900, Houston, Texas  77002
Post Office Box 61865, Houston, Texas  77208 - 1865
(713) 650-8900,   FAX: (713) 653-6710

## F A X   C O V E R   S H E E T

**DATE:**  August 2, 2000

**TO:**  K-Pipe Merger Corporation      **PHONE:**
C/O SCALP                    **FAX:**      212-826-0077

**TO:**  Howard Teig, CPA            **PHONE:**
K-Pipe Merger Corporation      **FAX:**      516-931-5327

**FROM:**  Chris Kaitson          **PHONE:**    (713) 650-8900
General Counsel         **FAX:**    (713) 653-6710

**RE:**    Asset Purchase Agreement

Number of pages including cover sheet:    3

## MESSAGE:    PLEASE   SEE   ATTACHED   LETTER REQUESTING SELECTION OF AN ACCOUNTING FIRM TO RESOLVE ANY REMAINING OBJECTIONS.

**CONFIDENTIALITY NOTICE**
THIS FACSIMILE CONTAINS INFORMATION THAT IS CONFIDENTIAL OR PRIVILEGED, OR BOTH. THIS INFORMATION IS INTENDED ONLY FOR THE USE OF THE INDIVIDUAL OR ENTITY NAMED ON THE FACSIMILE COVER LETTER. ANY DISCLOSURE, COPYING, DISTRIBUTION OR USE OF THIS INFORMATION BY ANY PERSON OTHER THAN THE INTENDED RECIPIENT IS PROHIBITED. IF YOU HAVE RECEIVED THIS FACSIMILE IN ERROR, PLEASE NOTIFY US BY TELEPHONE IMMEDIATELY AT (713) 650-8900 SO THAT WE CAN ARRANGE FOR THE RETRIEVAL OF THE TRANSMITTED DOCUMENTS AT NO COST TO YOU.

ENB 00539

EM001-007019



**MIDCOAST**

ENERGY RESOURCES INC

August 2, 2000

K-Pipe Merger Corporation          **VIA FAX NO. 212-826-0077 and OVERNIGHT MAIL**
C/O SCALP
750 Lexington Avenue, 30th Floor
New York, NY  10022

Howard Teig, CPA                   **VIA FAX NO. 516-931-5327 and OVERNIGHT MAIL**
510 Jericho Turnpike, Suite 320
Jericho, NY  11753

Re:    Asset Purchase Agreement, dated November 5, 1999, between K-Pipe and Midcoast;
       Kansas Pipeline Co., MarGasCo, Mid-Kansas, and Riverside Pipeline

Gentlemen/Ladies:

Since closing of the above referenced transaction, Richard Robert, Midcoast's CFO, has been working with Howard at K-Pipe on the True-up of the Revised Adjustment Value, in accordance with Section 2.3(c) of the Agreement.  We believed that we had resolved all objections and that the parties had agreed on an Adjusted Value.  Unfortunately, over the past month K-Pipe has not been willing to make payment to Midcoast or identify any objections.  This leaves Midcoast with no option but to consider K-Pipe's inaction as an objection to the Adjustment Value calculation, attached.  Therefore, notice is hereby given of Midcoast's election to proceed under Section 2.3(c)(iii) of the Agreement with the selection of an accounting firm to resolve any remaining objections.

As you may know Midcoast is currently using the firm of PricewaterhouseCoopers for its outside accounting work and would suggest using that firm for resolution.  If you prefer to not use that firm, please advise of the name of your accounting firm so we may choose a "nationally-recognized accounting firm by lot (after excluding" yours and our outside firms), within 10 days.

If you have any questions, please contact me at 713-650-8900.

Very truly yours,

Chris Kaitson
General Counsel

ENB 00540

cc:    Richard Robert

1100 Louisiana, Suite 2900 • Houston, Texas  77002 • Phone: 713/650-8900 • Fax: 713/650-2222

8/2/00
11:41 AM

Positive Working Capital Accounts

Cash                                                                                                      871,572

Accounts Receivable:
Trade Receivables:
    Total Trade Receivables                                          6,327,123
    Less: A/R in Excess of 90 Days from True-Up Date                 (375,126)   (w/o Cage allowance)
    Less: Allowance for Doubtful Accounts (A/R O/S Less Than 90 Days) (612,542)
                                                                     5,339,455

Other Receivables:
    Total Other Receivables                                            821,696
    Less: A/R in Excess of 90 Days from True-Up Date                  (541,718)
    Less: Allowance for Doubtful Accounts (A/R O/S Less Than 90 Days)       -
                                                                       279,978

Net Accounts Receivable                                                          5,619,433

Accrued Interest Earned                                                             42,428

Net Unrealized Gain in Gas Futures Account                                              -

Other Prepaid Expenses                                                            202,073

**Total Positive Working Capital Adjustment**                                    6,735,506

Negative Working Capital Accounts

Accounts Payable                                                                  (906,373)

Accrued Interest Expense                                                          (160,995)

Accrued Natural Gas Purchases                                                   (1,104,924)

Over Retainage of Compressor Fuel Subject to Refund                               (318,545)

Accrued Property Taxes                                                          (1,438,018)

Other Accrued Liabilities                                                         (826,261)

Net Unrealized Loss on Gas Futures Account                                        (214,100)

**Total Negative Working Capital Adjustment**                                  (4,969,216)

Adjustment Value                                                                 1,766,290

Working Capital Allowance in Purchase Price (25,000)                                25,000

Adjustment Amount                                                                1,741,290

Amount Paid by Midcoast                                                          1,885,733

Amount Owed by K-Pipe to Midcoast                                                  144,443

ENB 00541

EM001-007021

**Chris Kaitson**

| | |
|---|---|
| **From:** | Richard Robert |
| **Sent:** | Tuesday, August 01, 2000 1:40 PM |
| **To:** | Chris Kaitson |
| **Subject:** | RE: Re: Fortrend/K-Pipe/ Kansas Pipeline Company |



working_capital_05220
0.xls          Chris

Please keep in mind that the agreement calls for arbitration and the choosing of a
Big 5 accounting firm to decide on the issues. Also, attached is the file that was sent
to Howard Tieg.

-----Original Message-----
From: Chris Kaitson
Sent: Tuesday, August 01, 2000 12:38 PM
To: Richard Robert
Cc: Chris Kaitson
Subject: Fw: Re: Fortrend/K-Pipe/ Kansas Pipeline Company


Please see message that k pipe attorney can not help us. Their client is not
cooperating.  I will send them an official notice.  Chris
-------------------------------
Sent from my BlackBerry Wireless Handheld (www.BlackBerry.net)


-----Original Message-----
From: CYNTHIA MORELLI <CTMORELL@LLGM.COM>
To: ckaitson@midcoastenergy.com <ckaitson@midcoastenergy.com>
CC: GRAHAM TAYLOR <GTAYLOR@LLGM.COM>
Sent: Tue Aug 01 12:33:40 2000
Subject: Re: Fortrend/K-Pipe/ Kansas Pipeline Company

We have sought to have our client address the issues, but apparently to no avail.
Sorry, we can't assist.

* * * * * * * * * * * * * * * *
Cynthia M. Morelli
LeBoeuf, Lamb, Greene & MacRae LLP
One Embarcadero Center, Suite 400
San Francisco, California 94111
P:  415-951-1158
F:  415-951-1180
ctmorell@llgm.com

This e-mail, including attachments, contains information that is confidential, and it
may be protected by the attorney/client or other privileges.  This e-mail, including
attachments, constitutes non-public information intended to be conveyed only to the
designated recipient(s).  If you are not an intended recipient, please delete this e-
mail, including attachments, and notify me by return mail, e-mail or at (415) 951-
1158.  The unauthorized use, dissemination, distribution or reproduction of this e-
mail, including attachments, is prohibited and may be unlawful.

1

ENB 00542

* * * * * * * * * * * * * * * *

>>> Chris Kaitson <ckaitson@midcoastenergy.com> 08/01/00 08:48AM >>>
Hello Cynthia,

   Richard Robert, our CFO, has been working with Howard on the working
capital adjustment and we believe both parties have agreed that Midcoast is
owned approximately $120,000. Unfortunately, Howard wants to wait to settle
a tax matter with Dennis Langley before paying us. Richard's calls to
Howard and Jeff the past 2 weeks have gone unanswered so Richard has
requested that I start the accounting mediation process allowed by
2.3(c)(iii) of the Agreement. Before doing that I wanted to contact you to
see if you would contact your client regarding resolution of this matter. I
would appreciate an answer on Wednesday (or at least an update).

Thanks
Chris Kaitson
General Counsel
Midcoast Energy Resources, Inc.
1100 Louisiana Street, Suite 2950
Houston, Texas  77002
Phone: 713-650-8900 X2028
Fax:  713-650-3232
e-mail:  ckaitson@midcoastenergy.com

2

ENB 00543

EM001-007023

# MEMORANDUM

*File 2x*

*1) KPC rate case*

*2) KPC acquisition*

**TO:**   Mike Stosser
          Jim Armstrong

**FROM:**   Tino M. Monaldo

**DATE:**   November 29, 1999

**RE:**   Consulting Request made to Management Resources Group, L.L.C. ("MRG")

*************************************************************

You have requested certain information from MRG. On MRG's behalf, I have prepared the following lists, which reflect my review (with short notice) of my prior litigation files. I can only represent these lists probably capture most material litigation which was pending during any part of the last three (3) years. The list includes a summary of the "History of Litigation" document, which was also previously sent in long form, which summarizes our litigation relationship with Williams, which goes back to DRs regarding Mr. Langley's pre-filed testimony. A second list identifies other litigation such as condemnation proceedings going back to 1996 regarding the new pipeline projects, some of which were sold to KN in November of 1996.

**Please Note:**

1.    The Linchpin Litigation ended in February-March of 1995 and was not pending during the last three (3) years. The Lawsuit resulted in a Journal Entry of Dismissal and a confidential Settlement Agreement separately with Western and MGE, both of which cases were subject to protective orders and confidential settlement agreements and require a notice to the other party if any information regarding the Settlement is requested or subpoenaed by another party.

2.    Linchpin Project. There is no way to summarize all the details of the Linchpin Project. The question is way too broad. Any attempt to list specific details is inviting the other side to seek to discredit our veracity in some other testimony. The Linchpin Contracts were four (4) transportation contracts with Western Resources, one each with KPP, KNP (then state regulated), Kansok and Riverside Pipeline Company, L.P. These contracts generally provided for us to build or acquire a pipeline or pipelines to implement these contracts after Western selected one of two routes. The solution never occurred. Western allegedly assigned part or all of the Linchpin Contacts to MGE. The Lawsuit was about the status of these contracts, their enforceability, had they been breached or interfered with.

SNtinomonaldostosser 7

**ENB 00544**

**EM001-007024**

I am faxing you a copy of our countersuit in the Linchpin Lawsuit which is probably as detailed as it gets.  Note, our counterclaims about Linchpin Contract against MGE and Western for breach, tortuous interference and conspiracy to breach.  However, the allegations are based on my discussion with the Company officials and the four contracts, which constitute the "Linchpin Contracts".

Technically, the new 1995 contracts with Western (which are now public), and the Riverside I and Riverside II Contracts with MGE (which are now public), were signed at a point in time which coincided with the settlement of the Linchpin Lawsuit.

However, the Contracts and the Dismissal of the Lawsuit were considered separate.  You may need to look at Dennis Langley's live and prefiled testimony in the Contract case before the KCC in 1995, because he may have made statements that might imply these New Contracts were replacements to the Linchpin Contracts.

3.   Miscellaneous.

   A.   There was a Lawsuit filed in November, 1999, against MarGasCo and its two employers by, I believe, Mountain Energy.  You will need to speak with Joan Schenpp or Chris Kaitson about the details.

   B.   There are probably other litigation that I missed that are either immaterial or were worked on by other counsel, but most of the litigation will be on these lists.

S\memos\stosser7

ENB 00545

## HISTORY OF LITIGATION DOCKET AND CASE SUMMARY

| Docket/Case No. | Agency | Description of Matter | Outcome of Matter |
|---|---|---|---|
| Docket No. PR91-6-000 | FERC | KOP filed Settlement and Agreement with FERC for Section 311 rates – 12/10/91 | Commission approved and established rates for NPGA Section 311 transportation by KansOk |
| Docket No. 142,683-U | KCC | KPCLP Application for Certificate of Convenience and Necessity – 7/12/84 | Commission granted Certificate on 1/11/85 |
| Docket No. 142,683-U | KCC | Appeal of KPCLP Certificate by Northwest Central | Appeal was transferred to Johnson County District Court |
| Case No. 85 C 5535 | Johnson County District Court | Appeal of KPCLP Certificate in 142,683-U by Northwest | Appeal dismissed in mid-1988 by Northwest without action thereon |
| Docket No. 148,312-U | KCC | Application of Kansas Power & Light Co. for Approval of Commission to Make Certain Changes in its Charges for Natural Gas Services | KCC issued a Show Cause Order on 9/23/96 to permit open access and nondiscriminatory interconnects on the Gas Service system. |
| Case No. CIV. 86-1801, U.S.D.C.D. Kan. | Federal Court Case | Petition filed by Northwest for injunctive relief in federal court against KCC alleging KCC Order of 9/23/96 violated constitutional rights. | Court issued an Order denying Northwest's request for preliminary injunction on 11/10/86 |
| Docket No. RP86-32 Docket No. RP86-68 | FERC | FERC issued to Northwest a blanket open access certificate under Natural Gas Act Section 7 to implement full open access transportation under FERC Order 436 | Northwest elected not to accept Certificate |
| Docket No. 143,306-U | KCC | Application of Phenix for a Certificate of Convenience and Necessity – 9/14/84 | Commission issued Certificate on 5/29/85 |
| Case No. 85-CU-1037 | Shawnee County District Court | Appeal by Northwest of KCC Order granting Phenix Certificate in Docket No. 143,306-U | Dismissed without action in 3/88 |
| Case No. 85-CU-1017 | Shawnee County District Court | Appeal by KPL of KCC Order granting Phenix Certificate in Docket No. 143,306-U | Dismissed without action in 3/88 |
| Docket No. ST85-97-000 | FERC | Petition filed by Phenix for rate approval in accordance with Section 284.123(b)(2) of Commission Regulations | FERC approved Petition for rate approval as filed – 7/23/85 |
| Docket No. 156,271-U | KCC | Application of KPCLP for an Order amending its Certificate to authorize expanding natural gas sales for a period of 25 years. | KCC issued an Order granting the Application – 1/24/89 |

ENB 00546

EM001-007026

2

| Docket No.CP89-1066-000 | FERC | Application filed by KPCLP for a Certificate of Public Convenience and Necessity authorizing it to transport, sell and assign its contractual rights to receive natural gas in interstate commence under terms. of 18 C.F.R. 284.224 | FERC granted Certificate on 11/24/99 |
| Docket No. CP89-983-000 | FERC | Application filed by Bishop for a Certificate of Public Convenience and Necessity authorizing it to construct and operate a pipeline extending from KS to MO to transport natural gas and interstate commerce | FERC granted Certificate |
| Docket No. 190-362-U | KCC | Application filed by KPP/KNP for a rate increase and sought to combine their systems. | Completed Rate Case |
| Case No. 94 CV 1278 | District Court of Shawnee County | Petition filed by Williams against KCC requesting that Court declare prior accounting orders granted to KPP/KNP in Doc Nos. 178,513-U and 178,514-U as invalid and set them aside. | Williams filed voluntary notice of dismissal on 11/21/94 |
| Case No. 94-72-894-A | Kansas Court of Appeals | Application filed by Williams for Judicial Review of the above docket – | Court of Appeals dismissed Petition for Review because it was not a final agency action from above court and therefore could not be reviewed by Court of Appeals |
| Docket No. 191,842-U | KCC | Application filed by Western against KPP/KNP requesting an emergency show-cause order – 12/28/94 | KCC dismissed complaint on 3/14/95 |
| Docket No. 192,506-U Docket No. 192,507-U | KCC | Application filed by Bishop for a request for approval of certain new gas transportation agreements between KPP and WRI – 3/31/95 | KCC granted as a matter of law after appeals. |
| Case No. 96-75918 | Kansas Court of Appeals | Williams sought to delay above KCC proceedings asking for postponements | Court of Appeals denied Williams' Appeal |
| Case No. 96-75918-AS | Kansas Supreme Court | Williams appealed above Court of Appeals decision to Supreme Court | Supreme Court denied Williams' Appeal |
| Case No. 96-778 | US Supreme Court | Williams appealed above KS Supreme Court decision to US Supreme Court | US Supreme Court denied Williams' Appeal |

akfforms\history of lit docket summary

ENB 00547

EM001-007027

## OTHER LITIGATION

| Case Caption | Case No. | Location | Description |
|---|---|---|---|
| Riverside v. Joe Farb, et.al. | CV-196-810 | Cass County, Missouri | Cass County Condemnation |
| State of MO. et.al. v. Dandurand | 53474 | Cass County, Missouri | Cass County Appeal |
| Riverside v. Janet Rhoden, et.al. | CV-196-18389 | Jackson County, Missouri | Jackson County Condemnation |
| Riverside v. Eller Oakleaf, et.al. | 96 C 10935 | Johnson County, Kansas | Johnson County Condemnation - 20 Inch |
| William Southerland v. Riverside | 96 C 12049 | Johnson County, Kansas | Johnson County Injunction - 20 Inch |
| KPP/BPC v. Eldon Cook, et.al. | 96 C 13198 | Johnson County, Kansas | Johnson County Condemnation - 16 Inch |
| Eldon Cook, et.al. v. KPP/BPC | 96 C 14027 | Johnson County, Kansas | Johnson County Injunction - 16 Inch |
| Riverside v. Phillip Pitney, et.al. | 96 C 112 | Miami County, Kansas | Miami County Condemnation |
| Mark Gardner, et.al. v. Riverside | 96 C 121 | Miami County, Kansas | Miami County Injunction |
| KPP/BPC v. Jerilyn James, et.al. | 96 C 133 | Miami County, Kansas | Miami County (Osawatomie) Condemnation |
| KPP v. Sunshine Gaddis, et.al. | 96 C 149 | Franklin County, Kansas | Franklin County (Ottawa) Condemnation |
| Riverside, et.al. vs. Panhandle Eastern Pipe Line Company | 97-0642-CV-W-4 | In the US District Court for the Western District of Missouri, Western Division | Anti-Trust Issues, Ended in 1999 |
| Southern Union Company v. Western Resources, Inc., et.al. | 94-0509-CV-W-1 | In the US District Court for the Western District of Missouri, Western Division | Contract Litigation, Ended in 1995 |
| Southern Union Company v. The Bishop Group, Ltd., et.al. | 94-0511-CV-W-1 | In the US District Court for the Western District of Missouri, Western Division | Contract Litigation, Ended in 1995 |

NOTE:    The condemnation cases were completed or closed by 1997, except for a few lingering appeals dealing only with the condemnation awards.  These appeals are being defended by KNE and are part of their project and not KPC's.

**ENB 00548**

EM001-007028

**Matters Before the FERC or Appeal Therefrom**

| Docket No. | Case Caption | KPC Status [1] | Counsel |
|---|---|---|---|
| CP96-152-000 | In the Matter of Riverside Pipeline Company, L.P. [Section 7 Filing] (See 97-1710, D.C. Circuit Court of Appeals | P | HEW |
| No. 97-1710 | In the United States Court of Appeals for the District of Columbia Circuit RE: Kansas Pipeline Partnership, Riverside Pipeline Company, L.P. and KansOk Partnership  v. Federal Energy Regulatory Commission [Petition for Review of FERC Orders in CP96-152-000, et.al.] | P | HEW |
| CP96-477-000 | KN Interstate Gas Transmission Company | I | HEW |
| CP97-738-000 | TransOk, Inc. | P | HEW |
| CP97-118-000 | Indicated Land Owners vs. Riverside Pipeline Company, L.P. | P | HEW |
| CP98-645-000 | In the Matter of Trunkline Gas Company Application for Abandonment | I | HEW |
| ER96-1446-000 | KC United Corporation | I | HEW |
| RP96-348-000 | Panhandle Eastern Pipeline Company | I | HEW |
| RP97-29-000 | PEPL Tariff Protest | I | B/C |
| No. 98-1048 – In the United States Court of Appeals for the District of Columbia Circuit | In the United States Court of Appeals for the District of Columbia Circuit RE:  Panhandle Eastern Pipe Line Company  vs.  FERC [Appeal of PEPL Tariff Protest (RP97-29)] | I | B/C |
| RP98-165/RP183-07 | Williams Gas Pipelines Central, Inc. | I | HEW |
| RP98-117-000 | KN Interstate Gas Transmission Co. | I | HEW |
| RP98-118-000 | KN Interstate Gas Transmission Co. | I | HEW |
| RP99-16-000 | Williams Gas Pipelines Central, Inc. | I | HEW |
| RP99-485-000 | Kansas Pipeline Company, Rate Case, Section 4 | P | HEW |

[1] I  = Intervenor
P  = Party

ENB 00549

**Matters Before the MPSC or Appeal Therefrom**

| Case No. | Description | KPC Status | Counsel |
|---|---|---|---|
| GR96-450 | In the matter of Missouri Gas Energy's Cost Adjustment Tariff Revisions to be viewed in Its 1996-1997 Annual Reconciliation Adjustment Account | I | S&K STK |
| CV199-53CC | State of Missouri, ex.rel. Riverside Pipeline Company, L.P. and Mid-Kansas Partnership v. The Missouri Public Service Commission – Division I [Writ of Review from GR96-450] See WD-57560, Missouri Court of Appeals | P | S&K STK |
| GR-98-167 | In the Matter of Missouri Gas Energy's Purchased Gas Adjustment Factors to be Reviewed in its 1997-1998 Actual Cost Adjustment | I | S&K |
| GR-99-304 | In the Matter of Missouri Gas Energy's Purchased Gas Adjustment Factors to be Reviewed in its 1998-1999 Actual Cost Adjustment | I | S&K |
| GO-96-243 | In the Matter of Missouri Gas Energy's Cost Incentive Mechanism | I | S&K |
| GO-97-409 | In the Matter of the Operation of the Purchased Gas Adjustment Clause of Missouri Gas Energy, a division of Southern Union Company | I | S&K |
| GO-97-422 | In the Matter of the Investigation in the PGA/ACA Process | I | S&K |

HEW     =   Heller, Ehrman, White & McAulliff of Washington, DC
S&K     =   Stewart & Keevil of Columbia, Missouri
STK     =   Shugart, Thompson & Kilroy of Kansas City, Missouri
B/C     =   Bryan Cave LLP
Logan   =   Fred Logan of Logan & Logan

ENB 00550

EM001-007030

# HELLER EHRMAN WHITE & MCAULIFFE
### ATTORNEYS
A PARTNERSHIP OF PROFESSIONAL CORPORATIONS

| | | |
|---|---|---|
| SAN FRANCISCO<br>SILICON VALLEY<br>LOS ANGELES<br>SAN DIEGO<br>SEATTLE | 815 CONNECTICUT AVENUE, N.W., SUITE 200<br>WASHINGTON, D.C. 20006-4004<br>TELEPHONE (202) 785-4747<br>FACSIMILE (202) 785-8877<br>DIRECT DIAL (202) 785-6262 | NEW YORK<br>WASHINGTON, D.C.<br>PORTLAND<br>ANCHORAGE<br>HONG KONG<br>SINGAPORE |

CONFIDENTIAL AND PRIVILEGED
ATTORNEY-CLIENT COMMUNICATION

## FACSIMILE TRANSMITTAL

| TO: | COMPANY | FAX NUMBER | TELEPHONE NUMBER |
|---|---|---|---|
| Tino Monaldo | | | |
| Don Whittington | | | |
| Chris Kaitson | | | |

| FROM: | REFERENCE NUMBER | NUMBER OF PAGES | DATE |
|---|---|---|---|
| Michael A. Stosser | 1296/ | 2 | November 28, 1999 |

MESSAGE:

Tino:

    Please see attached DRs and provide a response by Noon (Eastern) tomorrow, if possible. With respect to RJF-1 26, Howard Lubow will provide the accounting information, but I need you to provide the rest, if you can.

    Thanks, Mike.

C:\program files\firm\heller\Fax.dot
11/28/99 4:40 PM (1296/)

The information contained in this communication is intended only for the use of the addressee and may be confidential, may be attorney-client privileged and may constitute inside information. Unauthorized use, disclosure or copying is strictly prohibited, and may be unlawful. If you have received this communication in error or you have not received all pages, please call the sender immediately at (202) 785-4747.

AFFILIATED WITH CARNELUTTE: MILAN, ROME, PARIS, PADUA, NAPLES

**ENB 00551**

# FERC **Data Requests**

| Name of Requestor | Request Number | | Date of Request | 11/3/1999 |
|---|---|---|---|---|
| COS-1-WRC-1 | 6 | | Date Response Due | 11/30/1999 |
| | | | Date Completed | |

| Type of Info Requested | | Subject of Request | |
|---|---|---|---|

**Text of Request**

6. Any prior and pending court litigation (within the last three years) involving KPC, its parent or any of its affiliated companies (that has or will impact Kansas), and identify each instance by case and docket number. Accompanying each case listed should be a brief description of the litigants, claimed liability, general outline of case, status of proceedings and final outcome, if any.

Sunday, November 28, 1999

Page 3 of 7

ENB 00552

# FERC   Data Requests

| Name of Requestor   Request Number | Date of Request | 11/9/1999 |
|---|---|---|
| COS-1- RJF-1  26 | Date Response Due | 11/30/1999 |
| | Date Completed | |

| Type of Info Requested | Subject of Request |
|---|---|
| | |

**Text of Request**

26.  Please provide all details of the Linchpin project, including original source material that describes the project.  Provide a schedule showing the date each of the costs were incurred or amortized and include the accounting for each entry.

ENB 00553

EM001-007033

# HELLER EHRMAN WHITE & MCAULIFFE

### ATTORNEYS

A PARTNERSHIP OF PROFESSIONAL CORPORATIONS

815 CONNECTICUT AVENUE, N.W., SUITE 200
WASHINGTON, D.C.  20006-4004
TELEPHONE (202) 785-4747
FACSIMILE (202) 785-8877
DIRECT DIAL

SAN FRANCISCO
SILICON VALLEY
LOS ANGELES
SAN DIEGO
SEATTLE

NEW YORK
WASHINGTON, D.C.
PORTLAND
ANCHORAGE
HONG KONG
SINGAPORE

## FACSIMILE TRANSMITTAL

| TO: | COMPANY | FAX NUMBER | TELEPHONE NUMBER |
|---|---|---|---|
| Dan Tutcher | Midcoast Energy | (713) 653-6710 | |
| Chip Berthelot | Midcoast Energy | (713) 650-3232 | |
| Chris Kaitson | Midcoast Energy | (713) 650-3232 | |
| Don Whittington | Midcoast Energy | (713) 653-6710 | |

| FROM: | REFERENCE NUMBER | NUMBER OF PAGES (including cover page) | DATE |
|---|---|---|---|
| Stan Berman<br>Michael Stosser<br>Jane E. Stelck | | 5 | November 24, 1999 |

MESSAGE:

Please see attached memorandum.

The information contained in this communication is intended only for the use of the addressee and may be confidential, may be attorney-client privileged and may constitute inside information. Unauthorized use, disclosure or copying is strictly prohibited, and may be unlawful. If you have received this communication in error or you have not received all pages, please call the sender immediately at (202) 785-4747.

AFFILIATED WITH CARNELUTTI: MILAN, ROME, PARIS, PADUA, NAPLES

ENB 00554

EM001-007034

**MEMORANDUM**

HELLER EHRMAN WHITE & M<sup>c</sup>AULIFFE

ATTORNEYS

CONFIDENTIAL AND PRIVILEGED
ATTORNEY-CLIENT COMMUNICATION

TO:     Dan Tutcher
        Chip Berthelot
        Chris Kaitson
        Don Whittington

FROM:   Stan Berman
        Michael Stosser
        Jane E. Stelck

DATE:   November 24, 1999

RE:     Kansas Pipeline Company,
        Docket No. RP99-485-000
        Supplemental Testimony

---

As you know, Kansas Pipeline Company has committed to filing supplemental testimony in the ongoing Section 4 rate case on December 15, 1999. The testimony will supplement and update the case-in-chief filed on August 27, 1999, in light of Midcoast's recent acquisition of KPC. The following issues, to be addressed in supplemental testimony, have been identified below with a proposed list of witnesses and their respective areas of responsibility.

1.      **Midcoast's Overhead Costs.**

        **Proposed witness: Don Whittington.**

This testimony would provide support for all of Midcoast's overhead costs which would be assigned directly to KPC. Inasmuch as there is no history for such costs, it will be necessary to propose an anticipated level of cost to be assigned to KPC for each overhead cost proposed for Midcoast's legal or accounting departments. The testimony would include support for the use of the Massachusetts formula or Modified Massachusetts formula for all overhead that cannot be assigned directly.

2.      **Bishop's Overhead Costs.**

        **Proposed witness: Robert Welchlin.**

The testimony would support the elimination of all overhead costs currently included in the rate case that need to be removed.

**ENB 00555**

CONFIDENTIAL AND PRIVILEGED
ATTORNEY-CLIENT COMMUNICATION

HELLER EHRMAN WHITE & M<sup>c</sup>AULIFFE
ATTORNEYS

November 24, 1999
Page 2

3.   **Debt Cost.**

   **Proposed witness:  Charles Olson.**

   The testimony would reaffirm the appropriateness of the filed capitalization.  Mr. Olson's filed testimony would be revised to reflect the new debt cost plus the amortization of prepaid debt cost (the cost to secure Syenergy's debt) in addition to the new $8.5 million of prepayment debt incurred by Midcoast.  The testimony would conclude that the use of a hypothetical capital structure is still appropriate because the revised capitalization of the new owners is not representative.  The testimony also would conclude that the rate of return on equity requested in the original filing has not changed.

4.   **Prepayment of $8.5 million incurred when retiring the old debt.**

   **Proposed witness:  Alan Lovinger.**

   The testimony would provide FERC precedent to support the allowance of the payment to be amortized and the unamortized amount to be included in rate base.  The annual amortization would be used in the computation of the new debt cost.  In addition, the testimony would confirm that it is appropriate to continue to amortize and treat in rate base the $4.0 million of prepaid debt incurred to secure the original Syenergy debt even though the debt has been paid off.

5.   **Deferred Taxes.**

   **Proposed witnesses:  Tom Palmisano (or other witness)
                        from Price Waterhouse Coopers Lybrand
                        and Alan Lovinger.**

   Mr. Palmisano was the tax advisor to Midcoast during the company's purchase of KPC.  He, or another principal from Price Waterhouse, would provide testimony summarizing the tax effects of the sale of KPC to Midcoast.  The testimony will conclude that as a result of certain tax elections under Section 754 of the Internal Revenue Code, the balance in all of KPC's deferred tax accounts goes to zero on the date of the sale.  The testimony also will conclude that the elections under Section 754 of the IRS Code produces the same results as an election under Section 338 of the Code.  (*Koch Gateway*, 74 FERC ¶ 61,088 (1996)).  This is very important because the Commission has addressed the income tax implication for Section 338 but has not addressed an election under Section 754 of the Code.

ENB 00556

EM001-007036

HELLER EHRMAN WHITE & McAULIFFE
A T T O R N E Y S

November 24, 1999
Page 3

Mr. Lovinger's testimony would provide support for the assertion that in accordance with Commission precedent (*Koch Gateway*), the deferred tax used to reduce rate base would be that created beginning on the effective date of the sale and computed through the end of the test period.  The result would be a very nominal amount of deferred tax.  The overall effect is that rate base would increase by approximately $9.0 million.

6. **Payroll and Deferred Compensation Plan.**

   **Proposed witness:  Don Whittington or Bob Welchlin.**

The witness would provide testimony to support reductions to payroll and deferred compensation.  The testimony also would provide information regarding the new consulting agreement with KPC's former officers and support of level of cost to be included in the rate case.  If Mr. Welchlin testifies, Midcoast will need to provide information to update Mr. Welchlin on these issues.

7. **Office Rent and Satellite Office.**

   **Proposed witness:  Bob Welchlin.**

The testimony will support the removal of rental and related costs from the Satellite Office.

8. **Employee Benefits.**

   **Proposed witness:  Don Whittington.**

The testimony will support removal of employee benefits which are no longer applicable, and replace those costs with benefits from Midcoast.

9. **Vehicle Leases.**

   **Proposed witness:  Bob Welchlin.**

The testimony will support the change to vehicle lease costs.

ENB 00557

CONFIDENTIAL AND PRIVILEGED
ATTORNEY-CLIENT COMMUNICATION

HELLER EHRMAN WHITE & McAULIFFE
ATTORNEYS

November 24, 1999
Page 4

10.   **Adjusted Cost of Service.**

**Proposed witness:  Don Whittington.**

The witness will sponsor the exhibit that reflects the adjusted overall cost of service, the cost of service by zones, and the resulting rates.  If the cost of service is equal to or higher than the amount filed originally, the conclusion would be that the rates would not change.  If the cost of service is lower and results in lower rates, Midcoast is under no obligation to change its rates; if the company elects to do so, it can file lower rates when the motion rates are filed.

If there are other issues that need to be addressed, they can be added to the list. We suggest that a conference call be held next week, with Midcoast, Heller Ehrman, and proposed witnesses, to discuss how to proceed.

cc:   Jim Armstrong

ENB 00558

EM001-007038