**Break-Even Alternatives**

| | | Notes Not Called | Notes Called | | Notes Not Called | Notes Called |
| | | Alternate Bogie | Fortrend Thurs 9/23 | Alternate Bogie | Fortrend Thurs 9/23 | Midcoast 9/28/99 | Midcoast 9/28/99 |
| | | (a) | (b) | (c) | (d) | | |
| I | **Enterprise Value** | | | | | | |
| | Base Enterprise Value | 200,000,000 | 166,000,000 | 200,000,000 | 166,000,000 | 166,000,000 | 166,000,000 |
| | Butcher Interest | 5,000,000 | 6,500,000 | 5,000,000 | 6,500,000 | | |
| | Proj Dev Upside Retention 50/50 | 0 | 26,150,000 | 0 | 26,150,000 | | |
| | Debt Service Reserve | 10,000,000 | 10,000,000 | 10,000,000 | 10,000,000 | 10,000,000 | - |
| | Working Capital | 700,000 | 700,000 | 700,000 | 700,000 | 700,000 | 700,000 |
| | Accrued Butcher Interests | 3,090,000 | 0 | 3,090,000 | 0 | | |
| | Miscellaneous Adjustments | 0 | 0 | 0 | 0 | | |
| | Subtotal | 218,790,000 | 209,350,000 | 218,790,000 | 209,350,000 | 176,700,000 | 166,700,000 |
| II | **Break-up Adjustments:** | | | | | | |
| | Executive Office Lease | 700,000 | 700,000 | 700,000 | 700,000 | 700,000 | 700,000 |
| | Prairie Center Office Lease | 1,800,000 | 900,000 | 1,800,000 | 900,000 | 900,000 | 900,000 |
| | Employee Severance Package | 1,062,800 | 1,062,800 | 1,062,800 | 1,062,800 | 1,062,800 | 1,062,800 |
| | Tino Monaldo | 900,000 | 450,000 | 900,000 | 450,000 | 450,000 | 450,000 |
| | Total Break-up Adjustments | 4,462,800 | 3,112,800 | 4,462,800 | 3,112,800 | 3,112,800 | 3,112,800 |
| III | **Adjustments** | | | | | | |
| | Risk Adjustment | 0 | (4,000,000) | 0 | (4,000,000) | (4,000,000) | (4,000,000) |
| | Buyer Organizational Credit | 0 | 5,000,000 | 0 | 5,000,000 | 5,000,000 | 5,000,000 |
| | Airplane/Other Asset | 0 | 1,000,000 | 0 | 1,000,000 | 1,000,000 | 1,000,000 |
| | Make-Whole Premium | 0 | 0 | 0 | (1,100,000) | - | 4,000,000 |
| | Total Adjustments | 0 | 2,000,000 | 0 | 900,000 | 2,000,000 | 6,000,000 |
| | Total Enterprise Value | 223,252,800 | 214,462,800 | 223,252,800 | 213,362,800 | 181,812,800 | 175,812,800 |
| IV | **Debt Assumed** | | | | | | |
| | Long Term Debt | (62,390,000) | (62,390,000) | (62,390,000) | (62,390,000) | (62,390,000) | - |
| | Revolver Debt | (6,000,000) | (6,000,000) | (6,000,000) | (6,000,000) | (6,000,000) | - |
| | Accrued Butcher Interest Payable | (3,090,000) | 0 | (3,090,000) | 0 | | |
| | Total Debt Assumed | (71,480,000) | (68,390,000) | (71,480,000) | (68,390,000) | (68,390,000) | - |
| | Cash Value to DML | 151,772,800 | 146,072,800 | 151,772,800 | 144,972,800 | 113,422,800 | 175,812,800 |
| | Gap to be Closed | 0 | (5,700,000) | 0 | (6,800,000) | | |
| V | **Gap Closers:** | | | | | | |
| | Promissory Note | 0 | 0 | 0 | 0 | | |
| | True-up to Closing Date | 0 | 700,000 | 0 | 700,000 | | |
| | Buyer Contribution to Make Whole | 0 | 0 | 0 | 0 | | |
| | Seller Organization Credit | 0 | 5,000,000 | 0 | 5,000,000 | | |
| | Total Gap Closers | 0 | 5,700,000 | 0 | 5,700,000 | | |

Note:
Assumes Butcher Interests puchased for $6 5 million at Closing

181,812,800    180,712,800    181,812,800    175,812,800

Fortrend Cost

| | | |
|---|---|---|
| Enterprise Value | 181,812,800 | 175,812,800 |
| less Cash Sinking Fu | (10,000,000) | - |
| less Current Tax Bas | (50,000,000) | (50,000,000) |
| less Working Capital | (700,000) | (700,000) |
| Step Up | 121,112,800 | 125,112,800 |
| Agreed Rate | 5% | 5% |
| Cost | 6,055,640 | 6,255,640 |

| Total Midcoast Cost | 187,868,440 | 182,068,440 |

**Kansas Pipeline Company**
**Disclosure Statement**
**Depreciation Difference - Carryover Basis vs Purchased Basis**

| | Assets 11/7/1999 | Depreciation 1999 | Depreciation 2000 | Depreciation 5/1/2001 | Depreciation 12/31/2001 | Depreciation 2002 | Depreciation 2003 | Depreciation 2004 | Depreciation 2005 | Depreciation 2006 | Depreciation 2007 | Depreciation 2008 | Depreciation 2009 |
|---|---|---|---|---|---|---|---|---|---|---|---|---|---|
| Total Carryover Tax Basis / Projected Depreciation (per E&Y) | 50,076,845 | (1,203,554) | (6,362,679) | (2,252,190) | (4,022,997) | (8,184,074) | (8,157,600) | (8,155,581) | (4,321,203) | (2,220,310) | (1,896,910) | (1,372,610) | (1,314,172) |
| Purchased Tax Basis / Projected Depreciation (per Tax Return) | 182,660,639 | (3,139,596) | (24,405,751) | (7,274,754) | (12,394,598) | (17,255,837) | (14,627,685) | (15,516,631) | (12,411,020) | (12,229,910) | (10,060,860) | (10,601,424) | (7,285,571) |
| Difference | 132,616,794 | (1,936,042) | (18,043,072) | (5,022,564) | (8,371,601) | (10,639,763) | (6,510,086) | (7,361,070) | (8,090,000) | (10,009,561) | (8,293,950) | (9,128,814) | (5,971,184) |
| Tax @ 35% | 46,415,878 | (677,615) | (6,315,250) | (1,757,897) | (3,140,060) | (3,783,917) | (2,078,531) | (2,583,374) | (2,831,600) | (3,503,357) | (3,252,883) | (3,195,015) | (2,089,916) |

Tax @ 35%

| | Carryover | Stepped Up | Difference | @ 35% |
|---|---|---|---|---|
| Total Assets | 50,076,845 | 182,863,839 | 132,616,794 | 46,415,878 |
| Nondepreciable | (9,871,419) | (222,865) | 3,648,553 | 1,276,994 |
| Depreciable Assets | 40,205,426 | 182,470,773 | 130,265,347 | 47,692,871 |



GOVERNMENT
EXHIBIT
51

PENGAD—Bayonne, N. J.

MID 2.2-27

ENB-DOJ-018091

ENB-DOJ-018092

MID 2.2-28

Kansas Pipeline Company
Disclosure Statement
Depreciation Difference - Carryover Basis vs Purchased Basis

| | Depreciation 2010 | Depreciation 2011 | Depreciation 2012 | Depreciation 2013 | Depreciation 2014 | Depreciation 2015 | Depreciation 2016 | Depreciation 2017 | Depreciation 2018 | Depreciation 2019 | Depreciation 2020 | Depreciation 2021 | Depreciation 2022 | Depreciation 2023 |
|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|
| Total Carryover Tax Basis / Projected Depreciation (per E&Y) | (1,215,930) | (1,013,148) | (475,571) | (47,062) | (23,864) | (11,194) | (11,194) | (11,194) | (11,194) | (11,194) | (11,194) | (11,194) | (8,320) | (7,229) |
| Purchased Tax Basis / Projected Depreciation (per Tax Return) | (7,285,371) | (7,285,371) | (7,285,371) | (7,285,371) | (8,377,410) | (21,669) | (21,669) | (21,669) | (21,669) | (21,669) | (21,669) | (21,669) | (21,689) | (21,689) |
| Difference | (9,069,441) | (9,272,223) | (9,608,800) | (7,298,309) | (8,353,596) | (10,465) | (10,465) | (10,465) | (10,465) | (10,465) | (10,465) | (10,465) | (13,369) | (14,461) |
| Tax @ 35% | (2,124,304) | (2,195,278) | (2,383,080) | (2,533,428) | (2,223,745) | (3,673) | (3,673) | (3,673) | (3,673) | (3,673) | (3,673) | (3,673) | (4,699) | (5,061) |

| | Carryover | Stepped Up | Difference | @ 35% |
|---|---|---|---|---|
| Total Assets | 50,078,845 | 182,593,639 | 132,516,794 | 46,415,878 |
| Nondepreciable Assets | (9,871,419) | (222,898) | 9,648,553 | 1,279,994 |
| Depreciable Assets | 40,206,426 | 182,470,773 | 135,265,347 | 47,892,871 |

Kansas Pipeline Company
Disclosure Statement
Depreciation Difference - Carryover Basis vs Purchased Basis

| | Depreciation 2024 | Depreciation 2025 | Depreciation 2026 | Depreciation 2027 | Depreciation 2028 | Depreciation 2029 | Depreciation 2030 | Depreciation 2031 | Depreciation 2032 | Depreciation 2033 | Depreciation 2034 | Depreciation 2035 | Depreciation 2036 |
|---|---|---|---|---|---|---|---|---|---|---|---|---|---|
| Total Carryover Tax Basis / Projected Depreciation (per E&Y) | (7,228) | (5,463) | (5,463) | (5,463) | (5,463) | (5,463) | (5,463) | (5,463) | (5,463) | (5,463) | (5,463) | (5,463) | (5,463) |
| Purchased Tax Basis / Projected Depreciation (per Tax Return) | (21,689) | (21,689) | (21,689) | (21,689) | (21,689) | (21,689) | (21,689) | (21,689) | (21,689) | (21,689) | (21,689) | (21,689) | (21,689) |
| Difference | (14,461) | (16,226) | (16,226) | (16,226) | (16,226) | (16,226) | (16,226) | (16,226) | (16,226) | (16,226) | (16,226) | (16,226) | (16,226) |
| Tax @ 35% | (5,061) | (5,679) | (5,679) | (5,679) | (5,679) | (5,679) | (5,679) | (5,679) | (5,679) | (5,679) | (5,679) | (5,679) | (5,679) |

| | Carryover | Stepped Up | Difference | @ 35% |
|---|---|---|---|---|
| Total Assets | 60,078,845 | 192,693,639 | 132,615,794 | 46,415,878 |
| Nondepreciable | (3,671,419) | (222,866) | 3,648,553 | 1,276,994 |
| Depreciable Assets | 44,206,426 | 182,470,773 | 138,265,347 | 47,892,871 |

MID 2.2-29

ENB-DOJ-018093

Kansas Pipeline Company
Disclosure Statement
Depreciation Difference - Carryover Basis vs Purchased Basis

| | Depreciation 2007 | Depreciation 2008 | Depreciation Totals |
|---|---|---|---|
| Total Carryover Tax Basis / Projected Depreciation (per E&Y) | (5,425) | (2,896) | (46,205,426) |
| Purchased Tax Basis / Projected Depreciation (per Tax Return) | (21,686) | (904) | (182,470,773) |
| Difference | (16,261) | 1,792 | (136,265,347) |

Tax @ 35%

| | | (5,691) | 627 | (47,692,871) |
|---|---|---|---|---|

| | Carryover | Stepped Up | Difference | @ 35% |
|---|---|---|---|---|
| Total Assets | 60,079,645 | 192,892,039 | 132,812,794 | 46,415,878 |
| Nondepreciable | (9,871,419) | (222,890) | 9,648,553 | 1,276,994 |
| Depreciable Assets | 49,206,426 | 192,470,773 | 136,265,347 | 47,692,871 |

Kansas Pipeline Company
Allocated Purchase Price Depreciation Projections
Post Error Correction

| Depreciation Years | Tax Cost Basis | Error Correction | Corrected Tax Cost Basis | 1989 | 1999 | 2000 | 2001 | 2002 | 2003 | 2004 | 2005 | 2006 | 2007 | 2008 | 2009 |
|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|
| 15 Year Life 150DB | 127,332,996 | (7,076,116) | 120,256,880 | 1,503,211 | 11,875,367 | 10,667,830 | 9,610,047 | 8,667,142 | 7,791,429 | 7,101,049 | 7,101,049 | 7,101,049 | 7,101,049 | 7,101,049 | 7,101,049 |
| 15 Year Life-SL (ROWW) r. amortization | 2,083,043 | (143,544) | 2,439,499 | 20,029 | 182,633 | 182,633 | 182,633 | 182,633 | 182,633 | 182,633 | 182,633 | 182,633 | 182,633 | 3,096,431 | 182,633 |
| 9 Year Life 180D Property 150DB | 38,723,469 | (2,151,682) | 36,571,567 | 791,907 | 5,969,275 | 4,973,562 | 4,144,635 | 3,527,349 | 3,527,349 | 3,527,349 | 3,527,349 | 3,527,349 | 3,527,349 | 129,822 | |
| 9 Year Life 180D Property SL (ROWW)-smort | 1,411,710 | (78,461) | 1,333,259 | 18,517 | 148,140 | 148,140 | 148,140 | 148,140 | 148,140 | 148,140 | 148,140 | 148,140 | 148,140 | | |
| 7 Year Life | 17,588,183 | (977,462) | 16,611,731 | 583,276 | 4,576,701 | 3,359,072 | 2,355,052 | 1,867,064 | 1,450,343 | 1,450,343 | 1,250,050 | | | | |
| 5 Year Life | 4,599,298 | (255,095) | 4,334,263 | 218,713 | 1,847,016 | 982,210 | 562,928 | 474,541 | 415,048 | | | | | | |
| 4 Year Life 180D Property | 82,289 | (4,573) | 77,716 | 4,857 | 35,428 | 18,215 | 9,715 | 8,502 | | | | | | | |
| Land | 235,980 | (13,114) | 222,866 | | | | | | | | | | | | |
| 39 Year Property | 895,851 | (49,773) | 846,078 | 20,785 | 21,689 | 21,689 | 21,689 | 21,689 | 21,689 | 21,689 | 21,689 | 21,689 | 21,689 | 21,689 | 21,689 |
| Total Tax Basis Allocable to Fixed Assets and Land | 193,443,839 | (10,750,000) | 182,693,839 | | | | | | | | | | | | |
| Nondepreciable Assets - Land | | | (222,866) | | | | | | | | | | | | |
| Depreciable Tax Basis | | | 182,470,773 | | | | | | | | | | | | |
| Corrected Tax Depreciation Projection | | | | 3,139,598 | 24,406,251 | 20,269,352 | 17,033,637 | 14,667,869 | 13,516,631 | 12,411,203 | 12,229,010 | 10,960,360 | 10,501,424 | 7,295,371 | |
| Tax Depreciation- Projection of Error | | | | 184,709 | 1,467,670 | 1,192,683 | 1,002,300 | 850,071 | 705,341 | 729,266 | 719,828 | 644,865 | 617,921 | 428,663 | |
| Tax Depreciation per Tax Return/Projection with Error | | | | 3,324,306 | 25,874,121 | 21,462,034 | 18,036,136 | 15,500,760 | 14,311,972 | 13,141,469 | 12,949,536 | 11,605,615 | 11,119,345 | 7,714,054 | |

GOVERNMENT EXHIBIT

PENGAD-Bayonne, N. J.

ENB-DOJ-018095

Kansas Pipeline Company
Allocated Purchase Price Depreciation Projections
Post Error Correction

| Depreciation | 2010 | 2011 | 2012 | 2013 | 2014 | 2015 | 2016 | 2017 | 2018 | 2019 | 2020 | 2021 | 2022 | 2023 | 2024 | 2025 | 2026 |
|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|
| 15 Year Life 15006 | 7,101,049 | 7,101,049 | 7,101,049 | 7,101,049 | 6,213,417 | | | | | | | | | | | | |
| 15 Year Life-SL (ROW's) - amortization | 182,633 | 182,633 | 182,633 | 182,633 | 142,304 | | | | | | | | | | | | |
| 9 Year Life I680 Property 15006 | | | | | | | | | | | | | | | | | |
| 9 Year Life I680 Property SL (ROW's)-amort | | | | | | | | | | | | | | | | | |
| 7 Year Life | | | | | | | | | | | | | | | | | |
| 5 Year Life | | | | | | | | | | | | | | | | | |
| 4 Year Life I680 Property | | | | | | | | | | | | | | | | | |
| Land | | | | | | | | | | | | | | | | | |
| 39 Year Property | 21,689 | 21,689 | 21,689 | 21,689 | 21,689 | 21,689 | 21,689 | 21,689 | 21,689 | 21,689 | 21,689 | 21,689 | 21,689 | 21,689 | 21,689 | 21,689 | 21,689 |
| Total Tax Basis Allocable to Fixed Assets and Land | | | | | | | | | | | | | | | | | |
| Nondepreciable Assets - Land | | | | | | | | | | | | | | | | | |
| Depreciable Tax Basis | | | | | | | | | | | | | | | | | |
| Corrected Tax Depreciation Projection | 7,285,371 | 7,285,371 | 7,285,371 | 7,285,371 | 6,377,410 | 21,689 | 21,689 | 21,689 | 21,689 | 21,689 | 21,689 | 21,689 | 21,689 | 21,689 | 21,689 | 21,689 | 21,689 |
| Tax Depreciation Projection of Error | 426,683 | 426,683 | 426,683 | 426,683 | 375,294 | 1,276 | 1,276 | 1,276 | 1,276 | 1,276 | 1,276 | 1,276 | 1,276 | 1,276 | 1,276 | 1,276 | 1,276 |
| Tax Depreciation per Tax Return/Projection with Error | 7,714,054 | 7,714,054 | 7,714,054 | 7,714,054 | 6,752,988 | 22,965 | 22,965 | 22,965 | 22,965 | 22,965 | 22,965 | 22,965 | 22,965 | 22,965 | 22,965 | 22,965 | 22,965 |

ENB-DOJ-018096

Kansas Pipeline Company
Allocated Purchase Price Depreciation Projections
Post Error Correction

| Depreciation | 2027 | 2028 | 2029 | 2030 | 2031 | 2032 | 2033 | 2034 | 2035 | 2036 | 2037 | 2038 | 2039 | Depreciation Total | Depreciable Recovery Total Basis |
|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|
| 15 Year Life ISODB | | | | | | | | | | | | | | 120,256,990 | |
| 15 Year Life-SL (ROWY) - amortization | | | | | | | | | | | | | | 2,439,499 | |
| 8 Year Life 168(f) Property ISODB | | | | | | | | | | | | | | 36,571,557 | |
| 9 Year Life 168(f) Property SL (ROWY)-amort | | | | | | | | | | | | | | 1,333,259 | |
| 7 Year Life | | | | | | | | | | | | | | 18,811,721 | |
| 5 Year Life | | | | | | | | | | | | | | 4,334,253 | |
| 4 Year Life 168(f) Property | | | | | | | | | | | | | | 77,718 | |
| Land | | | | | | | | | | | | | | 0 | 222,896 |
| 39 Year Property | 21,689 | 21,689 | 21,689 | 21,689 | 21,689 | 21,689 | 21,689 | 21,689 | 21,689 | 21,689 | 21,689 | 21,689 | 904 | 845,678 | 845,678 |
| | | | | | | | | | | | | | | | |
| Total Tax Basis Allocable to Fixed Assets and Land | | | | | | | | | | | | | | | |
| Nondepreciable Assets - Land | | | | | | | | | | | | | | | |
| Depreciable Tax Basis | | | | | | | | | | | | | | | |
| | | | | | | | | | | | | | | | |
| Corrected Tax Depreciation Projection | 21,689 | 21,689 | 21,689 | 21,689 | 21,689 | 21,689 | 21,689 | 21,689 | 21,689 | 21,689 | 21,689 | 21,689 | 904 | 182,470,775 | 222,896 |
| Tax Depreciation Projection of Error | 1,276 | 1,276 | 1,276 | 1,276 | 1,276 | 1,276 | 1,276 | 1,276 | 1,276 | 1,276 | 1,276 | 1,276 | 53 | 10,736,896 | 13,114 |
| Tax Depreciation per Tax Return/Projection with Error | 22,965 | 22,965 | 22,965 | 22,965 | 22,965 | 22,965 | 22,965 | 22,965 | 22,965 | 22,965 | 22,965 | 22,965 | 958 | 193,207,669 | 235,980 |

ENB-DOJ-018097

Good afternoon and welcome ladies and gentleman to the Midcoast Energy Resources Conference Call. At this time all participants are on a listen only mode. At the request of Duane Herbst we will open the conference up for questions and answers after the presentation. Now I will turn the conference over to Duane Herbst. Please go ahead sir.

Thank you all for calling in this morning, We've got a pretty exciting acquisition here lined up and will give you a few more details and then afterwards answer some questions. I want to preface this by saying any statements that are not based on historical facts here today are forward looking statements within the meaning of the securities litigation act of 1995 and while we believe these expectations are reasonable, they do involve a number of risks and uncertainties which are described in more detail in filings with the United States Security and Exchange Commission. With that having been said, I would like to turn the call over to Dan Tucher, our President and CEO, who will give you a few more details on the acquisition we announced this morning.

Good morning and again, thank you for calling in. We this morning announced the acquisition of the Kansas Pipeline Company, which is a Federal Energy Regulatory Commission regulated pipeline which we acquired. We think this is a very significant acquisition for us, certainly as far and away the biggest acquisition we have made, something in the neighborhood of $190 million dollars. It almost doubles the asset base that we have within the company. Very significant to us. Again, Midcoast has again done what it always says it will do when we have gone back to the market for equity, we try to put it to work very quickly and I think we have done a very good job of it again today. This particular acquisition is right in the middle of the fairway for us, it is exactly what we do. It is transportation oriented, about 98% of the revenues are long-term contracts, it is just very, as I said right in the middle of the fairway of what Midcoast Energy is all about. It was a perfect addition to our interstate pipeline, it makes the third interstate pipeline we now own.

ENB 009853

GOVERNMENT
EXHIBIT
61

Just a little bit about the pipeline itself, and that it is about 1120 miles of interstate pipeline stretching from Oklahoma and Western Kansas into the Northeastern Kansas and Missouri area and Western Missouri area. We have three primary customers there which are Western Resources, the main local distribution company, now owned by Oneok- that supplies many of the municipalities in Kansas. Missouri Gas Energy – which supplies the majority of the gas in the Kansas City Missouri area and in and around the Missouri area, as far around ST. Joseph and other municipal areas, just in Western Missouri and lastly, Atmos Energy to a lesser extent.

We will have a large portion of the Kansas City market and the Wichita market from connections and tie ins directly into the industrial areas of both the Wichita and Kansas City markets of these LDC's. It adds a great deal of volume, the pipeline moves on a long-term basis about 160 million cubic feet a day.

All of the contracts there are a minimum of ten years, so it really ties in our long-term cash flow and makes our earnings very transparent going forward. The pipeline on the supply side connects up with Transok and Panhandle Eastern and ANR in Central Kansas and Northern Oklahoma and the Panhandles of Texas and Oklahoma. So the supply side part of the pipeline is extremely diverse as well. We think it is just a very good physical fit for us, as well as contractual fit. We believe this is quite strong for us going forward.

At this point, I am going to turn this over to Richard Robert, Chief Financial Officer for Midcoast and let him give you just a description of the financial side of things and then I'll come back and talk about a little bit of where we plan to go with this thing going forward and then we will have some Q&A. So Richard, if you want to take it from there.

As you read in the press release, the consideration for this transaction is approximately $190 million dollars. We are in conjunction with this transaction paying off approximately $68 million dollars of senior secured debt, that was on Kansas Pipeline and the remainder to be paid in cash to the seller. As a result of having to pay off this debt, we are incurring approximately $8.8 million dollar prepayment penalty that is slightly revised from the press release, as rates have rallied here of late, and this we expect to be reflected as a one time charge in the fourth quarter this year. We are financing this transaction through a new credit facility, that has been syndicated here in the last month or so. It includes 10

different banks, we have increased that number from 3 to 10 and we expect this transaction to close tomorrow. From a historical basis, Kansas Pipeline has earned approximately $20 million dollars EBITDA. Our expectation is that Midcoast will achieve some synergies with this transaction and we would anticipate the contribution of Kansas Pipeline to be closer to $24 million going forward. Dan, do you want to summarize?

I will. As Richard said, we expect it to be very synergistic with our other operations, I think the numbers will be good for us. Just a little bit about what we think going forward. As I said, Kansas Pipeline has a picture of the Kansas City and Wichita markets, 98% of the revenues of all these contracts, which again stretch out from ten to fifteen years, a minimum of ten years, are transportation based and are fixed, long-term transparent cash flow as I mentioned before. We are in good strong growth markets in the Kansas City and Wichita areas, both areas are projected to have a 4% growth rate, so we think we are going to have some expansion with that. Kansas has yet to get onboard deregulation of electricity, but we believe that this is on tap for the near future and we feel like there is good chance for conversion, they have a lot of coal fired electric generation up there. We think that there will be more gas demand in and around that area and we are prepared to serve it.

Again, as I said some synergies with our existing operations, we have on the upstream side, two or three end user pipelines in the Kansas City area, we are connected directly to the Owens Corning Fiberglass Plant, the Board of Public Utilities in Kansas City which are two of the main electric generating facilities in Kansas City, Kansas. We will be connecting those to our newly acquired Kansas pipeline system, as well as, probably the City of Augusta, the power plant that we serve down there. We have a number of synergies on the upstream side as well. We own Raymond and a couple of other small gathering systems in central Kansas that actually cross this pipeline which we will be integrating into the system. We also own one of our other largest acquisitions about a year ago, the Anadarko system which we purchased from El Paso, approximately about August of last year. That system is very near the up stream side of this pipeline, but more importantly it is attached and one of our main downstream pipes that we dump all of our Anadarko gas in is Transok which we have a ten year contract with very favorable transportation rates across Transok and into our new Kansas pipeline system. So, a lot a good existing pipeline synergies of ones that we already own, both on

ENB 009855

the upstream and downstream side, things that will integrate very quickly. This pipeline is going to be quite easy for us to integrate. We actually oniy had three major customers with us, I said Western Resources, Missouri Gas and Atmos. In the upstream portion, it is fairly simplistic too. So we feel like the ease and integration on this system all be it our biggest acquisition to date in terms of dollars, will be much simpler.

We have managed over the last two or three years to integrate the purchase of our MidCoast Interstate System over Northern Alabama, our Mid Louisiana System which crosses Louisiana and Mississippi and again the Anadarko System of El Paso. We continue to strive to optimize our operational and internal G&A synergies across those systems and with the addition of this one, we think it going to be a real easy system for us to digest.

Marketing is one of the last things we bought and Margasco, which is the marketing arm of Kansas pipeline, we will continue to do marketing as we always do across all of our systems just as pretty much a service to our end users, as well as aggregating supplies behind our upstream pipelines. I think that kind of gives you a brief feeling for it, again, we are extremely pleased to get this particular acquisition, the size of it is significant to us and we think it is going to be a great addition.

I will be glad to open this back up for any questions you may have for Richard Robert or myself, at this point and time. Holly, if you would open up the lines.


Donato Eassey: Good morning and congratulations gentleman, it looks like you are doubling the size of the company almost overnight here. Did I hear you right Richard in saying that you expect to close on this transaction today, there is no waiting for any kind of approvals or anything?

Richard: No we have received Hart-Scott actually about a week ago, we got early termination on that and we are just getting the money transferred basically and so we anticipate tomorrow to be the actual close.

Donato Eassey: All right and with the financing, obviously with this new facility you have, that will be the near term financing, but what is your long-term financing expectations?

ENB 009856

Richard:  Well, after this transaction, we will be relatively highly leverage, we will have probably about 67% debt to cap ratio, there is a step down required in the new credit agreement to 65% by June 30th of 2000.  So, in the near term, although we do not intend to do a large equity offering, we may consider doing a small privately place equity deal to get us a little bit of flexibility to do some of the other things that we have on the horizon here in the next few months, but what I would prefer to see happen is that we wait for some other significant event to occur, that requires us to out and issue some more equity and we obviously we would like to think that would be some time in early 2000.

Donato Eassey:  You have been very successful in mitigating some costs, creating some new found revenue synergies as Dan was talking about and there and I think that last quarter is a perfect example, I guess net income was up 75% where EPS was about 25%, still outstanding, but do you see the same kind of opportunity for growth with this acquisition or is it going to be more modest or tempered or is it still, granted, near term maybe two or three cents or whatever, but long-term an cash flow wise?

Richard:  Yes, I am very excited about this deal.  What it does for us from especially a cash flow standpoint, what is occurring here is, I do not recall if Dan mentioned, but we are currently in the middle of a rate case with respect to this pipeline, it was filed sometime in late, late August and they requested a revenue base of about $4 million dollars more than what we have in the current base, and in our economics, we were very conservative in our economics and what have you and we still saw approximately sixty cents to a dollar in cash flow accretion and reasonably neutral short-term from the EPS standpoint with improved returns going forward.  We are hopeful that we are going to be able to settle this rate case soon and that would give us more flexibility in terms of what we do from a synergistic standpoint.

Donato Eassey:  Okay, good.  Lastly, but not least, you had mentioned another type defining of that and everybody is pretty well aware that East Tennessee is out there, what do you think your chances are for that significant of a defining of that, although I recognize this as pretty significant as well.

Dan:  Well, I think that there are a number of things out there on the market, Donato, obviously East Tennessee, Sea Robin and some of the KN properties.  You know, East Tennessee is a big

ENB 009857

chunk, there are a lot people looking at that, we are looking at it and we are looking at a number of the other El Paso assets and we have not given up on Canada yet, either, in fact, I gave a speech at the Canadian Institute about two weeks ago and just really still see a whole lot of opportunity up there, I think there is going to be a lot of mid stream assets that come to the market and the new grass roots projects as well. So, I think there can be any number of defining events as Richard put it that could lead to another offering, but, if we issue equity, it will be an event driven deal.

Donato Eassey:  Well, congratulations and good luck, thank you.

Dan:  Thank you Donato.

Will Mays:  Congratulations again, Donato covered most of my questions, but I was just wondering if you could tell us what kind of excess capacity you have on the pipe if there is any?

Dan:  There is not a lot of existing excess capacity, Will, there are some fairly simplistic things that can be done to increase the capacity however, add a compression, some strategic looping that could go on and I believe that probably is going to be a necessity for that here in the next few years. The Kansas City area in particular has got a lot of opportunity for growth, so, minor expenditures to get us some increased capacity and potentially even some expenditures on the upstream side to attach some better sources of supply which we kind of believe that part of the business has been neglected to date. In fact, I think that frankly, they have not worked either the market side or the supply side of this pipeline terribly hard, so we sure think there are a lot of opportunities for expansion for us.

Will Mays:  Great. I was just wondering what do you think the financial structure of the pipeline will look at once you have paid down the existing debt and that could be numbered?

Richard:  The financial structure in terms of our debt cap or?

Will Mays:  Yea, just on the pipeline itself?

Richard:  On the pipeline itself, all the debt is going to be carried at the parent level, and then obviously for rate case purposes they will assume a normalized debt to equity type of ratio, as they normally do in rate case scenarios. One of the reasons that we paid off the debt and incurred the prepayment

ENB 009858

was one, we have fairly significant interest arbitrage there, those notes we being paid at 9.64% and we also obviously had some enticing from our bank group from a collateral standpoint, they appreciated the fact that we took that senior note out so that they would have some more collateral there.

Will Mays: Well, thanks very much and congratulations again.

Karl Kirst: Good morning everybody and congratulations as well. Actually, I think Will took my last question, but just to confirm Richard on the $24 million dollars of EBITDA synergies, are those synergies purely cost savings, do you have any revenue enhancements associated with it and is that $24 million just on the pipeline, or does that include the marketing on it as well?

Richard: We have no new revenue enhancements in our economics, we wanted to be as conservative as possible, so that $24 million is just based on base operations as it exists today and the upside is not factored in there. Those costs are very simple, straight forward costs Midcoast is going to save from a personnel stand point and gas control and accounting and from an operation standpoint. It is very simple to predict what those are going to be. They are not pie in the sky numbers so, I assume that answers your question?

Karl Kirst: Yes, and just as far as whether or not it actually includes the marketing element?

Richard: No, that is something we see as pure upside. That is something that the Kansas Pipeline actually did a lot more of in early years. If you look at their historical results, they had a lot higher revenue number as opposed to what they have today and that is a factor of them defocusing on marketing, they got out of that business to a large extent and that is something that we see a lot of upside in. We think we have a good marketing group and we can derive some more income from that area of operations.

Dan: Particularly Richard, with regard to us having I think much better upstream connections then Kansas Pipeline historically had with our Anadarko system or other gathering systems tied to that end, we think that is going to help the marketing group quite a bit.

Richard: That's true.

ENB 009859

**Karl Kirst:** Is that pipe running full year round or is it primarily heating sensitive or can you give me...?

**Dan:** It is for the most part seasonal, yes. We have got a lot of residential use that picks up in Kansas City and the Wichita area in the winter time certainly, but there is a large commercial load as well, but in the summer time and shoulder months, certainly, there is a lot of spare capacity out there, because it is fairly sensitive to weather. However, of course 160 million a day is fully subscribed ten year contracts.

**Karl Kirst:** Okay, but we do have IT potential kind of in the spring and summer months?

**Dan:** Absolutely.

**Karl Kirst:** Great, thank you.

**Dan:** You bet, thank you Karl.

**Carol Coale:** Hi, good morning, actually my question have all been answered too, but I do have a couple of specific things you can clarify for me. First of all, I am sorry if I missed it, did you give us a revenue number? You talked about 98% of the revenues being under long-term contracts, but I did not actually hear a revenue number and then secondly, just to clarify also are these earnings of the EBITDA is all of that coming from the regulated pipeline at this point, so you are saying that above and beyond the $24 million is all unregulated earnings potentials in the marketing company? Please clarify those two points.

**Richard:** The revenue stream currently is approximately $30.7 million and if you could repeat your second question please.

**Carol Coale:** How much of that is regulated? All of it?

**Richard:** All of it is regulated, yes.

**Carol Coale:** Thank you.

**Dan:** Thank you Carol.

**Bill Hyler:** Good morning, Dan, Richard. It looks like the free cash flow of the system and existing free cash flow at Midcoast suggests you can carry a fair amount of debt leverage for awhile, depending on market conditions, interest rates and

ENB 009860

whether it makes sense to issue equity. First question, Richard, could you give us an update on where your maintenance capital is on the acquired system, best estimates and on the entire company?

Richard: Okay Bill, that is one of the very good things about this particular pipeline, it is a fairly simple pipeline from an operations and maintenance standpoint. Historically, they have spent between five and seven hundred thousand dollars on maintenance capital and when you combine that with what we expect to be our maintenance capital of approximately $2 million, we are still looking at less than $3 million dollars in maintenance capital for the entire company.

Bill Hyler: Right, and I think the proforma cash flow projections that you are kind of comfortable with is in the $35 to 40 million next year? Does that sound about right?

Richard: That is the range.

Bill Hyler: A second question, Dan you talked a little bit about the growth potential in the Kansas City market, Kansas market switch from coal to gas fire generation; the pipeline right now I believe is at full capacity, I guess is it contracted out, is there excess capacity and what would it take for you to increase the capacity of the system, new compression, if you could give us some parameters there?

Dan: Yes, if you look at both ends of the pipe Bill, the upstream side, there is a lot of excess capacity on the upstream side. There is some fairly significant pipe that goes out toward the Hugoton Basin as well as down toward Oklahoma that the upstream part of the pipe is not really fully physically up to capacity.

We are fully subscribed on the downstream side on the market end in the Kansas City and Wichita areas except for as, I think Carl asked, we have got shoulder months and IT opportunities to increase there. In terms of the Kansas City market which is where we see probably the biggest chance for increase, either increased market share of just the market by virtue of its own 4% or so growth annually, it is picking up additional loads there. We can pick up some incremental volume relatively cheaply with just additional compression on the down stream side of the system, if we wanted to pick up significant market share and maybe increase something to the tune of 40 or 50 million cubic feet a day, we would probably have some

ENB 009861

significant looping expenditures, but of course, they would all be associated with long-term contracts and we think that is a very good potential given who the customers are up there.

The Wichita area and I mentioned the electrical generating potential, there are four or five gas fired generating facility in Central and Eastern Kansas that currently today are not producing a lot of electricity, because there just has not been the deregulation side has not hit the Kansas State Legislature yet, so, we think there is some potential to tie in a number of those plants and those are sort of mid way up the pipeline and sort of on the upstream side, so there is additional capacity already built in there. With some minor expenditures, we believe we can certainly service those power plants and as I said, I think we have got additional capacity on the gathering side that could help load the pipe as well. So there is a lot of room for expansion without a whole lot of big capital expenditures.

Bill Hyler: Dan, I want to follow-up, has there been announced gas fire generation that has been planned by other companies that you could elude to now, or is it just based on expectations in the future?

Dan: Well actually, we have not heard any new announcements, basically you have already got a lot of gas fired generation up there that is not in use, simply due to the fact that there hasn't deregulation, an order I can't think of the number of the order right now, just has not been acted upon by the Kansas Legislature, so there is actually gas fired generation that is idle today that we anticipate will be needing to have additional gas supplies over the next couple of years.

Bill Hyler: Right and the only other major player bringing in gas to the market is it Williams?

Dan: That is Williams into th Kansas City area, the Pan Handle has a very minor connection to the south side, but only Williams and Kansas pipeline ourselves, have got connections throughout the entire Kansas City market. There are a number of players in the Wichita area, but the Kansas City market is far and away the biggest chunk of our revenues and cash flow and we have a good share of that.

Bill Hyler: Okay. Dan and Richard, thanks a lot.

Dan: Thank you Bill.

ENB 009862

Stanley Bartels:   Yes, Dan, congratulations and welcome back.

Dan:   Thank you.

Stanley Bartels:   The gross sales addition you expect from this acquisition, I do not believe was given, the cash flow number was given, how much will that increase our sales.

Dan:   Well, actually Stanley, the sales number is about what Richard talked about, somewhere in the neighborhood of you know, $30 to $35 million dollars or $35 to $40 million.   Basically that is the functional rate base now assigned to the pipeline. The new filed for rate base is $34.5 million and that is all basically transportation revenues, the top line number is not very significant most of that sinks directly to the bottom line. The marketing side of it is not terribly significant either.   I do not imagine, depending upon how far we take that and how much emphasis we put on the marketing side, I do not think Richard that number is over about $10 or $12 million dollars, is it?

Richard:   It has the potential of being a lot more than that depending on how successful we are at penetrating that market.

Dan:   Agreed, we could have a significant increase in revenues if we are successful, I think today however, it is somewhere in the neighborhood into $12 million.

Richard:   That is about right.

Dan:   Not a big revenue number Stanley, but certainly the bottom line is very significant to our current operations.

Stanley Bartels:   Thank you, that is all I have.

Dan:   Thank you Stanley.

If there are no further questions, I will turn the conference back to Duane Herbst to conclude.

This is Dan Toucher and I want to thank you all for calling in, any other questions, certainly direct them to Duane Herbst, I believe all of you have talked to him and know him, we appreciate your attention and thanks for your support.

ENB 009863

Ladies and gentleman, that concludes our conference for today.
Thank you all for participating and have a nice day. All
parties may disconnect now.

ENB 009864

This copy contains all conversation on the tape.

ENB 009865

This is the edited version cutting out the operator.

ENB 009866

December 16, 1999

Midcoast Energy
Attention: Donna

Dear Donna:


Due to the possibility of misspelled names, a disk has been
provided for editing. It is saved under Midcoast Energy
Resources Conference call, in Microsoft Word 97/My Documents.

Should you need any assistance, please call.

Should you need further transcription, please call, I have
enclosed my business card for your convenience.

Thanks for calling our services.

Sincerely,



Lori A. Rutkoski
President-Transcribers of Houston




ENB 009867



D 4 2 3 9 2 8

**24225 / 0005**
Midcoast Energy Resources/Kansas Pipeline Company
Section 4 Rate Case

Folder: **UU 11-001-4**

KPC/SECTION 4 - KCC DISCOVERY DISPUTE REGARDING MIDCOAST DOCUMENTS ON KPC PURCHA

Insert: **1**

DOCUMENT INDEX

ENB 009868

Document: **2**    Date:  09/08/2000

09/08/00 - CONFIDENTIAL SUBJECT TO PROTECTIVE ORDER:  ORAL DEPOSITION OF DAN TUTCHER

Enbridge Energy Company, Inc.
1100 Louisiana Suite 3300
Houston, Texas 77002
www.enbridge-us.com

**ENBRIDGE**™

January 3, 2003

D803-0008

Internal Revenue Service
LM: PFTG:OTSA
Large & Mid-Size Business Division
1111 Constitution Ave., N.W.
Washington, DC 20224

2201-16

Re:    Disclosure Statement for Reportable Transaction Pursuant to Temporary
       Regulation §1.6011-4T(c)
ENBRIDGE Midcoast Energy Resources, Inc. & Subs
       EIN # 76-0378638

Ladies and Gentlemen:

The enclosed disclosure statement is being provided pursuant to Temporary Regulation
§1.6011-4T(c) for the above referenced taxpayer.  The transaction necessitating the
disclosure was only recently identified.  Accordingly, Form 1120X has been filed to
include the disclosure statement.  Please contact me if you have any questions at (713)
821-2129.

Respectfully yours,

Jana Jordan
U.S. Tax Services-Manager

Enclosure

G:\Taxation\Admin\T-Letters\T Letters\Midcoast Energy Resources, Inc. & Subs-Disclosure.doc

A.3.2

GOVERNMENT
EXHIBIT
62

DOJ017622

**Midcoast Energy Resources, Inc. & Subsidiaries**
**EIN: 76-0378638**
**12/31/2000**

**Disclosure Statement for Reportable Transaction Pursuant to**
**Temporary Regulation § 1.6011-4T(c)**

**Note:** The transaction described herein was entered into in 1999 by Midcoast Energy Resources, Inc. ("Midcoast"), a corporation not then owned by Enbridge Energy Company, Inc. ("Enbridge"). On May 11, 2001, Enbridge acquired Midcoast, and Midcoast joined with Enbridge in the filing of a consolidated return. After acquiring Midcoast, Enbridge renamed the company "Enbridge Midcoast Energy, Inc.".

1. Identification of transaction: Kansas Pipeline Acquisition. Transaction may be viewed by IRS as similar to "mid-co" transaction described in IRS Notice 2001-16.

2. Registration status under Section 6111: Unknown.

3. Description of transaction: In November 1999, Midcoast Energy Resources, Inc. ("Midcoast") purchased assets, including 100% of the capital interest and profits in Kansas Pipeline Company, a Kansas limited partnership, through Midcoast's subsidiaries, Midcoast Kansas Pipeline, Inc. and Midcoast Kansas General Partner, Inc., for approximately $195 million in cash. Midcoast purchased the assets from an entity that had recently acquired the assets from the former owner. The partnership's Section 754 election resulted in a step-up with respect to Midcoast's subsidiary corporate partners of the partnership's tax basis in its assets to the purchase price for the partnership interests.

4. Tax benefits: Increased depreciation deductions from the partnership's depreciable assets resulting from a step-up in their tax basis, which are allocated to the corporate partners, subsidiaries of Midcoast.

5. If the consolidated group in which Midcoast is a member has sufficient taxable income to utilize the deductions, estimates of the expected reduction of Federal income tax liability at 35% for affected taxable years would be as much as: $0.6 million in 1999; $6.1 million in 2000; $4.8 million in 2001, $3.8 million in 2002; $3.0 million in 2003; $2.5 million in 2004; $2.8 million in 2005; $3.5 million in 2006, $3.3 million per year in 2007-2008; $2.8 million per year in 2009-2010; $2.9 million in 2011; $3.1 million in 2012; $3.2 million in 2013; and $2.8 million in 2014.

6. PricewaterhouseCoopers Houston office was Midcoast's tax advisors for a number of years. We believe PricewaterhouseCoopers to be the promoter, but are not certain, as the primary PricewaterhouseCoopers counsel from their Washington national office advising Midcoast on the transaction is unavailable due to his current government position. The address for PricewaterhouseCoopers' Houston office is provided:

PricewaterhouseCoopers
1201 Louisiana St.
Suite 2900
Houston, Texas 77002
(713) 356-4000

DOJ017623

September 30, 1999

Mr. Dennis Langley
335 North Washington, Suite 130
Hutchinson, KS  67501

        Re:    Letter of Intent

Dear Dennis.

        This letter sets forth the intentions of the parties concerning a proposed transaction whereby K-Pipe Holdings Partners, L.P., a Delaware limited partnership ("Buyer") would purchase (the "Transaction") all of the stock (the "Stock") of The Bishop Group, Ltd , a Kansas corporation (the "Company") from Dennis Langley ("Seller"). all as may be mutually agreed upon by the parties under a definitive agreement covering the Transaction

        By executing this letter, Buyer and Seller confirm their intentions specified herein with respect to the Transaction, but, except for the provisions of paragraph 5 hereof which is intended to be legally binding and enforceable and which shall survive the termination of this letter of intent, this letter is not intended to constitute a contract nor an offer to enter into a contract, nor to be binding upon either of the parties or create any legal obligations or rights.

        This letter of intent supersedes and replaces all prior offers and negotiations between the Buyer and Seller.  It is the intention of Buyer and Seller to proceed with the proposed Transaction as follows:

1        Seller shall sell the Stock to Buyer for a purchase price equal to approximately $188,312,800, less certain debt of the Company and its Subsidiaries to be assumed by Buyer, provided however no deduction from the purchase price will result if said debt is called early other than a post-closing refund will be made by Seller to Buyer of Buyer's prepayment or assumption fees of up to but not exceeding $1,100,000. Prior to the consummation of the Transaction, certain assets of the Company and Company's subsidiaries and affiliates (which assets are not necessary to Company's core pipeline business) shall be distributed to Seller in a partial redemption of Seller's shares in the Company  This distribution is not expected to create a material tax liability to the company.

2        In addition, certain other agreements will be negotiated and executed including agreements for the following.

        A    A perpetual Net Revenue Interest equal to fifty percent (50%) of the annual revenues (after deductions for cost of gas sold and third party transportation costs) realized from the operation of the assets of Kansas Pipeline Company and



GOVERNMENT
EXHIBIT
65

PENGAD-Bayonne, N. J.

000442

ENB-DOJ-000938

MarGasCo Partnership in excess of twenty-nine million five hundred thousand dollars ($29,500,000) per calendar year, commencing as of the effective time of such sale by Seller to Buyer and secured by a first priority lien against said revenues;

B     A Quitclaim from Kansas Pipeline Company to Dennis M. Langley or his designee as to certain non-natural gas pipeline use, free and clear of any liens from Kansas Pipeline's lienholders, and a License Agreement between Kansas Pipeline Company, ("Licensor") and Dennis M. Langley or his designee, ("Licensee"), as to use of currently existing rights-of-way of Kansas Pipeline Company for the transportation of natural gas subject to the following

   i     The License is granted to the extent and only to the extent that (x) Licensor has the right to grant such license pursuant to such rights-of-way and (y) the rights-of-way provide for additional multiple pipelines,

   ii     Licensee, unless permitted to do so under a Project Development Agreement to be executed, is prohibited from the transporting of natural gas or other substances through any pipeline now or hereafter located within said rights-of-way which will be, directly or indirectly, sold or delivered to customers of the Kansas Pipeline Company or MarGasCo Partnership along the route of the pipeline of Kansas Pipeline Company as it now exists and may hereafter be expanded; and

   iii     The contract rights in a Project Development Agreement of Dennis M Langley, or his designee, for the joint development of natural gas projects involving expansion of the pipeline of Kansas Pipeline Company and certain other energy related projects, currently being negotiated between Buyer and Dennis M. Langley

3.     The purchase price will be paid at Closing, with a post-Closing true up of certain items of debt, payables and receivables as of Closing Closing and the distribution of the consideration to the parties hereto is anticipated to occur on or about October 28,1999.

4     The consummation of the Transaction shall be contingent, among other things, on the negotiation, execution and delivery of the definitive agreements and on the completion by Buyer and Seller of a satisfactory review of the financial and legal aspects of the business, properties, assets and liabilities of the Company (in the case of Buyer) and Buyer (in the case of Seller) and of this Transaction (the "Businessman's Audits"). In connection with the Businessman's Audits, Seller and Buyer each agree to provide the other full access and opportunity to examine the

000443

ENB-DOJ-000939

books, records, contracts, and other documentation relating to the assets and properties of the Company and Buyer, as appropriate.

5       Neither party will make any public disclosure or publicity release pertaining to the existence of this letter of intent or of the subject matter contained herein without having first obtained the written consent of the other party.

6.      As soon as possible hereafter, Buyer and Seller shall commence in good faith the preparation and negotiation of the definitive agreements governing the Transaction described in this letter which will contain the detailed terms and conditions of the Transaction as well as such representations and warranties, covenants, conditions precedent, indemnities and other provisions as may be mutually agreed upon by the parties. Seller and Buyer shall promptly file the necessary documentation and applications for any necessary approvals

If the above correctly sets forth your understanding of our intentions with respect to the Transaction, please so indicate by executing the enclosed copy of this letter in the space provided below and returning it to the undersigned not later than 10:00 p m. central time on September 30, 1999. After this time, this letter, if not executed and returned, shall cease to be of any force or effect. Either party may terminate this agreement at any time prior to the execution of the definitive agreements without liability.

Very truly yours,

**K-Pipe Holdings Partners, L.P.,**
a Delaware limited partnership

By.     **Signal Capital Associates, L. P.,** a Delaware limited partnership, the general partner of K- Pipe Holdings Partners, L.P.

By.     **Jeff Furman,** its general partner

By:     _____

        Jeff Furman

ACCEPTED AND APPROVED this
_30th_ day of _September_, 1999

_Dennis M. Langley_
Dennis M. Langley

452205 2                                3

000444

ENB-DOJ-000940

# K-Pipe Holdings Partners, L.P.

books, records, contracts, and other documentation relating to the assets and properties of the Company and Buyer, as appropriate.

5.        Neither party will make any public disclosure or publicity release pertaining to the existence of this letter of intent or of the subject matter contained herein without having first obtained the written consent of the other party.

6.        As soon as possible hereafter, Buyer and Seller shall commence in good faith the preparation and negotiation of the definitive agreements governing the Transaction described in this letter which will contain the detailed terms and conditions of the Transaction as well as such representations and warranties, covenants, conditions precedent, indemnities and other provisions as may be mutually agreed upon by the parties. Seller and Buyer shall promptly file the necessary documentation and applications for any necessary approvals.

If the above correctly sets forth your understanding of our intentions with respect to the Transaction, please so indicate by executing the enclosed copy of this letter in the space provided below and returning it to the undersigned not later than 10:00 p.m. central time on September 30, 1999. After this time, this letter, if not executed and returned, shall cease to be of any force or effect. Either party may terminate this agreement at any time prior to the execution of the definitive agreements without liability.

Very truly yours,

**K-Pipe Holdings Partners, L.P.,**
a Delaware limited partnership

By:   **Signal Capital Associates, L. P., a**
Delaware limited partnership, the
general partner of K- Pipe
Holdings Partners, L.P.

By:   **Jeff Furman, its general partner**

By:   _____

Jeff Furman

ACCEPTED AND APPROVED this
30th day of September, 1999

Dennis M. Langley
Dennis M. Langley

452206.2                                3

000445

ENB-DOJ-000941

September 30, 1999


Midcoast Energy Resources, Inc.
1100 Louisiana, 29th Floor
Houston, TX 77002

Attn:   Mr. Dan Tutcher
        President and CEO

Dear Sir:

        This letter sets forth the intentions of Midcoast Energy Resources, Inc. and K-Pipe Holdings Partners, L.P. concerning a proposed transaction (the "Transaction") whereby two (2) wholly-owned subsidiaries (existing or to be hereafter formed) of Midcoast Energy Resources, Inc. (collectively, "Buyer") would purchase from K-Pipe Holdings Partners, L.P. ("Seller") the following (the "Assets"): (i) Bishop Pipeline Company's partnership interest in Kansas Pipeline Company, MarGasCo Partnership, Mid-Kansas Partnership, and Riverside Pipeline Company L.P. (such partnerships referred to collectively as the "Companies"); (ii) Synergy Pipeline Company's partnership interest in Kansas Pipeline Company, MarGasCo Partnership and Mid-Kansas Partnership ; (iii) all files, books, records and the data necessary or appropriate for the continued operation of the businesses of the Companies; (iv) all transferable approvals, authorizations, consents, licenses, orders and other permits associated or connected to the operation of the businesses of the Companies; and (vi) option rights to purchase the Butcher Interests; all as may be mutually agreed upon by the parties under a definitive agreement covering the Transaction.

        By executing this letter, Buyer and Seller confirm their intentions specified herein with respect to the Transaction; however, except for the provisions of paragraph 4 hereof which is intended to be legally binding and enforceable and which shall survive the termination of this letter of intent, this letter of intent is not intended to constitute a contract or an offer to enter into a contract, nor to be binding upon either of the parties or create any legal obligations or rights between the parties.

        This letter of intent supersedes and replaces all prior offers and negotiations between Buyer (or Midcoast Energy Resources, Inc. on behalf of Buyer) and Seller. It is the intention of Buyer and Seller to proceed with the proposed Transaction as follows:

1.      Seller shall sell the Assets to Buyer for a purchase price (the "Purchase Price") of either (a) $187,868,000.00 cash (with the $10,000,000.00 sinking fund restricted cash reserve as a part of the Assets), less all debt to be assumed by Buyer pertaining to the Assets , but expressly excluding

1

GOVERNMENT
EXHIBIT
66
PENGAD-Bayonne, N.J.

MID 2.1-3

ENB-DOJ-000942

severance obligations of the Companies and other liabilities identified in the definitive purchase agreement (the "Assumed Debt") or (b) $182,068,000.00, free of all debt (without the $10,000,000.00 sinking fund restricted cash reserve as a part of the Assets), including all charges, liens, security interests or other similar encumbrances, save and except (i) liens and security interests securing the Assumed Debt, if applicable, and (ii) the following contract rights and interests (as will be more specifically identified in the definitive purchase agreement), together with the security interests retained to secure such contracts rights and interests, which are to be executed between Dennis M. Langley and Kansas Pipeline Company or MarGasCo Partnership, as applicable, prior to the sale of the stock of The Bishop Group, Ltd., a Kansas corporation, to Seller, which contract obligations of Kansas Pipeline Company or MarGasCo Partnership, as applicable, are to be assumed by Buyer (collectively, the "Assumed Obligations"):

a.  A perpetual Net Revenue Interest equal to fifty percent (50%) of the annual revenues (after deductions for cost of gas sold and third party transportation costs) realized from the operation of the assets of Kansas Pipeline Company and MarGasCo Partnership in excess of twenty-nine million five hundred thousand dollars ($29,500,000) per calendar year, commencing as of the effective time of such sale by Dennis M. Langley to Seller;

b.  A Quitclaim from Kansas Pipeline Company to Dennis M. Langley or his designee and a License Agreement between Kansas Pipeline Company, ("Licensor") and Dennis M. Langley or his designee, ("Licensee"), as to use of currently existing rights-of-way of Kansas Pipeline Company for telecommunications and for transportation of natural gas, respectively, subject to the following:

   i.   the License is granted to the extent and only to the extent that (x) Licensor has the right to grant such license pursuant to such rights-of-way and (y) the rights-of-way provide for additional multiple pipelines;

   ii.  Licensee is prohibited from the transporting of natural gas or other substances through any pipeline now or hereafter located within said rights-of-way which will be, directly or indirectly, sold or delivered to customers of the Kansas Pipeline Company or MarGasCo Partnership along the route of the pipeline of Kansas Pipeline Company as it now exists and may hereafter be expanded; and

2

MTD 2 1-4

ENB-DOJ-000943

c.    The contract rights of Dennis M. Langley, or his designee, for the joint development of natural gas projects involving expansion of the pipeline of Kansas Pipeline Company and certain other energy related projects, currently being negotiated between Seller and Dennis M. Langley.

2.    The purchase price will be paid at closing, with a post-closing true up of items of debt, payables and receivable as of the closing date. Closing is anticipated to occur on or about October 30, 1999. The effective time of the transaction will be September 30, 1999.

3.    The option for the Butcher Interests shall be exercisable by Buyer at any time on or before the expiration of three years from the closing by payment of the sum of six million five hundred thousand dollars ($6,500,000) cash to Seller.

4.    The consummation of the Transaction shall be contingent, among other things, on the negotiation, execution and delivery of the definitive agreement and on the completion by Buyer of a satisfactory review of the financial and legal aspects of the business, properties, assets and liabilities pertaining to the Transaction and Buyer's acceptance of the final terms and provisions of the Assumed Obligations which are currently being negotiated between Seller and Dennis M. Langley. Seller agrees to provide Buyer and it's representatives full access and opportunity to examine the books, records, contracts and other documentation relating to the Assets.

5.    Seller and Buyer agree to keep this letter strictly confidential and will not disclose its provisions to any third party without the other party's consent, except for disclosure to the parties, directors, officers, attorneys, accountants and financial advisers on a "need to know" basis, and neither party will make any public disclosure or publicity release pertaining to the existence of this letter of intent or of the subject matter contained herein without having first obtained the written consent of the other party. The confidentiality letter executed by the parties is incorporated herein and made a part hereof.

6.    Immediately hereafter, Buyer and Seller shall commence in good faith the negotiation and preparation of the definitive agreement governing the Transaction, including the detailed terms and conditions of the Transaction, as well as such representations and warranties, covenants, conditions precedent, indemnities and other provisions as are normal for a transaction of this nature. Seller and Buyer shall promptly file the necessary documentation and applications for approval under the federal Hart Scott Rodino Act, with Buyer paying all such filing fees.

3

MID 2.1-5

ENB-DOJ-000944

7.  Each party will be solely responsible for its own costs in connection with the Transaction including, without limitation, legal and accounting costs; provided, however, that in the event that Buyer fails to execute a definitive agreement, Buyer shall pay Seller a breakup fee of $20,000.00, as Buyer's sole obligation hereunder to Seller.

8.  Seller shall assign to Buyer all of Seller's or its affiliates' rights pursuant to the representations, warranties, covenants, indemnities and guarantees received by Seller upon its acquisition of the stock of Bishop Group Ltd.

9.  Seller covenants not to negotiate or communicate with any other potential purchasers of the Assets for a period of 45 days from the date hereof.

If the above correctly sets forth your understanding of the intentions of both parties with respect to the Transaction, please so indicate by executing the enclosed copy of this letter in the space provided below and returning it to the undersigned not later than 9:00 a.m. central time on October 1, 1999. Either party may terminate this agreement at any time prior to the execution of the definitive agreements without liability.

Very truly yours,

K-Pipe Holdings Partners, L.P.,
a Delaware limited partnership

By:  Signal Capital Associates, L.P.,
     a Delaware limited partnership,
     the general partner of
     K-Pipe Holdings Partners, L.P.

By:  Jeff Furman,
     its general partner

By:  _____
     Jeff Furman

ACCEPTED AND AGREED TO this
_1_ day of _October_, 1999

Midcoast Energy Resources, Inc.

By: _____
    Dan Tutcher, President and
    Chief Executive Officer

4

MID 2.1-6

ENB-DOJ-000945

# Form 1065

Department of the Treasury
Internal Revenue Service

## U.S. Partnership Return of Income

For calendar year 1999, or tax year beginning _____, 1999, and ending _____, _____

▶ See separate instructions.

OMB No. 1545-0099

## 1999

**A** Principal business activity
**GAS TRANS.**

**B** Principal product or service
**GAS TRANS.**

**C** Business code number
**486000**

Name of partnership
**BUTCHER INTEREST PARTNERSHIP**

Number, street, and room or suite no. If a P.O. box, see page 12 of the instructions.
**8325 LENEXA DR., SUITE 400**

City or town, state, and ZIP code
**LENEXA**    **KS**    **66214**

**D** Employer identification number
**76-0622250**

**E** Date business started
**11/08/1999**

**F** Total assets (see page 12 of the instructions)
$ **6,605,544.**

**G** Check applicable boxes: (1) [X] Initial return (2) [ ] Final return (3) [ ] Change in address (4) [ ] Amended return

**H** Check accounting method: (1) [ ] Cash (2) [X] Accrual (3) [ ] Other (specify) ▶

**I** Number of Schedules K-1. Attach one for each person who was a partner at any time during the tax year ▶ **2**

Caution: Include only trade or business income and expenses on lines 1a through 22 below. See the instructions for more information.

| | Income | | | |
|---|---|---|---|---|
| 1 a | Gross receipts or sales | 1a | 68,355. | |
| b | Less returns and allowances | 1b | | |
| c | | | | 1c  68,355. |
| 2 | Cost of goods sold (Schedule A, line 8) | | | 2 |
| 3 | Gross profit. Subtract line 2 from line 1c | | | 3  68,355. |
| 4 | Ordinary income (loss) from other partnerships, estates, and trusts (attach schedule) | | | 4 |
| 5 | Net farm profit (loss) (attach Schedule F (Form 1040)) | | | 5 |
| 6 | Net gain (loss) from Form 4797, Part II, line 18 | | | 6 |
| 7 | Other income (loss) (attach schedule) | | | 7 |
| 8 | Total income (loss). Combine lines 3 through 7 | | | 8  68,355. |

This is your
**FILE COPY**
Preserve it for
future reference

PricewaterhouseCoopers L.L.P.
Certified Public Accountants
Houston, Texas

| | Deductions (see page 11 of the instructions for limitations) | | | |
|---|---|---|---|---|
| 9 | Salaries and wages (other than to partners) (less employment credits) | | 9 | |
| 10 | Guaranteed payments to partners | | 10 | |
| 11 | Repairs and maintenance | | 11 | |
| 12 | Bad debts | | 12 | |
| 13 | Rent | | 13 | |
| 14 | Taxes and licenses | | 14 | |
| 15 | Interest | | 15 | 69,654. |
| 16 a | Depreciation (if required, attach Form 4562) | 16a | | |
| b | Less depreciation reported on Schedule A and elsewhere on return | 16b | | 16c |
| 17 | Depletion (Do not deduct oil and gas depletion) | | 17 | |
| 18 | Retirement plans, etc. | | 18 | |
| 19 | Employee benefit programs | | 19 | |
| 20 | Other deductions (attach schedule)   SEE STATEMENT 1. | | 20 | 69,167. |
| 21 | Total deductions. Add the amounts shown in the far right column for lines 9 through 20 | | 21 | 138,821. |
| 22 | Ordinary income (loss) from trade or business activities. Subtract line 21 from line 8 | | 22 | -70,466. |

**Please Sign Here**

Under penalties of perjury, I declare that I have examined this return, including accompanying schedules and statements, and to the best of my knowledge and belief, it is true, correct, and complete. Declaration of preparer (other than general partner or limited liability company member) is based on all information of which preparer has any knowledge.

Signature of general partner or limited liability company member    Date ▶ **7/21/00**

**Paid Preparer's Use Only**

| Preparer's signature | Date 7/20/00 | Check if self-employed ▶ [ ] | Preparer's SSN or PTIN 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 |
|---|---|---|---|

Firm's name (or yours if self-employed) and address
**PRICEWATERHOUSECOOPERS LLP**
**1201 LOUISIANA, SUITE 2900**
**HOUSTON, TX**

EIN ▶ **13-4008324**
ZIP code ▶ **77002**

For Paperwork Reduction Act Notice, see separate instructions.

Form **1065** (1999)

JSA
9P1010 2.000

GOVERNMENT EXHIBIT G-67

MID 6-211

| **Schedule A** | Cost of Goods Sold (see page 17 of the instructions) | | |
|---|---|---|---|

| | | | |
|---|---|---|---|
| 1 | Inventory at beginning of year | 1 | |
| 2 | Purchases less cost of items withdrawn for personal use | 2 | |
| 3 | Cost of labor | 3 | |
| 4 | Additional section 263A costs *(attach schedule)* | 4 | |
| 5 | Other costs *(attach schedule)* | 5 | |
| 6 | **Total.** Add lines 1 through 5 | 6 | |
| 7 | Inventory at end of year | 7 | |
| 8 | **Cost of goods sold.** Subtract line 7 from line 6. Enter here and on page 1, line 2 | 8 | |

9 a Check all methods used for valuing closing inventory:

   (I) ☐ Cost as described in Regulations section 1.471-3

   (ii) ☐ Lower of cost or market as described in Regulations section 1.471-4

   (iii) ☐ Other (specify method used and attach explanation) ▶

b Check this box if there was a writedown of "subnormal" goods as described in Regulations section 1.471-2(c) ▶ ☐

c Check this box if the LIFO inventory method was adopted this tax year for any goods *(if checked, attach Form 970)* ▶ ☐

d Do the rules of section 263A (for property produced or acquired for resale) apply to the partnership?  ☐ Yes ☐ No

e Was there any change in determining quantities, cost, or valuations between opening and closing inventory?  ☐ Yes ☐ No

If "Yes," attach explanation.

| **Schedule B** | Other Information | | | |
|---|---|---|---|---|

| | | | Yes | No |
|---|---|---|---|---|
| 1 | What type of entity is filing this return? Check the applicable box: <br> a ☒ General partnership   b ☐ Limited partnership   c ☐ Limited liability company <br> d ☐ Limited liability partnership   e ☐ Other ▶ | | | |
| 2 | Are any partners in this partnership also partnerships? | | | X |
| 3 | Is this partnership a partner in another partnership? | | | X |
| 4 | Is this partnership subject to the consolidated audit procedures of sections 6221 through 6233? If "Yes," see **Designation of Tax Matters Partner** below | | | X |
| 5 | Does this partnership meet **ALL THREE** of the following requirements? | | | X |
| a | The partnership's total receipts for the tax year were less than $250,000; | | | |
| b | The partnership's total assets at the end of the tax year were less than $600,000; **AND** | | | |
| c | Schedules K-1 are filed with the return and furnished to the partners on or before the due date (including extensions) for the partnership return. <br> If "Yes," the partnership is not required to complete Schedules L, M-1, and M-2; Item F on page 1 of Form 1065; or Item J on Schedule K-1. | | | |
| 6 | Does this partnership have any foreign partners? | | | X |
| 7 | Is this partnership a publicly traded partnership as defined in section 469(k)(2)? | | | X |
| 8 | Has this partnership filed, or is it required to file, Form 8264, Application for Registration of a Tax Shelter? | | | X |
| 9 | At any time during calendar year 1999, did the partnership have an interest in or a signature or other authority over a financial account in a foreign country (such as a bank account, securities account, or other financial account)? See page 18 of the instructions for exceptions and filing requirements for Form TD F 90-22.1. If "Yes," enter the name of the foreign country. ▶ | | | X |
| 10 | During the tax year, did the partnership receive a distribution from, or was it the grantor of, or transferor to, a foreign trust? If "Yes," the partnership may have to file Form 3520. See page 18 of the instructions | | | X |
| 11 | Was there a distribution of property or a transfer (e.g., by sale or death) of a partnership interest during the tax year? If "Yes," you may elect to adjust the basis of the partnership's assets under section 754 by attaching the statement described under **Elections Made By the Partnership** on page 7 of the instructions | | X | |

**Designation of Tax Matters Partner** (see page 18 of the instructions)

Enter below the general partner designated as the tax matters partner (TMP) for the tax year of this return:

| | | | |
|---|---|---|---|
| Name of designated TMP ▶ | MID LOUISIANA GAS COMPANY | | |
| Address of designated TMP ▶ | 1100 LOUISIANA, SUITE 2900 <br> HOUSTON, TX 77002 | Identifying number of TMP ▶ | 76-0460300 |

Form **1065** (1999)

JSA
9P1020 2.000

HRV3CR   2021   07/13/2000 08:25:06

**MID 6-212**

ENB-KP-002945

| Schedule K | Partners' Shares of Income, Credits, Deductions, etc. | | |
|---|---|---|---|
| | **(a) Distributive share items** | | **(b) Total amount** |
| **Income (Loss)** | **1** Ordinary income (loss) from trade or business activities (page 1, line 22) . . . . . . . . . | 1 | -70,466. |
| | **2** Net income (loss) from rental real estate activities *(attach Form 8825)* . . . . . . . . . . . | 2 | |
| | **3a** Gross income from other rental activities . . . . . . . . . . | 3a | |
| | **b** Expenses from other rental activities *(attach schedule)* . . . . . | 3b | |
| | **c** Net income (loss) from other rental activities. Subtract line 3b from line 3a | 3c | |
| | **4** Portfolio income (loss): | | |
| | **a** Interest income . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . | 4a | |
| | **b** Ordinary dividends . . . . . . . . . . . . . . . . . . . . . . . . . . . | 4b | |
| | **c** Royalty income . . . . . . . . . . . . . . . . . . . . . . . . . . . . . | 4c | |
| | **d** Net short-term capital gain (loss) *(attach Schedule D (Form 1065))* . | 4d | |
| | **e** Net long-term capital gain (loss) *(attach Schedule D (Form 1065))*: | | |
| |    **(1)** 28% rate gain (loss) ▶ _____ **(2)** Total for year . . . . . . . . . . . . ▶ | 4e(2) | |
| | **f** Other portfolio income (loss) *(attach schedule)* . . . . . . . . . . | 4f | |
| | **5** Guaranteed payments to partners . . . . . . . . . . . . . . . . . . | 5 | |
| | **6** Net section 1231 gain (loss) (other than due to casualty or theft) *(attach Form 4797)* . . . | 6 | |
| | **7** Other income (loss) *(attach schedule)* . . . . . . . . . . . . . . . | 7 | |
| **Deductions** | **8** Charitable contributions *(attach schedule)* . . . . . . . . . . . | 8 | |
| | **9** Section 179 expense deduction *(attach Form 4562)* . . . . . . | 9 | |
| | **10** Deductions related to portfolio income (itemize) . . . . . . . . . . . . . . . . . . | 10 | |
| | **11** Other deductions *(attach schedule)* . . . . . . . . . . . . . . . | 11 | |
| **Credits** | **12a** Low-income housing credit: | | |
| |    **(1)** From partnerships to which section 42(j)(5) applies for property placed in service before 1990 | 12a(1) | |
| |    **(2)** Other than on line 12a(1) for property placed in service before 1990 . . . . . . . . . | 12a(2) | |
| |    **(3)** From partnerships to which section 42(j)(5) applies for property placed in service after 1989 | 12a(3) | |
| |    **(4)** Other than on line 12a(3) for property placed in service after 1989 . . . . . . . . . | 12a(4) | |
| | **b** Qualified rehabilitation expenditures related to rental real estate activities *(attach Form 3468)* | 12b | |
| | **c** Credits (other than credits shown on lines 12a and 12b) related to rental real estate activities . . . . | 12c | |
| | **d** Credits related to other rental activities | 12d | |
| | **13** Other credits . . . . . . . . . . . . . . . . . . . . . . . . . . . . . | 13 | |
| **Invest-ment Interest** | **14a** Interest expense on investment debts . . . . . . . . . . . . . | 14a | |
| | **b (1)** Investment income included on lines 4a, 4b, 4c, and 4f above . . . . . . . . . . . | 14b(1) | |
| |    **(2)** Investment expenses included on line 10 above . . . . . . . . . . . . . . . . . | 14b(2) | |
| **Self-Employ-ment** | **15a** Net earnings (loss) from self-employment . . . . . . . . . . | 15a | |
| | **b** Gross farming or fishing income . . . . . . . . . . . . . . . . . . . | 15b | |
| | **c** Gross nonfarm income . . . . . . . . . . . . . . . . . . . . . . . . | 15c | |
| **Adjustments and Tax Preference Items** | **16a** Depreciation adjustment on property placed in service after 1986 | 16a | |
| | **b** Adjusted gain or loss . . . . . . . . . . . . . . . . . . . . . . . . | 16b | |
| | **c** Depletion (other than oil and gas) . . . . . . . . . . . . . . . . | 16c | |
| | **d (1)** Gross income from oil, gas, and geothermal properties . . . . . . . . . . . | 16d(1) | |
| |    **(2)** Deductions allocable to oil, gas, and geothermal properties . . . . . . . . . | 16d(2) | |
| | **e** Other adjustments and tax preference items *(attach schedule)* . . . . . . . . . . . . | 16e | |
| **Foreign Taxes** | **17a** Type of income ▶ _____ | | |
| | **b** Name of foreign country or U.S. possession ▶ _____ | | |
| | **c** Total gross income from sources outside the United States *(attach schedule)* . . . . . . . . | 17c | |
| | **d** Total applicable deductions and losses *(attach schedule)* . . . . . . . . . . . . | 17d | |
| | **e** Total foreign taxes (check one): ▶ ☐ Paid ☐ Accrued . . . . . . . . | 17e | |
| | **f** Reduction in taxes available for credit *(attach schedule)* . . . . . . . . . . . | 17f | |
| | **g** Other foreign tax information *(attach schedule)* . . . . . . . . . . . . . . . | 17g | |
| **Other** | **18** Section 59(e)(2) expenditures: a Type ▶ _____ **b** Amount ▶ | 18b | |
| | **19** Tax-exempt interest income . . . . . . . . . . . . . . . . . . . . | 19 | |
| | **20** Other tax-exempt income . . . . . . . . . . . . . . . . . . . . . | 20 | |
| | **21** Nondeductible expenses . . . . . . . . . . . . . . . . . . . . . | 21 | |
| | **22** Distributions of money (cash and marketable securities) . . . . . . . . . . . . . . . | 22 | 6,225,000. |
| | **23** Distributions of property other than money . . . . . . . . . . . . . . | 23 | |
| | **24** Other items and amounts required to be reported separately to partners *(attach schedule)* . . . . . . | | |

Form 1065 (1999)

JSA
9P1030 1.000

**MID 6-213**

HBV3CR  2021  07/13/2000  08-26-06

ENB-KP-002946

## Analysis of Net Income (Loss)

| | | | | | | |
|---|---|---|---|---|---|---|
| 1 | Net Income (loss). Combine Schedule K, lines 1 through 7 in column (b). From the result, subtract the sum of Schedule K, lines 8 through 11, 14a, 17e, and 18b . . . . . . . . . . | | | | **1** | **-70,466.** |

| 2 | Analysis by partner type: | (i) Corporate | (ii) Individual (active) | (iii) Individual (passive) | (iv) Partnership | (v) Exempt organization | (vi) Nominee/Other |
|---|---|---|---|---|---|---|---|
| a | General partners | -70,466. | | | | | |
| b | Limited partners | | | | | | |

## Schedule L   Balance Sheets per Books (Not required if Question 5 on Schedule B is answered "Yes.")

| | | Beginning of tax year | | End of tax year | |
|---|---|---|---|---|---|
| | **Assets** | (a) | (b) | (c) | (d) |
| 1 | Cash . . . . . . . . . . . . . . | | | | 62,383. |
| 2 a | Trade notes and accounts receivable . . . | | | 68,355. | |
| b | Less allowance for bad debts . . . . . . . . | | | | 68,355. |
| 3 | Inventories . . . . . . . . . . . . . | | | | |
| 4 | U.S. government obligations . . . . . . . | | | | |
| 5 | Tax-exempt securities . . . . . . . . . | | | | |
| 6 | Other current assets *(attach schedule)* . . . . | | | | |
| 7 | Mortgage and real estate loans . . . . . . . | | | | |
| 8 | Other investments *(attach schedule)* . . . . . | | | | |
| 9 a | Buildings and other depreciable assets . . . | | | | |
| b | Less accumulated depreciation . . . . . . | | | | |
| 10 a | Depletable assets . . . . . . . . . . | | | | |
| b | Less accumulated depletion . . . . . . . | | | | |
| 11 | Land (net of any amortization) . . . . . . . | | | | |
| 12 a | Intangible assets (amortizable only) . . . . . | | | 6,500,000. | |
| b | Less accumulated amortization . . . . . . . | | | 25,194. | 6,474,806. |
| 13 | Other assets *(attach schedule)* . . . . . . . | | | | |
| 14 | Total assets . . . . . . . . . . . . . | NONE | | | 6,605,544. |
| | **Liabilities and Capital** | | | | |
| 15 | Accounts payable . . . . . . . . . . . . | | | | |
| 16 | Mortgages, notes, bonds payable in less than 1 year | | | | |
| 17 | Other current liabilities *(attach schedule)* . . . | STMT 2 | NONE | | 32,037. |
| 18 | All nonrecourse loans . . . . . . . . . . | | | | |
| 19 | Mortgages, notes, bonds payable in 1 year or more | | | | 6,100,000. |
| 20 | Other liabilities *(attach schedule)* . . . . . . | | | | |
| 21 | Partners' capital accounts . . . . . . . . . | | NONE | | 473,507. |
| 22 | Total liabilities and capital . . . . . . . . | | | | 6,605,544. |

## Schedule M-1   Reconciliation of Income (Loss) per Books With Income (Loss) per Return
(Not required if Question 5 on Schedule B is answered "Yes." See page 29 of the instructions.)

| | | | | | |
|---|---|---|---|---|---|
| 1 | Net income (loss) per books . . . | -26,493. | 6 | Income recorded on books this year not included on Schedule K, lines 1 through 7 (itemize): | |
| 2 | Income included on Schedule K, lines 1 through 4, 6, and 7, not recorded on books this year (itemize): _____ | | a | Tax-exempt interest $ _____ _____ | |
| 3 | Guaranteed payments (other than health insurance) . . . . . . . . . . . | | 7 | Deductions included on Schedule K, lines 1 through 11, 14a, 17e, and 18b, not charged against book income this year (itemize): | |
| 4 | Expenses recorded on books this year not included on Schedule K, lines 1 through 11, 14a, 17e, and 18b (itemize): | | a | Depreciation $ _____ SEE STATEMENT 2 _____ | 69,167. |
| a | Depreciation $ _____ | | 8 | Add lines 6 and 7 . . . . . . . . . . | 69,167. |
| b | Travel and entertainment $ _____ SEE STATEMENT 2 _____ | 25,194. | 9 | Income (loss) (Analysis of Net Income (Loss), line 1). Subtract line 8 from line 5 · · · · · | -70,466. |
| 5 | Add lines 1 through 4 . . . . . . . | -1,299. | | | |

## Schedule M-2   Analysis of Partners' Capital Accounts (Not required if Question 5 on Schedule B is answered "Yes.")

| | | | | | |
|---|---|---|---|---|---|
| 1 | Balance at beginning of year . . . . | NONE | 6 | Distributions: a Cash   STMT 2 . . . | 6,225,000. |
| 2 | Capital contributed during year . . . . . | 6,725,000. | | b Property . . . . . . . | |
| 3 | Net income (loss) per books . . . . . | -26,493. | 7 | Other decreases (itemize): _____ | |
| 4 | Other increases (itemize): _____ | | | _____ | |
| | | | 8 | Add lines 6 and 7 . . . . . . . . . | 6,225,000. |
| 5 | Add lines 1 through 4 . . . . . . . . | 6,698,507. | 9 | Balance at end of year. Subtract line 8 from line 5 | 473,507. |

JSA
9P1035 2.000

MID 6-214

Form **1065** (1999)

ENB-KP-002947

Form **4562**

**Depreciation and Amortization**
(Including Information on Listed Property)

► See separate instructions. ► Attach this form to your return.

OMB No. 1545-0172

**1999**

Attachment Sequence No. **67**

Department of the Treasury
Internal Revenue Service (99)

Name(s) shown on return

BUTCHER INTEREST PARTNERSHIP

Identifying number
76-0622250

Business or activity to which this form relates

BUTCHER INTEREST PARTNERSHIP

**Part I** Election To Expense Certain Tangible Property (Section 179) (Note: *If you have any "listed property,"* complete Part V before you complete Part I.)

| | | | |
|---|---|---|---|
| 1 | Maximum dollar limitation. If an enterprise zone business, see page 2 of the instructions . . . . . . . . . . . | 1 | 19,000. |
| 2 | Total cost of section 179 property placed in service. See page 2 of the instructions . . . . . . . . . . . . . | 2 | |
| 3 | Threshold cost of section 179 property before reduction in limitation . . . . . . . . . . . . . . . . | 3 | 200,000. |
| 4 | Reduction in limitation. Subtract line 3 from line 2. If zero or less, enter -0- . . . . . . . . . . . . . | 4 | |
| 5 | Dollar limitation for tax year. Subtract line 4 from line 1. If zero or less, enter -0-. If married filing separately, see page 2 of the instructions . . . . . . . . . . . . . . . . . . . . . . . . . . | 5 | |

| (a) Description of property | (b) Cost (business use only) | (c) Elected cost |
|---|---|---|
| 6 | | |

| | | | |
|---|---|---|---|
| 7 | Listed property. Enter amount from line 27 . . . . . . . . . . . . . . . . . | 7 | |
| 8 | Total elected cost of section 179 property. Add amounts in column (c), lines 6 and 7 . . . . . . . . . . | 8 | |
| 9 | Tentative deduction. Enter the smaller of line 5 or line 8 . . . . . . . . . . . . . . . . . . . | 9 | |
| 10 | Carryover of disallowed deduction from 1998. See page 2 of the instructions . . . . . . . . . . . . | 10 | |
| 11 | Business income limitation. Enter the smaller of business income (not less than zero) or line 5 (see instructions) . . . | 11 | |
| 12 | Section 179 expense deduction. Add lines 9 and 10, but do not enter more than line 11 . . . . . . . . | 12 | |
| 13 | Carryover of disallowed deduction to 2000. Add lines 9 and 10, less line 12 . . . . . ► | 13 | |

**Note:** *Do not use Part II or Part III below for listed property (automobiles, certain other vehicles, cellular telephones, certain computers, or property used for entertainment, recreation, or amusement). Instead, use Part V for listed property.*

**Part II** MACRS Depreciation for Assets Placed in Service ONLY During Your 1999 Tax Year (Do Not Include Listed Property.)

**Section A - General Asset Account Election**

14 If you are making the election under section 168(i)(4) to group any assets placed in service during the tax year into one or more general asset accounts, check this box. See page 3 of the instructions . . . . . . . . . . . . . ►

**Section B - General Depreciation System (GDS) (See page 3 of the instructions.)**

| (a) Classification of property | (b) Month and year placed in service | (c) Basis for depreciation (business/investment use only - see instructions) | (d) Recovery period | (e) Convention | (f) Method | (g) Depreciation deduction |
|---|---|---|---|---|---|---|
| 15a 3-year property | | | | | | |
| b 5-year property | | | | | | |
| c 7-year property | | | | | | |
| d 10-year property | | | | | | |
| e 15-year property | | | | | | |
| f 20-year property | | | | | | |
| g 25-year property | | | 25 yrs. | | S/L | |
| h Residential rental property | | | 27.5 yrs. | MM | S/L | |
| | | | 27.5 yrs. | MM | S/L | |
| i Nonresidential real property | | | 39 yrs. | MM | S/L | |
| | | | | MM | S/L | |

**Section C - Alternative Depreciation System (ADS) (See page 5 of the instructions.)**

| | | | | | | |
|---|---|---|---|---|---|---|
| 16a Class life | | | | | S/L | |
| b 12-year | | | 12 yrs. | | S/L | |
| c 40-year | | | 40 yrs. | MM | S/L | |

**Part III** Other Depreciation (Do Not Include Listed Property.) (See page 5 of the instructions.)

| | | | |
|---|---|---|---|
| 17 | GDS and ADS deductions for assets placed in service in tax years beginning before 1999 . . . . . . . . . | 17 | |
| 18 | Property subject to section 168(f)(1) election . . . . . . . . . . . . . . . . . . . . . | 18 | |
| 19 | ACRS and other depreciation . . . . . . . . . . . . . . . . . . . . . . . . . . | 19 | |

**Part IV** Summary (See page 6 of the instructions.)

| | | | |
|---|---|---|---|
| 20 | Listed property. Enter amount from line 26 . . . . . . . . . . . . . . . . . . . . . . | 20 | |
| 21 | Total. Add deductions on line 12, lines 15 and 16 in column (g), and lines 17 through 20. Enter here and on the appropriate lines of your return. Partnerships and S corporations - see instructions . . . . . . . . | 21 | |
| 22 | For assets shown above and placed in service during the current year, enter the portion of the basis attributable to section 263A costs . . . . . . . . . . . | 22 | |

JSA For Paperwork Reduction Act Notice, see page 9 of the instructions.
9X2300 1.000

HBV3CR    2021    07/13/2000  08:26:06

MID 6-215

Form **4562** (1999)

ENB-KP-002948

**Part V** Listed Property - Automobiles, Certain Other Vehicles, Cellular Telephones, Certain Computers, and Property Used for Entertainment, Recreation, or Amusement

Note: For any vehicle for which you are using the standard mileage rate or deducting lease expense, complete only 23a, 23b, columns (a) through (c) of Section A, all of Section B, and Section C if applicable.

**Section A - Depreciation and Other Information (Caution: See page 7 of the instructions for limits for passenger automobiles.)**

23a Do you have evidence to support the business/investment use claimed? | Yes | No | 23b If "Yes," is the evidence written? | Yes | No

| (a) Type of property (list vehicles first) | (b) Date placed in service | (c) Business/ Investment use percentage | (d) Cost or other basis | (e) Basis for depreciation (business/investment use only) | (f) Recovery period | (g) Method/ Convention | (h) Depreciation deduction | (i) Elected section 179 cost |
|---|---|---|---|---|---|---|---|---|
| 24 Property used more than 50% in a qualified business use (See page 6 of the instructions.): | | | | | | | | |
| | | % | | | | | | |
| | | % | | | | | | |
| | | % | | | | | | |
| 25 Property used 50% or less in a qualified business use (See page 7 of the instructions.): | | | | | | | | |
| | | % | | | | S/L - | | |
| | | % | | | | S/L - | | |
| | | % | | | | S/L - | | |

26 Add amounts in column (h). Enter the total here and on line 20, page 1 . . . . . . . . . . . . . . . . . . . . | 26 |
27 Add amounts in column (i). Enter the total here and on line 7, page 1 . . . . . . . . . . . . . . . . . . . . . . . . . . . | 27 |

**Section B - Information on Use of Vehicles**

Complete this section for vehicles used by a sole proprietor, partner, or other "more than 5% owner," or related person.
If you provided vehicles to your employees, first answer the questions in Section C to see if you meet an exception to completing this section for those vehicles.

| | (a) Vehicle 1 | (b) Vehicle 2 | (c) Vehicle 3 | (d) Vehicle 4 | (e) Vehicle 5 | (f) Vehicle 6 |
|---|---|---|---|---|---|---|
| 28 Total business/investment miles driven during the year (DO NOT include commuting miles - see page 1 of the instructions) . . . . . . . . . | | | | | | |
| 29 Total commuting miles driven during the year . . . . | | | | | | |
| 30 Total other personal (noncommuting) miles driven . . . . . . . . . . . . . | | | | | | |
| 31 Total miles driven during the year. Add lines 28 through 30 . . . . . . . . | | | | | | |

| | Yes | No | Yes | No | Yes | No | Yes | No | Yes | No | Yes | No |
|---|---|---|---|---|---|---|---|---|---|---|---|---|
| 32 Was the vehicle available for personal use during off-duty hours? . . . . . . . . . . . | | | | | | | | | | | | |
| 33 Was the vehicle used primarily by a more than 5% owner or related person? . . . . . . | | | | | | | | | | | | |
| 34 Is another vehicle available for personal use? . . . . . . . . . . . . . . . . . . | | | | | | | | | | | | |

**Section C - Questions for Employers Who Provide Vehicles for Use by Their Employees**

Answer these questions to determine if you meet an exception to completing Section B for vehicles used by employees who are not more than 5% owners or related persons.

| | Yes | No |
|---|---|---|
| 35 Do you maintain a written policy statement that prohibits all personal use of vehicles, including commuting, by your employees? | | |
| 36 Do you maintain a written policy statement that prohibits personal use of vehicles, except commuting, by your employees? See page 8 of the instructions for vehicles used by corporate officers, directors, or 1% or more owners | | |
| 37 Do you treat all use of vehicles by employees as personal use? . . . . . . . . . . . . . . . . . . . | | |
| 38 Do you provide more than five vehicles to your employees, obtain information from your employees about the use of the vehicles, and retain the information received? . . . . . . . . . . . . . . . . . | | |
| 39 Do you meet the requirements concerning qualified automobile demonstration use? See page 8 of the instructions . . . . . . . . . . | | |

Note: If your answer to 35, 36, 37, 38, or 39 is "Yes," you need not complete Section B for the covered vehicles.

**Part VI** Amortization

| (a) Description of costs | (b) Date amortization begins | (c) Amortizable amount | (d) Code section | (e) Amortization period or percentage | (f) Amortization for this year |
|---|---|---|---|---|---|
| 40 Amortization of costs that begins during your 1999 tax year: | | | | | |
| INTANGIBLE INTEREST | 11/08/1999 | 6,225,000. | 197 | 15.000 | 69,167. |
| 41 Amortization of costs that began before 1999 · · · · · · · · · · · · · · · · · · · · · · · · | | | 41 | | |
| 42 Total. Enter here and on "Other Deductions" or "Other Expenses" line of your return . . . . . . . . . . . . . . . . . | | | 42 | | 69,167. |

JSA
9X2310 3.000

MID 6-216                    Form 4562 (1999)

ENB-KP-002949

UTCHER INTEREST PARTNERSHIP

Description of Property

UTCHER INTEREST PARTNERSHIP

# 1999 Amortization

76-0622250

GENERAL TRADE OR BUSINESS

| Asset description | Date placed in service | Cost or basis | Accumulated amortization | Code | Life | Current-year amortization |
|---|---|---|---|---|---|---|
| INTANGIBLE INTEREST | 11/08/1999 | 6,225,000. | | 197 | 15.000 | 69,167. |
| | | | | | | |
| | | | | | | |
| | | | | | | |
| Less: Retired Assets | : | | | | | |
| **TOTALS** MID 6-217 | : | 6,225,000. | | | | 69,167. |

Assets Retired

>A

C0026 1 000   HBV3CR   2021   07/13/2000   08:26:06

ENB-KP-002950

| Form **8800** | **Appli**   **ion for Additional Extension of Ti**   **to File** | |
|---|---|---|
| (Rev. September 1999) | **U.S. Return for a Partnership, REMIC, or for Certain Trusts** | OMB No. 1545-1057 |
| Department of the Treasury Internal Revenue Service | ▶ **File a separate application for each return.** | |

| Please type or print. | Name | Employer identification number |
|---|---|---|
| File the original and one copy by the due date for filing the return for which an extension is requested. See Instructions. | BUTCHER INTEREST PARTNERSHIP | 76-0622250 |
| | Number, street, and room or suite no. If a P.O. box, see instructions. | |
| | 8325 LENEXA DR., SUITE 400 | |
| | City or town, state, and ZIP code. If a foreign address, enter city, province or state, and country. Follow the country's practice for entering the postal code. | |
| | LENEXA, KS 66214 | |

**1** I request an additional extension of time until __10/16__,__2000__ , to file (check only one):

☐ Form 1041  ☐ Form 1041-QFT  ☒ Form 1065  ☐ Form 1065-B  ☐ Form 1066

**2** If the entity does not have an office or place of business in the United States, check this box . . . . . . . . . . . . . . . ▶ ☐

**3 a** For calendar year _____ , or other tax year beginning __11/08__,__1999__ , and ending __12/31__,__1999__

**b** If this tax year is for less than 12 months, check reason: ☒ Initial return  ☐ Final return  ☐ Change in accounting period

**4** Explain why the entity needs an extension. All entities filing this form must give an adequate explanation.

THE TAXPAYER RESPECTFULLY REQUESTS ADDITIONAL TIME IN ORDER TO GATHER THE INFORMATION NECESSARY TO FILE A COMPLETE AND ACCURATE RETURN.

----------------------------------------
----------------------------------------
----------------------------------------
----------------------------------------
----------------------------------------
----------------------------------------

**5** Has the entity filed Form 8736 to request an extension of time to file for this tax year? ☒ Yes  ☐ No

If you checked "No," we will grant an extension only for undue hardship. Fully explain the hardship on line 4.

**Signature and Verification**

Under penalties of perjury, I declare that I have examined this form, including accompanying schedules and statements, and to the best of my knowledge and belief, it is true, correct, and complete; and that I am authorized to prepare this form.

Signature ▶ *Jennifer J. Stoles*  Title ▶ CPA, Pricewaterhouse Coopers  Date ▶ 7/12/00

File original and one copy. **The IRS will show below whether or not your application is approved and will return the copy.**

Notice to Applicant - To Be Completed by the IRS.

☐ We HAVE approved this application. Please attach this form to the entity's return.

☐ We HAVE NOT approved this application.
However, we have granted a 10-day grace period to _____ . This grace period is considered a valid extension of time for elections otherwise required to be made on a timely return. Please attach this form to the entity's return.

☐ We HAVE NOT approved this application. After considering the reasons stated in item 4 above, we cannot grant this request for an extension of time to file. We are not granting a 10-day grace period.

☐ We cannot consider this application because it was filed after the due date of the return for which an extension was requested.

☐ Other:

By ▶ _____

Director _____  Date _____

If you want a copy of this form to be returned to an address other than that shown above, please enter the address to which the copy should be sent.

| Please Type or Print | Name | Attn: Mary Sue Dalley |
|---|---|---|
| | PRICEWATERHOUSECOOPERS LLP | |
| | Number, street, and room or suite no. (If a P.O. box, see instructions.) | |
| | 1201 LOUISIANA, SUITE 2900 | |
| | City or town, state, and ZIP code. If a foreign address, enter city, province or state, and country. Follow the country's practice for entering the postal code. | |
| | HOUSTON, TX 77002 | |

For Paperwork Reduction Act Notice, see back of form.                    Form **8800** (Rev. 9-99)

JSA
9X6092 2.000

MID 6-218

ENB-KP-002951

Form **8736**

(Rev. October 1998)

Department of the Treasury
Internal Revenue Service

# Application for Automatic Extension of Time To File U.S. Return for a Partnership, REMIC, or for Certain Trusts

▶ File a separate application for each return.

OMB No. 1545-1054

| Please type or print. | Name | Employer identification number |
|---|---|---|
| | BUTCHER INTEREST PARTNERSHIP | 76-0622250 |

File by the due date for filing the return for which an extension is requested. See Instructions.

Number, street, and room or suite no. If a P.O. box, see instructions.

**1100 LOUISIANA, SUITE 2950**

City or town, state, and ZIP code. If a foreign address, enter city, province or state, and country. Follow the country's practice for entering the postal code.

**HOUSTON, TX 77002**

**1** I request an automatic 3-month extension of time to file (check only one):

☐ Form 1041   ☐ Form 1041-QFT   ☒ Form 1065   ☐ Form 1065-B   ☐ Form 1066

**2** If the entity does not have an office or place of business in the United States, check this box . . . . . . . . . . . . . . . . . . ▶ ☐

**3a** For calendar year **1999** , or other tax year beginning _____ , _____ , and ending _____

**b** If this tax year is for less than 12 months, check reason:

☐ Initial return   ☐ Final return   ☐ Change in accounting period

**4** If this extension is requested for Form 1041, Form 1041-QFT, Form 1065-B, or Form 1066, enter the following amounts:

**a** Tentative total tax from Form 1041, Form 1041-QFT, Form 1065-B, or Form 1066 (see instructions) . . . . . . . . . . . _____

**b** Refundable credits and estimated tax payments, including any prior year overpayment allowed as a credit, from Form 1041, Form 1041-QFT, or Form 1065-B (see instructions). REMICs, enter -0-. . . . . . . . . _____

**c** Balance due. Subtract line 4b from line 4a. If zero or less, enter -0-. Enclose payment, if any, with Form 8736 (see instructions) . . . . . . . . . . . . . . . . . . . . . . . . . . . . ▶ _____

**Caution:** *Interest will be charged on any tax not paid by the regular due date of Forms 1041, 1041-QFT, 1065-B, and 1066 from the due date until the tax is paid.*

PricewaterhouseCoopers L.L.P.
1100 Louisiana Ste. 4100, Hou TX 77002

**MID 6-219**

ENB-KP-002952

========================================================================
LINE 20 - PAGE 1 - OTHER DEDUCTIONS
====================================
AMORTIZATION                                              69,167.
                                                     ----------------
  TOTAL OTHER DEDUCTIONS                                  69,167.
                                                     ================

9XX083 3.000

ENB-KP-002953

================================================================
```
SCHEDULE L - LINE 17 - OTHER CURRENT LIABILITIES   BEGINNING        ENDING
```
================================================================

| | BEGINNING | ENDING |
|---|---|---|
| ACCRUED INTEREST PAYABLE | NONE | 32,037. |
| TOTAL OTHER CURRENT LIABILITIES | NONE | 32,037. |

================================================================

**SCHEDULE M-1 - LINE 4B - EXPENSES RECORDED ON BOOKS BUT NOT DEDUCTED**
================================================================

| | |
|---|---|
| AMORTIZATION | 25,194. |
| TOTAL OTHER EXPENSES RECORDED ON BOOKS BUT NOT DEDUCTED | 25,194. |

================================================================

**SCHEDULE M-1 - LINE 7A - OTHER DEDUCTIONS IN RETURN NOT ON BOOKS**
================================================================

| | |
|---|---|
| AMORTIZATION | 69,167. |
| TOTAL DEDUCTIONS ON TAX RETURN NOT CHARGED AGAINST BOOK INCOME | 69,167. |

================================================================

**SCHEDULE M-2 - LINE 6A - CASH DISTRIBUTIONS**
================================================================

| | |
|---|---|
| CASH DISTRIBUTIONS | 6,225,000. |
| TOTAL CASH DISTRIBUTIONS | 6,225,000. |

0XX063 1 000

ENB-KP-002954

## IRC SEC. 195
## ELECTION TO AMORTIZE BUSINESS START-UP COSTS

Pursuant to IRC section 195, the above taxpayer hereby elects to amortize (over a period of 60 months) any and all business start-up costs to be incurred in the future. The corporation began business on 11/08/99. There are no expenditures in the current year.

ENB-KP-002955

Butcher Interest Partnership
EIN: 76-0622250
FYE: 12/31/99

## STATEMENT OF ELECTION TO AMORTIZE PARTNERSHIP ORGANIZATION EXPENSES UNDER IRC SEC. 709(b)

The Partnership hereby elects, under the provisions of Code Section 709(b), to treat organizational expenses as deferred expenses and to amortize such expenses over a period of 60 months for any and all costs to be incurred in the future. The taxpayer's business began **November 8, 1999**.

STATEMENT #4

MID 6-223

ENB-KP-002956

# Schedule K-1, Item J - Analysis of Partners Capital Accounts

| Partner Number | A. Capital Account at Beginning of Year | B. Capital Contributed During Year | C. Partners' Shares of Sch. M-2, Lines 3, 4, and 7 | D. Withdrawals and Distributions | E. Capital Account at End of Year |
|---|---|---|---|---|---|
| 1 | NONE | 6,500,000. | -14,571. | 6,225,000. | 260,429. |
| 2 | NONE | 225,000. | -11,922. | | 213,078. |
| TOTALS | NONE | 6,725,000. | -26,493. | 6,225,000. | 473,507. |

JSA

BUTCHER INTEREST PARTNERSHIP

MID 6-224
76-0622250

ENB-KP-002957

# SCHEDULE K-1
## (Form 1065)
Department of the Treasury
Internal Revenue Service

## Partner's Share of Income, Credits, Deductions, etc.
► See separate instructions.

For calendar year 1999 or tax year beginning _____ , 1999, and ending _____

OMB No. 1545-0099

**1999**

Partner's identifying number ► **48-1031292**   |   Partnership's identifying number ► **76-0622250**

| Partner's name, address, and ZIP code **PARTNER #**    1 | Partnership's name, address, and ZIP code |
|---|---|
| K-PIPE GROUP, INC.<br>C/O SCALP<br>750 LEXINGTON AVE., 30TH FLOOR<br>NEW YORK, NY 10022 | BUTCHER INTEREST PARTNERSHIP<br>8325 LENEXA DR., SUITE 400<br>LENEXA, KS 66214 |

**A** This partner is a [X] general partner [ ] limited partner
[ ] limited liability company member

**B** What type of entity is this partner? ► CORPORATION

**C** Is this partner a [X] domestic or a [ ] foreign partner?

**D** Enter partner's percentage of:

| | (i) Before change or termination | (ii) End of year |
|---|---|---|
| Profit sharing | ____ % | 55.000000 % |
| Loss sharing | ____ % | 55.000000 % |
| Ownership of capital | ____ % | 55.000000 % |

**E** IRS Center where partnership filed return:
AUSTIN, TX 73301-0011

**F** Partner's share of liabilities (see instructions):
Nonrecourse . . . . . . _____
Qualified nonrecourse financing _____
Other . . . . . . . . . 3,372,620.

**G** Tax shelter registration number ► _____

**H** Check here if this partnership is a publicly traded partnership as defined in section 469(k)(2) . . . . . . [ ]

**I** Check applicable boxes: (1) [ ] Final K-1 (2) [ ] Amended K-1

**J** Analysis of partner's capital account:

| (a) Capital account at beginning of year | (b) Capital contributed during year | (c) Partner's share of lines 3, 4, and 7, Form 1065, Schedule M-2 | (d) Withdrawals and distributions | (e) Capital account at end of year (combine columns (a) through (d)) |
|---|---|---|---|---|
| NONE | 6,500,000. | -14,571. | ( 6,225,000.) | 260,429. |

| | | (a) Distributive share item | | (b) Amount | (c) 1040 filers enter the amount in column (b) on: |
|---|---|---|---|---|---|
| **Income (Loss)** | 1 | Ordinary income (loss) from trade or business activities | 1 | -38,756. | See page 6 of Partner's Instructions for Schedule K-1 (Form 1065). |
| | 2 | Net income (loss) from rental real estate activities | 2 | | |
| | 3 | Net income (loss) from other rental activities | 3 | | |
| | 4 | Portfolio income (loss): | | | |
| | a | Interest | 4a | | Sch. B, Part I, line 1 |
| | b | Ordinary dividends | 4b | | Sch. B, Part II, line 5 |
| | c | Royalties | 4c | | Sch. E, Part I, line 4 |
| | d | Net short-term capital gain (loss) | 4d | | Sch. D, line 5, col. (f) |
| | e | Net long-term capital gain (loss): | | | |
| | | (1) 28% rate gain (loss) | e(1) | | Sch. D, line 12, col. (g) |
| | | (2) Total for year | e(2) | | Sch. D, line 12, col. (f) |
| | f | Other portfolio income (loss) (attach schedule) | 4f | | Enter on applicable line of your return |
| | 5 | Guaranteed payments to partner | 5 | | See page 6 of Partner's Instructions for Schedule K-1 (Form 1065) |
| | 6 | Net section 1231 gain (loss) (other than due to casualty or theft) | 6 | | |
| | 7 | Other income (loss) (attach schedule) | 7 | | |
| **Deductions** | 8 | Charitable contributions (see instructions) (attach schedule) | 8 | | Enter on applicable line of your return. |
| | 9 | Section 179 expense deduction | 9 | | Sch. A, line 15 or 16 |
| | 10 | Deductions related to portfolio income (attach schedule) | 10 | | See pages 7 and 8 of Partner's Instructions for Schedule K-1 (Form 1065). |
| | 11 | Other deductions (attach schedule) | 11 | | |
| **Credits** | 12a | Low-income housing credit: | | | |
| | | (1) From section 42(j)(5) partnerships for property placed in service before 1990 | a(1) | | Form 8586, line 5 |
| | | (2) Other than on line 12a(1) for property placed in service before 1990 | a(2) | | |
| | | (3) From section 42(j)(5) partnerships for property placed in service after 1989 | a(3) | | |
| | | (4) Other than on line 12a(3) for property placed in service after 1989 | a(4) | | |
| | b | Qualified rehabilitation expenditures related to rental real estate activities | 12b | | |
| | c | Credits (other than credits shown on lines 12a and 12b) related to rental real estate activities | 12c | | See page 8 of Partner's Instructions for Schedule K-1 (Form 1065) |
| | d | Credits related to other rental activities | 12d | | |
| | 13 | Other credits | 13 | MID 6.225 | |

For Paperwork Reduction Act Notice, see instructions for Form 1065.
JSA

Schedule K-1 (Form 1065) 1999

ENB-KP-002958

| | (a) Distributive share item | | (b) Amount | (c) 1040 filers enter the amount in column (b) on: |
|---|---|---|---|---|
| **Investment Interest** | 14 a   Interest expense on investment debts . . . . . . . . . . | 14a | | Form 4952, line 1 |
| |    b   (1) Investment income included on lines 4a, 4b, 4c, and 4f | b(1) | | See page 9 of Partner's Instructions for Schedule K-1 (Form 1065). |
| |      (2) Investment expenses included on line 10 . . . . . | b(2) | | |
| **Self-em-ployment** | 15 a   Net earnings (loss) from self-employment . . . . . . . . . . | 15a | | Sch. SE, Section A or B |
| |    b   Gross farming or fishing income . . . . . . . . . . . . | 15b | | See page 9 of Partner's Instructions for Schedule K-1 (Form 1065). |
| |    c   Gross nonfarm income . . . . . . . . . . . . . . . | 15c | | |
| **Adjustments and Tax Preference Items** | 16 a   Depreciation adjustment on property placed in service after 1986 . | 16a | | See page 9 of Partner's Instructions for Schedule K-1 (Form 1065) and Instructions for Form 6251. |
| |    b   Adjusted gain or loss . . . . . . . . . . . . . . . | 16b | | |
| |    c   Depletion (other than oil and gas) . . . . . . . . . . | 16c | | |
| |    d   (1) Gross income from oil, gas, and geothermal properties | d(1) | | |
| |      (2) Deductions allocable to oil, gas, and geothermal properties | d(2) | | |
| |    e   Other adjustments and tax preference items *(attach schedule)* | 16e | | |
| **Foreign Taxes** | 17 a   Type of income ▶ | | | Form 1116, check boxes |
| |    b   Name of foreign country or possession ▶ | | | |
| |    c   Total gross income from sources outside the United States *(attach schedule)* . . . | 17c | | Form 1116, Part I |
| |    d   Total applicable deductions and losses *(attach schedule)* . . . | 17d | | |
| |    e   Total foreign taxes (check one): ▶ ☐ Paid ☐ Accrued . . . | 17e | | Form 1116, Part II |
| |    f   Reduction in taxes available for credit *(attach schedule)* . . . | 17f | | Form 1116, Part III |
| |    g   Other foreign tax information *(attach schedule)* . . . . . . | 17g | | See Instructions for Form 1116. |
| **Other** | 18    Section 59(e)(2) expenditures: a Type ▶ | | | See page 9 of Partner's Instructions for Schedule K-1 (Form 1065). |
| |    b   Amount . . . . . . . . . . . . . . . . . . . | 18b | | |
| | 19    Tax-exempt interest income . . . . . . . . . . . . | 19 | | Form 1040, line 8b |
| | 20    Other tax-exempt income . . . . . . . . . . . . . | 20 | | |
| | 21    Nondeductible expenses . . . . . . . . . . . . . | 21 | | See pages 9 and 10 of Partner's Instructions for Schedule K-1 (Form 1065). |
| | 22    Distributions of money (cash and marketable securities) . . . | 22 | 6,225,000. | |
| | 23    Distributions of property other than money . . . . . . . | 23 | | |
| | 24    Recapture of low-income housing credit: | | | |
| |    a   From section 42(j)(5) partnerships . . . . . . . . . . | 24a | | Form 8611, line 8 |
| |    b   Other than on line 24a . . . . . . . . . . . . . | 24b | | |

| | |
|---|---|
| | 25    Supplemental information required to be reported separately to each partner *(attach additional schedules if more space is needed):* |

SEE PARTNER FOOTNOTES SCHEDULE

_____

_____

_____

_____

_____

_____

_____

_____

_____

_____

_____ **MID 6-226**

ENB-KP-002959

=================================================================================

## ITEM F, OTHER LIABILITIES
========================

| | |
|---|---|
| OTHER CURRENT LIABILITIES | 17,620. |
| LONG-TERM MORTGAGES, NOTES AND BONDS PAYABLE | 3,355,000. |
| | ---------------- |
| TOTAL OTHER LIABILITIES | 3,372,620. |
| | ================ |

## ITEM J, COLUMN(C) - RECONCILIATION OF INCOME
=================================================

| | |
|---|---|
| TOTAL INCOME PER SCHEDULE K-1 | -38,756. |
| LESS:  EXPENSES RECORDED ON BOOKS, NOT INCLUDED ON SCH. K-1: | |
| AMORTIZATION | 13,857. |
| PLUS:  DEDUCTIONS ON SCH. K-1, NOT CHARGED AGAINST BOOKS: | |
| AMORTIZATION | 38,042. |
| | ---------------- |
| TOTAL INCOME PER ITEM J, COLUMN(C) | -14,571. |
| | ================ |

## PARTNER FOOTNOTES
===================

THE $6,225,000 OF CASH DISTRIBUTED TO K-PIPE IN CONNECTION WITH THE
CONTRIBUTION OF THE BUTCHER INTEREST TO BUTCHER INTEREST PARTNERSHIP
BY K-PIPE IS A TRANSFER TREATED AS A SALE PURSUANT TO CODE SECTION
1.707-3 OF THE INCOME TAX REGULATIONS SINCE THE TRANSFERS WERE MADE
WITHIN A TWO YEAR PERIOD.

PLEASE CONTACT YOUR TAX ADVISOR REGARDING THE PROPER TREATMENT OF
THIS TRANSACTION.

ENB-KP-002960

SCHEDULE K-1
(Form 1065)
Department of the Treasury
Internal Revenue Service

**Partner's Share of Income, Credits, Deductions, etc.**

▶ See separate instructions.

For calendar year 1999 or tax year beginning _____, 1999, and ending _____

OMB No. 1545-0099

**1999**

Partner's identifying number ▶ **76-0460300** | Partnership's identifying number ▶ **76-0622250**

Partner's name, address, and ZIP code **PARTNER # 2**

**MID LOUISIANA GAS COMPANY**
**1100 LOUISIANA, SUITE 2900**
**HOUSTON, TX 77002**

Partnership's name, address, and ZIP code

**BUTCHER INTEREST PARTNERSHIP**
**8325 LENEXA DR., SUITE 400**
**LENEXA, KS 66214**

**A** This partner is a [X] general partner [ ] limited partner
[ ] limited liability company member

**B** What type of entity is this partner? ▶ **CORPORATION**

**C** Is this partner a [X] domestic or a [ ] foreign partner?

**D** Enter partner's percentage of:

| | (i) Before change or termination | (ii) End of year |
|---|---|---|
| Profit sharing | _____ % | 45.000000 % |
| Loss sharing | _____ % | 45.000000 % |
| Ownership of capital | _____ % | 45.000000 % |

**E** IRS Center where partnership filed return:
**AUSTIN, TX 73301-0011**

**F** Partner's share of liabilities (see instructions):
Nonrecourse .............
Qualified nonrecourse financing _____
Other _____ **2,759,417.**

**G** Tax shelter registration number ▶ _____

**H** Check here if this partnership is a publicly traded partnership as defined in section 469(k)(2) ......... [ ]

**I** Check applicable boxes: (1) [ ] Final K-1 (2) [ ] Amended K-1

**J** Analysis of partner's capital account:

| (a) Capital account at beginning of year | (b) Capital contributed during year | (c) Partner's share of lines 3, 4, and 7, Form 1065, Schedule M-2 | (d) Withdrawals and distributions | (e) Capital account at end of year (combine columns (a) through (d)) |
|---|---|---|---|---|
| NONE | 225,000. | -11,922. | ( ) | 213,078. |

| | | (a) Distributive share item | | (b) Amount | (c) 1040 filers enter the amount in column (b) on: |
|---|---|---|---|---|---|
| Income (Loss) | 1 | Ordinary income (loss) from trade or business activities ..... | 1 | -31,710. | See page 6 of Partner's Instructions for Schedule K-1 (Form 1065). |
| | 2 | Net income (loss) from rental real estate activities ........ | 2 | | |
| | 3 | Net income (loss) from other rental activities .......... | 3 | | |
| | 4 | Portfolio income (loss): | | | |
| | a | Interest .......................... | 4a | | Sch. B, Part I, line 1 |
| | b | Ordinary dividends .................... | 4b | | Sch. B, Part II, line 5 |
| | c | Royalties ........................ | 4c | | Sch. E, Part I, line 4 |
| | d | Net short-term capital gain (loss) ............. | 4d | | Sch. D, line 5, col. (f) |
| | e | Net long-term capital gain (loss): | | | |
| | | (1) 28% rate gain (loss) ................. | e(1) | | Sch. D, line 12, col. (g) |
| | | (2) Total for year ................... | e(2) | | Sch. D, line 12, col. (f) |
| | f | Other portfolio income (loss) (attach schedule) ....... | 4f | | Enter on applicable line of your return. |
| | 5 | Guaranteed payments to partner ............. | 5 | | See page 6 of Partner's Instructions for Schedule K-1 (Form 1065). |
| | 6 | Net section 1231 gain (loss) (other than due to casualty or theft) .... | 6 | | |
| | 7 | Other income (loss) (attach schedule) ........... | 7 | | Enter on applicable line of your return. |
| Deductions | 8 | Charitable contributions (see instructions) (attach schedule) | 8 | | Sch. A, line 15 or 16 |
| | 9 | Section 179 expense deduction .............. | 9 | | See pages 7 and 8 of Partner's Instructions for Schedule K-1 (Form 1065). |
| | 10 | Deductions related to portfolio income (attach schedule) .... | 10 | | |
| | 11 | Other deductions (attach schedule) ............ | 11 | | |
| Credits | 12a | Low-income housing credit: | | | |
| | | (1) From section 42(j)(5) partnerships for property placed in service before 1990 | a(1) | | Form 8586, line 5 |
| | | (2) Other than on line 12a(1) for property placed in service before 1990 | a(2) | | |
| | | (3) From section 42(j)(5) partnerships for property placed in service after 1989 | a(3) | | |
| | | (4) Other than on line 12a(3) for property placed in service after 1989 | a(4) | | |
| | b | Qualified rehabilitation expenditures related to rental real estate activities | 12b | | |
| | c | Credits (other than credits shown on lines 12a and 12b) related to rental real estate activities ......... | 12c | | See page 8 of Partner's Instructions for Schedule K-1 (Form 1065). |
| | d | Credits related to other rental activities .......... | 12d | | |
| | 13 | Other credits .................. | 13 | | **MID 6-228** |

For Paperwork Reduction Act Notice, see instructions for Form 1065.

JSA

Schedule K-1 (Form 1065) 1999

| | (a) Distributive share item | | (b) Amount | (c) 1040 filers enter the amount in column (b) on: |
|---|---|---|---|---|
| **Investment Interest** | 14 a   Interest expense on investment debts . . . . . . . . . . . . . | 14a | | Form 4952, line 1 |
| | b   (1) Investment income included on lines 4a, 4b, 4c, and 4f . | b(1) | | See page 9 of Partner's Instructions for Schedule K-1 (Form 1065). |
| |    (2) Investment expenses included on line 10 . . . . . . . | b(2) | | |
| **Self-employment** | 15 a   Net earnings (loss) from self-employment . . . . . . . . . | 15a | | Sch. SE, Section A or B |
| | b   Gross farming or fishing income . . . . . . . . . . . . | 15b | | See page 9 of Partner's Instructions for |
| | c   Gross nonfarm income . . . . . . . . . . . . . . . . | 15c | | Schedule K-1 (Form 1065). |
| **Adjustments and Tax Preference Items** | 16 a   Depreciation adjustment on property placed in service after 1986 . | 16a | | See page 9 of Partner's Instructions for Schedule K-1 (Form 1065) and instructions for Form 6251. |
| | b   Adjusted gain or loss . . . . . . . . . . . . . . . . | 16b | | |
| | c   Depletion (other than oil and gas) . . . . . . . . . . . | 16c | | |
| | d   (1) Gross income from oil, gas, and geothermal properties . | d(1) | | |
| |    (2) Deductions allocable to oil, gas, and geothermal properties | d(2) | | |
| | e   Other adjustments and tax preference items *(attach schedule)* | 16e | | |
| **Foreign Taxes** | 17 a   Type of income ▶ _____ | | | Form 1116, check boxes |
| | b   Name of foreign country or possession ▶ _____ | | | |
| | c   Total gross income from sources outside the United States *(attach schedule)* . . . . . . . . . | 17c | | Form 1116, Part I |
| | d   Total applicable deductions and losses *(attach schedule)* . . . . | 17d | | |
| | e   Total foreign taxes (check one): ▶ ☐ Paid ☐ Accrued . . | 17e | | Form 1116, Part II Form 1116, Part III |
| | f   Reduction in taxes available for credit *(attach schedule)* . . . | 17f | | |
| | g   Other foreign tax information *(attach schedule)* . . . . . . . . | 17g | | See Instructions for Form 1116. |
| **Other** | 18   Section 59(e)(2) expenditures: a Type ▶ _____ | | | See page 9 of Partner's Instructions for Schedule K-1 (Form 1065). |
| | b   Amount . . . . . . . . . . . . . . . . . . . . . | 18b | | |
| | 19   Tax-exempt interest income . . . . . . . . . . . . . . . | 19 | | Form 1040, line 8b |
| | 20   Other tax-exempt income . . . . . . . . . . . . . . . | 20 | | See pages 9 and 10 of Partner's Instructions for Schedule K-1 (Form 1065). |
| | 21   Nondeductible expenses . . . . . . . . . . . . . . . | 21 | | |
| | 22   Distributions of money (cash and marketable securities) . . . . | 22 | | |
| | 23   Distributions of property other than money . . . . . . . . . | 23 | | |
| | 24   Recapture of low-income housing credit: | | | |
| | a   From section 42(j)(5) partnerships . . . . . . . . . . . . . | 24a | | Form 8611, line 8 |
| | b   Other than on line 24a . . . . . . . . . . . . . . . . | 24b | | |
| **Supplemental Information** | 25   Supplemental information required to be reported separately to each partner *(attach additional schedules if more space is needed)*: | | | |

--------------------------------------------------

--------------------------------------------------

--------------------------------------------------

--------------------------------------------------

--------------------------------------------------

--------------------------------------------------

--------------------------------------------------

--------------------------------------------------

--------------------------------------------------

--------------------------------------------------

**MID 6-229**

--------------------------------------------------

ENB-KP-002962

=================================================================================

## ITEM F, OTHER LIABILITIES

| | |
|---|---:|
| OTHER CURRENT LIABILITIES | 14,417. |
| LONG-TERM MORTGAGES, NOTES AND BONDS PAYABLE | 2,745,000. |
| | ---------------- |
| TOTAL OTHER LIABILITIES | 2,759,417. |
| | ================ |


## ITEM J, COLUMN(C) - RECONCILIATION OF INCOME

| | |
|---|---:|
| TOTAL INCOME PER SCHEDULE K-1 | -31,710. |
| LESS:  EXPENSES RECORDED ON BOOKS, NOT INCLUDED ON SCH. K-1: | |
|   AMORTIZATION | 11,337. |
| PLUS:  DEDUCTIONS ON SCH. K-1, NOT CHARGED AGAINST BOOKS: | |
|   AMORTIZATION | 31,125. |
| | ---------------- |
| TOTAL INCOME PER ITEM J, COLUMN(C) | -11,922. |
| | ================ |

MID 6-230
STATEMENT #1

9P9000 1 000

ENB-KP-002963

Form **1065**

Department of the Treasury
Internal Revenue Service

**Short Year Final Return**

## U. S. Return of Partnership Income

For calendar year 2000, or tax year beginning 01/01__, 2000, and ending 11/09/2000

▶ See separate instructions.

OMB No. 1545-0099

**2000**

| | | |
|---|---|---|
| **A** Principal business activity | **Name of partnership** | **D** Employer identification number |
| GAS TRANS. | BUTCHER INTEREST PARTNERSHIP | 76-0622250 |
| **B** Principal product or service | Number, street, and room or suite no. If a P.O. box, see page 13 of the instructions. | **E** Date business started |
| GAS TRANS. | 8325 LENEXA DR., SUITE 400 | 11/08/1999 |
| **C** Business code number | City or town, state, and ZIP code | **F** Total assets (see page 13 of the instructions) |
| 486000 | LENEXA          KS          66214 | $ 6,605,544. |

**G** Check applicable boxes: (1) ☐ Initial return (2) ☒ Final return (3) ☐ Change in address (4) ☐ Amended return

**H** Check accounting method: (1) ☐ Cash (2) ☒ Accrual (3) ☐ Other (specify) ▶ _____

**I** Number of Schedules K-1. Attach one for each person who was a partner at any time during the tax year ▶ _____ 2

**Caution:** *Include **only** trade or business income and expenses on lines 1a through 22 below. See the instructions for more information.*

| | | | | |
|---|---|---|---|---|
| **Income** | **1 a** Gross receipts or sales | 1a | 418,608. | |
| | **b** Less returns and allowances | 1b | | 1c 418,608. |
| | **2** Cost of goods sold (Schedule A, line 8) | | | 2 |
| | **3** Gross profit. Subtract line 2 from line 1c | | | 3 418,608. |
| | **4** Ordinary income (loss) from other partnerships, estates, and trusts (attach schedule) | | | 4 |
| | **5** Net farm profit (loss) (attach Schedule F (Form 1040)) | | | 5 |
| | **6** Net gain (loss) from Form 4797, Part II, line 18 | | | 6 |
| | **7** Other income (loss) (attach schedule) | | | 7 |
| | **8** Total Income (loss). Combine lines 3 through 7 | | | 8 418,608. |

| | | | | |
|---|---|---|---|---|
| **Deductions (see page 14 of the instructions for limitations)** | **9** Salaries and wages (other than to partners) (less employment credits) | | | 9 |
| | **10** Guaranteed payments to partners | | | 10 |
| | **11** Repairs and maintenance | | | 11 |
| | **12** Bad debts | | | 12 |
| | **13** Rent | | | 13 |
| | **14** Taxes and licenses | | | 14 |
| | **15** Interest | | | 15 |
| | **16 a** Depreciation (if required, attach Form 4562) | 16a | 442,942. | |
| | **b** Less depreciation reported on Schedule A and elsewhere on return | 16b | | 16c |
| | **17** Depletion (**Do not deduct oil and gas depletion.**) | | | 17 |
| | **18** Retirement plans, etc. | | | 18 |
| | **19** Employee benefit programs | | | 19 |
| | **20** Other deductions (attach schedule). See Statement 1. | | | 20 380,417. |
| | **21** Total deductions. Add the amounts shown in the far right column for lines 9 through 20 | | | 21 823,359. |
| | **22** Ordinary income (loss) from trade or business activities. Subtract line 21 from line 8 | | | 22 -404,751. |

**Please Sign Here**

Under penalties of perjury, I declare that I have examined this return, including accompanying schedules and statements, and to the best of my knowledge and belief, it is true, correct, and complete. Declaration of preparer (other than general partner or limited liability company member) is based on all information of which preparer has any knowledge.

▶ _[signature]_          ▶ 7/11/01
Signature of general partner or limited liability company member          Date

**Paid Preparer's Use Only**

| | | | |
|---|---|---|---|
| Preparer's signature ▶ _[signature]_ | Date 6/25/01 | Check if self-employed ▶ ☐ | Preparer's SSN or PTIN 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 |
| Firm's name (or yours if self-employed), address, and ZIP code | PricewaterhouseCoopers LLP 1201 LOUISIANA, SUITE 2900 HOUSTON, TX 77002 | | EIN ▶ 13-4008324 Phone no. 713-356-4000 |

For Paperwork Reduction Act Notice, see separate instructions.

Form **1065** (2000)

JSA
0P1010 4 000

GOVERNMENT EXHIBIT
G-68

MID 6-231

HBV3CR    2021    05/31/2001  17:33:27

ENB-KP-002964

## Schedule A    Cost of Goods Sold (see page 17 of the instructions)

| | | | |
|---|---|---|---|
| 1 | Inventory at beginning of year . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . | **1** | |
| 2 | Purchases less cost of items withdrawn for personal use . . . . . . . . . . . . . . . . . . . | **2** | |
| 3 | Cost of labor . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . | **3** | |
| 4 | Additional section 263A costs *(attach schedule)* . . . . . . . . . . . . . . . . . . . . . . | **4** | |
| 5 | Other costs *(attach schedule)* . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . | **5** | |
| 6 | **Total.** Add lines 1 through 5 . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . | **6** | |
| 7 | Inventory at end of year . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . | **7** | |
| 8 | **Cost of goods sold.** Subtract line 7 from line 6. Enter here and on page 1, line 2 . . . . . . . . . . . | **8** | |

9 a  Check all methods used for valuing closing inventory:

  (I)   ☐ Cost as described in Regulations section 1.471-3
  (II)  ☐ Lower of cost or market as described in Regulations section 1.471-4
  (III) ☐ Other (specify method used and attach explanation)▶ _ _ _ _ _ _ _ _ _ _ _ _ _ _ _ _ _ _ _ _ _

  b  Check this box if there was a writedown of "subnormal" goods as described in Regulations section 1.471-2(c) . . . . ▶ ☐
  c  Check this box if the LIFO inventory method was adopted this tax year for any goods *(if checked, attach Form 970)* . . . ▶ ☐
  d  Do the rules of section 263A (for property produced or acquired for resale) apply to the partnership? . . . . . ☐ **Yes**  ☐ **No**
  e  Was there any change in determining quantities, cost, or valuations between opening and closing inventory? . . ☐ **Yes**  ☐ **No**
     If "Yes," attach explanation.

## Schedule B    Other Information

| | | Yes | No |
|---|---|---|---|
| 1 | What type of entity is filing this return? Check the applicable box: | | |
| | a ☒ Domestic general partnership          b ☐ Domestic limited partnership | | |
| | c ☐ Domestic limited liability company    d ☐ Domestic limited liability partnership | | |
| | e ☐ Foreign partnership                   f ☐ Other ▶ _ _ _ _ _ _ _ _ _ _ _ _ _ _ _ _ _ | | |
| 2 | Are any partners in this partnership also partnerships? . . . . . . . . . . . . . . . . . . | | X |
| 3 | During the partnership's tax year, did the partnership own an interest in another partnership or in any foreign entity that was disregarded as an entity separate from its owner under Regulations sections 301.7701-2 and 301.7701-3? If yes, see instructions for required attachment . . . . . . . . . . . . . . . . . | | X |
| 4 | Is this partnership subject to the consolidated audit procedures of sections 6221 through 6233? If "Yes," see **Designation of Tax Matters Partner** below. | | X |
| 5 | Does this partnership meet **all three** of the following requirements? | | |
| a | The partnership's total receipts for the tax year were less than $250,000; | | |
| b | The partnership's total assets at the end of the tax year were less than $600,000; **and** | | |
| c | Schedules K-1 are filed with the return and furnished to the partners on or before the due date (including extensions) for the partnership return. | | |
| | If "Yes," the partnership is not required to complete Schedules L, M-1, and M-2; Item F on page 1 of Form 1065; or Item J on Schedule K-1. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . | | X |
| 6 | Does this partnership have any foreign partners? . . . . . . . . . . . . . . . . . . . . . | | X |
| 7 | Is this partnership a publicly traded partnership as defined in section 469(k)(2)? . . . . . . . . . . | | X |
| 8 | Has this partnership filed, or is it required to file, **Form 8264,** Application for Registration of a Tax Shelter? . . . . . . | | X |
| 9 | At any time during calendar year 2000, did the partnership have an interest in or a signature or other authority over a financial account in a foreign country (such as a bank account, securities account, or other financial account)?  See page 19 of the instructions for exceptions and filing requirements for Form TD F 90-22.1. If "Yes," enter the name of the foreign country. ▶ _ _ _ _ _ _ _ _ _ _ _ _ _ _ _ _ _ _ _ | | X |
| 10 | During the tax year, did the partnership receive a distribution from, or was it the grantor of, or transferor to, a foreign trust? If "Yes," the partnership may have to file Form 3520. See page 19 of the instructions . . . . . . . . . | | X |
| 11 | Was there a distribution of property or a transfer (e.g., by sale or death) of a partnership interest during the tax year?  If "Yes," you may elect to adjust the basis of the partnership's assets under section 754 by attaching the statement described under **Elections Made By the Partnership** on page 7 of the instructions . . . . . . . . . . . . | X | |
| 12 | Enter the number of Forms 8865 attached to this return ▶ _ _ _ _ _ _ _ _ _ _ _ _ _ _ _ _ | | |

**Designation of Tax Matters Partner** (see page 19 of the instructions)

Enter below the general partner designated as the tax matters partner (TMP) for the tax year of this return:

| Name of designated TMP ▶ | **MID LOUISIANA GAS COMPANY** | Identifying number of TMP ▶ | **76-0460300** |
|---|---|---|---|
| Address of designated TMP ▶ | **1100 LOUISIANA, SUITE 2900** | | |
| | **HOUSTON               TX  77002** | | |

| Schedule K | Partners' Shares of Income, Credits, Deductions, etc. | | |
|---|---|---|---|

| | | (a) Distributive share items | | (b) Total amount |
|---|---|---|---|---|
| **Income (Loss)** | 1 | Ordinary income (loss) from trade or business activities (page 1, line 22) | 1 | -404,751. |
| | 2 | Net income (loss) from rental real estate activities *(attach Form 8825)* | 2 | |
| | 3a | Gross income from other rental activities | 3a | |
| | b | Expenses from other rental activities *(attach schedule)* | 3b | |
| | c | Net income (loss) from other rental activities. Subtract line 3b from line 3a | 3c | |
| | 4 | Portfolio income (loss): a Interest income | 4a | |
| | b | Ordinary dividends | 4b | |
| | c | Royalty income | 4c | |
| | d | Net short-term capital gain (loss) *(attach Schedule D (Form 1065))* | 4d | |
| | e | Net long-term capital gain (loss) *(attach Schedule D (Form 1065))*: | | |
| | | (1) 28% rate gain (loss) ▶ _ _ _ _ _ _ _ _ _ (2) Total for year ▶ | 4e(2) | |
| | f | Other portfolio income (loss) *(attach schedule)* | 4f | |
| | 5 | Guaranteed payments to partners | 5 | |
| | 6 | Net section 1231 gain (loss) (other than due to casualty or theft) *(attach Form 4797)* | 6 | |
| | 7 | Other income (loss) *(attach schedule)* | 7 | |
| **Deductions** | 8 | Charitable contributions *(attach schedule)* | 8 | |
| | 9 | Section 179 expense deduction *(attach Form 4562)* | 9 | |
| | 10 | Deductions related to portfolio income (itemize) | 10 | |
| | 11 | Other deductions *(attach schedule)* | 11 | |
| **Credits** | 12a | Low-income housing credit: | | |
| | | (1) From partnerships to which section 42(j)(5) applies for property placed in service before 1990 | 12a(1) | |
| | | (2) Other than on line 12a(1) for property placed in service before 1990 | 12a(2) | |
| | | (3) From partnerships to which section 42(j)(5) applies for property placed in service after 1989 | 12a(3) | |
| | | (4) Other than on line 12a(3) for property placed in service after 1989 | 12a(4) | |
| | b | Qualified rehabilitation expenditures related to rental real estate activities *(attach Form 3468)* | 12b | |
| | c | Credits (other than credits shown on lines 12a and 12b) related to rental real estate activities | 12c | |
| | d | Credits related to other rental activities | 12d | |
| | 13 | Other credits | 13 | |
| **Invest-ment Interest** | 14a | Interest expense on investment debts | 14a | |
| | b | (1) Investment income included on lines 4a, 4b, 4c, and 4f above | 14b(1) | |
| | | (2) Investment expenses included on line 10 above | 14b(2) | |
| **Self-Employ-ment** | 15a | Net earnings (loss) from self-employment | 15a | |
| | b | Gross farming or fishing income | 15b | |
| | c | Gross nonfarm income | 15c | |
| **Adjustments and Tax Preference Items** | 16a | Depreciation adjustment on property placed in service after 1986 | 16a | |
| | b | Adjusted gain or loss | 16b | |
| | c | Depletion (other than oil and gas) | 16c | |
| | d | (1) Gross income from oil, gas, and geothermal properties | 16d(1) | |
| | | (2) Deductions allocable to oil, gas, and geothermal properties | 16d(2) | |
| | e | Other adjustments and tax preference items *(attach schedule)* | 16e | |
| **Foreign Taxes** | 17a | Name of foreign country or U.S. possession ▶ _ _ _ _ _ _ _ _ _ _ _ _ | | |
| | b | Gross income sourced at partner level | 17b | |
| | c | Foreign gross income sourced at partnership level: | | |
| | | (1) Passive ▶ _ _ _ _ _ _ _ (2) Listed categories *(attach schedule)* ▶ _ _ _ _ _ _ (3) General limitation ▶ | 17c(3) | |
| | d | Deductions allocated and apportioned at partner level: | | |
| | | (1) Interest expense ▶ _ _ _ _ _ _ _ _ _ _ _ _ _ _ (2) Other ▶ | 17d(2) | |
| | e | Deductions allocated and apportioned at partnership level to foreign source income: | | |
| | | (1) Passive ▶ _ _ _ _ _ _ (2) Listed categories *(attach schedule)* ▶ _ _ _ _ _ _ (3) General limitation ▶ | 17e(3) | |
| | f | Total foreign taxes (check one): ▶ [ ] Paid [ ] Accrued | 17f | |
| | g | Reduction in taxes available for credit and gross income from all sources *(attach schedule)* | 17g | |
| **Other** | 18 | Section 59(e)(2) expenditures: a Type ▶ _ _ _ _ _ _ _ _ _ _ _ _ _ b Amount ▶ | 18b | |
| | 19 | Tax-exempt interest income | 19 | |
| | 20 | Other tax-exempt income | 20 | |
| | 21 | Nondeductible expenses | 21 | |
| | 22 | Distributions of money (cash and marketable securities) | 22 | |
| | 23 | Distributions of property other than money | 23 | |
| | 24 | Other items and amounts required to be reported separately to partners *(attach schedule)* | | |

ENB-KP-002966

## Analysis of Net Income (Loss)

| | | | | | | |
|---|---|---|---|---|---|---|
| 1 | Net income (loss). Combine Schedule K, lines 1 through 7 in column (b). From the result, subtract the sum of Schedule K, lines 8 through 11, 14a, 17f, and 18b . . . . . . . . . . . . . . . . . . . | | | | | **1** | **-404,751.** |

| 2 | Analysis by partner type: | (i) Corporate | (ii) Individual (active) | (iii) Individual (passive) | (iv) Partnership | (v) Exempt organization | (vi) Nominee/Other |
|---|---|---|---|---|---|---|---|
| a | General partners | -404,751. | | | | | |
| b | Limited partners | | | | | | |

## Schedule L   Balance Sheets per Books (Not required if Question 5 on Schedule B is answered "Yes.")

| | Assets | Beginning of tax year (a) | (b) | End of tax year (c) | (d) |
|---|---|---|---|---|---|
| 1 | Cash | | 62,383. | | NONE |
| 2a | Trade notes and accounts receivable | 68,355. | | NONE | NONE |
| b | Less allowance for bad debts | | 68,355. | | NONE |
| 3 | Inventories | | | | |
| 4 | U.S. government obligations | | | | |
| 5 | Tax-exempt securities | | | | |
| 6 | Other current assets (attach schedule) | | | | |
| 7 | Mortgage and real estate loans | | | | |
| 8 | Other investments (attach schedule) | | | | |
| 9a | Buildings and other depreciable assets | | | | |
| b | Less accumulated depreciation | | | | |
| 10a | Depletable assets | | | | |
| b | Less accumulated depletion | | | | |
| 11 | Land (net of any amortization) | | | | |
| 12a | Intangible assets (amortizable only) | 6,500,000. | | NONE | |
| b | Less accumulated amortization | 25,194. | 6,474,806. | NONE | NONE |
| 13 | Other assets (attach schedule) | | | | |
| 14 | Total assets | | 6,605,544. | | NONE |
| | **Liabilities and Capital** | | | | |
| 15 | Accounts payable | | | | |
| 16 | Mortgages, notes, bonds payable in less than 1 year | | | | |
| 17 | Other current liabilities (attach schedule) | Stmt 2 | 32,037. | | NONE |
| 18 | All nonrecourse loans | | | | |
| 19 | Mortgages, notes, bonds payable in 1 year or more | | 6,100,000. | | NONE |
| 20 | Other liabilities (attach schedule) | | | | |
| 21 | Partners' capital accounts | | 473,507. | | NONE |
| 22 | Total liabilities and capital | | 6,605,544. | | NONE |

## Schedule M-1   Reconciliation of Income (Loss) per Books With Income (Loss) per Return
(Not required if Question 5 on Schedule B is answered "Yes." See page 30 of the instructions.)

| | | | | | |
|---|---|---|---|---|---|
| 1 | Net income (loss) per books | -150,303. | 6 | Income recorded on books this year not included on Schedule K, lines 1 through 7 (itemize): | |
| 2 | Income included on Schedule K, lines 1 through 4, 6, and 7, not recorded on books this year (itemize): | | a | Tax-exempt interest $ _____ | |
| 3 | Guaranteed payments (other than health insurance) | | 7 | Deductions included on Schedule K, lines 1 through 11, 14a, 17f, and 18b, not charged against book income this year (itemize): | |
| 4 | Expenses recorded on books this year not included on Schedule K, lines 1 through 11, 14a, 17f, and 18b (itemize): | | a | Depreciation $ _____ See Statement 2 | 380,417. |
| a | Depreciation $ _____ | | 8 | Add lines 6 and 7 . . . . . . . . . . . | 380,417. |
| b | Travel and entertainment $ _____ See Statement 2 | 125,969. | 9 | Income (loss) (Analysis of Net Income (Loss), line 1). Subtract line 8 from line 5 . . . . | -404,751. |
| 5 | Add lines 1 through 4 | -24,334. | | | |

## Schedule M-2   Analysis of Partners' Capital Accounts (Not required if Question 5 on Schedule B is answered "Yes.")

| | | | | | |
|---|---|---|---|---|---|
| 1 | Balance at beginning of year | 473,507. | 6 | Distributions:  a Cash . . . . . . . . . . | |
| 2 | Capital contributed during year | | | b Property . . . . . . . . . | |
| 3 | Net income (loss) per books | -150,303. | 7 | Other decreases (itemize): _____ See Statement 2 | 323,204. |
| 4 | Other increases (itemize): _____ | | 8 | Add lines 6 and 7 . . . . . . . . . . | 323,204. |
| 5 | Add lines 1 through 4 | 323,204. | 9 | Balance at end of year Subtract line 8 from line 5 | NONE |

JSA
0P1035 2 000

**MID 6-234**   Form 1065 (2000)

ENB-KP-002967

Form **4562**

Department of the Treasury
Internal Revenue Service (99)

# Depreciation and Amortization
## (Including Information on Listed Property)

▶ See separate instructions.　▶ Attach this form to your return.

OMB No 1545-0172

**2000**

Attachment
Sequence No **67**

Name(s) shown on return

BUTCHER INTEREST PARTNERSHIP

Business or activity to which this form relates

Identifying number

76-0622250

BUTCHER INTEREST PARTNERSHIP

## Part I　Election To Expense Certain Tangible Property (Section 179)
**Note: If you have any "listed property," complete Part V before you complete Part I.**

| | | | |
|---|---|---|---|
| 1 | Maximum dollar limitation. If an enterprise zone business, see page 2 of the instructions . . . . . . . . . . . . | **1** | 20,000. |
| 2 | Total cost of section 179 property placed in service. See page 2 of the instructions . . . . . . . . . . . . | **2** | |
| 3 | Threshold cost of section 179 property before reduction in limitation . . . . . . . . . . . . | **3** | 200,000. |
| 4 | Reduction in limitation. Subtract line 3 from line 2. If zero or less, enter -0- . . . . . . . . . . . . | **4** | |
| 5 | Dollar limitation for tax year. Subtract line 4 from line 1. If zero or less, enter -0-. If married filing separately, see page 2 of the instructions . . . . . . . . . . . . | **5** | |

| (a) Description of property | (b) Cost (business use only) | (c) Elected cost |
|---|---|---|
| 6 | | |

| | | | |
|---|---|---|---|
| 7 | Listed property. Enter amount from line 27 . . . . . . . . . . . . | **7** | |
| 8 | Total elected cost of section 179 property. Add amounts in column (c), lines 6 and 7 . . . . . . . . . . . . | **8** | |
| 9 | Tentative deduction. Enter the smaller of line 5 or line 8 . . . . . . . . . . . . | **9** | |
| 10 | Carryover of disallowed deduction from 1999. See page 3 of the instructions . . . . . . . . . . . . | **10** | |
| 11 | Business income limitation. Enter the smaller of business income (not less than zero) or line 5 (see instructions) . . . | **11** | |
| 12 | Section 179 expense deduction. Add lines 9 and 10, but do not enter more than line 11 . . . . . . . . . . . . | **12** | |
| 13 | Carryover of disallowed deduction to 2001. Add lines 9 and 10, less line 12 . . . . . ▶ | **13** | |

**Note: Do not use Part II or Part III below for listed property (automobiles, certain other vehicles, cellular telephones, certain computers, or property used for entertainment, recreation, or amusement). Instead, use Part V for listed property.**

## Part II　MACRS Depreciation for Assets Placed in Service Only During Your 2000 Tax Year (Do not include listed property.)

### Section A - General Asset Account Election

14　If you are making the election under section 168(i)(4) to group any assets placed in service during the tax year into one
　　or more general asset accounts, check this box. See page 3 of the instructions . . . . . . . . . . . . . . . . ▶ ☐

### Section B - General Depreciation System (GDS) (See page 3 of the instructions.)

| (a) Classification of property | (b) Month and year placed in service | (c) Basis for depreciation (business/investment use only - see instructions) | (d) Recovery period | (e) Convention | (f) Method | (g) Depreciation deduction |
|---|---|---|---|---|---|---|
| 15a　3-year property | | | | | | |
| b　5-year property | | | | | | |
| c　7-year property | | | | | | |
| d　10-year property | | | | | | |
| e　15-year property | | | | | | |
| f　20-year property | | | | | | |
| g　25-year property | | | 25 yrs. | | S/L | |
| h　Residential rental property | | | 27.5 yrs. | M M | S/L | |
| | | | 27.5 yrs. | M M | S/L | |
| i　Nonresidential real property | | | 39 yrs. | M M | S/L | |
| | | | | M M | S/L | |

### Section C - Alternative Depreciation System (ADS) (See page 5 of the instructions.)

| | | | | | | |
|---|---|---|---|---|---|---|
| 16a　Class life | | | | | S/L | |
| b　12-year | | | 12 yrs. | | S/L | |
| c　40-year | | | 40 yrs. | M M | S/L | |

## Part III　Other Depreciation (Do not include listed property.) (See page 5 of the instructions.)

| | | | |
|---|---|---|---|
| 17 | GDS and ADS deductions for assets placed in service in tax years beginning before 2000 . . . . . . . . . . . . | **17** | |
| 18 | Property subject to section 168(f)(1) election . . . . . . . . . . . . | **18** | |
| 19 | ACRS and other depreciation . . . . . . . . . . . . | **19** | |

## Part IV　Summary (See page 6 of the instructions.)

| | | | |
|---|---|---|---|
| 20 | Listed property. Enter amount from line 26 . . . . . . . . . . . . | **20** | |
| 21 | Total. Add deductions from line 12, lines 15 and 16 in column (g), and lines 17 through 20. Enter here and on the appropriate lines of your return. Partnerships and S corporations - see instructions . . . . . . . . | **21** | |
| 22 | For assets shown above and placed in service during the current year, enter the portion of the basis attributable to section 263A costs . . . | **22** | |

MID 6-235

JSA For Paperwork Reduction Act Notice, see page 9 of the instructions.
0X2300 2 000

Form **4562** (2000)

ENB-KP-002968

**Part V**   **Listed Property (Include automobiles, certain other vehicles, cellular telephones, certain computers, and property used for entertainment, recreation, or amusement.)**

Note: *For any vehicle for which you are using the standard mileage rate or deducting lease expense, complete only 23a, 23b, columns (a) through (c) of Section A, all of Section B, and Section C if applicable.*

**Section A - Depreciation and Other Information (Caution: *See page 7 of the instructions for limits for passenger automobiles.*)**

| 23a Do you have evidence to support the business/investment use claimed? | | | | | Yes | No | 23b If "Yes," is the evidence written? | | Yes | No |
|---|---|---|---|---|---|---|---|---|---|---|

| (a) Type of property (list vehicles first) | (b) Date placed in service | (c) Business/ investment use percentage | (d) Cost or other basis | (e) Basis for depreciation (business/investment use only) | (f) Recovery period | (g) Method/ Convention | (h) Depreciation deduction | (i) Elected section 179 cost |
|---|---|---|---|---|---|---|---|---|
| **24** Property used more than 50% in a qualified business use (See page 6 of the instructions.): | | | | | | | | |
| | | % | | | | | | |
| | | % | | | | | | |
| | | % | | | | | | |
| **25** Property used 50% or less in a qualified business use (See page 6 of the instructions.): | | | | | | | | |
| | | % | | | | S/L - | | |
| | | % | | | | S/L - | | |
| | | % | | | | S/L - | | |
| **26** Add amounts in column (h). Enter the total here and on line 20, page 1 . . . . . . . . . . . . . . **26** | | | | | | | | |
| **27** Add amounts in column (i). Enter the total here and on line 7, page 1 . . . . . . . . . . . . . . . . . . . **27** | | | | | | | | |

**Section B - Information on Use of Vehicles**

Complete this section for vehicles used by a sole proprietor, partner, or other "more than 5% owner," or related person.

If you provided vehicles to your employees, first answer the questions in Section C to see if you meet an exception to completing this section for those vehicles.

| | (a) Vehicle 1 | | (b) Vehicle 2 | | (c) Vehicle 3 | | (d) Vehicle 4 | | (e) Vehicle 5 | | (f) Vehicle 6 | |
|---|---|---|---|---|---|---|---|---|---|---|---|---|
| **28** Total business/investment miles driven during the year (do not include commuting miles - see page 1 of the instructions) . . . . . . . . . | | | | | | | | | | | | |
| **29** Total commuting miles driven during the year . . . . | | | | | | | | | | | | |
| **30** Total other personal (noncommuting) miles driven . . . . . . . . . . . . . . . | | | | | | | | | | | | |
| **31** Total miles driven during the year. Add lines 28 through 30 . . . . . . . . . . . | | | | | | | | | | | | |
| | Yes | No | Yes | No | Yes | No | Yes | No | Yes | No | Yes | No |
| **32** Was the vehicle available for personal use during off-duty hours? | | | | | | | | | | | | |
| **33** Was the vehicle used primarily by a more than 5% owner or related person? . . . . . . | | | | | | | | | | | | |
| **34** Is another vehicle available for personal use? . . . . . . . . . . . . . . . | | | | | | | | | | | | |

**Section C - Questions for Employers Who Provide Vehicles for Use by Their Employees**

Answer these questions to determine if you meet an exception to completing Section B for vehicles used by employees who are not more than 5% owners or related persons. See page 8 of the instructions.

| | Yes | No |
|---|---|---|
| **35** Do you maintain a written policy statement that prohibits all personal use of vehicles, including commuting, by your employees? . . . . . . . . . . . . . . . . . . . . | | |
| **36** Do you maintain a written policy statement that prohibits personal use of vehicles, except commuting, by your employees? See page 8 of the instructions for vehicles used by corporate officers, directors, or 1% or more owners . . . . . . . . . . | | |
| **37** Do you treat all use of vehicles by employees as personal use? . . . . . . . . . . . . . | | |
| **38** Do you provide more than five vehicles to your employees, obtain information from your employees about the use of the vehicles, and retain the information received? . . . . . . . . . . . | | |
| **39** Do you meet the requirements concerning qualified automobile demonstration use? See page 8 of the instructions . . . . . . . . . | | |

Note: *If your answer to 35, 36, 37, 38, or 39 is "Yes," do not complete Section B for the covered vehicles.*

**Part VI**   **Amortization**

| (a) Description of costs | (b) Date amortization begins | (c) Amortizable amount | (d) Code section | (e) Amortization period or percentage | (f) Amortization for this year |
|---|---|---|---|---|---|
| **40** Amortization of costs that begins during your 2000 tax year (See page 8 of the instructions.): | | | | | |
| | | | | | |
| **41** Amortization of costs that began before 2000 . . . . . . . . . . . . . . . . . . **41** | | | | | 380,417. |
| **42** Total. Add amounts in column (f). See page 9 of the instructions for where to report. . . . . . . . . . . . . . **42** | | | | | 380,417. |

MID 6-236

ENB-KP-002969

BUTCHER INTEREST PARTNERSHIP
Description of Property
BUTCHER INTEREST PARTNERSHIP

76-0622250

# 2000 Amortization

General Trade or Business

| Asset description | Date placed in service | Cost or basis | Accumulated amortization | Code | Life | Current-year amortization |
|---|---|---|---|---|---|---|
| Intangible Interest | 11/08/1999 | 6,225,000. | 69,167. | 197 | 15.000 | 380,417. |
| Less: Retired Assets . . . . . . . . . . . | | | | | | |
| TOTALS . . . . . . . . . . . | | 6,225,000. | 69,167. | | | 380,417. |

* Assets Retired

JSA
0X9026 1 000

**MID 6-237**

HBV3CR   2021   05/31/2001   10:42:03

ENB-KP-002970

Form **8736**
(Rev. October 2000)

Department of the Treasury
Internal Revenue Service

**Application for Automatic Extension of Time To File U.S. Return for a Partnership, REMIC, or for Certain Trusts**

▶ File a separate application for each return.

OMB No 1545-1054

| Please type or print. | Name |  |  | Employer identification number |
|---|---|---|---|---|
| File by the due date for filing the return for which an extension is requested. See instructions. | BUTCHER INTEREST PARTNERSHIP | | | 76-0622250 |

Number, street, and room or suite no. If a P.O. box, see instructions.

8325 LENEXA DR., SUITE 400

City or town, state, and ZIP code. If a foreign address, enter city, province or state, and country. Follow the country's practice for entering the postal code.

LENEXA, KS 66214

**1** I request an automatic **3-month** extension of time to file (check only one):

☐ Form 1041  ☐ Form 1041-QFT  ☒ Form 1065  ☐ Form 1065-B  ☐ Form 1066

**2** If the entity does not have an office or place of business in the United States, check this box . . . . . . . . . . . . . . . . . . . . ▶ ☐

**3a** For calendar year _____, or other tax year beginning _01/01____, _2000__, and ending ____11/09_____, _2000__

**b** If this tax year is for less than 12 months, check reason:

☐ Initial return  ☒ Final return  ☐ Change in accounting period

**4** If this extension is requested for Form 1041, Form 1041-QFT, Form 1065-B, or Form 1066, enter the following amounts:

**a** Tentative total tax from Form 1041, Form 1041-QFT, Form 1065-B, or Form 1066 (see instructions) . . . . . . . . . . . . _____

**b** Refundable credits and estimated tax payments, including any prior year overpayment allowed as a credit, from Form 1041, Form 1041-QFT, or Form 1065-B (see instructions). REMICs, enter -0- . . . . . . . . . . _____

**c** Balance due. Subtract line 4b from line 4a. If zero or less, enter -0-. Enclose payment, if any, with Form 8736 (see instructions) . . . . . . . . . . . . . . . . . . . . . . . . . . . ▶

PricewaterhouseCoopers LLP
1201 Louisiana, Ste. 2900, Hou TX 77002

MID 6-238

ENB-KP-002971

Form **8800**
(Rev. September 2000)
Department of the Treasury
Internal Revenue Service

**App.....ion for Additional Extension of .....  to File
U.S. Return for a Partnership, REMIC, or for Certain Trusts**

▶ File a separate application for each return.

OMB No. 1545-1057

| Please type or print. File the original and one copy by the due date for filing the return for which an extension is requested. See Instructions. | Name<br>BUTCHER INTEREST PARTNERSHIP | Employer identification number<br>76-0622250 |
|---|---|---|
| | Number, street, and room or suite no. If a P.O. box, see instructions<br>8325 LENEXA DR., SUITE 400 | |
| | City or town, state, and ZIP code. If a foreign address, enter city, province or state, and country. Follow the country's practice for entering the postal code.<br>LENEXA, KS  66214 | |

**1**   I request an additional extension of time until    **09/17 , 2001** , to file (check only one):
☐ Form 1041    ☐ Form 1041-QFT   ☒ Form 1065    ☐ Form 1065-B    ☐ Form 1066

**2**   If the entity does not have an office or place of business in the United States, check this box      ▶ ☐

**3 a**   For calendar year _____ , or other tax year beginning **01/01 , 2000** , and ending **11/09 , 2000**
   **b**   If this tax year is for less than 12 months, check reason: ☐ Initial return   ☒ Final return    ☐ Change in accounting period

**4**   Explain why the entity needs an extension. All entities filing must give an adequate explanation.
THE TAXPAYER RESPECTFULLY REQUESTS ADDITIONAL TIME IN ORDER TO GATHER
THE INFORMATION NECESSARY TO FILE A COMPLETE AND ACCURATE RETURN.
_____
_____
_____
_____
_____
_____
_____

**5**   Has the entity filed Form 8736 to request an extension of time to file for this tax year? ☒ Yes ☐ No
If you checked "No," we will grant an extension only for undue hardship. Fully explain the hardship on line 4.

**Signature and Verification**

Under penalties of perjury, I declare that I have examined this form, including accompanying schedules and statements, and to the best of my knowledge and belief, it is true, correct, and complete, and that I am authorized to prepare this form.

Signature ▶ _7QPl_    Title ▶ _CPA_    Date ▶ 6/11/01

**File original and one copy. The IRS will show below whether or not your application is approved and will return the copy.**

Notice to Applicant - To Be Completed by the IRS.

☐   We HAVE approved this application. Please attach this form to the entity's return.

☐   We HAVE NOT approved this application.
However, we have granted a 10-day grace period to _____ . This grace period is considered a valid extension of time for elections otherwise required to be made on a timely return. Please attach this form to the entity's return.

☐   We HAVE NOT approved this application. After considering the reasons stated in item 4 above, we cannot grant this request for an extension of time to file. We are not granting a 10-day grace period.

☐   We cannot consider this application because it was filed after the due date of the return for which an extension was requested.

☐   Other: _____

By: _____

Director _____    Date _____

If you want a copy of this form to be returned to an address other than that shown above, please enter the address to which the copy should be sent.

| Please Type or Print | Name<br>PricewaterhouseCoopers LLP | |
|---|---|---|
| | Number, street, and room or suite no. (If a P.O. box, see instructions.)<br>1201 LOUISIANA, SUITE 2900 | |
| | City or town, state, and ZIP code. If a foreign address, enter city, province or state, and country. Follow the country's practice for entering the postal code.<br>HOUSTON, TX  77002 | |

For Paperwork Reduction Act Notice, see back of form.      Form **8800** (Rev. 9-2000)

JSA
0X8092 4.000

PricewaterhouseCoopers LLP
1201 Louisiana, Ste. 2900, Hou TX 77002

MID 6-239

ENB-KP-002972

======================================================================

## Line 20 - Page 1 - Other Deductions
====================================

Amortization                                                   380,417.
                                                        ---------------
   Total Other Deductions                        380,417.
                                                        ===============

ENB-KP-002973

0XX053 1 000

| Schedule L - Line 17 - Other Current Liabilities | Beginning | Ending |
|---|---|---|
| ACCRUED INTEREST PAYABLE | 32,037. | NONE |
| Total Other Current Liabilities | 32,037. | NONE |

### Schedule M-1 - Line 4b - Expenses Recorded on Books but not Deducted

| | |
|---|---|
| Amortization | 125,969. |
| Total Other Expenses Recorded on Books but not Deducted | 125,969. |

### Schedule M-1 - Line 7a - Other Deductions in Return not on Books

| | |
|---|---|
| Amortization | 380,417. |
| Total Deductions on Tax Return not charged against Book Income | 380,417. |

### Schedule M-2 - Line 7 - Other decreases

| | |
|---|---|
| Adjustment for final year return | 323,204. |
| Total Other Decreases | 323,204. |

OXX063 1 000

ENB-KP-002974

BUTCHER INTEREST PARTNERSHIP                          EIN 76-0622250
8325 LENEXA DR., SUITE 400
LENEXA, KS 66214
FOR THE YEAR ENDED NOVEMBER 09, 2000

### Election to Adjust Basis of Partnership Property

Butcher Interest Partnership hereby elect to under Section 754 of the Internal Revenue
Code to apply the provisions of Section 743(b) in adjusting the basis of partnership
property for the taxable year ending November 09, 2000.

_____

_____
Signature of Partner                                    Date

**MID 6-242**

ENB-KP-002975

Butcher Interest Partnership                                    EIN: 76-0622250
8325 LENEXA DR., SUITE 400
LENEXA, KS  66214

FORM 1065
January 1, 2000 – November 9, 2000

<u>Statement Regarding Final Return Filing of Butcher Interest Partnership</u>

On November 9, 2000, Mid Louisiana Gas Company (55% Partner) purchased the remaining partnership interest in Butcher Interest Partnership from K-Pipe Group, Inc. (45% partner). As a result, Butcher Interest Partnership has ceased to exist on November 9, 2000.

ENB-KP-002976

# Schedule K-1, Item J - Analysis of Partners Capital Accounts

| Partner Number | A. Capital Account at Beginning of Year | B. Capital Contributed During Year | C. Partners' Shares of Sch. M-2, Lines 3, 4, and 7 | D. Withdrawals and Distributions | E. Capital Account at End of Year |
|---|---|---|---|---|---|
| 1 | 260,429. | | -260,429. | | NONE |
| 2 | 213,078. | | -213,078. | | NONE |
| | | | | | |
| | | | | | |
| | | | | | |
| | | | | | |
| | | | | | |
| | | | | | |
| | | | | | |
| | | | | | |
| | | | | | |
| | | | | | |
| TOTALS | 473,507. | | -473,507. | | NONE |

JSA
0P9040 1 000
BUTCHER INTEREST PARTNERSHIP
HRV3CR   2021   05/31/2001 10:42:03

MID 6-244          76-0622250

ENB-KP-002977

**SCHEDULE K-1**
**(Form 1065)**
Department of the Treasury
Internal Revenue Service

# Partner's Share of Income, Credits, Deductions, etc.

▶ See separate instructions.

For calendar year 2000 or tax year beginning  01/01 , 2000, and ending 11/09/2000

OMB No. 1545-0099

**2000**

| Partner's identifying number ▶ 48-1031292 | Partnership's identifying number ▶ 76-0622250 |
|---|---|

| Partner's name, address, and ZIP code  **Partner #    1** | Partnership's name, address, and ZIP code |
|---|---|
| K-PIPE GROUP, INC.<br>C/O SCALP<br>750 LEXINGTON AVE., 30TH FLOOR<br>NEW YORK, NY 10022 | BUTCHER INTEREST PARTNERSHIP<br>8325 LENEXA DR., SUITE 400<br>LENEXA, KS  66214 |

**A**  This partner is a  [X] general partner  [ ] limited partner
　[ ] limited liability company member

**B**  What type of entity is this partner? ▶ Corporation

**C**  Is this partner a  [X] domestic or a  [ ] foreign partner?

**D**  Enter partner's percentage of:

| | (i) Before change or termination | (ii) End of year |
|---|---|---|
| Profit sharing | 55.000000 % | None % |
| Loss sharing | 55.000000 % | None % |
| Ownership of capital | 55.000000 % | None % |

**E**  IRS Center where partnership filed return: Austin

**F**  Partner's share of liabilities (see instructions):

Nonrecourse _____

Qualified nonrecourse financing _____

Other _____

**G**  Tax shelter registration number ▶ _____

**H**  Check here if this partnership is a publicly traded partnership as defined in section 469(k)(2) . . . . . . . . [ ]

**I**  Check applicable boxes: (1) [X] Final K-1  (2) [ ] Amended K-1

**J**  Analysis of partner's capital account:

| (a) Capital account at beginning of year | (b) Capital contributed during year | (c) Partner's share of lines 3, 4, and 7, Form 1065, Schedule M-2 | (d) Withdrawals and distributions | (e) Capital account at end of year (combine columns (a) through (d)) |
|---|---|---|---|---|
| 260,429. | | -260,429. | ( ) | NONE |

| | | (a) Distributive share item | | (b) Amount | (c) 1040 filers enter the amount in column (b) on: |
|---|---|---|---|---|---|
| **Income (Loss)** | 1 | Ordinary income (loss) from trade or business activities . . . . . | 1 | -222,613. | See page 6 of Partner's Instructions for Schedule K-1 (Form 1065). |
| | 2 | Net income (loss) from rental real estate activities . . . . . . . . | 2 | | |
| | 3 | Net income (loss) from other rental activities . . . . . . . . . . . | 3 | | |
| | 4 | Portfolio income (loss): | | | |
| | a | Interest . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . | 4a | | Sch. B, Part I, line 1 |
| | b | Ordinary dividends . . . . . . . . . . . . . . . . . . . . . . . . . . | 4b | | Sch. B, Part II, line 5 |
| | c | Royalties . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . | 4c | | Sch. E, Part I, line 4 |
| | d | Net short-term capital gain (loss) . . . . . . . . . . . . . . . . . | 4d | | Sch. D, line 5, col. (f) |
| | e | Net long-term capital gain (loss): | | | |
| | | (1) 28% rate gain (loss) . . . . . . . . . . . . . . . . . . . . . . | 4e(1) | | Sch. D, line 12, col. (g) |
| | | (2) Total for year . . . . . . . . . . . . . . . . . . . . . . . . . | 4e(2) | | Sch. D, line 12, col. (f) |
| | f | Other portfolio income (loss) (attach schedule) . . . . . . . . . | 4f | | Enter on applicable line of your return |
| | 5 | Guaranteed payments to partner . . . . . . . . . . . . . . . . . . | 5 | | See page 6 of Partner's Instructions for Schedule K-1 (Form 1065). |
| | 6 | Net section 1231 gain (loss) (other than due to casualty or theft) . . . . | 6 | | |
| | 7 | Other income (loss) (attach schedule) . . . . . . . . . . . . . . . | 7 | | Enter on applicable line of your return |
| **Deductions** | 8 | Charitable contributions (see instructions) (attach schedule) . . . . . | 8 | | Sch. A, line 15 or 16 |
| | 9 | Section 179 expense deduction . . . . . . . . . . . . . . . . . . . | 9 | | See pages 7 and 8 of Partner's Instructions for Schedule K-1 (Form 1065) |
| | 10 | Deductions related to portfolio income (attach schedule) . . . . . | 10 | | |
| | 11 | Other deductions (attach schedule) . . . . . . . . . . . . . . . . . | 11 | | |
| **Credits** | 12a | Low-income housing credit: | | | |
| | | (1) From section 42(j)(5) partnerships for property placed in service before 1990 . | 12a(1) | | |
| | | (2) Other than on line 12a(1) for property placed in service before 1990 | 12a(2) | | Form 8586, line 5 |
| | | (3) From section 42(j)(5) partnerships for property placed in service after 1989 | 12a(3) | | |
| | | (4) Other than on line 12a(3) for property placed in service after 1989 | 12a(4) | | |
| | b | Qualified rehabilitation expenditures related to rental real estate activities | 12b | | |
| | c | Credits (other than credits shown on lines 12a and 12b) related to rental real estate activities . . . . . . . . . . . . . . | 12c | | See page 8 of Partner's Instructions for Schedule K-1 (Form 1065) |
| | d | Credits related to other rental activities . . . . . . . . . . . . . | 12d | | |
| | 13 | Other credits . . . . . . . . . . . . . . . . . . . . . . . . . . . . | 13 | | |

For Paperwork Reduction Act Notice, see Instructions for Form 1065.

MID 6-245

Schedule K-1 (Form 1065) 2000

JSA
0P1200 3 000

ENB-KP-002978

| (a) Distributive share item | | (b) Amount | (c) 1040 filers enter the amount in column (b) on: |
|---|---|---|---|

**Investment Interest**

| | | | | |
|---|---|---|---|---|
| 14 a | Interest expense on investment debts | 14a | | Form 4952, line 1 |
| b | (1) Investment income included on lines 4a, 4b, 4c, and 4f | b(1) | | See page 9 of Partner's Instructions for Schedule K-1 (Form 1065). |
| | (2) Investment expenses included on line 10 | b(2) | | |

**Self-employment**

| | | | | |
|---|---|---|---|---|
| 15 a | Net earnings (loss) from self-employment | 15a | | Sch. SE, Section A or B |
| b | Gross farming or fishing income | 15b | | See page 9 of Partner's Instructions for Schedule K-1 (Form 1065). |
| c | Gross nonfarm income | 15c | | |

**Adjustments and Tax Preference Items**

| | | | | |
|---|---|---|---|---|
| 16 a | Depreciation adjustment on property placed in service after 1986 | 16a | | |
| b | Adjusted gain or loss | 16b | | See page 9 of Partner's Instructions for Schedule K-1 (Form 1065) and Instructions for Form 6251. |
| c | Depletion (other than oil and gas) | 16c | | |
| d | (1) Gross income from oil, gas, and geothermal properties | d(1) | | |
| | (2) Deductions allocable to oil, gas, and geothermal properties | d(2) | | |
| e | Other adjustments and tax preference items (attach schedule) | 16e | | |

**Foreign Taxes**

| | | | | |
|---|---|---|---|---|
| 17 a | Name of foreign country or U.S. possession ▶ _____ | | | |
| b | Gross income sourced at partner level | 17b | | |
| c | Foreign gross income sourced at partnership level: | | | |
| | (1) Passive | 17c(1) | | |
| | (2) Listed categories (attach schedule) | 17c(2) | | |
| | (3) General limitation | 17c(3) | | |
| d | Deductions allocated and apportioned at partner level: | | | Form 1116, Part I |
| | (1) Interest expense | 17d(1) | | |
| | (2) Other | 17d(2) | | |
| e | Deductions allocated and apportioned at partnership level to foreign source income: | | | |
| | (1) Passive | 17e(1) | | |
| | (2) Listed categories (attach schedule) | 17e(2) | | |
| | (3) General limitation | 17e(3) | | |
| f | Total foreign taxes (check one): ▶ ☐ Paid ☐ Accrued | 17f | | Form 1116, Part II |
| g | Reduction in taxes available for credit and gross income from all sources (attach schedule) | 17g | | See Instructions for Form 1116. |

**Other**

| | | | | |
|---|---|---|---|---|
| 18 | Section 59(e)(2) expenditures: a Type ▶ _____ | | | See page 9 of Partner's Instructions for Schedule K-1 (Form 1065). |
| b | Amount | 18b | | |
| 19 | Tax-exempt interest income | 19 | | Form 1040, line 8b |
| 20 | Other tax-exempt income | 20 | | See pages 9 and 10 of Partner's Instructions for Schedule K-1 (Form 1065). |
| 21 | Nondeductible expenses | 21 | | |
| 22 | Distributions of money (cash and marketable securities) | 22 | | |
| 23 | Distributions of property other than money | 23 | | |
| 24 | Recapture of low-income housing credit: | | | |
| a | From section 42(j)(5) partnerships | 24a | | Form 8611, line 8 |
| b | Other than on line 24a | 24b | | |

**Supplemental Information**

25   Supplemental information required to be reported separately to each partner (attach additional schedules if more space is needed):

-------------------------------------------------------------

-------------------------------------------------------------

-------------------------------------------------------------

-------------------------------------------------------------

-------------------------------------------------------------

-------------------------------------------------------------

**MID 6-246**

-------------------------------------------------------------

ENB-KP-002979

===============================================================================
Item J, Column(c) - Reconciliation of Income
=================================================

Total Income per Schedule K-1                                    -222,613.

Less:  Expenses recorded on books, not included on Sch. K-1:
    Amortization                                                   69,283.

Plus:  Deductions on Sch. K-1, not charged against books:
    Amortization                                                  209,229.

Less:  Adj. to other decreases for final year return             177,762.
                                                                ----------------
        Total Income per Item J, Column(c)                       -260,429.
                                                                ================

0P9000 1 000

ENB-KP-002980

**SCHEDULE K-1**
**(Form 1065)**
Department of the Treasury
Internal Revenue Service

**Partner's Share of Income, Credits, Deductions, etc.**

► See separate instructions.

For calendar year 2000 or tax year beginning **01/01**, 2000, and ending **11/09/2000**

OMB No. 1545-0099

**2000**

Partner's identifying number ► **76-0460300**　　Partnership's identifying number ► **76-0622250**

Partner's name, address, and ZIP code **Partner # 2**
MID LOUISIANA GAS COMPANY
1100 LOUISIANA, SUITE 2900
HOUSTON, TX 77002

Partnership's name, address, and ZIP code
BUTCHER INTEREST PARTNERSHIP
8325 LENEXA DR., SUITE 400
LENEXA, KS 66214

**A** This partner is a [X] general partner ☐ limited partner
☐ limited liability company member

**B** What type of entity is this partner? ► **Corporation**

**C** Is this partner a [X] domestic or a ☐ foreign partner?

**D** Enter partner's percentage of:

| | (i) Before change or termination | (ii) End of year |
|---|---|---|
| Profit sharing . . . . | 45.000000 %None | % |
| Loss sharing . . . . | 45.000000 %None | % |
| Ownership of capital . . . | 45.000000 %None | % |

**E** IRS Center where partnership filed return:**Austin**

**F** Partner's share of liabilities (see instructions):
Nonrecourse _____
Qualified nonrecourse financing _____
Other _____

**G** Tax shelter registration number ► _____

**H** Check here if this partnership is a publicly traded
partnership as defined in section 469(k)(2) . . . . . . . . ☐

**I** Check applicable boxes: (1) [X] Final K-1 (2) ☐ Amended K-1

**J** Analysis of partner's capital account:

| (a) Capital account at beginning of year | (b) Capital contributed during year | (c) Partner's share of lines 3, 4, and 7, Form 1065, Schedule M-2 | (d) Withdrawals and distributions | (e) Capital account at end of year (combine columns (a) through (d)) |
|---|---|---|---|---|
| 213,078. | | −213,078. | ( ) | NONE |

| (a) Distributive share item | | (b) Amount | (c) 1040 filers enter the amount in column (b) on: |
|---|---|---|---|
| | **Income (Loss)** | | |
| 1 | Ordinary income (loss) from trade or business activities . . . . . | **1** −182,138. | |
| 2 | Net income (loss) from rental real estate activities . . . . . . . . | **2** | See page 6 of Partner's Instructions for Schedule K-1 (Form 1065) |
| 3 | Net income (loss) from other rental activities . . . . . . . . | **3** | |
| 4 | Portfolio income (loss): | | |
| a | Interest . . . . . . . . . . . . . . . . . . . | **4a** | Sch. B, Part I, line 1 |
| b | Ordinary dividends . . . . . . . . . . . . . | **4b** | Sch. B, Part II, line 5 |
| c | Royalties . . . . . . . . . . . . . . . . . . | **4c** | Sch. E, Part I, line 4 |
| d | Net short-term capital gain (loss) . . . . . . . | **4d** | Sch. D, line 5, col. (f) |
| e | Net long-term capital gain (loss): | | |
| | (1) 28% rate gain (loss) . . . . . . . . | **4e(1)** | Sch. D, line 12, col. (g) |
| | (2) Total for year . . . . . . . . . . | **4e(2)** | Sch. D, line 12, col. (f) |
| f | Other portfolio income (loss) (attach schedule) . . . | **4f** | Enter on applicable line of your return. |
| 5 | Guaranteed payments to partner . . . . . . . | **5** | See page 6 of Partner's Instructions for Schedule K-1 (Form 1065) |
| 6 | Net section 1231 gain (loss) (other than due to casualty or theft) . | **6** | |
| 7 | Other income (loss) (attach schedule) . . . . . . . | **7** | Enter on applicable line of your return. |
| | **Deductions** | | |
| 8 | Charitable contributions (see instructions) (attach schedule) . . | **8** | Sch. A, line 15 or 16 |
| 9 | Section 179 expense deduction . . . . . . . . . . | **9** | See page 7 and 8 of Partner's Instructions for Schedule K-1 (Form 1065) |
| 10 | Deductions related to portfolio income (attach schedule) . . . . | **10** | |
| 11 | Other deductions (attach schedule) . . . . . . | **11** | |
| | **Credits** | | |
| 12a | Low-income housing credit: | | |
| | (1) From section 42(j)(5) partnerships for property placed in service before 1990 | **12a(1)** | |
| | (2) Other than on line 12a(1) for property placed in service before 1990 | **12a(2)** | Form 8586, line 5 |
| | (3) From section 42(j)(5) partnerships for property placed in service after 1989 . | **12a(3)** | |
| | (4) Other than on line 12a(3) for property placed in service after 1989 . | **12a(4)** | |
| b | Qualified rehabilitation expenditures related to rental real estate activities | **12b** | |
| c | Credits (other than credits shown on lines 12a and 12b) related to rental real estate activities | **12c** | See page 8 of Partner's Instructions for Schedule K-1 (Form 1065) |
| d | Credits related to other rental activities . . . . . | **12d** | |
| 13 | Other credits . . . . . . . . . . | **13** | |

For Paperwork Reduction Act Notice, see Instructions for Form 1065.

JSA
0P1200 3.000

**MID 6-248**

Schedule K-1 (Form 1065) 2000

HBV3CR 2021 05/31/2001 10:42:03

ENB-KP-002981

| (a) Distributive share item | | (b) Amount | (c) 1040 filers enter the amount in column (b) on: |
|---|---|---|---|

**Investment Interest**

| 14 a | Interest expense on investment debts . . . . . . . . . . . . . | 14a | | Form 4952, line 1 |
| b | (1) Investment income included on lines 4a, 4b, 4c, and 4f . . | b(1) | | See page 9 of Partner's Instructions for Schedule K-1 (Form 1065). |
| | (2) Investment expenses included on line 10 . . . . . . . . . | b(2) | | |

**Self-employment**

| 15 a | Net earnings (loss) from self-employment . . . . . . . . . . | 15a | | Sch. SE, Section A or B |
| b | Gross farming or fishing income . . . . . . . . . . . . | 15b | | See page 9 of Partner's Instructions for Schedule K-1 |
| c | Gross nonfarm income . . . . . . . . . . . . . . . . | 15c | | (Form 1065). |

**Adjustments and Tax Preference Items**

| 16 a | Depreciation adjustment on property placed in service after 1986 . . | 16a | | See page 9 of Partner's |
| b | Adjusted gain or loss . . . . . . . . . . . . . . . . . | 16b | | Instructions |
| c | Depletion (other than oil and gas) . . . . . . . . . . . . | 16c | | for Schedule K-1 |
| d | (1) Gross income from oil, gas, and geothermal properties . . . | d(1) | | (Form 1065) and Instruc- |
| | (2) Deductions allocable to oil, gas, and geothermal properties | d(2) | | tions for Form 6251. |
| e | Other adjustments and tax preference items (attach schedule) | 16e | | |

**Foreign Taxes**

| 17 a | Name of foreign country or U.S. possession ▶ _____ | | | |
| b | Gross income sourced at partner level . . . . . . . . . . | 17b | | |
| c | Foreign gross income sourced at partnership level: | | | |
| | (1) Passive . . . . . . . . . . . . . . . . . . . . | 17c(1) | | |
| | (2) Listed categories (attach schedule) . . . . . . . . . . | 17c(2) | | |
| | (3) General limitation . . . . . . . . . . . . . . . | 17c(3) | | |
| d | Deductions allocated and apportioned at partner level: | | | Form 1116, Part I |
| | (1) Interest expense . . . . . . . . . . . . . . . . | 17d(1) | | |
| | (2) Other . . . . . . . . . . . . . . . . . . . . | 17d(2) | | |
| e | Deductions allocated and apportioned at partnership level to foreign source income: | | | |
| | (1) Passive . . . . . . . . . . . . . . . . . . . . | 17e(1) | | |
| | (2) Listed categories (attach schedule) . . . . . . . . . . | 17e(2) | | |
| | (3) General limitation . . . . . . . . . . . . . . . | 17e(3) | | |
| f | Total foreign taxes (check one): ▶ ☐ Paid ☐ Accrued . . | 17f | | Form 1116, Part II |
| g | Reduction in taxes available for credit and gross income from all sources (attach schedule) . . . . . . . . . . . . . | 17g | | See Instructions for Form 1116. |

**Other**

| 18 | Section 59(e)(2) expenditures: a Type ▶ _____ | | | See page 9 of Partner's Instructions for Schedule K-1 (Form 1065). |
| b | Amount . . . . . . . . . . . . . . . . . . . . . | 18b | | |
| 19 | Tax-exempt interest income . . . . . . . . . . . . . . | 19 | | Form 1040, line 8b |
| 20 | Other tax-exempt income . . . . . . . . . . . . . . . | 20 | | See pages 9 and 10 of Partner's Instructions for Schedule K-1 (Form 1065). |
| 21 | Nondeductible expenses . . . . . . . . . . . . . . . | 21 | | |
| 22 | Distributions of money (cash and marketable securities) . . . . | 22 | | |
| 23 | Distributions of property other than money . . . . . . . . . | 23 | | |
| 24 | Recapture of low-income housing credit: | | | |
| a | From section 42(j)(5) partnerships . . . . . . . . . . . . | 24a | | Form 8611, line 8 |
| b | Other than on line 24a . . . . . . . . . . . . . . . | 24b | | |

**Supplemental Information**

| 25 | Supplemental information required to be reported separately to each partner (attach additional schedules if more space is needed): |

------------------------------------------------

------------------------------------------------

------------------------------------------------

------------------------------------------------

------------------------------------------------

**MID 6-249**

------------------------------------------------

ENB-KP-002982

====================================================================

Item J, Column (c) - Reconciliation of Income
==============================================

Total Income per Schedule K-1                                    -182,138.

Less:  Expenses recorded on books, not included on Sch. K-1:
   Amortization                                                    56,686.

Plus:  Deductions on Sch. K-1, not charged against books:
   Amortization                                                   171,188.

Less:  Adj. to other decreases for final year return             145,442.
                                                              ---------------
       Total Income per Item J, Column (c)                       -213,078.
                                                              ===============

MID 6-250
Statement #1

OP9000 1 000

ENB-KP-002983

# TERMINATION AGREEMENT
## OF
## THE BUTCHER INTEREST

This Termination Agreement, is being executed by ENBRIDGE PIPELINES (KPC) ("KPC"), a Kansas general partnership and ENBRIDGE PIPELINES (MIDLA) INC. ("Enbridge"), formerly known as MID LOUISIANA GAS COMPANY, a Delaware corporation.

## WITNESSETH:

WHEREAS, dated and effective November 9, 2000, K-Pipe Group, Inc. ("K-Pipe"), a Kansas corporation, for consideration and monies received, sold and conveyed all of K-Pipe's partnership interest in the Butcher Interest Partnership ("Partnership") to Enbridge, including the capital accounts, distribution rights, voting rights and all other rights and interests attributable to all of K-Pipe's partnership ownership of the Partnership. Such conveyance resulted in Enbridge becoming the sole owner and partner in the Partnership;

WHEREAS, dated and effective November 9, 2000, Enbridge formally dissolved the Partnership and conveyed all property of the Partnership to Enbridge, as the sole remaining owner and holder of all the Partnership interests prior to dissolution, including all that certain property and rights described in Schedule A to the General Partnership Agreement of the Partnership, which Schedule A is attached to and made a part hereof, and is more commonly known as the "Butcher Interest";

WHEREAS, pursuant to the Butcher Interest, KPC makes payments to Enbridge; and

WHEREAS, KPC and Enbridge desire to terminate the Butcher Interest;

NOW, THEREFORE, for value and consideration received, and effective January 1, 2001, Enbridge and KPC hereby terminate the Butcher Interest and all rights and obligations associated therewith.

GOVERNMENT
EXHIBIT

G-69