# Notes

_____

_____

_____

_____

_____

_____

_____

_____

_____

_____

_____

_____

_____

_____

_____

_____

_____

_____

_____

_____

_____

ENB 008836

# Notes

_____

_____

_____

_____

_____

_____

_____

_____

_____

_____

_____

_____

_____

_____

_____

_____

_____

_____

_____

_____

_____

_____

ENB 008837

# Notes

ENB 008838

# Notes

_____

_____

_____

_____

_____

_____

_____

_____

_____

_____

_____

_____

_____

_____

_____

_____

_____

_____

_____

_____

_____

_____

ENB 008839

RONALD L. CHACHERE
ATTORNEY AT LAW
FACSIMILE (512) 883-2357
SUITE 970 • MERCANTILE TOWER • MT115
CORPUS CHRISTI, TEXAS 78477 • (512) 883-2356

FAX TRANSMITTAL

**CONFIDENTIALITY NOTICE:**  The documents accompanying this facsimile transmission contain confidential information which is legally privileged.  The information is intended only for the use of the recipient named below.  If you have received this telecopy in error, please immediately notify us by telephone, at our expense, and destroy the enclosed material.  Your cooperation is appreciated.

<u>Date</u>: 10-14-99

<u>Time</u>: 4:55 p.m.

<u>Route to</u>: **JIM PRYDE, ESQ.**

<u>Firm/Company</u>:

<u>Recipient's Fax Number</u>: (816) 374-3300

<u>From</u>: Ronald L. Chachere

<u>Re</u>:

<u>Message</u>: Jim, this morning you informed me that you will <u>not</u> include any of my requested revisions to the Stock Purchase Agreement or any of the other documents which are considered "business" points.  I did not know that this was your attitude until this morning and, as such, I will now need time to go through all handwritten requested changes to documents to determine exactly which provisions you have decided to omit from requested "redline" revisions.  It would have been helpful if you had informed me from the onset that you were going to take this tactic.

Enclosed for your review are certain revised sections of the Stock Purchase Agreement and a note with respect to the Tax Sharing Agreement (which I mentioned to you during our telephone conference this morning).

RLC

cc:  Tino Monaldo, Esq. (913) 962-6517
     Dennis Langley (913) 962-9999
     Chris Kaitson, Esq. (713) 650-3232
     Richard Robert (713) 653-6711
     Chip Berthelot (713) 653-6711

Three (3) pages transmitted.          002470
                                      KP1448

GOVERNMENT
EXHIBIT
7b
PENGAD-Bayonne, N. J.

ENB-DOJ-000973

## STOCK PURCHASE AGREEMENT

8.10 <u>Tax Treatment</u>. As to all gain from Stockholder's sale of the BGL shares to Buyer pursuant to this Agreement (whether the consideration to Stockholder is pursuant to this Agreement or the Additional Agreements) as to which Stockholder will be entitled to long term capital gain under applicable Federal and State of _____ income tax regulations absent any actions or omissions by Buyer or its Affiliates which would cause Stockholder other than long term treatment, Buyer and its Affiliates agree not to take any action (other than action required or permitted by them pursuant to the terms and provisions of this Agreement and/or the Additional Agreements) or omit any action which will cause Stockholder to receive other than such long term capital gain treatment. Buyer agrees to indemnify Stockholder from the amount of additional Federal and State of _____ income taxes, together with interest and penalties thereon, if any, paid by Stockholder resulting from Buyer's or its Affiliates' breach of the foregoing covenant, together with reasonable third party legal and accounting fees and expenses incurred by Buyer and reasonably necessary to the payment of such additional income taxes (collectively, "Damages"). Buyer agrees to execute and deliver to Stockholder the Security Agreement (Tax Indemnity) attached hereto as Schedule 8.10, at the Closing, in order to secure the payment of any Damages. Buyer shall cause the Company and its Subsidiaries and the Affiliates to take all actions reasonably requested by Stockholder in order to perfect the security interests in the collateral described under the Security Agreement (Tax Indemnity) attached hereto as Schedule 8.10. Stockholder agrees, upon Buyer's request, after termination of Buyer's indemnity obligation to Stockholder, Stockholder shall execute and deliver to Buyer a release of the security interest in all of the collateral and all such UCC-1 Termination Statements and other documents as shall be necessary to show the termination of such security interests. Notwithstanding the foregoing, Buyer's liability to Stockholder for all Damages and from any and all other claims of Stockholder with respect to Buyer's and its Affiliates' breach of their covenant under this Section 8.10, shall not exceed _____ dollars ($_____) in the aggregate. Furthermore, Buyer's indemnity obligation and any other liability from Buyer to Stockholder arising out of Buyer's covenants to Stockholder under this section 8.10 shall terminate and be of no further force and effect upon the expiration of the statute of limitations period with respect to such income tax obligations of Stockholder, except as to matters which are the subject of a written claim made by Stockholder to Buyer prior thereto.

9.6 <u>Monetary Limitations on Buyer's Indemnification</u>. Notwithstanding anything herein to the contrary, in no event and under no circumstances shall Buyer be required to pay any amounts to Stockholder on, under or in connection with Buyer's warranties, representations and indemnities under this Agreement to the extent such amounts for any single claim are less than two hundred fifty thousand dollars ($250,000) (the "Threshold"); provided, however, that once the Threshold for a claim is met, Buyer shall be liable

KP1449
002471

for all Adverse Consequences from such claim (and not just the
amount in excess of the Threshold). Notwithstanding the foregoing,
Buyer's liability to Stockholder for all Adverse Consequences for
all claims under this Article IX (but specifically excluding,
however, Buyer's indemnity obligations to Stockholder under Section
8.10 of this Agreement, for which a separate indemnity limitation
is set forth therein) shall not exceed five million dollars
($5,000,000) in the aggregate. For purpose of this Section 9.6,
the representations and warranties of Buyer contained in this
Agreement shall be read without giving effect to any "Material
Adverse Effect" exception.

10.2 <u>Additional Conditions to the Obligations of Buyer to
Close</u>.

...

(e)  <u>Intercreditor Agreement</u>. Buyer shall have caused an
     Intercreditor Agreement, in the form and content of
     Schedule 10.2(e) attached hereto and made a part hereof
     to be executed and delivered by the Company's lenders
     unless Buyer shall have elected to pay off the Debt at
     Closing.

12.13 <u>Attorney's Fees</u>. In connection with any Agreement-
Related Litigation (regardless of whether the action alleges breach
of contract, tort, violation of a statute, or any other cause of
action), the prevailing Party will be entitled to recover from the
nonprevailing Party its reasonable costs in bringing or defending
such claims, including its reasonable attorneys' fees, accounting
fees, professional and/or expert witness fees, court costs, and
travel and out-of-pocket expenditures incurred in preparation for
and during such proceedings. If a Party prevails on some aspects
of its claims but not on others, the court shall apportion any
award of costs in bringing or defending such claims in such manner
as it deems equitable.


<u>TAX SHARING AGREEMENT</u>

[Note: Richard Robert is having the Tax Sharing Agreement
reviewed by Midcoast's tax advisors. However, at the
minimum, there will need to be included reciprocal tax
indemnity provisions from Stockholder to Buyer for all
Pre-Closing Tax Periods.]


002472
KP1450

ENB-DOI-000975

**From:**      Richard Robert <rrobert@midcoastenergy.com>
**To:**        "Barry Davis (E-mail)" <bdavis@bpl.com>, "Stephanie Pendleton (E-mail)"
<stephanie.pendleton@bankofamerica.com>, "Thomas. J  Palmisano (E-mail)"
<thomas.j palmisano@us.pwcglobal.com>, "Patrick Delaney (E-mail)"
<patrick.m.delaney@bankofamerica.com>
**Date:**      10/19/99 11.35AM
**Subject:**   New Events Memo

Please comment on the attached memo ASAP

GOVERNMENT
EXHIBIT
11

PENGAD-Bayonne, N. J.

TK 003942

ENB-DOJ-035638

Stephanie Pendleton
Bank of America

Memo Re: Elimination of Syenergy Senior Secured Notes and Granting of Tax Indemnification Lien to Seller

To: Stephanie Pendleton

From: Richard Robert

Date: October 19, 1999

This memo is being written to inform you of two new developments relating to our ongoing negotiations with the seller. First, the seller has agreed in principal to proceed with the intention of paying off the $91 million Syenergy Senior Secured Notes and not wait on their consents. Per Section 10.4 of the Secured Note Agreement there is a minimum 20 day notice period for prepayment of the notes. That being the case and the fact that the seller will not notice the noteholders until a definite agreement has been signed and the likelihood that we will get HSR approval prior to the 20 day notice expiring, there will be a period of time that funds necessary to pay off the notes will need to be held in escrow. There is still the possibility that all the funds will be held in escrow as soon as the definitive agreement has been signed and then when HSR is received we would disburse all funds except those required to retire the notes. It would be my intention to have the noteholders assign the collateral in place to our bank group.

However, that being said, the seller is requiring that Midcoast provide a tax indemnification to the seller which states "Neither Buyer nor any of its affiliates will take any actioin or omit any action which would cause Stockholder to receive other than long term capital gain treatment for Federal and State income taxes of any gain recognized as a result of the sale of Stockholder's BGL shares to Buyer. Buyer agrees to indemnify Stockholder from all liability, damages, reasonable costs and expenses (including, without limitation reasonable legal and accounting fees and expenses, penalties and interest (collectively, "Damages")) from Buyer's breach of this provision. Buyer hereby pledges to Stockholder all of the stock of the Company and the Company hereby grants to Stockholder a security interest in all of the assets, stock and partnership interests of the Company and its Subsidiaries and the Affiliates, in each case to secure the payment of any Damages pursuant to the Security Agreement in the form attached hereto as Schedule 8.10. Buyer will cause the Company and its Subsidiaries and the Affiliates to take all actions reasonably requested by the Stockholder to perfect these security interests."

This is a major deal point with the Buyer and we have been advised by our tax advisors (PriceWaterhouseCoopers) that we are not at risk by giving this indemnity. We are receiving an opinion from PWC and the seller is receiving an opinion from Ernst & Young which provides us a lot of comfort that the Seller will receive capital gains treatment. That being said I would think the banks would not have a problem having a subordinate lien on the KPC assets.

Let me know if you require any additional information.

TK 003943

ENB-DOJ-035639

## THE BISHOP GROUP, LTD.

8325 Lenexa Drive - Suite 400
Lenexa, Kansas 66214
(913) 888-7139 / Fax (913) 599-5645

October 21, 1999

K-Pipe Holdings Partners, L.P.
750 Lexington Avenue, 30th Floor
New York, NY 10022

Attn: Mr. Jeff Furman

**Transmitted by Telefax
(212) 826-0077**

Dear Mr Furman:

This letter shall serve as formal notice that if the Stock Purchase Transaction between The Bishop Group, Ltd. (Bishop) and K-Pipe Holdings Partners, L.P. (K-Pipe) is not consummated by Midnight, Central Standard Time on Saturday, October 23, 1999; Bishop's offer to sell its stock to K-Pipe is hereby withdrawn.

Please advise me of your intentions by 5:00 p.m. today, October 21, 1999. If you should have any questions, please do not hesitate to call me.

Sincerely,

The Bishop Group, Ltd.

Dennis M. Langley
President

cc: Craig Hoffman

GOVERNMENT
EXHIBIT
78

KPI1802

ENB-DOJ-023982

## The Bishop Group, LTD.

8325 LENEXA DRIVE
SUITE 400
LENEXA, KANSAS 66214

Phone: 913/ 888-7139
FAX:  913/ 599-5645

DATE:      10/21/99      NO. OF PAGES:  Cover plus  1

TO:      Mr. Jeff Furman and Mr. Craig Hoffman

COMPANY:  K-Pipe Holdings Partners, L.P.

FAX NO:   212-826-0077

FROM:     Dennis M. Langley

Original document will be forwarded in mail _____ Yes  _____ No

NOTE:

### CONFIDENTIALITY NOTICE

The information contained in this facsimile message is privileged and confidential information intended for the use of the addressee listed above. If you are neither the intended recipient nor the employee or agent responsible for delivery of this message to the intended recipient, you are hereby notified that any disclosure, copying, distribution or the taking of any action in reliance on the contents of this telecopied information is strictly prohibited. If you have this telecopy in error, please immediately notify us by telephone (collect) to arrange for the return of the original to us.

If possible, please check transmission after the last page. If you have any problems with the transmission, please contact: _____at 888-7139, Ext. _____. Thank you.

I \forms\faxcover4 doc

KPI1803

ENB-DOJ-023983

## The Bishop Group, LTD.

8325 LENEXA DRIVE
SUITE 400
LENEXA, KANSAS 66214

Phone: 913/ 888-7139
FAX:   913/ 599-5645

DATE:     <u>10/21/99</u>     NO. OF PAGES: Cover plus 1

TO:       Richard Robert

COMPANY: _____

FAX NO:   713-650-3232

FROM:     Dennis Langley

Original document will be forwarded in mail _____ Yes _____ No

NOTE:

CONFIDENTIALITY NOTICE

The information contained in this facsimile message is privileged and confidential information intended for the use of the
addressee listed above. If you are neither the intended recipient nor the employee or agent responsible for delivery of this
message to the intended recipient, you are hereby notified that any disclosure, copying, distribution or the taking of any
action in reliance on the contents of this telecopied information is strictly prohibited. If you have this telecopy in error,
please immediately notify us by telephone (collect) to arrange for the return of the original to us.

If possible, please check transmission after the last page. If you have any problems with the transmission, please

contact: _____ at 888-7139, Ext. _____. Thank you.

I \forms\faxcov4 doc

KPI1804

ENB-DOJ-023984

```
*******************************
***    ACTIVITY REPORT    ***
*******************************
```

| ST. TIME | CONNECTION TEL/ID | SENDER NAME | NO. | MODE | | PGS. | RESULT | |
|---|---|---|---|---|---|---|---|---|
| *10/14 09:48 | | | 5892 | AUTO RX | ECM | 3 | OK | 01'10 |
| *10/14 10:49 | | | 5893 | AUTO RX | ECM | 1 | OK | 00'32 |
| *10/14 13:31 | | | 5894 | AUTO RX | ECM | 3 | OK | 01'27 |
| *10/14 13:39 | 3743300 | | 0477 | TRANSMIT | ECM | 9 | OK | 02'52 |
| *10/14 14:39 | 3419701 | | 0478 | TRANSMIT | G3 | 2 | OK | 01'18 |
| *10/14 15:06 | 913 599 2573 | | 5895 | AUTO RX | ECM | 3 | OK | 01'09 |
| *10/14 16:08 | | | 5896 | AUTO RX | ECM | 3 | OK | 01'57 |
| *10/14 16:13 | | | 5897 | AUTO RX | ECM | 3 | OK | 01'57 |
| *10/14 16:16 | 12022636013 | | 0479 | TRANSMIT | ECM | 2 | OK | 00'39 |
| *10/14 19:21 | 12022636013 | | 0480 | TRANSMIT | ECM | 3 | OK | 00'48 |
| *10/15 09:14 | 7220222 | | 0481 | TRANSMIT | ECM | 2 | OK | 00'37 |
| *10/15 10:36 | | | 5898 | AUTO RX | ECM | 1 | OK | 01'07 |
| *10/15 12:02 | | | 5899 | AUTO RX | ECM | 3 | OK | 00'52 |
| *10/15 15:35 | TMM | | 0482 | TRANSMIT | ECM | 9 | OK | 02'35 |
| | 13166655961 | | | | | | | |
| *10/15 15:48 | | | 5900 | AUTO RX | ECM | 11 | OK | 05'44 |
| *10/15 15:54 | | | 5901 | AUTO RX | ECM | 2 | OK | 00'52 |
| *10/15 15:58 | | | 5902 | AUTO RX | ECM | 1 | OK | 00'56 |
| *10/15 16:03 | | | 5903 | AUTO RX | ECM | 12 | OK | 03'59 |
| *10/16 06:33 | 588 5708 | | 5904 | AUTO RX | G3 | 0 | NG | 00'21 |
| | | | | | | | 0 | |
| *10/16 06:56 | 588 5708 | | 5905 | AUTO RX | G3 | 4 | OK | 02'41 |
| *10/18 08:07 | K P C | | 0483 | TRANSMIT | ECM | 1 | OK | 00'45 |
| | 5992573 | | | | | | | |
| *10/18 09:32 | K P C | | 0484 | TRANSMIT | ECM | 1 | OK | 00'4 |
| | 5992573 | | | | | | | |
| *10/18 12:09 | HELLER EHRMAN | | 5906 | AUTO RX | ECM | 2 | OK | 00'33 |
| | 2027858877 | | | | | | | |
| *10/18 13:18 | | | 5907 | AUTO RX | ECM | 5 | OK | 01'38 |
| *10/18 21:51 | | | 5908 | AUTO RX | G3 | 1 | OK | 01'04 |
| *10/19 11:08 | | | 5909 | AUTO RX | ECM | 17 | OK | 05'09 |
| *10/19 11:18 | | | 5910 | AUTO RX | ECM | 35 | OK | 09'58 |
| *10/19 13:07 | | | 5911 | AUTO RX | G3 | 1 | OK | 01'10 |
| *10/19 13:08 | | | 5912 | AUTO RX | ECM | 1 | OK | 00'58 |
| *10/19 16:44 | 3743200 | | 0485 | TRANSMIT | | 0 | NG | 00'00 |
| | | | | | | | 0 | STOP |
| *10/19 16:44 | 3743200 | | 0486 | TRANSMIT | | 0 | NG | 00'00 |
| | | | | | | | 0 | STOP |
| *10/19 16:45 | 3743300 | | 0487 | TRANSMIT | ECM | 33 | OK | 11'06 |
| *10/21 11:13 | 816 374 3300 | | 5913 | AUTO RX | ECM | 2 | OK | 00'51 |
| *10/21 11:58 | SLATTERY | | 0488 | TRANSMIT | ECM | 3 | OK | 01'47 |
| | 12027197049 | | | | | | | |
| *10/21 12:12 | BUTCH MAKI | | 0489 | TRANSMIT | ECM | 3 | OK | 01'43 |
| | 15059820357 | | | | | | | |
| *10/21 12:16 | SLATTERY | | 0490 | TRANSMIT | ECM | 3 | OK | 01'24 |
| | 12027197049 | | | | | | | |
| *10/21 12:24 | 3743300 | | 0491 | TRANSMIT | ECM | 2 | OK | 00'38 |
| *10/21 12:44 | 12128260077 | | 0492 | TRANSMIT | ECM | 2 | OK | 00'39 |
| 10/21 12:48 | 3743300 | | 0493 | TRANSMIT | ECM | 2 | OK | 00'35 |
| 10/21 12:52 | 17136503232 | | 0494 | TRANSMIT | ECM | 2 | OK | 00'39 |

KPI1805

ENB-DOJ-023985

*New York Branch*

*Date: October 22, 1999*
*Jurisdiction: RICC/EXEC BOARD*

*K-Pipe Holdings Partners, L.P.*

**I**   **SUMMARY**

| | |
|---|---|
| *Client(s):* | K-Pipe Holdings Partners, L.P. (a newly formed Delaware Limited Partnership). |
| *Application:* | Approve an up to 30 day, $195MM cash secured term loan to allow K-Pipe Holdings Partners, L.P. to complete a Stock Purchase Agreement between K-Pipe Holdings Partners, L.P. and the shareholders of Bishop Group, Ltd. a Kansas Corporation. |
| *Existing Exposure:* | 0 |
| *Total Exposure:* | $195MM |
| *Existing Protection:* | N/A |
| *Changes in protection:* | Pledged escrow accounts ($200MM) held at Rabobank |
| *Credit Risk Score:* | (5.00) |
| *Public Risk Score:* | N/A |
| *Target Market:* | Structured Finance |

As this transaction has to close before month end, we kindly ask full and final approval by no later than Wednesday October 27, 1999.

This transaction was referred to us by Fortrend International LLC ("Fortrend"), an investment banking firm specializing in structuring economic transactions to solve specific corporate and estate or accounting issues. Fortrend and its affiliates have acted as principal or investment banker in numerous transactions, ranging from $10MM to in excess of $1 billion in assets.

We have entered into many transactions with Fortrend, all of which have been concluded satisfactorily.

Rabobank has been offered the opportunity to assist in the completion of a stock purchase transaction for K-Pipe Holdings Partners, L.P. Rabobank's role will be that of a lending bank to the acquirers

**II**   **GENERAL INFORMATION**

| | |
|---|---|
| *Client(s):* | K-Pipe Holdings Partners, L.P. |
| *Business(es):* | Structured Finance |
| *Directors:* | Fortrend Group |
| *Shareholders:* | Fortrend Group |
| *Principal Banks:* | N/A |

**III**   **EXISTING EXPOSURE**      *N/A*

**IV**   **APPLICATION**

| | |
|---|---|
| *Facility:* | Approve an up to 30 day secured term loan for an amount up to $195MM |

1

GOVERNMENT
EXHIBIT

85

PENGAD-Bayonne, N.J.

RABO-F- 0006016

ENB-DOJ-028556

| | |
|---|---|
| internal review date: | N/A |
| Providing for: | Single advance. |
| Purpose: | To allow K-Pipe Holdings Partners, L.P. to purchase the stock of Bishop Group, Ltd ("Bishop Group") from the Seller, Mr. Dennis M. Langley in Kansas. Over the years, Mr. Dennis M. Langley, has expanded its business by acquiring, among other things, the Gas Pipeline business in Kansas from Phillips Petroleum |
| Repayment/Maturity: | Although the loan will be provided for up to 30 days, it is expected to be repaid in a week, after which the commitment will automatically terminate. The closing is anticipated before the end of October. |
| Pricing/Interest: | 30 basis points (all-in, fees plus interest) |
| Protection: | Pledge of the partnership interest of K-Pipe Holdings Partners, L.P., our borrower. |
| | Pledge of an escrow account (escrow account-1) in the name of the Seller of the shares of Bishop Group Ltd, Mr Dennis M. Langley. This escrow account will be established at Rabobank, with Rabobank as escrow agent. K-Pipe Holding will transfer the purchase price of $195MM into this Escrow account as satisfaction of the purchase of the shares of Bishop Group, Ltd. However, as a condition, funds can only be released if clearance has been obtained under a Hart-Scott-Rodino filing. If approval has not been obtained within 30 days, the funds will automatically go back to Rabobank for repayment of the loan. |
| | Pledge of an escrow account held at Rabobank, with account balances in excess of $200MM (Escrow account-2) Midcoast Energy, Inc. and K-Pipe Holdings Partners, L.P. have entered into an Asset Purchase Agreement, in which the Gas Pipeline businesses will be sold to Midcoast Energy. Inc. Midcoast Energy will transfer $200MM (drawn under their Credit Facility with Bank of America) into the escrow account prior to Rabobank advancing the loan. The amount in the pledged escrow account will be used to purchase the assets from Bishop Group, Ltd. The consummation of the asset purchase is expected approximately 1 week after closing, and is only subject to clearance under a Hart-Scott-Rodino filing. |
| Rabobank's role: | Lender providing funds to K-Pipe Holdings Partners, L.P., which will enable them to effect a Stock Purchase Agreement. |
| Country Risk: | USA |
| Total Exposure after approval: | $195 million |

2

RABO-F- 0006017

ENB-DOJ-028557

| | |
|---|---|
| Solvency Used | $0 million |
| Return on Solvency: | N/A |
| Solvency Risk Score: | i |

V    COMMENTS ON THE APPLICATION

Rabobank has been offered the opportunity to assist our client in the completion of a stock purchase transaction of K-Pipe Holdings Partners, L.P. Rabobank's role will be that of a lending bank to facilitate the acquisition

VI    GENERAL COMMENTS

Transaction Description:    The transaction is contemplated as follows:

- A newly formed Delaware Limited partnership, K-Pipe Holdings Partners, L.P. borrows from Rabobank an amount of up to $195MM, and uses the proceeds to purchase the shares of Bishop Group, Ltd. This amount will be transferred into an Escrow account (Escrow account-1) at Rabobank in the name of Dennis M. Langley. Release of the funds can only take place when clearance under a Hart-Scott-Rodino filing has been obtained (expected after one week.) If no clearance has been obtained within 30 days the funds will automatically go back to Rabobank for repayment of the loan.
- Prior to Rabobank advancing the loan, the Midcoast Energy, Inc has placed an amount of $200MM in an escrow account (Escrow account-2) held at Rabobank. This escrow account is pledged to us.
- Within a week, the new owners, our Borrower, will consummate the sale of the Gas Pipeline business to Midcoast Energy, Inc. for which the $200MM in the escrow account-2 will be used. The amount received by our client from the escrow account-2 will be used to repay our loan in full.
- If the consummation of the sale of the Gas Pipeline businesses to Midcoast Energy, Inc. does not take place, only because no clearance has been received under the Hart-Scott-Rodino filing, Rabobank will use the funds in Escrow account-1 to repay the loan in full

Mr. Dennis M. Langley has been in this business a long time and has grown the business over time, culminating in acquiring the Eastern and Western Pipeline business in Kansas from Phillips Petroleum in 1984 and 1989 respectively. Recently, Mr. Dennis M. Langley has decided to sell it Gas Pipeline business

VII    FINANCIAL ANALYSIS: N/A

3

RABO-F- 0006018

ENB-DOJ-028558

**VIII   PROTECTION**

The Borrower will agree to pledge the partnership interest of K-Pipe Holdings Partners, L.P. as security to the Lender for the Facility. Additionally, the accounts of K-Pipe Holdings Partners, L.P. (our borrower) and the escrow accounts will be pledged to us as well. The amount in the pledged accounts, including the escrow accounts, will at all times cover our outstanding loan, interest and fees.

The documentation and reputation risk will be adequately addressed by the Legal Department in New York.

**IX   MANAGEMENT ORGANIZATION**

The principals of Fortrend are highly regarded and well-known to Shearman & Sterling, the law firm that represents Rabobank on numerous financings.

**X   RELATIONSHIP ASPECTS**

This transaction was referred to us by Fortrend International, LLC ("Fortrend"), an investment banking firm specializing in structuring economic transactions to solve specific corporate tax or accounting issues. Fortrend and its affiliates have acted as principal or investment banker in numerous transactions ranging from $10MM to in excess of $1 billion in assets.

**XI   CREDIT RISK SCORE**

5.00, due to the fact that our loan will at all times be cash collateralized with the escrow accounts.

| Prepared by | Supported by: | Supported by: |
|---|---|---|
| Chris G. Korlandt | Nancy McIver | Kees den Baas |
| Vice President | Managing Director | Managing Director |

Approved/Concurred by the local Credit Committee:

Approved by:
Chairman of CC

CONCURRED IN
RABOBANK INTERNATIONAL
NEW YORK CREDIT COMMITTEE
DATE  10/22/99
(SECRETARY)

4

RABO-F- 0006019

ENB-DOJ-028559

RABOBANK INTERNATIONAL – NORTH AMERICA        APPENDIX II
Credit Committee Secretariat

| | |
|---|---|
| New York Branch | October 22, 1999 |
| | RJCC/EXEC BOARD |

~~K-Pipe Holdings Partners, L.P.~~

**I    SUMMARY**

| | |
|---|---|
| Client(s): | K-Pipe Holdings Partners, L.P. (a newly formed Delaware Limited Partnership). |
| Application: | Approve an up to 30 day, $195MM cash secured term loan to allow K-Pipe Holdings Partners, L.P. to complete a Stock Purchase Agreement between K-Pipe Holdings Partners, L.P. and the shareholders of Bishop Group, Ltd, a Kansas Corporation. |
| Existing Exposure: | 0 |
| Total Exposure: | $195MM |
| Existing Protection: | N/A |
| Changes in protection: | Pledged escrow accounts ($200MM) held at Rabobank |
| Credit Risk Score. | (5.00) |
| Public Risk Score: | N/A |
| Target Market: | Structured Finance |

NYCC DECISION:   Concurred

NYCC concurred in this structured finance transaction in which we will advance funds to K-Pipe Holdings Partners to allow the company to purchase the shares of the Bishop Group whose business includes a gas pipeline in Kansas. Subsequent to the purchase and upon receiving a clearance from the Hart-Scott-Rodino filing, the gas pipeline business will be sold to Midcoast Energy Inc. Our 30-day loan is secured by escrow accounts held at Rabobank. The escrow account-1 for up to $195.0MM will automatically revert to Rabobank if no clearance has been obtained within 30 days as payment for the loan. If a clearance has been received and the sale was successfully consummated, the $200.0MM held at escrow account-2 will be used to repay our loan in full. Although NYCC was informed that environmental liability, if any, will be on the underlying company, the Committee recommended that due diligence is carried out to ensure that the Bank will not be held responsible for such liability.

6

GOVERNMENT
EXHIBIT
86
PENGAD-Bayonne, N. J.

RABO-F- 0006015

ENB-DOJ-028555

F

| | |
|---|---|
| **From:** | James Pryde |
| **To:** | Chachere, Ron;  Chip Berthelot;  Chris Kaitson;  Tino Monaldo;  Y. Korb |
| **Date:** | 10/25/99 6:21PM |
| **Subject:** | Attached Files |

  Attached are the clean copies of what we believe are the final documents.  Dennis plans on executing the SPA this evening and we have requested signatures by K-Pipe and Fortrend also.  JPP

**GOVERNMENT EXHIBIT**
89
PENGAD-Bayonne, N. J.

002158
KP1136

ENB-DOJ-001081

**From:**     Richard Robert <rrobert@midcoastenergy com>
**To:**       "Mary Lou Allen (E-mail)" <mary l allen@bankofamerica com>, "W. Keith Buchanan
(E-mail)" <keith buchanan@bankofamerica com>, "Patrick Delaney (E-mail)"
<patrick.m.delaney@bankofamerica com>, "David Ferguson (E-mail)"
<david h ferguson@bankofamerica.com>, "Stephanie Pendleton (E-mail)"
<stephanie.pendleton@bankofamerica.com>, "Barry Davis (E-mail)" <bdavis@bpl com>
**Date:**     10/26/99 9.48PM
**Subject:**  Project Ruby Status

We have agreed in principal to the revised deal that I explained to you on
the phone.  The attorneys are now trying to draft the limited project
development agreement and should have a pretty good draft to you in the
morning  We are trying to have the document finalized by the afternoon  It
has been suggested that no changes to the Stock Purchase Agreement are
necessary except the consideration of course which is changing to 200 MM
(this number includes the 10 MM cash reserve )  If anyone disagrees with
this point please advise  We have agreed that we will sign the documents on
Friday at which point both parties are at risk for the 15 million break up
fee only subject to HSR approval. Further we have agreed that Dennis will
receive his money within 24 hours of getting HSR approval.  HSR approval
could happen any day after this Thursday (ie. Friday and beyond)  As a
result we need to be able to fund into our escrow with K Pipe by next Monday
in the event the clearance comes at the earliest time
Interested parties will receive a revised draft of the Project Development
Agreement and the Asset Purchase Agreement tomorrow.  We will ask Porter and
Hedges to resume their review of the Credit Agreement first thing in the
morning
Please email me a list of questions or concerns or issues which need to be
considered that I haven't addressed or need to be thinking about   Thank you
all for your patience and hard work
Barry please forward to Bob.  I didn't have his email address.



GOVERNMENT
EXHIBIT

91

PENGAD-Bayonne, N.J.

TK 003959

ENB-DOJ-035655

*Internal Memorandum*



**Rabobank Nederland**
**New York Branch**

*To.* NYCC/RICC/EXEC.Board

*From:* Chris Kortlandt

*Subject:* K-Pipe Holdings Partners, L.P.

*Date:* October 27, 1999

*OK* *Lance* 10/27/99

*OK N J O'Connor* 10/27/99

Further to our Credit Application dated as of October 22, 1999, we kindly ask your approval for the following changes which have occurred as a result of the negotiations:

1.  Increase the loan amount by $20mm from $195mm to up to $215mm.

2.  Increase cash collateral by the same amount of the increased loan, or $20mm.

3.  Refrain from taking a pledge of the membership interest from K-Pipe Holding Partners, L.P. (our Borrower) as the loan is fully collateralized.

We kindly ask your approval for the increase as our loan, interest and fees will at all times be covered by the amounts in the escrow accounts held at Rabobank.

# RATIFIED
BY RABOBANK NEDERLAND
NEW YORK CREDIT COMMITTEE

DATE 11/2/99

C. P Embrex

(SECRETARY)

GOVERNMENT EXHIBIT 92
PENGAD-Bayonne, N.J

*Rabobank*

001174

ENB-DOJ-028655

28-98   11:39AM   FROM-MID COAST ENERGY RESOURCES                 713-650-3232        T-350  P.01   E-797
                                                                                    88014.0011.2A

**MIDCOAST ENERGY RESOURCES**
1100 LOUISIANA, SUITE 2950
HOUSTON, TEXAS  77002
PHONE:  713-650-8900
FAX:       713-650-3232

# facsimile transmittal

To: *Jim Pride*                     Fax: *816-374-3300*

From:  Chris Kaitson              Date: *10/28*

Re:                                     Pages: *26*

CC:

☐ Urgent   ☒ For Review   ☐ Please Comment   ☐ Please Reply   ☐ Please Recycle

*Attached are the following documents:*
*Guaranty (Parent-Assumption Agreement)*
*Guaranty (KPC)*
*Project Participation Agreement*

GOVERNMENT
EXHIBIT
95
PENGAD-Bayonne, N.J.

002323
KP1301

FNB-DOJ-001082

OCT-28-99 11:39AM FROM-MID COAST ENERGY RESOURCES 713-650-3232 T-350 P 02 F-797

*10/28/99*

*Hand Written*
*changes*

*dated October 25,1999, between MGR and*
*MarGasCo*

*dated October 25, 1999,*
*between KPC and*
*MRC)*  *to MGR*
 *et al*

## GUARANTY
(Parent–Assumption Agreement)

FOR VALUE RECEIVED, Midcoast Energy Resources, Inc. (the "Guarantor") hereby unconditionally and irrevocably guaranties to Management Resources Group, L.L.C. and to all of its individual or corporate members or owners (collectively, "MRG"), their successors, *heirs,* transferees and assigns, the payment and performance by MarGasCo Partnership, a wholly-owned indirect subsidiary of Guarantor (the "MarGasCo") and Kansas Pipeline Company ("KPC"), also an indirect subsidiary of Guarantor (collectively, the "Subsidiaries") to MRG of all liabilities, obligations, covenants and agreements of the Subsidiaries contained in i) the Project Development Agreement, ii) the Consulting Agreement and iii) the Guaranty by KPC dated November __, 1999. Guarantor further agrees to pay any and all out-of-pocket expenses (including attorneys' fees) which may be paid or incurred by MRG in enforcing any rights under this Guaranty. This Guaranty is an absolute, unconditional and continuing guaranty of the full and punctual payment and performance by the Subsidiaries of the obligations and liabilities described herein and not of collectability only and is in no way conditioned upon any requirement that MRG first attempt to collect any amounts due and owing from the Subsidiaries or any other party primarily or secondarily liable with respect thereto or resort to any security or other means of obtaining payment of any amounts due and owing to MRG or upon any other contingency whatsoever.

The Guarantor hereby waives promptness, diligence and notice as to the obligations and covenants contained herein and acceptance of this Guaranty, and waives any other circumstance which might otherwise constitute a legal or equitable discharge, release or defense of a guarantor or surety, or that might otherwise limit the obligations of the Guarantor hereunder. The Guarantor hereby agrees that it shall not be entitled to consent to, or receive any notice of, any amendment or modification of, or waiver, release, consent or extension with respect to, or assignment of any agreement giving rise to any obligation guaranteed hereunder, and the Guarantor hereby acknowledges that any such amendment, modification, waiver, release, consent, extension or assignment shall not affect the Guarantor's obligations hereunder. The Guarantor hereby agrees that this Guaranty shall automatically be reinstated if and to the extent that for any reason any payment of the Subsidiaries or on behalf of the Subsidiaries is rescinded or must otherwise be restored, whether the result of any proceedings in bankruptcy or reorganization or otherwise.

The Guarantor also agrees as follows.

1.    Cy Pres.  The doctrine of Cy Pres shall be applicable to this Agreement such that in interpreting the terms and conditions hereunder the intentions of the Guarantor and the beneficiaries hereof are to be carried out as near as may be, when it would otherwise be impossible or illegal to give it literal effect.  In any dispute arising out of this Agreement, the doctrine of Cy Pres shall be applied.

2.    Agreement Governed by the Laws of Kansas.  This Agreement and the obligations of the Guarantor hereunder, shall be interpreted, construed, and enforced in accordance with the laws, and not the laws pertaining to choice or conflict of laws, of the state of Kansas.

3.    Agreement Subject to Laws.  If any provision of this Agreement or the application thereof to any party or any circumstance shall be found to be contrary to, or inconsistent with or unenforceable under any law, rule, regulation or order, the latter shall control and this Agreement shall be deemed modified accordingly, but in other respects this Agreement

002324
KP1302

ENB-DOJ-001083

shall continue in full force and effect, subject to the modifications necessary to preserve the intent and considerations due the parties as set forth in this Agreement.

4.      Severability. Any provision of this Agreement which is invalid, illegal or unenforceable in any jurisdiction shall, as to that jurisdiction, be ineffective to the extent of such invalidity, illegality, or unenforceability, without affecting in any way the remaining provisions hereof in such jurisdiction or rendering that or any other provision of this Agreement invalid, illegal or unenforceable in any other jurisdiction.

5.      Jurisdiction and Venue. Any suit, action or proceeding with respect to, arising under or in connection with this Agreement or the enforcement may be brought in any court in Kansas. The Guarantor hereby submits to the jurisdiction and venue of any and all such courts in Kansas for the purpose of any such suit, action or proceeding.

6.      Further Assurances. The Guarantor hereby agrees to execute, acknowledge and deliver to each other any further writings, documents, transfers, acknowledgments, instruments, powers of attorney, authorizations, filings, applications, reports, etc. that may be reasonably required to give full force and effect to the provisions of this Agreement.

Dated: _____, ____

_____

By:_____
Title:_____

455902 06                              2

002325
KP1303

ENB-DOJ-001084

*10/28/99*
*[Handwritten changes]*

## GUARANTY
### (KPC)

→ *("Langley"),*

FOR VALUE RECEIVED, Kansas Pipeline Company, a Kansas general partnership (the "Guarantor") hereby unconditionally and irrevocably ~~guaranties to Management Resources Group, L.L.C. and~~ Dennis Langley ~~(collectively, "MRG"),~~ ~~their successors,~~ transferees and assigns, the due and punctual performance and discharge by K-Pipe Merger Corporation ("Parent") of all of Parent's liabilities, obligations, covenants and agreements contained in Sections 8.10, 8.11 and 5.4 (and the Schedules and the Agreements referenced in Section 5.4) of the Stock Purchase Agreement, dated October 25, 1999 between MRG and ~~Parent,~~ Guarantor further agrees to pay any and all out-of-pocket expenses (including attorneys' fees) which may be paid or incurred by MRG in enforcing any rights under this Guaranty. This Guaranty is an absolute, unconditional and continuing guaranty of the full and punctual payment and performance by the Parent of the obligations and liabilities described herein and not of collectability only and is in no way conditioned upon any requirement that MRG first attempt to collect any amounts due and owing from the Parent or any other party primarily or secondarily liable with respect thereto or resort to any security or other means of obtaining payment of any amounts due and owing to MRG or upon any other contingency whatsoever.

The Guarantor hereby waives promptness, diligence and notice as to the obligations and covenants contained herein and acceptance of this Guaranty, and waives any other circumstance which might otherwise constitute a legal or equitable discharge, release or defense of a guarantor or surety, or that might otherwise limit the obligations of the Guarantor hereunder. The Guarantor hereby agrees that it shall not be entitled to consent to, or receive any notice of, any amendment or modification of, or waiver, release, consent or extension with respect to, or assignment of any agreement giving rise to any obligation guaranteed hereunder, and the Guarantor hereby acknowledges that any such amendment, modification, waiver, release, consent, extension or assignment shall not affect the Guarantor's obligations hereunder. The Guarantor hereby agrees that this Guaranty shall automatically be reinstated if and to the extent that for any reason any payment of the Parent or on behalf of the Parent is rescinded or must otherwise be restored, whether the result of any proceedings in bankruptcy or reorganization or otherwise.

The Guarantor also agrees as follows:

1.     Cy Pres. The doctrine of Cy Pres shall be applicable to this Agreement such that in interpreting the terms and conditions hereunder the intentions of the Guarantor and the beneficiaries hereof are to be carried out as near as may be, when it would otherwise be impossible or illegal to give it literal effect. In any dispute arising out of this Agreement, the doctrine of Cy Pres shall be applied.

2.     Agreement Governed by the Laws of Kansas. This Agreement and the obligations of the Guarantor hereunder, shall be interpreted, construed, and enforced in accordance with the laws, and not the laws pertaining to choice or conflict of laws, of the state of Kansas.

3.     Agreement Subject to Laws. If any provision of this Agreement or the application thereof to any party or any circumstance shall be found to be contrary to, or inconsistent with or unenforceable under any law, rule, regulation or order, the latter shall control and this Agreement shall be deemed modified accordingly, but in other respects this Agreement

*subject to all time, monetary and other limitations set forth in said Stock Purchase Agreement. In no event foregoing guaranty shall not create any greater liability of Guarantor to Langley than Parent has to Langley pursuant to said Stock Purchase Agreement.*

002326
KP1304

ENB-DOJ-001085

T-28-99  11:40AM   FROM-MID COAST ENERGY RESOURCE

*10/28/99*

*Handwritten revisions
made x per eliminate
w/ Dan Tutcher*

*p. 2, 3, 4, 5, 7, 8, 9, 10, 12, 13, 14,
16, 17 — Exhibit A. p. 1, 2, 3, 4, 5, 6
Exhibit C.*

*PARTICIPATION*

# PROJECT ~~DEVELOPMENT~~ AGREEMENT

by and between

MarGasCo Partnership

and

Management Resources Group, LLC.

ProjDev_v6clean LP102799(cd) RevRLsec 8 17 AM

**002327**

KP1305

ENB-DOJ-001086

*[handwritten: at any time prior to the expiration of such term of this Agreement as to MRG Exclusive Projects]*   ✓

terms or any extension thereof expires and/or is terminated in whole, or in part, the rights of the parties described in herein shall continue until the process described herein with respect to such pending Project has been concluded.

Section 1.3    Early MRG Exclusive Projects Termination Option. MarGasCo may elect to terminate this Agreement as to MRG Exclusive Projects (but not as to System/Electrical Projects) by tendering to MRG a one time payment in the amount of TWO MILLION FIVE HUNDRED THOUSAND DOLLARS ($2,500,000) and by providing MRG with notice, pursuant to Section 8.3 hereof, of such termination of this Agreement as to MRG Exclusive Projects (herein the "Early MRG Exclusive Projects Termination Option"). ~~In the event of such termination, MarGasCo and its Affiliates for a period of 3 years from the date of the exercise of such Early MRG Exclusive Projects Termination Option shall be barred from the pursuit of any Project which could have been an MRG Exclusive Project (had the Agreement been continued without termination).~~ Any MRG Exclusive Projects that have been confirmed by MarGasCo with a Confirmation Notice to MRG shall remain subject to the terms of this Agreement.

*[handwritten: prior to the date of exercise of the Early MRG Exclusive Projec]*

Section 1.4    Early System/Electrical Projects Termination Option. MarGasCo may elect to terminate this Agreement as ~~it relates~~ to System/Electrical Projects any time after December 31, 2007, by tendering to MRG a one time payment in the amount of TEN MILLION DOLLARS ·$10,000,000) and by providing MRG with notice, pursuant to Section 8.3, hereof, of such termination of this Agreement (herein the Early System/Electrical Projects Termination Option"). In the event of such termination, then MRG and its Affiliates for a period of 3 years from the date of the exercise of such Early System/Electrical Projects Termination Option shall be barred from the pursuit of any Systems/Electrical Project which could have been a System/Electrical Project (had the Agreement been continued without termination). Any System/Electrical Projects that have been confirmed by MRG by a Confirmation Notice to MarGasCo shall remain subject to the terms of this Agreement notwithstanding such Early System/Electrical Projects Termination.

*[handwritten: Termination Option]*

ARTICLE II

MARGASCO'S PARTICIPATION IN MRG INIATED PROJECTS

*[handwritten: MRG shall submit to MarGasCo all System/Electrical Projects which it then desires to develop to MarGasCo]*

Section 2.1    MRG Initiated Project. . During the term of this Agreement and prior to any Early Electrical Termination, MRG shall submit to MarGasCo any System/Electrical Projects which it desires to develop. MRG shall have no obligation to submit MRG Exclusive Projects to MarGasCo at any time during or after the term of this Agreement ~~or the early termination after MRG Exclusive Project.~~ MarGasCo shall have the right, but not the obligation, to elect to participate in any MRG Exclusive Project which MRG elects to submit to MarGasCo, and in any System/Electrical Projects which MRG submits to MarGasCo ("MRG Initiated Project"). The minimum participation interest MarGasCo and its Affiliated Entities may

*[handwritten: Similarly, during the term of this Agreement as to System/Electrical Projects and prior to any Early System/Electrical Project Termination,]*   ✓

take in any MRG Initiated Project which is also an MRG Exclusive Project is 10% of the interest of MRG and its Affiliated Entities therein, and the maximum participation interest MarGasCo and its Affiliated Entities may take in any such MRG Exclusive Project is 49% of the interest of MRG and its Affiliated Entities therein. The minimum and maximum participation interests of MarGasCo and/or its Affiliated Entities may take in any System/Electrical Project is 50% of 100% of the Project Investment Vehicle. MRG and its Affiliated Entities shall have the exclusive right to acquire, manage, operate, design and construct all MRG Exclusive Projects, subject to the terms of this Agreement.

     **Section 2.2  MRG Notice and Offer to MarGasCo.**  MRG shall provide MarGasCo with a written notice (an "MRG Initiated Project Notice and Offer") of the formation or impending commencement of any MRG Initiated Project. Each MRG Initiated Project Notice and Offer shall include with respect to the applicable MRG Initiated Project, to the extent such information is normally compiled for a project of substantially similar breadth and scope or is necessary for MarGasCo to make an informed decision as to whether MarGasCo desires to participate in such MRG Initiated Project:  i) a detailed description of such MRG Initiated Project, ii) a feasibility study, iii) proposed economic parameters, including financing plans, iv) identification of perceived necessary third party and governmental consents, and v) other facts or information necessary material and reasonably available assessing the economic viability of such MRG Initiated Project.

     **Section 2.3  MarGasCo's Election to Participate. .**  MarGasCo shall have 21 Business Days (the "Project Inquiry Period") from the receipt of an MRG Initiated Project Notice and Offer to make any additional inquiries regarding information it deems necessary to make an informed decision regarding participation in the applicable MRG Initiated Project. MRG shall use reasonable efforts, in good faith, to be responsive to any such additional inquiries made by MarGasCo. If MarGasCo desires to participate in a MRG Initiated Project, it must provide MRG with written notice prior to the lapse of the applicable Project Inquiry Period that MarGasCo is willing to participate (a "MarGasCo Participation Notice") in such MRG Initiated Project upon the terms and conditions set forth by MRG in the related MRG Initiated Project Notice and Offer, provided, however, that if MarGasCo and MRG are maintaining a dialogue in good faith concerning additional information regarding the applicable MRG Initiated Project necessary for MarGasCo to make an informed decision as to participation in such MRG Initiated Project, the Project Inquiry Period shall be extended until the earlier of ten (10) Business Days following the date after which either i) such additional information is furnished, or ii) MRG indicates in writing that no further information is available; or alternatively, until any date as MarGasCo and MRG shall mutually agree to n writing.

     **Section 2.4  Contract Drafting. .**  In the event MarGasCo elects to participate in a MRG Initiated Project pursuant to Section 2.4, then MRG shall within thirty (30) days thereafter send to MarGasCo a complete and binding legal offer setting forth in complete detail the contractual terms, which terms must include:  the price to be paid; operating terms and conditions; construction, design and engineering budgets; finance terms; contractual rights, duties and obligations of the parties; representations and warranties of MarGasCo in the Project; the business Entity or Person which shall own the Project; funding, cash distribution and capital call provisions; Project Development Fees, if any, and any other materially relevant contractual

3

002329
KP1307

terms (hereafter referred to "MRG Proposed Terms").  Within thirty (30) days after receiving the MRG Proposed Terms, MarGasCo shall indicate in writing its intention to accept or reject said MRG Proposed Terms ("MarGasCo Acceptance Notice").

**Section 2.5   MarGasCo's   Confirmation   Period,   Acceptance   and Declination.**  In the event MarGasCo elects to participate in a MRG Initiated Project pursuant to Section 2.4, MarGasCo shall have 30 Days following the submission of an MarGasCo Acceptance Notice (the "Confirmation Period") to arrange for and secure all necessary internal corporate approvals, and approvals and consents of or any Entity or Person necessary for MarGasCo or an Affiliate of MarGasCo to participate in the applicable MRG Initiated Project upon terms and conditions proposed in the MRG Proposed Terms and accepted pursuant to such MarGasCo Acceptance Notice [including, but not limited to, any necessary approvals of KPC (egs. of partners, of Board of Directors, of shareholders, etc.) and/or the syndicate banks for any credit or other loan agreement to be used for financing such MRG Initiated Project].

Prior to the lapse of the Confirmation Period, MarGasCo shall provide written notice to MRG (a "Confirmation Notice") whereby MarGasCo confirms that MarGasCo or an Affiliate of MarGasCo is prepared to proceed with the MRG Initiated Project upon the terms and conditions set forth in the MRG Proposed Terms and accepted by MarGasCo, in which case such terms and conditions shall be binding upon the parties.  In the event that MarGasCo does not provide a Confirmation Notice to MRG prior to the lapse of the applicable Confirmation Period or MarGasCo provides written notice to MRG prior to the lapse of the applicable Confirmation Period informing MRC that MarGasCo and/or its Affiliates are unable to secure the necessary consents or approvals to proceed with the applicable MRG Initiated Project, MarGasCo shall conclusively be deemed to have elected not to participate in such MRG Initiated Project in accordance with and subject to the terms and provisions of Section 2.6.

**Section 2.6   Effect of MarGasCo's Declination.**  If MarGasCo elects not to participate in a MRG Initiated Project either by written notice to MRG, or by failure to provide a MarGasCo Participation Notice in accordance with Section 2.5, or a MarGasCo Acceptance Notice pursuant to Section 2.5, or a Confirmation Notice pursuant to Section 2.5; then MarGasCo shall have no rights to ownership, operation, management, participation or development of such MRG Initiated Project, provided that MRG actually initiates Construction Commencement of such Project within 18 months of the date of such declination (overtly or by omission) by MarGasCo.  Thereafter, MarGasCo and its affiliates shall also be prohibited, without the written consent of MRG (which consent may be withheld for any or no reason) from participation in that particular MRG Initiated Project and in any Substantially Similar Project of MarGasCo's accord or with or through any Entity or Person for a period of three years from the lapse of the applicable Project Inquiry Period; provided that MRG actually initiates Construction Commencement of such Project within 18 months of the date of such declination, overtly or by omission, by MarGasCo.  In the event MRG does not initiate Construction Commencement of such Project within 18 months of the date of such declination, overtly or by omission, by MarGasCo; then MRG shall be required to resubmit the Project, *ab initio* for MarGasCo's consideration, as if no such Project had never been considered by MarGasCo.

4

002330
KP1308

ENB-DOJ-001089

Section 2.7   New or Insufficient Data. .  Notwithstanding the provisions of Section 2.6, if MarGasCo elects not to participate in a MRG Initiated Project by written notice to MRG in which MarGasCo states that the information provided by MRG is insufficient for MarGasCo and/or its Affiliates to make an informed decision regarding participation in such MRG Initiated Project, MRG may not proceed with such MRG Initiated Project with any Person not an Affiliate of MarGasCo to which it provides material information not previously provided to MarGasCo ("New Information") without first giving MarGasCo an opportunity to review such New Information and assess whether, as a result of such New Information, MarGasCo desires to participate in such MRG Initiated Project; unless the Project is an Exclusive Project, in which case MRG may elect to withdraw the Project from MarGasCo's consideration.  For purposes of this Agreement, New Information shall include, but not be limited to any change in proposed (i) economic terms (including financing terms) of a MRG Initiated Project from those set forth in the applicable MRG Proposed Terms. MarGasCo shall have 10 Business Days from the receipt of any New Information to submit a Participation Acceptance Notice to MRG if MarGasCo desires to participate in the applicable MRG Initiated Project.

Section 2.8   Remedies of MarGasCo. .  MRG may not allow the participation in an MRG Initiated Project of any Person and/or Entity not an Affiliate of MRG other than MarGasCo or a MarGasCo Affiliate until such time as MarGasCo's rights under this Article II and its Sections are exhausted.

Section 2.9   Classification. .  If after receiving a MRG Project Notice and Offer , MarGasCo disputes the classification of such Project; or  if MarGasCo believes MRG is proceeding with a Project without having followed the procedures set forth in Article II, then in either or both such events MarGasCo shall have five (5) business days from its receipt of such MRG Project Notice and Offer to send written notice to MRG setting forth an objection in detail with supporting evidence.  If within ten (10) business days after receipt of the objection, MarGasCo and MRG cannot mutually agree in writing to a resolution of any such dispute, then the parties must use the Arbitration procedures set forth in Article VII herein to resolve the dispute over procedure and/or classification.  If the Arbitrator determines that the classification was wrong and/or that the ~~Articles~~ PROCEDURES set forth in Article II were not followed, then in five (5) business days after receipt of the final decision of the Arbitrator resolving the dispute, MRG shall resubmit the MRG Project Notice and Offer required in Article II.

ARTICLE III

MRG'S PARTICIPATION IN A MARGASCO INITIATED PROJECT

MRG Except as Article   Section 3.1   MarGasCo Initiated Projects. During the term of this Agreement as to and prior to any Early MRG Exclusive Project Termination, KPC shall submit all MRG Exclusive Projects which it then desires to develop to MRG.  Similarly , during the term of this Agreement and prior to any Early Electrical Project Termination, MarGasCo shall submit all System/Electrical Projects which it desires to then develop to MRG. MRG shall have the right, but not the obligation, to elect to participate in any MRG Exclusive Project and in any Electrical Project which MarGasCo submits to MRG as a proposed Project as described below in this

5

002331
KP1309

after receiving the MarGasCo Proposed Terms, MRG shall indicate in writing its (and/or its Affiliates) intention to accept or reject said MarGasCo Proposed Terms ("MRG Acceptance Notice").

Section 3.5    MRG's Confirmation Period, Acceptance and Declination. .  In the event MRG elects to participate in an MarGasCo Initiated Project pursuant to Section 3.5, MRG shall have 30 Days following the submission of a MRG Acceptance Notice (the "Confirmation Period") to arrange for and secure all necessary internal corporate approvals, and approvals and consens of any Person or Entity necessary for MRG or an Affiliate of MRG to participate in the applicable MarGasCo Initiated Project upon terms and conditions proposed in the MarGasCo Proposed Terms and accepted pursuant to such MRG Acceptance Notice (including, but not limited to, any necessary approval of the Board of Directors of MRG or the syndicate banks for any credit or other loan agreement to be used for financing such MarGasCo Initiated Project).

Prior to the lapse of the Confirmation Period, MRG shall provide written notice to MarGasCo (a "Confirmation Notice") whereby MRG confirms that MRG, or an Affiliate(s) of MRG, is prepared to proceed with the MarGasCo Initiated Project upon the terms and conditions set forth in the MarGasCo Proposed Terms and accepted by MRG, in which case such terms and conditions shall be binding upon the parties. In the event that MRG or an Affiliate(s) of MRG does not provide a Confirmation Notice to MarGasCo prior to the lapse of the applicable Confirmation Period or MRG provides written notice to MarGasCo prior to the lapse of the applicable Confirmation Period informing MarGasCo that MRG or an Affiliate(s) of MRG is unable to secure the necessary consents or approvals to proceed with the applicable MarGasCo Initiated Project, MRG shall conclusively be deemed to have elected not to participate in such MarGasCo Initiated Project in accordance with and subject to the terms and provisions of Section 3.6.

Section 3.6    Effect of MRG's Declination. .  If MRG elects not to participate in an MarGasCo Initiated Project either by written notice to MarGasCo, or by failure to provide a MRG Participation Notice in accordance with Section 3.3 or a MRG Acceptance Notice pursuant to Section 3.5, or a Confirmation Notice pursuant to Section 3.4 then MRG shall have no rights to ownership, operation, management, participation or development of such MarGasCo Initiated Project, provided that MarGasCo actually initiates Construction Commencement of such Project within 18 months of the date of such declination (overtly or by omission) by MRG.  Thereafter, MRG shall also be prohibited, without the written consent of MarGasCo (which consent may be withheld for any or no reason), from participation in that particular MarGasCo Initiated Project or any Substantially Similar Project of MRG's accord or with or through any Entity or Person for a period of three years from the lapse of the applicable Project Inquiry Period; provided that MarGasCo actually initiates Construction Commencement of such Project within 18 months of the date of such declination, overtly or by omission, by MRG.  In the event MarGasCo does not initiate Construction Commencement of such Project within 18 months of the date of such declination, overtly or by omission, by MRG; then MarGasCo shall be required to resubmit the Project, ab initio, for MRG's consideration, as if no such Project had ever been considered by MRG.

7

002332
KP1310

ENB-DOJ-001091

Section 3.7  **New or Insufficient Data.**  Notwithstanding the provisions of Section 3 6, if MRG elects not to participate in an MarGasCo Initiated Project by providing written notice to MarGasCo in which MRG states that the information provided by MarGasCo is insufficient for MRG and/or its Affiliates to make an informed decision regarding participation in such MarGasCo Initiated Project, neither MarGasCo nor its Affiliates may proceed with such MarGasCo Initiated Project with any Person not an Affiliate of MRG to which it provides material information not previously provided to MRG ("New Information") without first giving MRG an opportunity to review such New Information and assess whether, as a result of such New Information, MRG desires to participate in such MarGasCo Initiated Project. For purposes of this Agreement, New Information shall include, but not be limited to any change in proposed economic terms (including financing terms) of a MarGasCo Initiated Project from those set forth in the applicable MarGasCo Proposed Terms. MRG shall have 10 Business Days from the receipt of any New Information to submit a Participation Acceptance Notice to MarGasCo if MRG and/or its Affilia e(s) desire(s) to participate in such MarGasCo Initiated Project.

Section 3.8  **Remedies of MRG..** MarGasCo may not allow the participation in a MarGasCo Initiated Project of any Person and/or Entity other than MRG until such time as MRG's rights under this Article III are exhausted.

Section 3.9  **Classification.**  If after receiving a MarGasCo Project Notice and Offer , MRG disputes the classification of such Project; or  if MRG believes MarGasCo is proceeding with a Project without having followed the procedures set forth in Article III, then in either or both such events MRG  shall have five (5) business days from its receipt of such MarGasCo Project Notice and Offer to send written notice to MarGasCo setting forth an objection in detail with supporting evidence. If within ten (10) business days after receipt of the objection, MRG and MarGasCo cannot mutually agree in writing to a resolution of any such dispute, then the parties must use the Arbitration procedures set forth in Article VII herein to resolve the dispute over procedure and/or classification. If the Arbitrator determines that the classification was wrong and/or that the procedures set forth in Article III were not followed, then in five (5) business days after receipt of the final decision of the Arbitrator resolving the dispute, MarGasCo shall resubmit the MarGasCo Project Notice and Offer required in Article III and the procedures set forth in Article III shall resume accordingly.

## ARTICLE IV

### PROJECT FINANCING AND DISTRIBUTIONS

Section 4.1  **Project Financing.**  Each party shall be required to secure their own financing and contribute their own equity regarding all Projects. Neither party is required to obtain funding of any kind for any Project for the other party. Notwithstanding any other provisions of this Agreement to the contrary, if at any time a party is unable for for whatever reason does not obtain the financing and/or equity contribution required for a Project, then such party shall have no rights to ownership, operation, management, participation or development of such Project provided that Commencement Construction is commenced within 18 months after

8

092333

KP1311

ENB-DOJ-001092

such failure or default to obtain financing and/or equity contributions.

**Section 4.2    Cash Flow Distributions.** Except as otherwise mutually agreed to by MRG and MarGasCo, all positive cash flow from any MRG Exclusive Project in which both MRG and ~~MCO~~ (and/or their Affiliates) participate, shall be distributed quarterly with MRG (and/or its Affiliates) and MarGasCo (and/or its Affiliates) receiving net proceeds (after debt service, operation costs, Project Development Fees, if applicable) in proportion to their respective ownership therein.

## ARTICLE V

## PUT/PURCHASE RIGHTS REGARDING COMPLETED PROJECTS

**Section 5.1    Put/Purchase Rights.**   With respect to each completed MRG Exclusive Project and each completed System/Electrical Project (a "Put Eligible Project") in which both MRG (and/or its Affiliates) and MarGasCo (and/or its Affiliates) participated pursuant to the terms of this Agreement, i) MRG shall have the right to put or purchase (a "Put/Purchase Right") its ownership interest in a Put Eligible Project to or from MarGasCo at any time following the third anniversary of completion of such Put Eligible Project, and ii) MarGasCo shall have a Put/Purchase Right with respect to its ownership interest in a Put Eligible Project to or from MRG at any time following the third anniversary of completion of such Put Eligible Project.

**Section 5.2    Offer and Response.**   For purposes of this Article V, a Put/Purchase Right shall mean the right of a party hereto (the "Exercising Party") to submit in writing to the other party (the "Recipient Party") a price certain for which the Exercising Party will sell its ownership interest in the applicable Put Eligible Project. Within 60 Days of receipt of the Exercising Party's proposed sale price for such Exercising Party's ownership interest in the applicable Put Eligible Project, the Recipient Party shall indicate in writing (the "Put Response") whether it wishes to (i) acquire such ownership interest from the Exercising Party at the stated price, or (ii) sell its ownership interest in the applicable Put Eligible Project to the Exercising Party for a proportionately equivalent price. The Exercising Party or the Receiving Party shall purchase the other party's ownership interest in the applicable Put Eligible Project in accordance with the Put Response within sixty (60) days of the receipt of the Put Response by the Exercising Party.

**Section 5.3    Terms of Purchase.**   In any acquisition of an interest (beneficial or otherwise) in an MRG Exclusive Project, the definitive documentation evidencing such transaction shall include (a) on behalf of each of the selling party and the acquiring party, traditional representations, warranties and covenants by such party as a Person similarly situated would be expected to provide in a transaction of similar nature under like circumstances, and (b) provisions whereby the selling party shall fully indemnify the acquiring party for all actions taken by (or omissions of) such selling party with respect to the interest to be so acquired or, if such interest represents a controlling interest in a Project, all actions taken by (or omissions of)

9

002334
KP1312

ENB-DOJ-001093

any Person in the course of establishing, developing, promoting, consummation or operating such Project for any period prior to consummation of such acquisition.

*[handwritten: inure to the benefit of and be binding upon any Permitted Assignee.]*

## ARTICLE VI

### TRANSFERS AND AFFILIATED TRANSACTIONS

*[handwritten: (and its Affiliates)]*

Section 6.1   **Legal Relationship.** The obligations of the parties to one another under this Agreement are purely contractual in nature. MarGasCo (and their respective *[handwritten: its]* Affiliates) and MRG do not have fiduciary duties to each other by reason of their current affiliation or common ownership at this time; it being expressly intended that KPC and MRG may act (or refrain from acting) in their own economic self-interests subject only to the terms of this Agreement.   MRG and MarGasCo and/or its Affiliated Entities have no obligations whatsoever to the other with respect to any Projects other than those expressly provided for in this Agreement.

Section 6.2   ~~MarGasCo~~ *[handwritten: MarGasCo]* Change of Control, Asset Sale, and/or Assignment. This Agreement may be assigned by MarGasCo to any Entity, except an Entity which shall thereafter own KPC and the System. ~~If MarGasCo or KPC desire to create a Change of Control, then MarGasCo may do so, but only if such~~ purchaser (assignee or beneficiary) and/or its ultimate controlling Entity executes a guaranty agreement in form and content reasonably acceptable to MRG.   In the event there is a complete assignment of this Agreement by MarGasCo which has complied with the terms hereof, then MRG shall grant a release and novation of only the assigning party and its ultimate controlling Entity from the terms hereof, but the assignee and/or its (their) *[handwritten: and]* ultimate controlling Entities shall be substituted in full for all obligations hereof. *[handwritten: This Agreement shall]*

Section 6.3   **Assignment by MRG.** MRG may assign this Agreement to any *[handwritten: any]* ~~Affiliated Entity of MRG~~, but in such event MRG shall provide MarGasCo written notice thereof pursuant to Section 8.3 hereof. Neither MRG, nor subsequent Permitted Assignee may assign this Agreement to an ~~Unaffiliated~~ *[handwritten: Unaffiliated]* Entity unless the express, prior written consent of MarGasCo is obtained, which consent can be withheld for any or no reasons.   In the event there is an assignment of this Agreement by MRG to an ~~Unaffiliated~~ Entity which is consented to in writing by MarGasCo, then the new Entity shall execute an assumption agreement and/or a restated Agreement which substitutes the new Entity for MRG, and upon the receipt thereof, MarGasCo shall grant MRG a release and novation from the terms of this Agreement.

*[handwritten: (or subsequent Permitted Assignee)]*

## ARTICLE VII

### ARBITRATION

*[handwritten marginal notes: MarGasCo; Entity; Entity which Langley wholly owns (a "Permitted Assignee"); guarantying the obligations of MarGasCo under this Agreement; (or a subsequent Permitted Assignee)]*

002335

KP1313

ENB-DOJ-001094

Section 7.6   Rendering of Decision.   After each side rests in the arbitration hearing, the decision of the Arbitrators must be rendered in writing within ten (10) days, however, a decision rendered extrinsic of such time frame shall be valid and binding on the parties.  If either party believes the decision to be ambiguous or unclear in any manner it shall submit its questions in writing to the Arbitrator and to the other party which may elect to submit comments on the questions in writing to the Arbitrator and to the questioning party within ten (10) days, and the Arbitrators shall respond thereto in writing within ten (10) days of their receipt of the later of the questions or the comments on the questions.

Section 7.7   Choosing of Arbitrator.   The American Arbitration Association shall select one (1) Arbitrator to preside over the arbitration proceedings and render judgment thereon. The Arbitrator shall be an attorney with experience in interstate Natural Gas pipelines. The selection of the American Arbitration Association shall be final, conclusive and irrebutable.

Section 7.8   Costs and Fees.   In the event of any legal or arbitration proceedings (or legal action to enforce the same) arising out of or relating to the arrangements contemplated by this Agreement (regardless of whether such action alleges breach of contract, tort, violation of a statute or any other cause of action), the prevailing party will be entitled to recover its reasonable costs of all such proceedings, including its reasonable attorneys' fees and expert witness fees.  If a party prevails on some aspects of such action but not on others, the Arbitrator shall apportion any award of costs or attorneys' fees in such manner as it deems equitable, including court costs, legal expenses of both parties during the course of and in preparation for the proceedings; travel and out-of-pocket expenditures of either party in preparation for the proceedings; accounting, professional and/or expert witness fees actually expended by either party in preparation for or during the proceedings, etc.

*as to MRG Exclusive Projects*

ARTICLE VIII

GENERAL TERMS AND CONDITIONS

*with rgt to KP project MRG Exclusive project*

Section 8.1   Geographic Coverage.   The terms and provisions of this Agreement, including the rights and obligations of the parties granted hereunder, shall apply to the parties and the operations of their respective businesses throughout the world.

Section 8.2   Waiver.   .Each party reserves the right to waive, in whole or in part, any provision hereof which is for the benefit of that party, and such waiver shall not be construed as creating a course of conduct which prevents it from refusing to waive other provisions and/or the same provision thereafter.  Any party's failure or delay in protesting, or contending breach pursuant to Article VII or taking legal and/or equitable action or demanding arbitration upon the other party's breach is no waiver of that cause of action, unless that party's delay to take action exceeds a reasonable time under the circumstances, exceeds a time frame limitation set forth elsewhere herein or exceeds the statute of limitations. Any party's failure or delay in protesting, or contending breach pursuant to Article VII or taking legal and/or equitable action or demanding arbitration upon the other party's breach is not to be considered as being a waiver of that party's cause of action for any

12

002336
KP1314

ENB-DOJ-001095

subsequent breach of the same or of a different nature.  Except as set forth in Section 1 3.2 and 1.3.3 regarding the Ear y Complete Termination Option procedure, failure of any party hereto to contest the accuracy of any payments due and/or previously made hereunder, shall not constitute a waiver or release of any rights or remedies pursuant to the provisions of this Section 8 2, "Waiver", Section 8.14 "Breach, Notice and Cure", or Article VII, "Arbitration".

Section 3.3    Notices.  All notices and other correspondence required or made necessary by the terms of this Agreement shall be delivered to the respective parties hereto by registered mail, return receipt requested at the following addresses:

MRG:        Management Resources Group, LLC.
            Dennis M. Langley, President
            13137 Thunderhead Falls Lane
            Rapid City, SD  57702
            Telephone No:  (605) 355-9746

~~KPC~~     ~~Kansas Pipeline Company~~
            ~~8325 Lenexa Drive, Suite 400~~
            ~~Lenexa, KS  6621~~
            ~~Telephone No: (913) 828-7132~~
            ~~Fax No.: (913) 599-2573~~
            ~~Attn: Howard E. Lubow, Executive Vice President~~

MarGasCo    MarGasCo Partnership
            8325 Lenexa Drive
            Lenexa, KS  66214
            Telephone No:  (913) 599-4302
            Fax No.:  (913) 599-4823
            Attn:  Howard E. Lubow, Executive Vice President

or to such other address or Persons as either party hereto may unilaterally designate in writing to the other.  Duplicate notices may also be given by any of the following forms:  telegram, telex, telecopy and/or personal delivery.  A notice shall be deemed received when the first form of notice or duplicate notice is actually received by the party to whom it is addressed.

Section 3.4    Reports and Information.  From time to time during the life of this Agreement, both parties shall consult and meet with as well as provide reports and information to each other and in other appropriate ways keep each other timely informed about the status of all ongoing Projects.  The parties hereby agree to execute, acknowledge and deliver to each other any further transfers, acknowledgments, powers of attorney, authorizations, filings, applications, reports or other documents or instruments that may be reasonably required to give full force and effect to the provisions of this Agreement, and to take such further actions reasonably required in fulfillment of obligations set forth herein or in furtherance of the intent hereof.

13

00233
KP1315

ENB-DOJ-001096

Section 8.5    Publicity. So long as this Agreement is in effect, without the prior consent of the other party, which may be withheld for any reason or no reason at the sole discretion of either party, neither MRG nor KPC shall, nor shall either of them permit their respective Affiliates to, issue or cause the publication of any press release or other public statement or announcement of any nature with respect to this Agreement or the transactions contemplated hereby except as may be required by law or by obligations pursuant to any listing agreement with a national securities exchange. If either KPC or MRG is required by law or obligation pursuant to any applicable listing agreement to disclose any information with respect to this Agreement or the transactions contemplated hereby, such party shall provide the other party with prompt notice of such required disclosure.

Section 8.6    Use of Facilities. During the term of this Agreement, KPC shall make available to MRG and its representatives, free of charge, the use of office space at KPC's headquarters located in Johnson County, Kansas, for work related to Projects, until September 30, 2000, and MRG shall permit its personal property located at such offices to be used by KPC until such date.

Section 8.7    Governing Law. This Agreement and the obligations of the parties hereunder, shall be interpreted, construed, and enforced in accordance with the laws, and not the laws pertaining to choice or conflict of laws, of the state of Kansas.

Section 8.8    Complete Agreement. This Agreement ~~and the other documents and writings referred to herein or delivered pursuant hereto,~~ contain the entire understanding of the parties with respect to the subject matter hereof ~~and thereof~~ and supersede all prior agreements and understandings, both written and oral, between the parties with respect to the subject matter hereof ~~and thereof~~.

Section 8.9    Counterparts. This Agreement may be executed in multiple counterparts, each of which shall be in an original, but all of which shall be deemed to constitute one instrument. This Agreement or any document executed in connection herewith shall be binding upon such signatory party, if said signature is delivered by telecopier or other like transmission.

Section 8.10   Grammatical Construction and Titles of Sections . The title and subtitles of articles, sections and Sections of this Agreement are for convenience only, are not part of the terms of this Agreement, are without legal or contractual significance, and as such shall not govern the terms of or in any way influence the interpretations of this Agreement.

Section 8.11   Severability. Any provision of this Agreement which is invalid, illegal or unenforceable in any jurisdiction shall, as to that jurisdiction, be ineffective to the extent of such invalidity, illegality, or unenforceability, without affecting in any way the remaining provisions hereof in such jurisdiction or rendering that or any other provision of this Agreement invalid, illegal or unenforceable in any other jurisdiction.

Section 8.12   Jurisdiction and Venue. Any suit, action or proceeding with respect to the enforcement of any decision or judgment of Arbitrators pursuant to Article VII (and only in such circumstances) may be brought in any court in Kansas.  KPC and MRG

14

002338
KP1316

ENB-DOJ-001097

MarGasCo agree and understand that any of the employees, agents and/or consultants listed in **Exhibit C** hereto may be employed by MRG or its Affiliated Entities or consult with or provide legal and/or professional services thereto, then such departure is deemed to be consented to by MarGasCo and their Chief Executive Officers, and deemed not to be a violation of this Section 8.15.

iii)   MRG and MRG Affiliates will not solicit, interfere with or compete for the firm transportation volumes (at existing levels) of Western Resources and/or Missouri Gas Energy, nor interfere, solicit or compete for such volumes when the existing firm transportation contracts expire and/or are up for renewal.

iv)   Notwithstanding anything herein to the contrary, MRG and its Affiliated Entities are prohibited for so long as this Agreement remains in effect as to MRG Exclusive Projects from pursuing K.C. Metro Projects for a period of three (3) years after the date of the Early MRG Exclusive Projects Termination.

**Section 8.16   Warranty Against Circumvention/Confidentiality.** The parties hereto warrant that neither they nor any of their Affiliated Entities shall attempt to circumvent the terms of this Agreement or its underlying intent either directly or indirectly via the use or creation of an Affiliated Entity. The parties further warrant that they shall indemnify one another and keep each other whole from any actions of an Affiliate which if done by a party would be a breach of the terms hereof. To the extent either party alleges that such circumvention has been attempted and/or such a breach has occurred, any Arbitrator reviewing such action is expressly requested by the parties to look harshly upon such an action or such an attempt of circumvention. Any circumvention of this Agreement by a party hereto through the direct use or indirect use (with or without knowledge) of an Affiliated Entity which owns, participates in or operates a Project, or Project Investment Vehicle, shall be deemed to be circumvention of this Agreement by the party hereto which is affiliated to such Affiliated Entity.

MarGasCo and MRG are currently Affiliates of one another; however, if they cease to be Affiliated by virtue of the issued and outstanding stock of The Bishop Group, Ltd. being sold to an Unaffiliated Entity, the duties imposed on Affiliated Entities and/or liabilities and/or indemnities of the parties with respect to activities of their Affiliated Entities, which may be circular, and even meaningless, (while MarGasCo and MRG are Affiliated Entities) are intended to be created and shall survive assignment of this Agreement. However, circular liabilities (liabilities of a party and/or its Affiliates to the same party and/or its Affiliates and not to the other party and/or its Affiliates) to the extent they exist, and for the duration of their existence shall be eliminated, ignored and limitedly released.

**Section 8.17.   Restricted Information.** All information, documents, data and information disclosed by either party to the other shall be held in strict confidentiality ("Restricted Information"). MRG and MarGasCo each agree that at all times: a) it will protect the Restricted Information from disclosure to persons not authorized herein by exercising at least the

16

002339
KP1317

ENB-DOJ-001098

same care with respect thereto as it exercises with respect to its own confidential information of like kind, except if disclosure is required pursuant to a subpoena or court order (in written notice), however, the party subject to such subpoena or court order will provide all the other parties a reasonable opportunity to seek a protective order or other remedy to prohibit or limit disclosure of Restricted Information and shall offer all reasonable cooperation for any such dissemination of the Restricted Information within its organization and the organizations of its subsidiaries and affiliates to those persons who have a need to know such information in performing the purpose; and b) it will not employ the Restricted Information for any purpose other than the purpose. The foregoing shall not prohibit or limit MRG's or MarGasCo's use of Restricted Information which: a) was previously known to it; b) was independently developed by it; c) was rightfully acquired by it from a third party without continuing restriction on use for which it is aware; or d) is or becomes part of the public domain through no breach by MRG or KPC of this Agreement.

IN WITNESS WHEREOF, each of MarGasCo and MRG have caused this Agreement to be executed by their duly authorized officers as of the day and year first above written.

Management Resources Group, LLC

By: _____
      Dennis M. Langley, President

MarGasCo Partnership
By: Syenergy Pipeline Company, L.P., its
      General Partner
By: Bishop Pipeline Company, its
      General Partner

By: _____
      Howard E. Lubow
      Executive Vice President and Chief
      Operating Officer

17

002340
KP1318

ENB-DOJ-001099

EXHIBIT A

TO

PROJECT DEVELOPMENT AGREEMENT

GLOSSARY

Terms in the singular shall have the same meanings when used in the plural and vice versa, and any gender designation shall refer to all genders. The following terms shall be used throughout the Project Development Agreement in accordance with the definitions ascribed to them in this Glossary, to-wit:

**Affiliated Entity or Affiliate** shall be deemed affiliated as to each other to the extent: a) one of the Entities directly or indirectly controls, or is controlled by, the operations of the other, or the direct or indirect control of one of the Entities is exercised by the officers, directors, stockholders, or partners of the other Entity (whether or not such persons exercise such control in their capacities as officers, directors, stockholders, or partners); and b) one of the Entities directly or indirectly owns, and/or its officers, directors, stockholders or partners (limited or general) directly or indirectly own, a fifteen percent (15%) or greater interest in the capital and/or profits of the other Entity. By way of illustration, if Corporation A owns 51% of the stock of Corporation B, which owns 51% of the stock of Corporation C, which owns fifty-one 51% of Corporation D; then each of A, B, C and D would be an Affiliate of each and every one of the other three corporations.

~~**Affiliated Transaction(s)** shall mean any transaction by MarGasCo (and/or which uses the System) with an Affiliated Entity of MarGasCo (including any agent, representative and/or operative thereof) so long as such Affiliated Entity of MarGasCo is not also an Affiliated Entity of MKG.~~

**Agreement** shall mean that particular "Project Development Agreement" to which this Glossary is attached as Exhibit A.

**Arbitration** shall have the meaning set forth in Article VII.

**Business Day** shall mean any day except a Saturday, Sunday or a day on which banking institutions in Johnson County, Kansas, are obligated by law, regulation or governmental order to close.

**CDT** shall mean Central Daylight Time

1

002741
KP1319

ENB-DOJ-001100

OCT-23-90 11:46AM   FROM-MID COAST ENERGY RESOURCES          713-650-3232       T-350   P 20/25   F-797

CST shall mean Central Standard Time

CT shall mean either CST or CDT whichever is applicable at the time to which it is being referred.

Confirmation Notice shall have the meaning set forth in Sections 2.5 and 3.5.

Confirmation Period shall have the meaning set forth in Sections 2.5 and 3.5.

Construction Commencement shall mean ~~any and all construction and/or engineering~~ *commencement of actual* ~~services of any type whatsoever necessary to engineer and/or design a facility; to create~~ *construction of the Project* ~~construction blueprints and/or drawings; to build; to install and/or construct facilities and any modifications, improvements, and/or expansions of the facilities; and/or to order materials, supplies and/or equipment to be consumed during Construction or to become part of the facilities.~~

Dispute shall have the meaning set forth in Article VII. *—as set forth*

Early MRG Exclusive Projects Termination Option shall mean MarGasCo's right to terminate this Agreement as to MRG Exclusive Projects ~~for a fee of $10,000,000 as explained more particularly in~~ *as set forth* Section 1.4 of this Agreement.

Early System Electrical Projects Termination Option shall mean MarGasCo's right to terminate this Agreement as to System/Electrical Projects ~~for a fee of $2,500,000, as explained more particularly in~~ Section 1.3 of the Agreement.

Effective Date shall mean the day and year first written in the Agreement.

Entity see Person.

Exercising Party shall have the meaning set forth in Section 5.2.

FERC shall mean Federal Energy Regulatory Commission.

K.C. Metro Area shall have the meaning of Johnson and Wyandotte Counties in Kansas, and Platte, Clay and Jackson Counties in Missouri.

KPC shall mean Kansas Pipeline Company, a Kansas general partnership, ~~and its successors and assigns.~~ KPC is an Affiliated Entity of MarGasCo.

KPC Change of Control shall mean any one or all of the following events, to-wit:

i)   should, KPC and/or any Entity sell and/or transfer more than 10% of KPC's of the System's assets cumulatively over any period of time and/or file abandonment proceedings with the FERC which, when taken together with all other sales and/or transfers exceed the 10% threshold; and/or

2

002342
KP1320

ENB-DOJ-001101

ii)   ~~should The Bishop Group, Ltd. cease to own, directly and/or indirectly, less than 50.1% of KPC or MarGasCo and/or~~

iii)   ~~should KPC or MarGasCo cease to be an Affiliated Entity of Langley;~~

**Early System/Electrical Projects Termination Option** shall mean MarGasCo's right to terminate this Agreement as to System/Electrical Projects for a fee of $10,000,000, as explained more particularly in Section 1.4 of the Agreement.

**MarGasCo Initiated Project Notice and Offer** shall have the meaning set forth in Section 3.2

**MarGasCo Participation Notice** shall have the meaning set forth in Section 2.3.

**MarGasCo Project Notice and Offer** shall have the meaning set forth in Section 3.5

**MarGasCo Proposed Terms** shall have the meaning set forth in Section 3.4.

**LDC** shall mean a local distribution company.

**Langley** shall mean Dennis M. Langley, his heirs, legatees, ~~successors, assigns and grantees~~ *and devisees, including any trusts created exclusively for heirs.*

**MRG** shall mean Management Resources Group, LLC, a Kansas corporation, ~~its successors and assigns.~~ It is expressly acknowledged, accepted and understood by KPC that MRG is not the same Entity as the former Management Resources Group, Ltd. The former Management Resources Group, Ltd.'s name was changed to Bishop Management, Inc., and that Entity was and is a wholly owned subsidiary of The Bishop Group, Ltd.

~~MRG Change of Control shall mean any event which results in Langley (plus his Affiliated Entities) owning less than 50.1% of MRG.~~

**MRG Exclusive Project** shall mean any and all of the following Projects:

i)   Any and all projects for the sale (wholesale or retail), transmission, storage, gathering, generation, distribution production and/or reproduction of electricity.

ii)   Any and all Projects that involve material participation by or in assets and/or property owned, and/or developed, in part or in whole, by any Native American Tribe; and/or any and all Projects in which a material portion of the assets of such Project are located on land owned by a Native American Tribe.

iii)   Any and all projects involving the acquisition, development, expansion and/or operation of alternate energy, including: solar, wind generation, geothermal, ocean thermal gradients, magneto hydrodynamics, hydrogen, water (hydro) power, hydrothermal fusion, photovoltaic power, fuel cells, bio-

3

002243
KP1321

FNB-DOJ-001102

energy, bio-mass, refuse derived fuel, atmospheric thermal gradients, refrigerant created thermal gradients, tidal energy projects.

iv)  Any and all recycling or environmental reclamation projects; and/or any and all water processing, purification or treatment, processing, distribution, transportation, production, storage and/or sewage projects; and/or any and all ~~other communications projects.~~

**MRG Initiated Project** shall have the meaning set forth in Section 2.1.

**MRG Participation Notice** shall have the meaning set forth in Section 2.3.

**MRG Project Notice and Offer** shall have the meaning set forth in Section 2.3.

**MRG Proposed Terms** shall have the meaning set forth in Section 2.6.

**MarGasCo** shall mean MarGasCo Partnership, an Oklahoma partnership ( an Affiliated Entity of KPC), and its successors and/or assigns.

**Native American Tribe** shall mean any Indian Tribe, band, group, Nation or Entity, including Alaska Indians, Aleuts, or Eskimos, or any Alaskan Native Village of the United States, which is considered an eligible recipient under the Indian Self Determination and Education Assistance Act (Public Law 93-638) or was considered an eligible recipient under chapter 67 of title 31, United States Code, prior to the repeal of such chapter. It should be noted that P.L. 93-638 incorporates Department of Interior List of Federally Recognized Tribes. Additionally, Native American Tribe shall mean any Entity recognized by their respective Governments as being aboriginal, Indian, and/or having ancestry in Canada or Mexico prior to 1492.

**Natural Gas** or **Gas** shall mean hydrogen, methane, ethane, propane, butane, iso-butane, pentanes or heavier hydrocarbons or any combination thereof, as well as all non-hydrocarbon elements which are concomitant, entrained or imbedded therein or therewith. Natural Gas may be in a liquid, vapor or solid form and inherently includes CNG, LP and LNG Products.

**New Information** shall have the meaning set forth in Sections 2.7 and 3.7.

*Permitted Assignee shall have the meaning set forth in Section 6.3*

**Person** or **Entity** shall mean any corporation, proprietorship, partnership (general or limited), natural person, trust, estate, foundation, association or any other entity or group.

**Project** shall mean any MRG Exclusive Project as the term *are* used herein.

**Project Costs** shall mean, with respect to any Project, the total "turn-key" costs expended or accrued on such Project until it is completely finished, started-up and placed in service, whether capitalized or expensed, whether internal or external, including but not limited to project development fees and costs, professional fees, engineering costs, accounting costs, construction costs, equipment costs, pre-start-up operating expenses, inspection expenses, regulatory fees and assessments, taxes, labor costs and legal expenses.

*or System / Electrical Project*

002344
KP1322

**Project Development Fees** shall mean any project development fees or costs incurred by the party in developing a Project, including professional fees, consulting fees, labor costs, travel and lodging expenses .and other general and administrative charges of said developing party~~, may~~ not exceed three percent (3%) of Project Costs.  *not*

**Project Inquiry Period** shall have the meaning set forth in Sections 2.3 and 3.3.

**Project Investment Vehicle** shall mean any Person which has a direct or indirect ownership (equity or legal) in, or the right to control the operation and receive income from any Project.

**Put Eligible Project** shall have the meaning set forth in Section 5.1.

**Put/Purchase Right** shall have the meaning set forth in Section 5.2.

**Put Response** shall have the meaning set forth in Section 5.2.

**Recipient Party** shall have the meaning set forth in Section 5.2.

**Securities Act** shall mean the Securities Act of 1933, as amended, and the rules and regulations promulgated thereunder.

**Substantially Similar Project** shall mean, with respect to any Project (or a material portion thereof), another project (or a material portion thereof) so similar in primary objective, geographic scope, location and intended customer base to the original Project (or a material portion thereof) as to cause a disinterested, objective, third party to conclude that both (Projects) projects (or a material portion thereof) are substantially similar.

**Sufficient Detail** shall mean, with respect to a Project or any combination of the following which are sufficient for a disinterested, objective, third party to identify such Project: a) the primary objective of such Project, b) the geographic scope and location of such Project, c) the intended primary customers to be served by such Project, d) the intended participants in such Project, and/or e) any other material information with respect to such Project.

**System** shall mean that particular Natural Gas pipeline as it now exists, which is presently owned by KPC ~~including, but not limited to the following~~ *inclusive of:*

i)      the Transok leasehold interest owned by KPC.

ii)     any and all facilities now owned or hereafter acquired by KPC which are recognized by the FERC as part of KPC's plant in service either now or at any point in the future.

A map of the System as it currently exists is attached to the Project Development Agreement as Exhibit B.

002345
KP1323

ENB-DOJ-001104

*Projects for the construction, ownership and use of laterals off of the System for the receipt of Natural Gas*

**System/Electrical Projects** shall mean any and all laterals from the System to electrical generation facilities (e.g. gas fired power plants, electrical generation facilities, co-generation facilities, etc.) outside the K.C. Metro Area, but within 35 miles of the System.

**Unaffiliated Entity** or **Non-Affiliate** shall mean any Entity which is not an Affiliated Entity.

*and the transporting, marketing and redelivery of said Natural Gas*

6

002346
KP1324

ENB-DOJ-001105

## EXHIBIT C

**Employees:**

Dennis M. Langley
Steve Korb
Lynette K. Shaw
Yvette C. Korb
LaVonna Woods
Jim Bowman
Tracey LeBeau
Brandon Glenn
Betty Eichenlaub
Keith Teeple
Tiffany Beyer
Howard Lubow
Vicki Bryan
Teri Townley
Joan A.W. Schnepp
Any persons terminated or laid off
   by KPC after Closing of the
   Stock Purchase Agreement.

**Consultants:**

Nathan Beyer d/b/a Brown Dog Systems
Mary Holliday d/b/a CR Consulting
Judy D'Atley
Edward Lang
Butch Maki
Frank LaMere
Kerry Patrick d/b/a Patrick
   Development Corporation
Any lawyer which currently providing legal
services to The Bishop Group, Ltd.
and/or its Affiliated Entities prior to
October 15, 1999.

1

002347
KP1325

ENB-DOJ-001106

| | |
|---|---|
| Appendix | 8 |
| Reference | JvZ'gvHD006347-INT |

Meeting Rabobank International Credit Committee dated October 29, 1999

Summary of credit report dated October 22, 1999 and additional memorandum dated October 27, 1999, both by Mr. C.G. Kortlandt of New York Branch.

| | |
|---|---|
| Client | K-Pipe Holdings Partners, L.P. ("KPHP") (a newly formed Delaware Limited Partnership) |
| Application | An up to 30 days cash secured term loan                                USD   215,000,000 |
| | (Internal review date  N.A). |
| Purpose | Allow KPHP to complete a Stock Purchase Agreement between KPHP and the shareholders of Bishop Group, Ltd., a Kansas Corporation |
| Existing Exposure | None |
| Total Exposure incl. application | Principal                                                                         USD   215,000,000 |
| Existing Protection | None. |
| Proposed Protection | Pledged escrow accounts (USD 220 mln.) held at Rabobank. |
| Financial Risk Score | 5.0 (first assessment) |
| Credit Risk Score | 5.0 (first assessment) |

This transaction was referred to the Branch by Fortrend International, LLC ("Fortrend"), or investment banking firm specialising in structuring economic transactions to solve specific corporate and estate or accounting issues. Fortrend and its affiliates have acted as principal or investment banker in numerous transactions, ranging from USD 10 mln to in excess of USD 1 bn in assets. Rabobank has entered into many transactions with Fortrend, all of which have been concluded satisfactorily.
Rabobank has been offered the opportunity to assist in the completion of a stock purchase transaction for KPHP. Rabobank's role will be that of a lending bank to the acquirers.

The transaction is contemplated as follows:
(1) A newly formed Delaware Limited partnership, K-Pipe Holdings Partners, L.P., borrows from Rabobank an amount of up to USD 195 mln. and uses the proceeds to purchase the shares of Bishop Group, Ltd. This amount will be transferred into an Escrow account (Escrow account-1) at Rabobank in the name of Dennis M. Langley. Release of the funds can only take place when clearance under a Hart-Scott-Rodino filing has been obtained (expected after one week). If no clearance has been obtained within 30 days, the funds will automatically go back to Rabobank for repayment of the loan.

GOVERNMENT EXHIBIT
96
PENGAD-Bayonne, N.J.

RABO-F-  0006004

ENB-DOJ-028544

(2) Prior to Rabobank advancing the loan, the Midcoast Energy, Inc. has placed an amount of USD 200 mln in an escrow account (Escrow account-2) held at Rabobank. This escrow account is pledged to Rabobank.

(3) Within a week, the new owners, our Borrower, will consummate the sale of the Gas Pipeline business to Midcoast Energy, Inc. for which the USD 200 mln in the escrow account-2 will be used. The amount received by our client from the escrow account-2 will be used to repay the loan in full.

(3) If the consummation of the sale of the Gas Pipeline businesses to Midcoast Energy, Inc. does not take place, only because no clearance has been received under the Hart-Scott-Rodino filing, Rabobank will use the funds in Escrow account-1 to repay the loan in full.

Mr Dennis M. Langley has been in this business a long time and has grown the business over time, culminating in acquiring the Eastern and Western Pipeline business in Kansas from Phillips Petroleum in 1984 and 1989 respectively. Recently, Mr. Dennis M. Langley has decided to sell is Gas Pipeline business

---

**Decision:**   Approved (full and final)

It was recalled that the Rabobank International Credit Committee on October 27, 1999 decided to submit the application to the Executive Board with a positive recommendation, subject to Legal Department being satisfied with the documentation and reputation risks. New York Legal Department (Mr. Bilbao) was requested to prepare an updated opinion on possible reputation risk connected to this kind of transactions, which should be forwarded to the Credit Committee for information purposes.

In an additional memorandum presented at the meeting today, some amendments to the positively recommended application were requested, consisting of an increase in loan from USD 195 million to USD 215 million and cash collateral from USD 200 mln to USD 220 mln.

Another element of the application was the release of the pledge on the partnership interest in the borrower, which was not considered really necessary.

Due to time constraints the Rabobank International Credit Committee decided to approve the application.

After the meeting a member of the Executive Board also gave his approval.

The Executive Board is requested to formally ratify this decision.

RABO-F- 0006005

ENB-DOJ-028545

**From:**      Chris Kaitson <ckaitson@midcoastenergy.com>
**To:**        Chris Kaitson <ckaitson@midcoastenergy.com>, "Cynthia Morelli (E-mail)"
<ctmorell@llgm com>, "Gary Wilcox (E-mail)" <gary.b.wilcox@us.pwcglobal com>, "Graham Taylor
(E-mail)" <gtaylor@llgm.com>, Richard Robert <rrobert@midcoastenergy.com>, "Ron Chachere (E-mail)"
<rlchachere@aol.com>, "Tom Palmisano (E-mail)" <thomas.j.palmisano@us.pwcglobal.com>
**Date:**      10/29/99 10:15PM
**Subject:**   KPC Documents

Attached are the Stock Purchase Agreement and the following related
documents:

(266)   Stock Purchase Agreement
(273)   Company Disclosure Sch. (Dennis)
(267)   Stock Redeem Agr.
(276)   Guaranty (KPC)
(274)   Option Agr.


Missing are     Buyer's (K-Pipe) Disclosure Schedule
                Proj. Devel Agr. ( I could not open it)
                Proj Particip. Agr. ( I could not open it)

Chris Kaitson
General Counsel
Midcoast Energy Resources, Inc.
1100 Louisiana Street, Suite 2950
Houston, Texas 77002
Phone. 713-650-8900 X2028
Fax: 713-650-3232
e-mail: ckaitson@midcoastenergy.com

GOVERNMENT
EXHIBIT
97

PENGAD-Bayonne, N. J.

KPLB-3556

```
CUSTOMER CONNECTION                    Account Reference Information
BANK OF AMERICA, N.A.                  Account Number      3751410195
DALLAS, TEXAS  75283-2406             Tax ID Number        760622250
                                                   01 01 149 06 M0000


                                       Customer Service
                                       1-800-657-9533

BUTCHER INTEREST PARTNERSHIP
PATRICK DELANEY
1100 LOUISIANA, SUITE 2950
TX4-213-08-01                          Statement Date  11/30/1999
HOUSTON TX  77002

                                       Page   1 of   1
```

---

### CUSTOMER CONNECTION INTERNAL ACCOUNTS
#### Account Summary Information

| | | | |
|---|---|---|---|
| Statement Period 00/00/0000 - 11/30/1999 | | Statement Beginning Balance | .00 |
| Number of Deposits/Credits | 2 | Amount of Deposits/Credits | 6,325,000.32 |
| Number of Withdrawals/Debits | 1 | Amount of Withdrawals/Debits | 6,225,000.00 |
| | | Statement Ending Balance | 100,000.32 |
| Number of Enclosures | 0 | Average Ledger Balance | 95,652.48 |
| Number of Days in Cycle | 23 | Service Charge | .00 |

#### Deposits and Credits

| Date Posted | Customer Reference | Amount | Description | Bank Reference |
|---|---|---|---|---|
| 11/09 | | 225,000.32 | CORPORATE CREDIT SERVICE - CREDIT BUTCHER INTEREST PARTNERSHIP FDES NTX 0005440 NBKSWJ8 | 4504400013 |
| 11/09 | | 6,100,000.00 | Wire Type: Fed In  Date: 991109 Time: 1635 Fed Ref:006281 Orig:RABOBANK NEDERLAND Sending Bk:BK OF NYC Pmt Det:BUTCHER INTEREST PARTNERSHIP BOA AC-375141 0195 BBI= OBI ATT CORP LOANS | 0409016522 |

#### Withdrawals and Debits

Other Debits

| Date Posted | Customer Reference | Amount | Description | Bank Reference |
|---|---|---|---|---|
| 11/09 | | 6,225,000.00 | Miscellaneous Debit Adjustment CORPORATE CREDIT SERVICE - DEBIT BUTCHER INT. PARTNERSHIP FDES NTX 0005440 NBKSWJ8 | 4504400014 |

#### Daily Ledger Balances

| Date | Balance | Date | Balance | Date | Balance |
|---|---|---|---|---|---|
| 00/00 | .00 | 11/09 | 100,000.32 | | |

Message Center

i 00000 ʻ¹ᵒᵉᴵ

```
CUSTOMER CONNECTION                    Account Reference Information
BANK OF AMERICA, N.A.                  Account Number      3751410195
DALLAS, TEXAS  75283 2406              Tax ID Number       760622250
                                                  01 01 149 06 M0000


                                       Customer Service
                                       1-800-657-9533

BUTCHER INTEREST PARTNERSHIP
PATRICK DELANEY
1100 LOUISIANA, SUITE 2950
TX4-213-08-01                          Statement Date  12/31/1999
HOUSTON TX  77002


                                       Page    1 of   1
```

---

CUSTOMER CONNECTION INTERNAL ACCOUNTS

Account Summary Information

| | | | |
|---|---|---|---|
| Statement Period 11/30/1999 - 12/31/1999 | | Statement Beginning Balance | 100,000.32 |
| Number of Deposits/Credits | 0 | Amount of Deposits/Credits | .00 |
| Number of Withdrawals/Debits | 1 | Amount of Withdrawals/Debits | 37,616.67 |
| | | Statement Ending Balance | 62,383.65 |
| Number of Enclosures | 0 | Average Ledger Balance | 78,158.38 |
| Number of Days in Cycle | 31 | Service Charge | .00 |

---

Withdrawals and Debits

Other Debits

| Date Posted | Customer Reference | Amount | Description | | Bank Reference |
|---|---|---|---|---|---|
| 12/14 | | 37,616.67 INT-DEBIT | LOAN:00183653 | 001718365 | 4740001093 |

---

Daily Ledger Balances

| Date | Balance | Date | Balance | Date | Balance |
|---|---|---|---|---|---|
| 11/30 | 100,000.32 | 12/14 | 62,383.65 | | |

Message Center

ƨ000000AO8

```
CUSTOMER CONNECTION                    Account Reference Information
BANK OF AMERICA, N.A.                  Account Number    3751410195
DALLAS, TEXAS  75283-2406             Tax ID Number      760622250
                                                  01 01 149 06 M0000


                                       Customer Service
                                       1-800-657-9533

BUTCHER INTEREST PARTNERSHIP
PATRICK DELANEY
1100 LOUISIANA, SUITE 2950
TX4-213-08-01                          Statement Date  01/31/2000
HOUSTON TX  77002


                                       Page   1 of   1
```

CUSTOMER CONNECTION INTERNAL ACCOUNTS
Account Summary Information

| | | | |
|---|---|---|---|
| Statement Period 12/31/1999 - 01/31/2000 | | Statement Beginning Balance | 62,383.65 |
| Number of Deposits/Credits | 1 | Amount of Deposits/Credits | 29,404.00 |
| Number of Withdrawals/Debits | 1 | Amount of Withdrawals/Debits | 2,965.28 |
| | | Statement Ending Balance | 88,822.37 |
| Number of Enclosures | 0 | Average Ledger Balance | 85,410.92 |
| Number of Days in Cycle | 31 | Service Charge | .00 |

Deposits and Credits

| Date Posted | Customer Reference | Amount | Description | Bank Reference |
|---|---|---|---|---|
| 01/05 | | 29,404.00 | Wire Type: Fed In  Date: 000105 Time: 1055 | 0409005660 |
| | | | Fed Ref:000836 Orig:SYENERGY PIPELINE C | |
| | | | Sending Bk:UMB KC | |
| | | | Pmt Det:BUTCHER INTEREST PARTNERSHIP AC-3751410195 | |
| | | | OBI=REF:NOVEMBER 1999 INTEREST BBI=KANSAS PIPELIN | |

Withdrawals and Debits

Other Debits

| Date Posted | Customer Reference | Amount | Description | | | Bank Reference |
|---|---|---|---|---|---|---|
| 01/05 | | 2,965.28 | INT-DEBIT | LOAN:00183653 | 001718342 | 4740001161 |

Daily Ledger Balances

| Date | Balance | Date | Balance | Date | Balance |
|---|---|---|---|---|---|
| 12/31 | 62,383.65 | 01/05 | 88,822.37 | | |

Message Center

```
CUSTOMER CONNECTION                    Account Reference Information
BANK OF AMERICA, N.A.                  Account Number    3751410195
DALLAS, TEXAS  75283-2406              Tax ID Number     760622250
                                                         01 01 149 06 M0000


                                       Customer Service
                                       1-800-657-9503

BUTCHER INTEREST PARTNERSHIP
ATTN THELMA L JOHNSON
1100 LOUISIANA, SUITE 2950
TX5-383-45-02                          Statement Date  02/29/2000
HOUSTON TX  77002


                                       Page   1 of   1
```

---

### CUSTOMER CONNECTION INTERNAL ACCOUNTS
#### Account Summary Information

| | | | |
|---|---|---|---|
| Statement Period 01/31/2000 - 02/29/2000 | | Statement Beginning Balance | 88,822.37 |
| Number of Deposits/Credits | 1 | Amount of Deposits/Credits | 38,951.00 |
| Number of Withdrawals/Debits | 1 | Amount of Withdrawals/Debits | 83,061.66 |
| | | Statement Ending Balance | 44,711.71 |
| Number of Enclosures | 0 | Average Ledger Balance | 45,957.14 |
| Number of Days in Cycle | 29 | Service Charge | .00 |

#### Deposits and Credits

| Date Posted | Customer Reference | Amount | Description | Bank Reference |
|---|---|---|---|---|
| 02/15 | | 38,951.00 | Wire Type: Fed In  Date: 000215 Time: 0915 | 0409003296 |
| | | | Fed Ref:000194 Orig:SYENERGY PIPELINE C | |
| | | | Sending Bk:UMB KC | |
| | | | Pmt Det:BUTCHER INTEREST PARTNERSHIP AC-3751410195 | |
| | | | OBI=DECEMBER 1999 INTEREST, ON BEHALF O F KANSAS | |

#### Withdrawals and Debits

Other Debits

| Date Posted | Customer Reference | Amount | Description | | | Bank Reference |
|---|---|---|---|---|---|---|
| 02/08 | | .00 | ACCOUNT INQUIRY | | | 9939800052 |
| 02/08 | | 83,061.66 | INT-DEBIT | LOAN:00183653 | 001718365 | 4740001241 |

#### Daily Ledger Balances

| Date | Balance | Date | Balance | Date | Balance |
|---|---|---|---|---|---|
| 01/31 | 88,822.37 | 02/08 | 5,760.71 | 02/15 | 44,711.71 |

**Message Center**

```
CUSTOMER CONNECTION                    Account Reference Information
BANK OF AMERICA, N.A.                  Account Number      3751410195
DALLAS, TEXAS  75283-2406             Tax ID Number        760622250
                                                    01 01 146 06 M0000


                                      Customer Service
                                      1-800-657-9533
BUTCHER INTEREST PARTNERSHIP
ATTN THELMA L JOHNSON
1100 LOUISIANA, SUITE 2950
TX5-383-45-02                         Statement Date  03/31/2000
HOUSTON TX  77002


                                      Page   1 of   1
```

---

### CUSTOMER CONNECTION INTERNAL ACCOUNTS
#### Account Summary Information

| | | | |
|---|---|---|---|
| Statement Period 02/29/2000 - 03/31/2000 | | Statement Beginning Balance | 44,711.71 |
| Number of Deposits/Credits | 0 | Amount of Deposits/Credits | .00 |
| Number of Withdrawals/Debits | 1 | Amount of Withdrawals/Debits | 40,107.50 |
| | | Statement Ending Balance | 4,604.21 |
| | | | |
| Number of Enclosures | 0 | Average Ledger Balance | 14,954.53 |
| Number of Days in Cycle | 31 | Service Charge | .00 |

---

#### Withdrawals and Debits

Other Debits

| Date Posted | Customer Reference | Amount | Description | | Bank Reference |
|---|---|---|---|---|---|
| 03/09 | | 40,107.50 INT-DEBIT | LOAN:00183653 | 001718365 | 4740000696 |

---

#### Daily Ledger Balances

| Date | Balance | Date | Balance | Date | Balance |
|---|---|---|---|---|---|
| 02/29 | 44,711.71 | 03/09 | 4,604.21 | | |

Message Center

ENB-DOJ-006771

```
CUSTOMER CONNECTION                    Account Reference Information
BANK OF AMERICA, N.A.                  Account Number    3751410195
DALLAS, TEXAS  75283-2406             Tax ID Number      760622250
                                                      01 01 146 06 M0000


                                       Customer Service
                                       1-800-657-9533
BUTCHER INTEREST PARTNERSHIP
ATTN THELMA L JOHNSON
1100 LOUISIANA, SUITE 2950
TX5-383-45-02                          Statement Date  04/28/2000
HOUSTON TX  77002


                                       Page   1 of  1
```

```
           CUSTOMER CONNECTION INTERNAL ACCOUNTS
                   Account Summary Information

Statement Period 03/31/2000 - 04/28/2000   Statement Beginning Balance      4,604.21
Number of Deposits/Credits          1      Amount of Deposits/Credits      78,593.00
Number of Withdrawals/Debits        1      Amount of Withdrawals/Debits    43,160.89
                                           Statement Ending Balance        40,036.32

Number of Enclosures                0      Average Ledger Balance          23,033.64
Number of Days in Cycle            28      Service Charge                        .00
```

### Deposits and Credits

| Date Posted | Customer Reference | Amount | Description | Bank Reference |
|---|---|---|---|---|
| 04/12 | | 78,593.00 | Wire Type: Fed In  Date: 000412 Time: 1605 | 0409016214 |
| | | | Fed Ref:002779 Orig:SYENERGY PIPELINE C | |
| | | | Sending Bk:UMB KC | |
| | | | Pmt Det:BUTCHER INTEREST PARTNERSHIP AC-3751410195 | |
| | | | OBI=JANUARY AND FEBUARY 2000 INTEREST O RG-KANSAS | |

### Withdrawals and Debits

Other Debits

| Date Posted | Customer Reference | Amount | Description | Bank Reference |
|---|---|---|---|---|
| 04/13 | | 43,160.89 | INT-DEBIT          LOAN:00183653     001718365 | 4740000715 |
| | | | Effective Date is 04/10/00 | |

### Daily Ledger Balances

| Date | Balance | Date | Balance | Date | Balance |
|---|---|---|---|---|---|
| 03/31 | 4,604.21 | 04/10 | 38,556.68- | 04/12 | 40,036.32 |

Message Center

ENB-DOJ-006772

```
CUSTOMER CONNECTION                 Account Reference Information
BANK OF AMERICA, N.A.               Account Number      3751410195
DALLAS, TEXAS  75283-2406           Tax ID Number       760622250
                                                    01 01 146 06 M0000
```

```
                                    Customer Service
                                    1-800-657-9533
BUTCHER INTEREST PARTNERSHIP
ATTN THELMA L JOHNSON
1100 LOUISIANA, SUITE 2950
TX5-383-45-02                       Statement Date  05/31/2000
HOUSTON TX  77002


                                    Page   1 of   1
```

---

### CUSTOMER CONNECTION INTERNAL ACCOUNTS
#### Account Summary Information

```
Statement Period 04/28/2000 - 05/31/2000   Statement Beginning Balance   40,036.32
Number of Deposits/Credits        0        Amount of Deposits/Credits          .00
Number of Withdrawals/Debits      0        Amount of Withdrawals/Debits        .00
                                           Statement Ending Balance      40,036.32

Number of Enclosures              0        Average Ledger Balance        40,036.32
Number of Days in Cycle          33        Service Charge                      .00
```

#### Daily Ledger Balances

| Date | Balance | Date | Balance | Date | Balance |
|------|---------|------|---------|------|---------|
| 04/28 | 40,036.32 | | | | |

Message Center

ENB-DOJ-006773

```
CUSTOMER CONNECTION                    Account Reference Information
BANK OF AMERICA, N.A.                  Account Number    3751410195
DALLAS, TEXAS  75283-2406              Tax ID Number      760622250
                                                  01 01 146 06 M0000

---  ---

                                       Customer Service
                                       1-800-657-9533
BUTCHER INTEREST PARTNERSHIP
ATTN THELMA L JOHNSON
1100 LOUISIANA, SUITE 2950
TX5-383-45-02                          Statement Date   06/30/2000
HOUSTON TX  77002


                                       Page   1 of   1
```

```
            CUSTOMER CONNECTION INTERNAL ACCOUNTS
                  Account Summary Information

Statement Period 05/31/2000 - 06/30/2000   Statement Beginning Balance      40,036.32
Number of Deposits/Credits          1      Amount of Deposits/Credits       77,271.00
Number of Withdrawals/Debits        1      Amount of Withdrawals/Debits     83,163.34
                                           Statement Ending Balance         34,143.98

Number of Enclosures                0      Average Ledger Balance           35,715.27
Number of Days in Cycle            30      Service Charge                         .00
```

```
                        Deposits and Credits

Date    Customer                                              Bank
Posted  Reference     Amount         Description              Reference

06/09             77,271.00  Wire Type: Fed In  Date: 000609 Time: 1103   0409007251
                            Fed Ref:000657 Orig:SYENERGY PIPELINE C
                            Sending Bk:UMB KC
                            Pmt Det:BUTCHER INTEREST PARTNERSHIP AC-3751410195
                            OBI=MARCH AND APRIL 2000 INTERESTS BY O RDER OF K
```

```
                       Withdrawals and Debits

Other Debits

Date    Customer                                              Bank
Posted  Reference     Amount         Description              Reference

06/08                    .00 ACCOUNT INQUIRY                            9939800074
06/09             83,163.34 INT-DEBIT       LOAN:00183653   001718365   4740000641
```

```
                       Daily Ledger Balances

  Date        Balance     Date        Balance    Date          Balance

 05/31      40,036.32    06/08      40,036.32   06/09        34,143.98
```

Message Center

ENB-DOJ-006774

```
CUSTOMER CONNECTION                Account Reference Information
BANK OF AMERICA, N.A.              Account Number    3751410195
DALLAS, TEXAS  75283-2406         Tax ID Number       760622250
                                               01 01 146 06 M0000


                                   Customer Service
                                   1-800-657-9533

BUTCHER INTEREST PARTNERSHIP
ATTN THELMA L JOHNSON
1100 LOUISIANA, SUITE 2950
TX5-383-45-02                      Statement Date  07/31/2000
HOUSTON TX  77002

                                   Page   1 of   1
```

---

### CUSTOMER CONNECTION INTERNAL ACCOUNTS
#### Account Summary Information

| | | | |
|---|---|---|---|
| Statement Period 06/30/2000 - 07/31/2000 | Statement Beginning Balance | | 34,143.98 |
| Number of Deposits/Credits | 0 | Amount of Deposits/Credits | .00 |
| Number of Withdrawals/Debits | 1 | Amount of Withdrawals/Debits | 45,278.94 |
| | | Statement Ending Balance | 11,134.96- |
| Number of Enclosures | 0 | Average Ledger Balance | 2,010.53 |
| Number of Days in Cycle | 31 | Service Charge | .00 |

---

#### Withdrawals and Debits

Other Debits

| Date Posted | Customer Reference | Amount | Description | | Bank Reference |
|---|---|---|---|---|---|
| 07/10 | | 45,278.94 INT-DEBIT | LOAN:00183653 | 001718365 | 4740002274 |

---

#### Daily Ledger Balances

| Date | Balance | Date | Balance | Date | Balance |
|---|---|---|---|---|---|
| 06/30 | 34,143.98 | 07/10 | 11,134.96- | | |

Message Center

ENB-DOJ-006775

```
CUSTOMER CONNECTION                    Account Reference Information
BANK OF AMERICA, N.A.                  Account Number     3751410195
DALLAS, TEXAS  75283-2406              Tax ID Number      760622250
                                                   01 01 146 06 M0000


                                       Customer Service
                                       1-800-657-9533

BUTCHER INTEREST PARTNERSHIP
ATTN THELMA L JOHNSON
1100 LOUISIANA, SUITE 2950
TX5-383-45-02                          Statement Date  08/31/2000
HOUSTON TX  77002


                                       Page   1 of   1
```

```
                    CUSTOMER CONNECTION INTERNAL ACCOUNTS
                         Account Summary Information

Statement Period 07/31/2000 - 08/31/2000   Statement Beginning Balance      11,134.96-
Number of Deposits/Credits            0    Amount of Deposits/Credits             .00
Number of Withdrawals/Debits          0    Amount of Withdrawals/Debits           .00
                                           Statement Ending Balance        11,134.96-

Number of Enclosures                  0    Average Ledger Balance          11,134.96-
Number of Days in Cycle              31    Service Charge                         .00

                            Daily Ledger Balances


    Date          Balance   Date           Balance   Date          Balance

  07/31        11,134.96-

Message Center
```

ENB-DOJ-006776

```
CUSTOMER CONNECTION                    Account Reference Information
BANK OF AMERICA, N.A.                  Account Number    3751410195
DALLAS, TEXAS  75283 2406              Tax ID Number      760622250
                                                       01 01 146 06 M0000


                                       Customer Service
                                       1-800-657-9533

BUTCHER INTEREST PARTNERSHIP
ATTN THELMA L JOHNSON
1100 LOUISIANA, SUITE 2950
TXS-383-45-02                          Statement Date  09/29/2000
HOUSTON TX  77002

                                       Page   1 of  1
```

---

### CUSTOMER CONNECTION INTERNAL ACCOUNTS
#### Account Summary Information

```
Statement Period 08/31/2000 - 09/29/2000    Statement Beginning Balance      11,134.96-
Number of Deposits/Credits          1       Amount of Deposits/Credits      100,000.00
Number of Withdrawals/Debits        1       Amount of Withdrawals/Debits     88,145.00
                                            Statement Ending Balance            720.04

Number of Enclosures                0       Average Ledger Balance           50,417.37-
Number of Days in Cycle            29       Service Charge                         .00
```

---

#### Deposits and Credits

| Date Posted | Customer Reference | Amount | Description | Bank Reference |
|---|---|---|---|---|
| 09/22 | | 100,000.00 | Wire Type: Fed In  Date: 000922 Time: 1614 Fed Ref:002104 Orig:MIDCOAST ENERGY RES Sending Bk:BANK ONE TEXAS Int Bk:BANK OF AMERICA Pmt Det:BUTCHER INTEREST PARTNERSHIP AC-3751410195 | 0409018402 |

---

#### Withdrawals and Debits

Other Debits

| Date Posted | Customer Reference | Amount | Description | Bank Reference |
|---|---|---|---|---|
| 09/08 | | 88,145.00 | INT-DEBIT      LOAN:00183653      001718365 | 4740000569 |

---

#### Daily Ledger Balances

| Date | Balance | Date | Balance | Date | Balance |
|---|---|---|---|---|---|
| 08/31 | 11,134.96- | 09/08 | 99,279.96- | 09/22 | 720.04 |

Message Center

ENB-DOJ-006777

```
CUSTOMER CONNECTION                  Account Reference Information
BANK OF AMERICA, N.A.                Account Number    3751410195
DALLAS, TEXAS  75283-2406            Tax ID Number     760622250
                                                 01 01 146 06 M0000


                                     Customer Service
                                     1-800-657-9533

BUTCHER INTEREST PARTNERSHIP
ATTN THELMA L JOHNSON
1100 LOUISIANA, SUITE 2950
TX5-383-45-02                        Statement Date  10/31/2000
HOUSTON TX  77002


                                     Page   1 of   1
```

---

### CUSTOMER CONNECTION INTERNAL ACCOUNTS
### Account Summary Information

| | | |
|---|---|---|
| Statement Period 09/29/2000 - 10/31/2000 | Statement Beginning Balance | 720.04 |
| Number of Deposits/Credits | 1 | Amount of Deposits/Credits | 46,739.56 |
| Number of Withdrawals/Debits | 1 | Amount of Withdrawals/Debits | 46,739.56 |
| | Statement Ending Balance | 720.04 |
| Number of Enclosures | 0 | Average Ledger Balance | 720.04 |
| Number of Days in Cycle | 32 | Service Charge | .00 |

### Deposits and Credits

| Date Posted | Customer Reference | Amount | Description | Bank Reference |
|---|---|---|---|---|
| 10/10 | | 46,739.56 | Wire Type: Fed In  Date: 001010 Time: 1957 | 0409022177 |
| | | | Fed Ref:002155 Orig:MIDCOAST ENERGY RES | |
| | | | Sending Bk:BANK ONE TEXAS | |
| | | | Int Bk:BANK OF AMERICA | |
| | | | Pmt Det:BUTCHER PARTNERSHIP AC-3751410195 OBI=FROM | |

### Withdrawals and Debits

Other Debits

| Date Posted | Customer Reference | Amount | Description | Bank Reference |
|---|---|---|---|---|
| 10/10 | | 46,739.56 | INT-DEBIT          LOAN:00183653      001718365 | 4740001954 |

### Daily Ledger Balances

| Date | Balance | Date | Balance | Date | Balance |
|---|---|---|---|---|---|
| 09/29 | 720.04 | 10/10 | 720.04 | | |

Message Center

```
CUSTOMER CONNECTION                    Account Reference Information
BANK OF AMERICA, N.A.                  Account Number     3751410195
DALLAS, TEXAS  75283-2406             Tax ID Number       760622250
                                                    01 01 146 06 M0000


                                      Customer Service
                                      1-800-657-9533

BUTCHER INTEREST PARTNERSHIP
ATTN THELMA L JOHNSON
1100 LOUISIANA, SUITE 2950
TX5-383-45-02                         Statement Date  11/30/2000
HOUSTON TX  77002


                                      Page   1 of   1
```

```
                CUSTOMER CONNECTION INTERNAL ACCOUNTS
                    Account Summary Information

Statement Period 10/31/2000 - 11/30/2000   Statement Beginning Balance        720.04
Number of Deposits/Credits          2      Amount of Deposits/Credits     6,143,098.29
Number of Withdrawals/Debits        2      Amount of Withdrawals/Debits   6,143,818.33
                                           Statement Ending Balance              .00

Number of Enclosures                0      Average Ledger Balance          1,244.59-
Number of Days in Cycle            30      Service Charge                        .00
```

```
                         Deposits and Credits

Date   Customer                                                        Bank
Posted Reference      Amount          Description                      Reference

11/09         6,100,000.00 Wire Type: Fed In  Date: 001109 Time: 1647  0409016762
                           Fed Ref:001981 Orig:MIDCOAST ENERGY RES
                           Sending Bk:BANK ONE TEXAS
                           Int Bk:BANK OF AMERICA
                           Pmt Det:BUTCHER INTEREST PARTNERSHIP AC-3751410195
11/10            43,098.29 Wire Type: Fed In  Date: 001110 Time: 1545  0409017904
                           Fed Ref:001982 Orig:MIDCOAST ENERGY RES
                           Sending Bk:BANK ONE TEXAS
                           Int Bk:BANK OF AMERICA
                           Pmt Det:BUTCHER INTEREST PARTNERSHIP AC-3751410195
```

```
                         Withdrawals and Debits

Other Debits

Date   Customer                                                        Bank
Posted Reference      Amount          Description                      Reference

11/09         43,818.33 INT-DEBIT          LOAN:00183653  0000345871  4740000388
11/09      6,100,000.00 PRIN-DEBIT         LOAN:00183653  0000345871  4740000387
```

```
                         Daily Ledger Balances

   Date        Balance   Date         Balance   Date             Balance

   10/31        720.04   11/09      43,098.29-   11/10               .00
```

Message Center

E 10000 909

```
CUSTOMER CONNECTION                Account Reference Information
BANK OF AMERICA, N.A.              Account Number    3751410195
DALLAS, TEXAS  75283-2406         Tax ID Number      760622250
                                              01 01 146 06 M0000


                                  Customer Service
                                  1-800-657-9533

BUTCHER INTEREST PARTNERSHIP
ATTN THELMA L JOHNSON
1100 LOUISIANA, SUITE 2950
TX5-383-45-02                     Statement Date  12/29/2000
HOUSTON TX  77002

                                  Page   1 of   1
```

---

### CUSTOMER CONNECTION INTERNAL ACCOUNTS
#### Account Summary Information

| | | | |
|---|---|---|---|
| Statement Period 11/30/2000 - 12/29/2000 | | Statement Beginning Balance | .00 |
| Number of Deposits/Credits | 0 | Amount of Deposits/Credits | .00 |
| Number of Withdrawals/Debits | 0 | Amount of Withdrawals/Debits | .00 |
| | | Statement Ending Balance | .00 |
| Number of Enclosures | 0 | Average Ledger Balance | .00 |
| Number of Days in Cycle | 29 | Service Charge | .00 |

#### Daily Ledger Balances

| Date | Balance | Date | Balance | Date | Balance |
|---|---|---|---|---|---|
| 11/30 | .00 | | | | |

Message Center

ENB-DOJ-006780

NOV 29 2004 10:33 FR CUST SVC 3854        925 675 7086 TO 917046025744    P.02/10

```
                                                                                    MESSAGE SOURCE:
SEQUENCE NUMBER:  991109016522      ASSOC. SEQ. NUM.:         * ROUTING INFORMATION *
  OWNING RBU:     CENTRAL
                  ABA             NAME                                  ABA              NAME
  SOURCE BANK: 021000018          BK OF NYC              TARGET BANK: 111000012          BK AMER GLOBAL
  WIRE-KEY:  FWIF006281                             COMMLOG KEY: FWIF33979911091635194200 TESTCODE STATUS: 00
  TRAN TYPE:   INCOMING WIRE TRANSFER              INTERNAL TRAN CODE: 0670001000        TRAN CODE:
  TRAN STATUS:  DRCR HOST
DR AFFILIATE CODE: 200            CR AFFILIATE CODE: 200
  REPEAT CODE:                                    CALLER NAME:
     NOTIFY:
  WAIVE FEES: N                                   RESOLUTIONS:         EXCEPTION REASON: 28- ADDRESS VERIFICATION
     PROBLEMS:                                        * FINANCIAL INFORMATION *
                                                                              CREDIT INTEREST ACCT:
  CREDIT ACCT: 000003751410195    BUTCHER INTEREST PARTNERSHIP               DEBIT INTEREST ACCT:
  DEBIT ACCT: 001010620004250     FEDERAL RESERVE BANK OF DALLAS
  AMOUNT SENT: $         .00  AMOUNT RECEIVED: $ 6,100,000.00  PRINCIPAL: $ 6,100,000.00  INTEREST: $        .00
       RATE:      /     RATE FLAG:        LOAN TERM:      DAYS: 000  AVAILABLE: SAME   COLLATERAL:      VALUE DATE: 11/09/99
                                                        * FEDWIRE MESSAGE FORMAT *
                  BK OF NYC            /ORG=RABOBANK NEDERLAND 245 PARK AVENUE NEW YORK, NY 10167
                  BK AMER GLOBAL       /BTR/BNF=BUTCHER INTEREST PARTNERSHIP BOA/AC-3751410195 BBI-/O
                  BI/ATT CORP LOANS


MONEYNET FLAGS: E R T P I V N U C Z F D * * * X                DNYMC FLGS: B000000000000000
  EVENT INIT: 0 0 0 0 0 0 0 0 1 0 0 0 0 0 0            INPUT OPTIONS: B0000000100100000
  EVENT COND: 0 0 0 0 0 0 0 0 0 0 0 0 0 0 0                   INITIALS      TERM ID
TRANSACTION HISTORY INFO:            TIMESTAMP          OPER ID
     RECEIVE:              11/09/99 16:35
       ENTRY:              11/09/99 16:37       LAWANDA BELL            LB        204
   EXCEPTION:              11/09/99 16:37       LAWANDA BELL            LB        204
    INCOMING:              11/09/99 16:35       SKARLA GARCIA           SG        430
  TRANSMIT TIMESTAMP:                           RETURN TIMESTAMP:
     991109016523
```

ɟↄƆƆ ∀Ɔᗺ

ENB-DOJ-006781

NOV 29 2004 10:33 FR CUST SVC 3854        925 675 7086 TO 917046025744        P.03/10

```
SEQUENCE NUMBER:    000105005660      ASSOC. SEQ. NUM.:                                    MESSAGE SOURCE:
   OWNING RBU:      CENTRAL                     * ROUTING INFORMATION *           MATCH SEQ. NUM. :
                    ABA                                          ABA                  NAME
 SOURCE BANK: 101000695       NAME                        TARGET BANK: 111000012    BK AMER GLOBAL
    WIRE-KEY: FWIF000836      UMB KC           COMMLOG KEY: FWIF1076000105IC55360500  TESTCODE STATUS: 00
   TRAN TYPE:  INCOMING WIRE TRANSFER          INTERNAL TRAN CODE: 0671000000        TRAN CODE:
 TRAN STATUS:  DRCR  HOST
DR AFFILIATE CODE: 200           CR AFFILIATE CODE: 200
 REPEAT CODE:                                CALLER NAME:
      NOTIFY:
  WAIVE FEES: N                 RESOLUTIONS:        EXCEPTION REASON: NONE
    PROBLEMS:                          * FINANCIAL INFORMATION *
CREDIT ACCT: 000003751410195   CORPORATE LOANS                    CREDIT INTEREST ACCT:
 DEBIT ACCT: 001010620004250   FEDERAL RESERVE BANK OF DALLAS      DEBIT INTEREST ACCT:
 AMOUNT SENT: $         .00    AMOUNT RECEIVED: $    29,404.00  PRINCIPAL: $    29,404.00  INTEREST: $          .00
       RATE:        /       RATE FLAG:     LOAN TERM:    DAYS: 000  AVAILABLE: SAME  COLLATERAL:     VALUE DATE: 01/05/00
                                        * FEDWIRE MESSAGE FORMAT *
              UMB KC          /ORG-SYENERGY PIPELINE CO LP LENEXA, KS 66214
              BK AMER GLOBAL   /CTR/BNF=BUTCHER INTEREST PARTNERSHIP/AC-3751410195 OBI=REF:NO
              VEMBER 1999 INTEREST BBI=KANSAS PIPELINE COMPANY


MONEYNET FLAGS:E R T P I V N U C Z F D * * * X            DNYMC FLGS: B000000000000000
   EVENT INIT: 0 0 0 0 0 0 0 0 1 0 0 0 0 0              INPUT OPTIONS: B000000000100000
   EVENT COND: 0 0 0 0 0 0 0 0 0 0 0 0 0 0                 INITIALS         TERM ID
TRANSACTION HISTORY INFO:              TIMESTAMP
      RECEIVE:                     01/05/00 10:55       OPER ID
        ENTRY:                     01/05/00 10:55    AUTOPOST            *AP        ***
     INCOMING:                     01/05/00 10:55    AUTOPOST            *AP        ***
TRANSMIT TIMESTAMP:                                  RETURN TIMESTAMP:
      000105005661
```

ENB-DOJ-006782

NOV 29 2004 10:33 FR CUST SVC 3854       925 675 7086 TO 917046025744       P.04/10

```
SEQUENCE NUMBER:  000215003296        ASSOC. SEQ. NUM.:              MATCH SEQ. NUM. :        MESSAGE SOURCE:
  OWNING RBU:  CENTRAL                           * ROUTING INFORMATION *
              ABA                  NAME                          ABA          NAME
SOURCE BANK: 101000695           UMB KC              TARGET BANK: 111000012   BK AMER GLOBAL
   WIRE-KEY: FWIF000194                        COMMLOG KEY: FWIF0717000215091519670O   TESTCODE STATUS: 00
  TRAN TYPE:  INCOMING WIRE TRANSFER           INTERNAL TRAN CODE: 0671000000  TRAN CODE:
TRAN STATUS:  DRCR  HOST
DR AFFILIATE CODE: 200           CR AFFILIATE CODE: 200
REPEAT CODE:                                   CALLER NAME:
    NOTIFY:
WAIVE FEES: N                                RESOLUTIONS:        EXCEPTION REASON: NONE
  PROBLEMS:                                  * FINANCIAL INFORMATION *
 CREDIT ACCT: 000003751410195    CORPORATE LOANS                 CREDIT INTEREST ACCT:
  DEBIT ACCT: 001010620004250    FEDERAL RESERVE BANK OF DALLAS   DEBIT INTEREST ACCT:
 AMOUNT SENT: $          .00     AMOUNT RECEIVED: $   38,951.00  PRINCIPAL: $    38,951.00  INTEREST: $        .00
       RATE:        /  RATE FLAG:      LOAN TERM:      DAYS: 000   AVAILABLE: SAME   COLLATERAL:     VALUE DATE: 02/15/00
                                      * FEDWIRE MESSAGE FORMAT *
            UMB KC              /ORG=SYENERGY PIPELINE CO LP LENEXA, KS 66214
            BK AMER GLOBAL      /CTR/BNF=BUTCHER INTEREST PARTNERSHIP/AC-3751410195 OBI=DECEMB
            ER 1999 INTEREST, ON BEHALF O F KANSAS PIPELINE COMPANY


MONEYNET FLAGS:E R T P I V N U C Z F D * * * X          DNYMC FLGS: B000000000000000
  EVENT INIT: O O O O O O O O 1 O O O O O O              INPUT OPTIONS: B000000000100000
  EVENT COND: O O O O O O O O O O O O O O O
TRANSACTION HISTORY INFO:                TIMESTAMP      OPER ID        INITIALS       TERM ID
     RECEIVE:               02/15/00 09:15
       ENTRY:               02/15/00 09:15  AUTOPOST                   *AP            ***
    INCOMING:               02/15/00 09:15  AUTOPOST                   *AP            ***
TRANSMIT TIMESTAMP:                        RETURN TIMESTAMP:
  000215003297
```

ENB-DOJ-006783

P.05/10

NOV 29 2004 10:33 FR CUST SVC 3854          925 675 7086 TO 917046025744

```
SEQUENCE NUMBER:   000412016214      ASSOC. SEQ. NUM.:              MATCH SEQ. NUM. :            MESSAGE SOURCE:
  OWNING RBU:      CENTRAL                        * ROUTING INFORMATION *
                   ABA              NAME                              ABA            NAME
SOURCE BANK: 101000695             UMB KC                   TARGET BANK: 111000012   BK AMER GLOBAL
  WIRE-KEY: FWIF002779                            COMMLOG KEY: FWIF34830004121605130200   TESTCODE STATUS: 00
  TRAN TYPE:  INCOMING WIRE TRANSFER              INTERNAL TRAN CODE: 0671000000      TRAN CODE:
  TRAN STATUS:  DRCR HOST
DR AFFILIATE CODE: 200             CR AFFILIATE CODE: 200
REPEAT CODE:                                     CALLER NAME:
    NOTIFY:
WAIVE FEES: N                                             EXCEPTION REASON: NONE
  PROBLEMS:                             RESOLUTIONS:
                                          * FINANCIAL INFORMATION *
  CREDIT ACCT: 000003751410195    CORPORATE LOANS                    CREDIT INTEREST ACCT:
  DEBIT ACCT: 001010620004250     FEDERAL RESERVE BANK OF DALLAS     DEBIT INTEREST ACCT:
  AMOUNT SENT: $        .00  AMOUNT RECEIVED: $   78,593.00  PRINCIPAL: $   78,593.00  INTEREST: $         .00
       RATE:      /      RATE FLAG:     EGAN TERM:      DAYS: 000   AVAILABLE: SAME  COLLATERAL:        VALUE DATE: 04/12/00
                                          * FEDWIRE MESSAGE FORMAT *
                   UMB KC             /ORG=SYNERGY PIPELINE CO LP LENEXA, KS 66214
                   BK AMER GLOBAL     /CTR/BNF=BUTCHER INTEREST PARTNERSHIP/AC-3751410195 OBI=JANUAR
                   Y AND FEBUARY 2000 INTEREST O RG-KANSAS PIPELINE CO


MONEYNET FLAGS: E R T P I V N U C Z F D * * * X              DNYMC FLGS: B0000000000000000
  EVENT INIT: 0 0 0 0 0 0 0 0 1 0 0 0 0 0 0              INPUT OPTIONS: B0000000000100000
  EVENT COND: 0 0 0 0 0 0 0 0 0 0 0 0 0 0 0
TRANSACTION HISTORY INFO:                 TIMESTAMP        OPER ID       INITIALS      TERM ID
      RECEIVE:                          04/12/00 16:05
        ENTRY:                          04/12/00 16:05   AUTOPOST         *AP          ***
     INCOMING:                          04/12/00 16:05   AUTOPOST         *AP          ***
  TRANSMIT TIMESTAMP:                                    RETURN TIMESTAMP:
     000412016215
```

ENB-DOJ-006784

NOV 29 2004 10:34 FR CUST SVC 3854      925 675 7006 TO 917046025744      P.05/10

```
SEQUENCE NUMBER:   000609007251      ASSOC. SEQ. NUM.:              MATCH SEQ. NUM. :              MESSAGE SOURCE:
   OWNING RBU:     CENTRAL                           * ROUTING INFORMATION *
                     ABA             NAME                              ABA              NAME
  SOURCE BANK: 101000695             UMB KC                   TARGET BANK: 111000012     BK AMER GLOBAL
     WIRE-KEY: FWIF000657                         COMMLOG KEY: FWIF1434000609110314000500  TESTCODE STATUS: 00
     TRAN TYPE:   INCOMING WIRE TRANSFER          INTERNAL TRAN CODE: 0671000000         TRAN CODE:
   TRAN STATUS:   DRCR  HOST
DR AFFILIATE CODE: 200          CR AFFILIATE CODE: 200
  REPEAT CODE:                                 CALLER NAME:
       NOTIFY:
   WAIVE FEES: N
     PROBLEMS:                       RESOLUTIONS:      EXCEPTION REASON: NONE
                                        * FINANCIAL INFORMATION *
   CREDIT ACCT: 000003751410195      CORPORATE LOANS                    CREDIT INTEREST ACCT:
    DEBIT ACCT: 001010620004250      FEDERAL RESERVE BANK OF DALLAS     DEBIT INTEREST ACCT:
   AMOUNT SENT: $           .00      AMOUNT RECEIVED: $    77,271.00  PRINCIPAL: $    77,271.00  INTEREST: $         .00
         RATE:        /       RATE FLAG:      LOAN TERM:       DAYS: 000  AVAILABLE: SAME   COLLATERAL:        VALUE DATE: 06/09/00
                                           * FEDWIRE MESSAGE FORMAT *
                  UMB KC          /ORG=SYENERGY PIPELINE CO LP LENEXA, KS 66214
                  BK AMER GLOBAL  /CTR/BNF=BUTCHER INTEREST PARTNERSHIP/AC-3751410195 OBI=MARCH
                  AND APRIL 2000 INTERESTS BY O RDER OF KANSAS PIPELINE CO


MONEYNET FLAGS:E R T P I V N U C Z F D * * * X
   EVENT INIT: 0 0 0 0 0 0 0 0 1 0 0 0 0 0        DNYMC FLGS: B0000000000000000
   EVENT COND: 0 0 0 0 0 0 0 0 0 0 0 0 0 0        INPUT OPTIONS: B0000000000100000
TRANSACTION HISTORY INFO:              TIMESTAMP       OPER ID        INITIALS         TERM ID
      RECEIVE:                      06/09/00 11:03
        ENTRY:                      06/09/00 11:03   AUTOPOST          *AP             ***
     INCOMING:                      06/09/00 11:03   AUTOPOST          *AP             ***
  TRANSMIT TIMESTAMP:                               RETURN TIMESTAMP:
     000609007252
```

ENB-DOJ-006785

NOV 29 2004 10:34 FR CUST SVC 3854     925 675 7086 TO 917046025744     P.07/10

```
SEQUENCE NUMBER: 000922018402        ASSOC. SEQ. NUM. :          MATCH SEQ. NUM. :              MESSAGE SOURCE:
   OWNING RBU:  CENTRAL                          * ROUTING INFORMATION *
               ABA                           ABA                          ABA               NAME
 SOURCE BANK: 111000614        BANK ONE TEXAS              TARGET BANK: 111000012             NATIONSBANK TX
    WIRE-KEY: FWIF002104                       COMMLOG KEY: FWIF   0009221614036900           TESTCODE STATUS: GO
   TRAN TYPE:  INCOMING WIRE TRANSFER          INTERNAL TRAN CODE: 0671000000                 TRAN CODE:
 TRAN STATUS:  DRCR  HOST
DR AFFILIATE CODE: 200         CR AFFILIATE CODE: 200
 REPEAT CODE:                                  CALLER NAME:
      NOTIFY:
  WAIVE FEES: N                                                EXCEPTION REASON: NONE
    PROBLEMS:                             RESOLUTIONS:
                                       * FINANCIAL INFORMATION *
 CREDIT ACCT: 000003751410195    CORPORATE LOANS                          CREDIT INTEREST ACCT:
  DEBIT ACCT: 001010620004250    FEDERAL RESERVE BANK OF DALLAS            DEBIT INTEREST ACCT:
 AMOUNT SENT: $         .00      AMOUNT RECEIVED: $   100,000.00  PRINCIPAL: $  100,000.00  INTEREST: $         .00
        RATE:      /      RATE FLAG:       LOAN TERM:     DAYS: 000  AVAILABLE: SAME  COLLATERAL:        VALUE DATE: 09/22/00
                                        * FEDWIRE MESSAGE FORMAT *
               BANK ONE TEXAS    /ORG=MIDCOAST ENERGY RESOURCES, INC-DEMA HOUSTON, TX 77002
               NATIONSBANK TX    /CTR/BBK=BANK OF AMERICA BNF=BUTCHER INTEREST PARTNERSHIP/AC-3
               751410195 OBI=FROM MERDDA TO BUTCHER


MONEYNET FLAGS:E R T P I V N U C Z F D * * * X                    DNYMC FLGS: B000000000000000
    EVENT INIT: 0 0 0 0 0 0 0 0 1 0 0 0 0 0                   INPUT OPTIONS: B000000000100000
    EVENT COND: 0 0 0 0 0 0 0 0 0 0 0 0 0 0
TRANSACTION HISTORY INFO:                  TIMESTAMP          OPER ID         INITIALS       TERM ID
       RECEIVE:                       09/22/00 16:14
         ENTRY:                       09/22/00 16:14     AUTOPOST            *AP            ***
      INCOMING:                       09/22/00 16:14     AUTOPOST            *AP            ***
TRANSMIT TIMESTAMP:                                      RETURN TIMESTAMP:
       000922018403
```

070000#08

ENB-DOJ-006786

NOV 29 2004 10:34 FR CUST SVC 3854        925 675 7086 TO 917046025744        P.08/10

```
SEQUENCE NUMBER:  001010022177      ASSOC. SEQ. NUM.:              MATCH SEQ. NUM. :        MESSAGE SOURCE:
OWNING RBU:   CENTRAL                          * ROUTING INFORMATION *
            ABA                    NAME                              ABA              NAME
SOURCE BANK: 111000614     BANK ONE TEXAS                   TARGET BANK: 111000012    NATIONSBANK TX
WIRE-KEY: FWIF002155                    COMMLOG KEY: FWIF  001010195716700            TESTCODE STATUS: 00
TRAN TYPE:   INCOMING WIRE TRANSFER    INTERNAL TRAN CODE: 0671000000                TRAN CODE:
TRAN STATUS: DRCR  HOST
DR AFFILIATE CODE: 200       CR AFFILIATE CODE: 200
REPEAT CODE:                              CALLER NAME:
   NOTIFY:
WAIVE FEES: N
   PROBLEMS:                      RESOLUTIONS:       EXCEPTION REASON: NONE
                                     * FINANCIAL INFORMATION *
  CREDIT ACCT: 000003751410195    CORPORATE LOANS                          CREDIT INTEREST ACCT:
   DEBIT ACCT: 001010620004250    FEDERAL RESERVE BANK OF DALLAS            DEBIT INTEREST ACCT:
  AMOUNT SENT: $         .00   AMOUNT RECEIVED: $     46,739.56   PRINCIPAL: $    46,739.56  INTEREST: $         .00
        RATE:      /      RATE FLAG:      LOAN TERM:     DAYS: 000   AVAILABLE: SAME   COLLATERAL:        VALUE DATE: 10/10/00
                                     * FEDWIRE MESSAGE FORMAT *
            BANK ONE TEXAS     /ORG-MIDCOAST ENERGY RESOURCES, INC-DEMA HOUSTON, TX 77002
            NATIONSBANK TX     /CTR/BBK-BANK OF AMERICA BNF-BUTCHER PARTNERSHIP/AC-3751410195
                   OBI-FROM MERDDA TO BUTCHER FOR KANSAS P IPELINE COMPANY


MONEYNET FLAGS: E R T P T V N U C Z F D * * * X                    ENYMC FLGS: B000000000000000
   EVENT INIT: 0 0 0 0 0 0 0 0 1 0 0 0 0 0 0                    INPUT OPTIONS: B000000000100000
   EVENT COND: 0 0 0 0 0 0 0 0 0 0 0 0 0 0 0
TRANSACTION HISTORY INFO:                   TIMESTAMP        OPER ID        INITIALS      TERM ID
      RECEIVE:                          10/10/00 19:57
        ENTRY:                          10/10/00 19:57      AUTOPOST          *AP          ***
     INCOMING:                          10/10/00 19:57      AUTOPOST          *AP          ***
   TRANSMIT TIMESTAMP:                                      RETURN TIMESTAMP:
      001010022178
```

ENB-DOJ-006787

NOV 29 2004 10:34 FR CUST SVC 3854        925 675 7086 TO 917046025744        P.09/10

SEQUENCE NUMBER:   001109016762      ASSOC. SEQ. NUM.:                 MATCH SEQ. NUM. :              MESSAGE SOURCE:
    OWNING RBU:   CENTRAL                      * ROUTING INFORMATION *
                  ABA                                              ABA                      NAME
SOURCE BANK: 111000614    BANK ONE TEXAS                TARGET BANK: 111000012       NATIONSBANK TX
    WIRE-KEY: FWIF001981              COMMLOG KEY: FWIF    0011091647421700      TESTCODE STATUS: 00
    TRAN TYPE:   INCOMING WIRE TRANSFER    INTERNAL TRAN CODE: 0671000000        TRAN CODE:
TRAN STATUS:   DRCR  HOST
DR AFFILIATE CODE: 200        CR AFFILIATE CODE: 200
REPEAT CODE:                          CALLER NAME:
    NOTIFY:
WAIVE FEES: N
    PROBLEMS:                      RESOLUTIONS:       EXCEPTION REASON: NONE
                                  * FINANCIAL INFORMATION *
CREDIT ACCT: 000003751410195     CORPORATE LOANS                    CREDIT INTEREST ACCT:
 DEBIT ACCT: 001010620004250     FEDERAL RESERVE BANK OF DALLAS           DEBIT INTEREST ACCT:
AMOUNT SENT: $          .00   AMOUNT RECEIVED: $  6,100,000.00   PRINCIPAL: $  6,100,000.00   INTEREST: $          .00
       RATE:       /     RATE FLAG:       LOAN TERM:       DAYS: 000   AVAILABLE: SAME   COLLATERAL:        VALUE DATE: 11/09/00
                                  * FEDWIRE MESSAGE FORMAT *
            BANK ONE TEXAS     /ORG=MIDCOAST ENERGY RESOURCES, INC=DEMA HOUSTON, TX 77002
            NATIONSBANK TX     /CTR/BBK=BANK OF AMERICA BNF=BUTCHER INTEREST PARTNERSHIP/AC-3
            751410195 OBI=FROM MERDDA TO BUTCHER FOR KPC


MONEYNET FLAGS: E R T P I V N U C Z F D * * * X
  EVENT INIT: 0 0 0 0 0 0 0 0 1 0 0 0 0 0 0              DNYMC FLGS: B000000000000000
  EVENT COND: 0 0 0 0 0 0 0 0 0 0 0 0 0 0 0            INPUT OPTIONS: B000000000100000
TRANSACTION HISTORY INFO:          TIMESTAMP       OPER ID         INITIALS      TERM ID
      RECEIVE:               11/09/00 16:47
         ENTRY:              11/09/00 16:47    AUTOPOST              *AP           ***
      INCOMING:              11/09/00 16:47    AUTOPOST              *AP           ***
 TRANSMIT TIMESTAMP:                           RETURN TIMESTAMP:
      001109016763

BoA 000052

ENB-DOJ-006788

NOV 29 2004 10:34 FR CUST SVC 3854      925 675 7066 TO 917046025744      P.10/10

```
SEQUENCE NUMBER:  001110017904       ASSOC. SEQ. NUM.:              MATCH SEQ. NUM. :
  OWNING RBU:  CENTRAL                         * ROUTING INFORMATION *
            ABA                NAME                        ABA            NAME
SOURCE BANK: 111000614         BANK ONE TEXAS          TARGET BANK: 111000012   NATIONSBANK TX
  WIRE-KEY: FW1F001982                    COMMLOG KEY: FWIF  0011101545086600   TESTCODE STATUS: 00
  TRAN TYPE:  INCOMING WIRE TRANSFER      INTERNAL TRAN CODE: D671000000        TRAN CODE:
 TRAN STATUS:  DRCR  HOST
DR AFFILIATE CODE: 200         CR AFFILIATE CODE: 200
REPEAT CODE:                           CALLER NAME:
   NOTIFY:
WAIVE FEES: N                          RESOLUTIONS:      EXCEPTION REASON: NONE
   PROBLEMS:                           * FINANCIAL INFORMATION *

 CREDIT ACCT: 000003751410195   CORPORATE LOANS                      CREDIT INTEREST ACCT:
  DEBIT ACCT: 001010620004250   FEDERAL RESERVE BANK OF DALLAS        DEBIT INTEREST ACCT:
 AMOUNT SENT: $          .00   AMOUNT RECEIVED: $    43,098.29  PRINCIPAL: $   43,098.29   INTEREST: $        .00
       RATE:       /      RATE FLAG:       LOAN TERM:     DAYS: 000  AVAILABLE: SAME   COLLATERAL:    VALUE DATE: 11/10/00
                                       * FEDWIRE MESSAGE FORMAT *
                 BANK ONE TEXAS    /ORG=MIDCOAST ENERGY RESOURCES, INC-DEMA HOUSTON, TX 77002
                 NATIONSBANK TX    /CTR/BBK=BANK OF AMERICA BNF=BUTCHER INTEREST PARTNERSHIP/AC-3
                 751410195 OBI=FROM MERDDA TO BUTCHER FOR KPC


MONEYNET FLAGS:E R T P I V N U C Z F D * * * X            DNYMC FLGS: B0000000000000000
  EVENT INIT: 0 0 0 0 0 0 0 0 1 0 0 0 0 0                 INPUT OPTIONS: B0000000000100000
  EVENT COND: 0 0 0 0 0 0 0 0 0 0 0 0 0 0
TRANSACTION HISTORY INFO:            TIMESTAMP          INITIALS         TERM ID
     RECEIVE:                     11/10/00 15:45
                                                   OPER ID
       ENTRY:                     11/10/00 15:45    AUTOPOST            *AP          ***
    INCOMING:                     11/10/00 15:45    AUTOPOST            *AP          ***
TRANSMIT TIMESTAMP:                                RETURN TIMESTAMP:
     001110017905
```

B0A 000003

** TOTAL PAGE.10 **

ENB-DOJ-006789

—— Forwarded by Thomas J Palmisano/US/TLS/PwC on 01/27/2003 08:52 PM ——



**Gary B. Wilcox**
07/27/2001 08 43 AM

To: Thomas J Palmisano/US/TLS/PwC@Americas-US
cc:
Subject: Re: KPC Documents

———— Forwarded by Gary B. Wilcox/US/TLS/PwC on 07/27/2001 09:55 AM ————

Richard Robert <rrobert@midcoastenergy.com> on 10/30/99 09:55:59 AM

To: Chris Karlson <ckarlson@midcoastenergy com>, Chris Karlson <ckarlson@midcoastenergy.com>,
"ctmorell@ligm.com" <ctmorell@ligm.com>, Gary B. Wilcox/TAX/Washington DC/C&L/US,
"gtaylor@ligm com" <gtaylor@ligm com>, "richachere@aol com" <richachere@aol.com>, Thomas J
Palmisano/TAX/Houston TX/C&L/US
cc: Chap Berthelot <cberthelot@midcoastenergy.com>
Subject: Re: KPC Documents

There has been a change to the deal based on PWC's objection to
characterizing the supplemental payment of $13 75 as capital gain  Dennis
has agreed to report the amount as ordinary income  He suggested that he
would like to minimize the hit as much as possible by reducing the
supplemental payment and possibly taking receivables at closing. He will be
calling me this afternoon with ideas, please give me some feedback as to
ideas  We should look to Gary as to how to structure the wording and what
agreements the wording should be done. The sole reason Dennis has agreed to
this is to expedite getting these agreements to a standstill so that the
bank can sign off on them, we can execute them, and then we can close, in
that order! I very much appreciate everyone's patience and committment to
getting this deal done.. success is just around the corner! Please
acknowledge your receipt of this email by emailing me back  Please forward
this email to Craig Hoffman, I don't have his email

————— Forwarded by Gary B  Wilcox/US/TLS/PwC on 07/27/2001 09 55 AM —————

Gary B  Wilcox
10/30/99 04 25 PM

**PWC 048**

GOVERNMENT
EXHIBIT
100

ENB-DOJ-001107

To:   ckaitson@midcoastenergy.com, rrobert@midcoastenergy.com, cberthelot@midcoastenergy.com, cjhoffmnn@tx.netcom.com, ctmorell@tlgm.com, gtaylor@tlgm.com, nchachere@aol.com, Thomas J Palmisano/TAX/Houston TX/C&L/US

cc:
Subject:   Revisions to Documents

Several of the latest documents must be revised to reflect the true nature of KPC's rights and obligations under the Option Agreement. It has been agreed that MRG's rights to receive $13.75 million in the event that KPC exercises its option under the Option Agreement will be derived solely from the Option Agreement between KPC, MarGasCo and MRG, which is entered into prior to Langley's sale of Bishop Group stock to K-Pipe. No reference to this payment or the Option Agreement will be made in the Stock Purchase Agreement. In the event that KPC exercises its option to cancel the KPC Project Development Agreement, and then pay the $13.75 million to MRG on February 1, the parties will agree to treat the payment as a payment made in cancellation of the KPC Development Agreement. KPC will issue a Form 1099 to MRG, and MRG will be obligated to report the amount as ordinary income. KPC will likely capitalize the payment and amortize the payment over the life of the MarGasCo Project Development Agreement.

As between the Bishop entities selling the Partnership Interests and the Midcoast subsidiaries buying those interests, it is expected that the parties will treat the various obligations of KPC and MarGasCo under the KPC PDA, MarGasCo PDA and Option Agreement as potential liabilities which were not taken into account in determining the purchase price of the assets. Accordingly, whether KPC makes the $13.75 million payment to MRG or fulfills its obligations under its PDA with MRG, any payments made by KPC to MRG will not result in additional amount realized by the asset sellers or additional purchase price for the assets by the asset buyers

To reflect the foregoing, the following changes should be made

1    Stock Purchase Agreement

   a.   Delete definition of Option Agreement on p 5
   b    Also on p 5, what is the reference to "other liquid assets acceptable to Stockholder" in the definition of Preliminary Cash Consideration? Is                          that related to any of the foregoing?
   c.   Delete reference to Supplemental Payment in definition of Purchase Price on p. 6.
   d    Delete definition of Supplemental Payment on p 6
   e    Delete Section 2.3 on p 7

2.   Guaranty by KPC

   a.   Delete reference to Section 2.3 on p 1
   b    Change date of Stock Purchase Agreement from October 25 to November 1.

   Note that the Option Agreement must NOT be guaranteed by Midcoast pursuant to the Parent Guarantee. There is no need          for that anyway. If KPC doesn't exercise the Option, there will be a Parent Guarantee of KPC's obligations under the KPC          PDA. If the option is exercised, KPC must produce $13.75 million in cash. There's no need for a guarantee of that cash          payment -- it's either paid or it isn't (and, accordingly, the KPC PDA is either discontinued or continued).

3.   Option Agreement

   a.   Add to paragraph 3  "If KPC exercises its Option Rights within the Option Period, KPC will pay to MRG the Supplemental Payment on the          earlier of (i) February 1, 2000 and (ii) the date that KPC exercises its option  The Supplemental Payment will be treated by the parties

**PWC 049**

ENB-DOJ-001108

and (ii) the date that KPC exercises its option. The Supplemental Payment will be treated by the parties for                          federal and state income tax purposes as a payment made in cancellation of the KPC PDA. Accordingly, the Supplemental Payment will                          be reported by MRG as ordinary income, and KPC will issue a Form 1099 to MRG reflecting the Supplemental Payment."

Other changes to the documents that will need to made include

1    **Amended LOI**

Revise paragraph 4 to read "MERI, or one of its affiliates, and Seller, or one of its affiliates, shall form    .."

2.    **KPC PDA and MarGasCo PDA**

We need to state somewhere how the cash flow distributions payable to MRG will be treated by the parties for tax purposes. I believe that MRG's                          share of contingent revenues is, effectively, a partnership interest in KPC for tax purposes. Thus, if and when the cash flow distributions are made,                          MRG should be allocated a share of the KPC taxable income on a K-1. In any event, I do not want leave Langley with the opportunity to later claim                          that the contingent revenues paid to him by KPC represent capital gain from the sale of his stock.

3    **Stock Purchase Agreement**

It is critical to Midcoast's tax position that The Bishop Group, Ltd. is not liquidated by Fortrend for at least two years   Somewhere K-Pipe needs to                          represent and covenant that it has no plan or intention to liquidate The Bishop Group, Ltd  and in any event will not liquidate such corporation for at                          least two years   Such a provision would look unusual in the Asset Purchase Agreement   However, in light of K-Pipe's obligation to pursue certain                          lawsuits in the name of The Bishop Group, Ltd , it would seem necessary for K-Pipe to represent and covenant to Langley in the Stock Purchase                          Agreement that it will not liquidate the purchased corporation for as long as the lawsuits are alive (but we could add that in no event will such                          liquidation occur before two years)

4    **Purchase and Sale Agreement**

I will be sending comments on this Agreement shortly, but I would like K-Pipe to think about retaining some of the receivables that are currently in                          KPC   I understand that some of these receivables are due from governmental agencies, with little (if any) collection risk involved

**PWC 050**

ENB-DOJ-001109