# 1998 Assignment Summary

| Description of Property | Document | TripType | Recording Information | | | | |
|---|---|---|---|---|---|---|---|
| | | | Date | State | County | Book | Page |
| 8" Pipeline M.P. 240 to M.P. 319; 8" Pipeline M.P. 320.7 to M.P. 323.9; 12" Pipeline M.P. 240 to LeLoop; 10" Pipeline LeLoop to M.P. 319.5; Gathering Lines in Johnson Co., KS | Assignment of Rights of Way | KPP to KPP | 6/28/90 | KS | Wyandotte | 3432 | 291 |
| 6" M.P. 50.21+96 to 1½+06 | Assignment of Rights of Way and Easements | KPP to KPC | 6/25/98 | KS | Wyandotte | 1996 | 313 |
| | Partial Assignment of Rights of Way | KPC to KPP | 6/28/90 | KS | Wyandotte | 1996 | 706 |
| Pipeline | Assignment of Rights of Way and Easements | KPC to KPP | 6/28/90 | KS | Wyandotte | 3432 | 334 |
| | Bill of Sale | KPP to KPC | 6/25/98 | KS | Wyandotte | 1996 | 841 |
| 8, 10 and 12" lines | Conveyance of Pipeline Property | KPP to KPC | 6/25/98 | KS | Wyandotte | 3566 | 395 |
| | Partial Assignment of Rights of Way | KPC to KPP | 7/22/92 | KS | Wyandotte | 1996 | 8½ |
| 8, 10 and 12" lines | Assignment of Rights of Way | KPC to KPP | 7/22/92 | KS | Wyandotte | 3566 | 290 |
| | Assignment of Rights of Way and Easements | KPP to KPC | 6/25/98 | KS | Wyandotte | 1996 | 810 |
| K.C. Terminal | Special Warranty Deed | KPC to KPP | 6/28/90 | KS | Wyandotte | 3432 | 231 |
| | Quit Claim Deed | KPL to KPP | 6/25/98 | KS | Wyandotte | 1996 | 315 |
| K.C. Terminal | Assignment of Right of Way Easement | KPC to KPP | 6/28/90 | KS | Wyandotte | 3432 | 214 |
| | Assignment of Rights of Way and Easements | KPP to KPC | 6/25/98 | KS | Wyandotte | 1996 | 750 |
| Riverview Meter Station | Assignment of Right of Way Contract | KPC to KPP | 6/28/90 | KS | Wyandotte | 3432 | 250 |
| | Assignment of Rights of Way and Easements | KPP to KPC | 6/25/98 | KS | Wyandotte | 1996 | 70 |
| Riverview Meter Station | Assignment of Right of Way Contract | KPC to KPP | 6/28/90 | KS | Wyandotte | 3432 | 223 |
| | Assignment of Rights of Way and Easements | KPP to KPC | 6/25/98 | KS | Wyandotte | 1996 | 712 |
| Riverview Meter Station | Special Warranty Deed | KPC to KPP | 6/28/90 | KS | Wyandotte | 3432 | 258 |
| | Quit Claim Deed | KPL to KPP | 6/25/98 | KS | Wyandotte | 1996 | 810 |
| North of KC Terminal | Assignment of Right of Way Easement | KPC to KPP | 6/28/90 | KS | Wyandotte | 3432 | 241 |
| | Assignment of Rights of Way and Easements | KPP to KPC | 6/25/98 | KS | Wyandotte | 1996 | 706 |
| K.C. Corridor | Partial Assignment of Rights of Way | KPC to KPP | 6/28/90 | KS | Wyandotte | 3432 | 266 |
| | Assignment of Rights of Way and Easements | KPP to KPC | 6/25/98 | KS | Wyandotte | 1996 | 777 |
| Foley Station | Assignment of Right of Way Contract | KPC to KPP | 6/28/90 | KS | Wyandotte | 3432 | 206 |
| | Assignment of Rights of Way and Easements | KPP to KPC | 6/25/98 | KS | Wyandotte | 1996 | 718 |
| ROW for Pipeline Corridor | Partial Assignment of Rights of Way | KPC to KPP | 6/28/90 | KS | Wyandotte | 3432 | 290 |
| | Assignment of Rights of Way and Easements | KPP to KPC | 6/25/98 | KS | Wyandotte | 1996 | 703 |
| 1" 80 M.P. 199 OK to M.P. 160 KS (Riverside) | Bill of Sale | KNI to RPCLP | 6/28/90 | OK | Woods | 685 | 139 |
| | Conveyance of Pipeline Property | RPCLP to RPC | 6/30/90 | OK | Woods | 846 | 21 |
| 1" 80 M.P. 199 OK to M.P. 160 KS (Riverside) | Partial Assignment of Rights of Way | KNI to RPCLP | 6/28/90 | OK | Woods | 685 | 107 |

KPI1055

ENB-DOJ-024943

KPI1056

## 1998 Assignment Summary

CONFIDENTIAL

| Description of Property | Document | Transaction | Recording Information | | | | |
|---|---|---|---|---|---|---|---|
| | | | Date | State | County | Book | Page |
| P 80 Laverne M.P. 159 KanOk | Assignment of Rights of Way and Easements | RPCLP to KPC | 6/30/98 | OK | Woods | 866 | 18 |
| | Bill of Sale | KNI to RPCLP | 6/28/00 | OK | Woods | 685 | 133 |
| | Conveyance of Pipeline Property | RPCLP to KPC | 6/30/98 | OK | Woods | 866 | 28 |
| P 80 Laverne M.P. 159 KanOk | Partial Assignment of Rights of Way | KNI to RPCLP | 6/28/00 | OK | Woods | 685 | 116 |
| | Assignment of Rights of Way and Easements | RPCLP to KPC | 6/30/98 | OK | Woods | 866 | 12 |
| Schulte Meter Site Lease | Assignment of Lease | KNI to KOK | 6/28/00 | OK | Woods | 685 | 143 |
| | Assignment of Surface Lease | KOK to KPC | 6/30/98 | OK | Woods | 866 | 15 |
| P 100, P 110 Pawnee Station | Assignment of Rights of Way | KOK to KOP | 10/24/91 | OK | Pawnee | 800 | 946 |
| | Assignment of Rights of Way and Easements | RPCLP to KPC | 6/29/98 | OK | Pawnee | 506 | 359 |
| Lead NW/4 12 22N-3SE | Correction Quit Claim Deed | BFC to KOP | 6/5/92 | OK | Pawnee | 444 | 436 |
| | Quit Claim Deed | KOP to KPC | 6/29/98 | OK | Pawnee | 506 | 551 |
| P 80 Laverne to M.P. 159 | Partial Assignment of Rights of Way | KNI to KOP | 6/28/90 | OK | Harper | 446 | 764 |
| | Assignment of Rights of Way and Easements | RPCLP to KPC | 6/30/98 | OK | Harper | 506 | 601 |
| P 80 Laverne to M.P. 159 | Bill of Sale | KNI to KOP | 6/28/00 | OK | Harper | 446 | 758 |
| | Conveyance of Pipeline Property | RPCLP to KPC | 6/30/98 | OK | Harper | 506 | 686 |
| P 80 to Laverne Terminal | Assignment of Right of Way Easement | KNI to KOK | 6/28/90 | OK | Harper | 446 | 799 |
| | Assignment of Rights of Way and Easements | RPCLP to KPC | 6/30/98 | OK | Harper | 506 | 692 |
| P 80 Line Buffalo Station | Assignment of Right of Way Easement | KNI to KOK | 6/28/90 | OK | Harper | 446 | 789 |
| | Assignment of Rights of Way and Easements | RPCLP to KPC | 6/30/98 | OK | Harper | 506 | 613 |
| Gathering System | Bill of Sale | BFC to OKM | 6/28/90 | OK | Harper | 446 | 809 |
| | Conveyance of Pipeline Property | RPCLP to KPC | 6/30/98 | OK | Harper | 506 | 674 |
| Gathering System | Assignment of Right of Way | BFC to OKM | 6/28/90 | OK | Harper | 447 | 1 |
| | Assignment of Rights of Way and Easements | RPCLP to KPC | 6/30/98 | OK | Harper | 506 | 603 |
| P 40, M.P. 123 12+40 to M.P. 124 12+53 | Partial Assignment of Rights of Way | KNI to KNP | 6/27/00 | OK | Osage | 775 | 332 |
| | Assignment of Rights of Way and Easements | RPCLP to KPC | 6/30/98 | OK | Osage | 958 | 72 |
| P 40, M.P. 123 12+40 to M.P. 124 12+53 | Bill of Sale | KNI to KNP | 6/27/00 | OK | Osage | 775 | 355 |
| | Conveyance of Pipeline Property | RPCLP to KPC | 6/30/98 | OK | Osage | 958 | 61 |
| P0 40, Burbank Station to Riverside Interconnect | Partial Assignment of Rights of Way | KNI to KOK | 6/27/00 | OK | Osage | 775 | 340 |
| | Assignment of Rights of Way and Easements | RPCLP to KPC | 6/30/98 | O | Osage | 958 | 51 |
| P0 40, Burbank Station to Riverside Interconnect | Bill of Sale | KNI to KOP | 6/27/00 | OK | Osage | 775 | 359 |
| | Conveyance of Pipeline Property | KOK to KPC | 6/30/98 | OK | Osage | 958 | 68 |
| P 110 M.P. 123 12+40 to M.P. 124 12+53 | Assignment of Rights of Way | KOK to KOP | 10/24/91 | OK | Osage | 800 | 942 |
| | Assignment of Rights of Way and Easements | KOP to KPC | 6/30/98 | OK | Osage | 958 | 83 |

12 of 13



ENB-DOJ-024945

1998 Assignment Summary

| Description of Property | Document | Transaction | Recording Information | | | | |
|---|---|---|---|---|---|---|---|
| | | | Date | State | County | Book | Page |
| P-100, P-110 Pervac Station to M.P. 123-12+40 | Assignment of Right of Way | KOK to KOP | 10/24/91 | OK | Osage | 800 | 946 |
| | Assignment of Rights of Way and Extensions | KOP to KPC | 6-30-98 | OK | Osage | 958 | 31 |
| N/2 NW/4 of 33 29N 6E | Right of Way and Pipeline Easement | to KOK | 8/23/90 | OK | Osage | 778 | 610 |
| | Assignment of Rights of Way | KOP to KPC | 6-30-98 | OK | Osage | 958 | 31 |

CONFIDENTIAL

KPI1057

13 of 13

ENB-DOJ-024946



**GAS PIPELINE**

2800 Post Oak Blvd., Houston, TX 77056
P. O. Box 1396, Level 21, Houston, TX 77251-1396
Phone: 713-215-3148
Fax: 713-215-4269

# facsimile transmittal

| | | | |
|---|---|---|---|
| **To:** | Dennis Langley | **Fax:** | 913/599-5645 |
| **From:** | Lew Posekany | **Date:** | September 20, 1999 |
| **Re:** | Attached Letter | **Pages:** | 2 (including cover page) |

KPl1026

ENB-DOJ-020825



LEWIS A. POSEKANY, JR.
Senior Vice President
Group Planning and Development
713/215-2456
713/215-4269 fax

GAS PIPELINE
2800 Post Oak Boulevard (77056)
P.O. Box 1396
Houston, Texas  77251-1396
lewis.posekany@wgp.twc.com

VIA FAX AND REGISTERED MAIL

September 20, 1999

The Bishop Group, Ltd.
8325 Lenexa Drive, Suite 400
Lenexa, KS  66214

Attn:   Mr. Dennis Langley
        President

Re:     Termination of Mutual Confidentiality Agreement

Dear Mr. Langley:

In accordance with paragraph 9 of the Mutual Confidentiality Agreement (the "Agreement")
dated August 10, 1999 between The Bishop Group, Ltd. and Williams Gas Pipeline Company
("Williams"), Williams hereby terminates the Agreement effective as of October 20, 1999.

Sincerely,

Lewis A. Posekany, Jr.
Senior Vice President
Group Planning & Development

KPI1025

TOTAL P.02

ENB-DOJ-020824



**Enron Transportation & Storage**
*Services Provided by Northern Natural Gas Company and Transwestern Pipeline Company*
1400 Smith Street
Houston, TX 77002-7361
(713) 853-6981

P. O. Box 1188
Houston, TX 77251-1188
Fax (713) 853-5425
lhuber@enron.com

**Lee M. Huber**
*Senior Counsel*



**Enron Gas Pipeline Group**
333 Clay Street, Suite 400
Houston, TX 77002-7361
(713) 646-7644

P.O. Box 1188
Houston, TX 77251-1188
Fax (713) 646-7867
wkendri@enron.com

**Bill Kendrick**
*Director*
*Environmental Affairs*



**Enron Gas Pipeline Group**
1400 Smith Street
Houston, TX 77002-7361
(713) 853-4735

P.O. Box 1188
Houston, TX 77251-1188
Fax (713) 646-4763
John_Goodpasture@enron.com

**John N. Goodpasture**
*Vice President*
*Business Development*



**Enron Corp.**
1400 Smith Street
Houston, TX 77002-7361
(713) 853-7337

P. O. Box 1188
Houston, TX  77251-1188
Fax (713) 646-2532

**Alicia L. Goodrow**
*Director*
*Corporate Tax*



**Enron Transportation & Storage**
*Services Provided by Northern Natural Gas Company and Transwestern Pipeline Company*
1111 South 103rd Street
Omaha, NE 68124-1000
(402) 398-7449

P. O. Box 3330
Omaha, NE 68103-0330
Fax (402) 398-7426
dfossum@enron.com

**Drew J. Fossum**
*Vice President*
*& General Counsel*



**Enron Transportation & Storage**
*Services Provided by Northern Natural Gas Company and Transwestern Pipeline Company*
1400 Smith Street
Houston, TX 77002-7631
(713) 853-6677

Fax (713) 646-8828
Pager (800) 618-0235
bchandle@enron.com

**Robert F. Chandler,**
**CPA, CMA**
*Director, Accounting and Finance*

KPI1064

GOVERNMENT
EXHIBIT
303
PENGAD-Bayonne, N.J.

ENB-DOJ-020861

**Enron Attendees**

Bob Chandler - finance and accounting

Drew Fossum - legal and regulatory

Alicia Goodrow - legal (tax)

Stephen Herber - marketing and transportation

Lee Huber - legal

James Sanford - right of way

Michael Terraso - safety and operations

Kim Wilkie - legal

John Goodpasture -general

KPI1065

DATA ROOM COPY                        ENRON

## DATA ROOM INDEX

| | | DOCUMENT | COPIES |
|---|---|---|---|
| **Corporate Records** | | | |
| 1.1. | | Current Articles of Incorporation/Partnership Agreements | |
| | a) | The Bishop Group, Ltd. | |
| | b) | Bishop Pipeline Company | |
| | c) | Bishop Gas Transmission Company | |
| | d) | Syenergy Pipeline Company, L.P. Limited Partnership Certificate **and** Amended and Restated Limited Partnership Agreement and Amendment No. 1 | |
| | e) | Kansas Pipeline Company Partnership Agreement f/k/a Riverside Pipeline Partnership | |
| | f) | Riverside Pipeline Partnership Agreement | |
| | g) | First Amendment to Riverside Pipeline Partnership Agreement | |
| | h) | Kansas Pipeline Partnership Agreement | |
| | i) | First Amendment to Kansas Pipeline Partnership Agreement | |
| | j) | KansOk Partnership Agreement | |
| | k) | First Amendment to KansOk Partnership Agreement | |
| | l) | Riverside Pipeline Company, L.P. Certificate **and** Amended and Restated Agreement of Limited Partnership of Riverside Pipeline Company, L.P. | |
| | m) | MarGasCo. Partnership Agreement | |
| | n) | First Amendment to MarGasCo Partnership Agreement | |
| | o) | Mid-Kansas Partnership Agreement | |
| | p) | First Amendment to Mid-Kansas Partnership Agreement | |
| | q) | Kansas Natural Partnership Agreement | |
| | r) | First Amendment to Kansas Natural Partnership Agreement | |
| 1.2. | | Current By-laws | |
| | a) | The Bishop Group, Ltd. | |
| | b) | Bishop Pipeline Company | |

KPl1074

ENB-DOJ-020870

| DOCUMENT | | COPIES |
|---|---|---|
| | c) Bishop Gas Transmission Company | |
| 1.3. | Board, Shareholder Minutes and Consents (1/1/95 through 4/30/99) | |
| | a) The Bishop Group, Ltd. | |
| | b) Bishop Pipeline Company | |
| | c) Bishop Gas Transmission Company | |
| | d) Syenergy Pipeline Company , L.P. | |
| | e) Kansas Pipeline Company Partnership, f/k/a Riverside Pipeline Partnership, a Kansas general partnership | |
| | f) Kansas Pipeline Partnership | |
| | g) MarGasCo Partnership | |
| | h) Riverside Pipeline Company, L.P. | |
| | i) Mid-Kansas Partnership | |
| | j) Kansas Pipeline Operating Company | |
| 1.4. | Chart of Subsidiaries/Organizational Structure | |
| 1.5. | Listing Re: Incorporation/Foreign Qualification | |
| | a) Bishop Pipeline Company <br> • Missouri <br> • Oklahoma | |
| | b) Syenergy Pipeline Company Limited Partnership <br> • Missouri <br> • Oklahoma | |
| | c) Riverside Pipeline Company, L.P. <br> • Missouri <br> • Oklahoma | |
| | d) The Bishop Group, Ltd. <br> • New Mexico | |
| 1.6. | Voting Trust Agreement dated December 2, 1986 and ten (10) Amendments | |
| 1.7. | Bishop Group, Ltd. Buy/Sell Agreement and Termination of Agreement | |

KPI1075

ENB-DOJ-020871



| | | DOCUMENT | COPIES |
|---|---|---|---|
| 1.8. | | Capitalization/Stock Ledgers and/or Stock Certificates | |
| | a) | The Bishop Group, Ltd. | |
| | b) | Bishop Pipeline Company | |
| | c) | Bishop Gas Transmission Company | |
| 1.9. | | Purchase of Partnership Interests on August 8, 1997 | |
| | a) | Purchase of Chase Manhattan Capital Corporation (CMCC) Partnership Interests on August 8, 1997 (SEE BINDER) | |
| | b) | Purchase of EON-Syenergy DR II Partnership Interests on August 8, 1997 and Purchase of TCW's interest in Stock of BGL and Release of TCW debt against Bishop Gas Transmission Company (SEE BINDER) | |
| 1.10. | | KN Energy, Inc. Sale Documents (sale of two (2) expansion contracts and retention of certain easements) (SEE BINDER) | |
| 1.11. | | MarGasCo Partnership purchase of gas purchase and sale contracts from Petro Source Corporation on September 22, 1998 (SEE BINDER) | |
| **2.** | | **Financial Information** | |
| 2.1. | | Audited Financial Statements (Fiscal 1996-1998) | |
| | a) | The Bishop Group, Ltd. (calendar years 1996-1998) | |
| | b) | Syenergy Pipeline Company, L.P. (calendar years 1995, 1996 and 1997) | |
| | c) | MarGasCo Partnership (calendar years 1996, 1997 and 1998) | |
| 2.2. | | Unaudited Financial Statements | |
| | a) | The Bishop Group, Ltd. – First Quarter Ended 3/31/99 | |
| | b) | Syenergy Company Limited Partnership – First Quarter Ended 3/31/99 and 3/31/98 | |
| | c) | MarGasCo Partnership – First Quarter Ended 3/31/99 | |
| 2.3. | | Federal and State Income Tax Returns for Fiscal Years 1995, 1996 and 1997 | |
| | a) | The Bishop Group, Ltd. | |
| 2.4. | | Summary Financial Data | |
| | a) | Accounts Receivable Detail for the periods ending 12/31/98 and 3/31/99 for Kansas Pipeline Operating Company, | |

ENB-DOJ-020872



|  |  | |
|---|---|---|
|  |  | Kansas Pipeline Partnership, Mid-Kansas Partnership, Kansas Pipeline Company, MarGasCo Partnership and The Bishop Group, Ltd. |  |
|  | b) | Summary of Syenergy Pipeline Company, L.P. - bad debt experience ending 12/31/98 |  |
|  | c) | Summary of Kansas Pipeline Operating Company - prepaid expenses 12/31/98 and 3/31/99 |  |
|  | d) | Accounts Payable Detail for the periods ending 12/31/98 and 3/31/99 for SPC Companies and The Bishop Group, Ltd. |  |
| 2.5. | Regulatory Annual Reports | |  |
|  | a) | Kansas Corporation Commission Reports for Kansas Pipeline Partnership for the years 1996 and 1997 |  |
|  | b) | Federal Energy Regulating Commission Form 2, 1998 |  |
| 2.6. | 1995, 1996, 1997 Corporate Annual Reports for The Bishop Group, Ltd. in Kansas; Bishop Pipeline Company in Kansas, Oklahoma and Missouri; and Bishop Gas Transmission for Kansas | |  |
| 2.7. | Syenergy Pipeline Company, L.P. Long-Term Note and Amendment | |  |
| 2.8. | Credit Agreement between Chase Manhattan Bank and Syenergy Pipeline Company with amendments | |  |
| 2.9. | Amended and Restated Credit Agreement between Chase Manhattan Bank and MarGasCo Partnership with amendments | |  |
| 2.10. | Tax DDA Forecast 1998 through 2017 | |  |
| **Asset Lists** | | |  |
| 3.1. | Assets owned by The Bishop Group, Ltd. and/or its subsidiaries | |  |
| 3.2. | Assets excluded from transaction | |  |
| 3.3. | Miscellaneous Equipment and Telephone Leases/Agreements | |  |
| 3.4. | Master Equity Lease Agreement and copies of vehicle leases and titles | |  |
| 3.5. | Registration of 1973 Cessna Golden Eagle 421B and Promissory Note | |  |
| **Operations and Administration** | | |  |
| 4.1. | Rebuild Estimate from Panco Stewart and Stevenson – dated 1/23/96 for Kansas Pipeline | |  |

ENB-DOJ-020873



| | | |
|---|---|---|
| 4.2. | Waukesha – Pearce Industries, Inc. overhaul dated 10/25/95 | |
| 4.3. | Samples of One Call Tickets received in January for Kansas, January, February for Oklahoma and January, February, March for Missouri | |
| 4.4. | List setting forth Engine hours for period of 5/1/98 to 5/1/99 for Pawnee, Ottawa and Beaumont | |
| 4.5. | Peak Pressure Flow listings of delivery and receipt points | |
| 4.6. | Drawings of Compressor Stations | |
| | a) Pawnee Station | |
| | b) Beaumont Station | |
| | c) Ottawa Station | |
| 4.7. | Prior Kansas Pipeline Operating Company Special Agency Agreements | |
| | a) Syenergy Pipeline Company, L.P. | |
| | b) Kansas Pipeline Partnership | |
| | c) Kansas Natural Partnership | |
| | d) KansOk Partnership | |
| | e) Mid-Kansas Partnership | |
| | f) Riverside Pipeline Partnership | |
| | g) Riverside Pipeline Company, L.P. | |
| | h) Bishop Gas Transmission Company | |
| 4.8. | Drug Abuse Testing Agreement dated 1/1/96 between Kansas Pipeline Operating Company and Utility Consultants, Inc., with renewals through 9/20/99. | |
| 4.9. | Kansas Pipeline Company Gas Pipeline Operating and Maintenance Manual | |
| 4.10. | Kansas Pipeline Company Hazard Communication Procedure | |
| 4.11. | Kansas Pipeline Company Standard Operating Procedures | |
| 4.12. | Substance Abuse Policy for Natural Gas/Pipeline Employees of Kansas Pipeline Company | |
| 4.13. | Remedial efforts to procedures and/or policies resulting from DOT audit with Letter of Concern from DOT to KPC. | |
| 4.14. | Kansas Pipeline Company Safety Manual | |

KPI1078

ENB-DOJ-020874

| | |
|---|---|
| 4.15. | Kansas Pipeline Company Emergency Response Manual |
| 4.16. | Internal Memo dated 7/17/94 re:    KCC Information Request concerning compressor inspections |
| 4.17. | Federal Energy Regulatory Commission Tariff for Kansas Pipeline Company |
| 4.18. | Copy of The Bishop Group, Ltd. Employee Policies and Procedures |
| 4.19. | System Map |
| | a)  Detailed system map setting forth interconnects, delivery and receipt points, MAOP. |
| | b)  Bishop System Schematic |
| 4.20. | Assignment of all Assets to Kansas Pipeline Company |
| 4.21. | Utter & Associates, Inc. Pipeline Summaries Estimated Replacement Costs and Remaining Life Assessment of KansOk Partnership and Riverside Pipeline Company, L.P. dated March 29, 1995 |
| 4.22. | Utter & Associates, Inc. Pipeline Summaries Estimated Replacement Costs and Remaining Life Assessment of Kansas Natural Partnership and Kansas Pipeline Partnership dated March 29, 1995 |
| 4.23. | Year 2000 Statements Issued and Received regarding Kansas Pipeline Company |
| 4.24. | KPC Annual Report FERC Format #567 for 12 mo. Period ending 12/31/98 |
| **5.** | **Office Leases** |
| 5.1. | Existing Corporate Office Leases |
| 5.2. | Lease Agreement between Kansas Pipeline Company and Jack Bennett, dated 11/30/90 (Ottawa Shop Lease) |
| 5.3. | Lease Agreement between Bryan and Kansas Pipeline Company, dated 11/1/95 (Medicine Lodge Shop Lease) and a Lease between Landwehr and Kansas Pipeline Company dated November 1, 1995 |
| **6.** | **Private Placement Memorandum for the placement of $91,000,000 Long-Term Notes and Collateral Documents with Institutional Investors** |
| | 6.1(a) **Debt/Financing Agreements** -- Syenergy Pipeline Company, L.P. Long-Term Note and Amendment [See Attachment A for complete index to the Syenergy Pipeline Company, L.P. Long-Term Note and |

ENB-DOJ-020875

| | |
|---|---|
| related documents  (SEE BINDERS) | |
| 6.1(b)  Mortgage and UCC Filings relating to the Private Placement - Volume I – Tabs I.A.1(a)  through  I.B.4(b)(iv) (SEE BINDER) | |
| 6.1(c)  Mortgage and UCC Filings relating to the Private Placement – Volume II  --  Tabs I.B.5(a)(i)  through I.B.22(b)(iii) (SEE BINDER) | |
| 6.1(d)  Mortgage and UCC Filings relating to the Private Placement – Volume III  --  Tabs II.A.1(a) through V.A.1(b) (SEE BINDER) | |

| | | | |
|---|---|---|---|
| 6.1(e)  Exhibits to Mortgage by County (Private Placement): | | | |
| | i) | Anderson County | |
| | ii) | Barber County | |
| | iii) | Butler County | |
| | iv) | Chase County | |
| | v) | Coffey County | |
| | vi) | Comanche County | |
| | vii) | Cowley County | |
| | viii) | Elk County | |
| | ix) | Franklin County | |
| | x) | Greenwood County | |
| | xi) | Harper County, KS | |
| | xii) | Harvey County | |
| | xiii) | Johnson County | |
| | xiv) | Kingman County | |
| | xv) | Lyon County | |
| | xvi) | Marion County | |
| | xvii) | Miami County | |
| | xviii) | McPherson County | |
| | xix) | Rice County | |
| | xx) | Sedgwick County | . |
| | xxi) | Wyandotte County | |

ENB-DOJ-020876



| | |
|---|---|
| xxii)  Harper County, OK | |
| xxiii)  Osage County, OK | |
| xxiv)  Pawnee County, OK | |
| xxv)  Woods County, OK | |
| 6.1 (f)  Current List of Noteholders and copy of Transfer Ledger | |
| 6.1 (g)  Index of UCC Filings relating to the Butcher Interests and copies of related documents | |
| 7.    Service Agreements and Gas Transportation Related Agreements | |
| a)  Cathodic Protection/Inspection Services Agreement between Phillips Pipeline and Phenix Transmission Company executed in 1984 | |
| b)  Letters to Greenwood County RWD, dated 12/5/90, requesting water services for Beaumont Compressor Station dated 12/5/90 and 1/10/91 | |
| c)  Agreement between Fairfax Drainage District of Wyandotte County, Kansas and Riverside Pipeline Company, L.P. dated 8/2/89 | |
| d)  Construction or Field Services Agreement between Kansas Pipeline Operating Company and Odle Aviation for aerial patrol services | |
| e)  Aerial Patrol Agreement between Philips Pipeline Company and Kansas Pipeline Operating Company, dated 9/26/84 | |
| f)  Agreement between Missouri Highway and Transportation Commission and Riverside Pipeline Company, L.P., dated 8/2/89 | |
| g)  Atmos Energy Contracts | |
| (i) Greeley Gas Company, 5,000 NN-SCT, Cedar Creek as amended | |
| (ii) United Cities Gas Co. 4,000 NN-SCT Heritage Park, as amended | |
| (iii) United Cities Gas Co. 500 NN-SCT New Strawn | |
| (iv) Greeley Gas Company 1,000 NN-SCT Cedar Creek | |
| h)  Kansas Gas Service Contracts, Amendments and Assignments and KCC Settlement Agreement | |
| (i) KGS 21,100 Firm Transportation converted from Gas | |

KPI1081

ENB-DOJ-020877

| | |
|---|---|
| Purchase Agreement (Wichita) | |
| (ii)Gas Transportation Service Agreement (KNP) | |
| (iii) Form of Service Agreement Rate Schedule FT (RVSD) | |
| (iv) Gas Transportation Service Agreement (KOK) | |
| KGS 27,568 FT (KC Metro) | |
| (v) Gas Transportation Service Agreement (KPP) | |
| (vi) Gas Transportation Service Agreement (KNP) | |
| (vii) Form of Service Agreement Rate Schedule FT (RVSD) | |
| (viii) Gas Transportation Service Agreement (KOK) | |
| (ix) KGS 35,000 NN-FT (KC Metro) | |
| (x) KGS 6,857 NN-FT (Paola & Osawatomie | |
| (xi) KGS 6,900 NN-FT (Ottawa) | |
| (xii) KGS 6,000 FT (Johnson & Wyandotte) | |
| (xiii) WRI 62,569 35,000 NN-FT 27,568 FT | |
| (xiv) KCC Settlement Agreement | |
| i) Transok Lease Agreements and Amendments consisting of: Agreement of Lease dated September 13, 1990 with KansOk Partnership; Operating Agreement dated September 13, 1990 between Transok, Inc. and KansOk Partnership; Linchpin Agreement dated September 13, 1990 between Transok Ventrues Company and Kansok Partnership, Bishop Pipeline Company and MarGasCo Partnership; 90 I Amendment to the Linchpin Agreement dated September 13, 1990; Amended and Restated Linchpin Agreement dated September 13, 1990; Amended and Restated Agreement of Lease and Amended and Restated Operating Agreement dated April 24, 1992; Amendment I to the Amended and Restated Agreement of Lease and Amended and Restated Operating Agreement effective November 1, 1992; Amendment II to the Amended and Restated Agreement of Lease and Amended and Restated Operating Agreement dated April 24, 1992; Amendment to the Amended and Restated Agreement of Lease and Amended and Restated Operating Agreement dated March 1, 1994; Amendment to the Amended and Restated Agreement of Lease and Amended and Restated Operating Agreement dated August 25, 1994; Amendment to the Amended and Restated Agreement of Lease and Amended and Restated Operating Agreement | |

KPI1082

ENB-DOJ-020878

dated November 1, 1994; Letter dated March 17, 1995 suspending Seasonal Exchange for the period; Letter dated October 10, 1995 re: period adjustments; Gas Purchase Contract dated September 1, 1997; Amendment III to the Amended and Restated Agreement of Lease and Amended and Restated Operating Agreement dated April 1, 1999

(i) Settlement Agreement

j) Missouri Gas Energy Contracts

(i) Riverside I Agreement - 46,332 MMB&U (effective 5/11/98)

(ii) Mid-Kansas II Agreement - 46,332 MMB&U (effective 6/1/95- 5/10/98)

k) Kansas Pipeline Company's Index of Customers and Transportation Contract Summary

l) Interconnect Agreements with Kansas Pipeline Company

i.) Interconnect Facility Operating Agreement Kansas Power and Light Company n/k/a MGE dated December 4, 1989

ii.) Interconnect Facility Operating Agreement with United Cities Gas Company dated June 22, 1990

iii.) Operating Agreement with United Cities Company dated May 1, 1995

iv.) Delivery Facility Construction, Ownership and Operating Agreement with Getty Gas Gathering, Inc. dated September 13, 1996

v.) Interconnect Facility Operating Agreement with Kansas Power and Light Company dated July 17, 1986 and Supplemental Agreement dated November 10, 1987

vi.) Interconnection Agreement between ANR Pipeline Company and KansOK Partnership dated October 14, 1994

vii.) Reimbursement, Construction, Ownership and Operation Agreement between Panhandle Eastern Pipeline Company and Riverside Pipeline Company, L.P., Miami County, KS dated July 25, 1996

viii.) Facilities Interconnection and Reimbursment Agreement between Panhandle Eastern Pipeline Company and Kansas Pipeline Company dated February 15, 1991

ix.) Operation and Maintenance Agreement between Panhandle

ENB-DOJ-020879



| | Eastern Pipe Line Company and Kansas Pipeline Company dated February 1, 1991 | |
|---|---|---|
| m) | Interruptible Transportation Agreements of Kansas Pipeline Company | |
| i.) | Atmos Greeley Gas Company dated June 1, 1998 | |
| ii.) | Atmos United Cities Gas Company dated June 1, 1998 | |
| iii.) | MarGasCo Partnership dated June 1, 1998 | |
| iv.) | Oneok Gas Marketing Company dated September 1, 1998 | |
| n) | Operational Balancing Agreements | |
| i) | Panhandle Eastern Pipe Line Company at Phenix and Kansas Pipeline Meters | |
| ii) | Panhandle Eastern Pipe Line Company at Mastergas | |
| iii) | ANR Pipeline Company at Lovedale Kansok Interconnect | |
| iv) | Mid Continent Market Center | |
| v) | Getty Gas Gathering | |
| o) | Summary list of MarGasCo. Contracts | |
| i.) | January, 1999 report summarizing Gas Futures Account Activity; New Customers Added and Estimate of Gross Profits for following month. | |
| ii.) | February, 1999 report summarizing Gas Futures Account Activity; New Customers Added and Estimate of Gross Profits for following month. | |
| iii.) | March, 1999 report summarizing Gas Futures Account Activity; New Customers Added and Estimate of Gross Profits for following month. | |
| iv.) | April, 1999 report summarizing Gas Futures Account Activity; New Customers Added and Estimate of Gross Profits for following month. | |
| v.) | May, 1999 report summarizing Gas Futures Account Activity; New Customers Added and Estimate of Gross Profits for following month. | |
| vi.) | June, 1999 report summarizing Gas Futures Account Activity; New Customers Added and Estimate of | |

ENB-DOJ-020880

| | Gross Profits for following month. | |
|---|---|---|
| | p)  Shared Repeater Subscription Agreement | |
| | q)  Mobile Phone/Pager Agreements | |
| | r)  Radio Station License | |
| 8. | Environmental Letters Permits | |
| 8.1. | Environmental Letters | |
| | a)  Letter from State of Missouri, Department of natural Resources dated 6/24/94 regarding ID numbers for Hazardous Waste Activity | |
| | b)  Letter from State of Kansas, Department of Health and Environment dated 6/9/94 regarding Notification of Hazardous Waste Activity | |
| | c)  Letter from State of Kansas Department of Health and Environment regarding Petroleum Storage Tank Plan for Beaumont Compressor Station dated 9/11/90 | |
| | d)  Letter from Franklin County Health Department County Sanitarian dated July 31, 1990 regarding septic tank | |
| | e)  Letter from Kansas Department of Health & Environment dated 7/20/90 regarding petroleum storage tank plan | |
| | f)  Compressor Stations Noise Study prepared for KPC by Burns and McDonnell in March, 1997 with Letter from Heller, Ehrman to FERC on May 17, 1999 setting forth compliance on noise levels; List of alternatives for noise reduction measures. | |
| | g)  Environmental Assessments | |
| | i.)  Environmental Assessment of the Phenix Transmission Company for Bishop Pipeline Company by Environmental and Safety Services, Inc. dated September 27, 1989 | |
| | ii.)  Supplement to the Environmental Assessment of the Phenix Transmission Company for Bishop Pipeline Company by Environmental and Safety Services, Inc. dated October 16, 1989 | |
| | iii.)  Preliminary Environmental Review for KansOk Pipeline by Environmental and Safety Services, Inc. dated April 18, 1990 | |
| | iv.)  Environmental Risk Assessment of Kansas Pipeline Company and Kansas Natural, Inc. prepared for | |

ENB-DOJ-020881



|  |  | Vinson and Elkins dated May, 1990 |  |
|---|---|---|---|
|  | v.) | Internal Memorandum dated June 24, 1991 addressing Pilko Report recommendations |  |
|  | vi.) | Environmental Assessment of Syenergy Pipeline Company, L.P. prepared by Pilko & Associates, Inc. dated May 22, 1992 |  |
|  | vii.) | Addendum to Environmental Assessment of Syenergy Pipeline Company, L.P. prepared by Pilko & Associates, Inc. dated May 22, 1992 dated 5/29/92 |  |

| 8.2. |  | Applications/Permits/Approvals |  |
|---|---|---|---|
|  | a) | Part 70 Permit Application for the KansOK Partnership, Pawnee Compressor Station, Pawnee County, OK, September 1996 and Authorization to Operate effective 9/11/98 |  |
|  | b) | 40 CFR Part 70 General Operating Permit Application for the Kansas Pipeline Partnership, Beaumont Compressor Station, Greenwood County, Kansas, October 1996 |  |
|  | c) | 40 CFR Part 70 General Operating Permit Application for the Kansas Pipeline Partnership, L.P., Ottawa Compressor Station, Franklin County, Kansas, October 1996 |  |
|  | d) | Class I Operating Permit for Beaumont Compressor Station issued 7/31/97 |  |
|  | e) | Class I Operating Permit for Ottawa Compressor Station issued 7/31/97 |  |
|  | f) | Pawnee Compressor Station Semi Annual Report for Authorization No. 96-404-TV for Air Quality Division |  |
|  | g) | Air Emissions Inventory Forms submitted to Kansas Department of Health and Environment, Bureau of Air and Radiation on May 25, 1999 (2 reports for Ottawa Compressor Station) |  |
|  | h) | Annual Emission Inventory forms for Pawnee Compressor Station submitted to Emissions Inventory and Fee Development Unit, Air Quality Division, Oklahoma Dept. of Environmental Quality on March 29, 1999 |  |
|  | i) | Annual reports (Summary of total operating hours per location per Title V permit requirements for Ottawa Station, Beaumont Station) submitted on May 25, 1999 to Kansas Department of Health and |  |

KPI1086

ENB-DOJ-020882



| | |
|---|---|
| Environment, Bureau of Air and Radiation | |
| j) Annual Compliance Forms for Ottawa Station and Beaumont Station submitted on May 25, 1999 to Kansas Department of Health and Environment, Bureau of Air and Radiation | |
| k) Johnson County Industrial Solid Waste disposal Authorization dated 1/19/96 | |
| l) Butler-Greenwood Bi-County Health Department sewage facility construction approval | |
| m) Letter dated 5/20/96 from Kansas Department of Health and Environment regarding Permit No. I-WA23-N001 | |
| n) Letter from Office of Zoning Administration dated 6/20/90 regarding Septic System/Building permit 276 | |
| o) Letter from Kansas Department of Health & Environment dated 9/1/95 regarding Kansas Water Pollution Control Permit No. | |

| 9. Human Resources | |
|---|---|
| 9.1. Organization Charts (Job Titles for all Employees) | |
| 9.2. Employee List with Compensation | |
| 9.3. Benefits | |
| a) Medical/Dental | |
| i) Medical Plan Summary | |
| ii) Group Dental Plan Summary | |
| b) 401(k) Plan Description and Contracts | |
| c) Life/Accidental Death and Dismemberment Summary | |
| d) Long-Term Disability Insurance Summary | |
| 9.4. Employee Manual | |
| 9.5. DML Employment Agreements | |
| a) The Bishop Group, Ltd. | |
| b) Management Resources Group, Ltd. | |
| c) Consolidation and Amendment of Management Agreement and Employment Contracts with The Bishop Group, Ltd. and its subsidiaries | |
| d) Syenergy Pipeline Company, L.P. | |

ENB-DOJ-020883

| | |
|---|---|
| 9.6. Miscellaneous Employment Agreements | |
| a) Consulting Agreements | |
| b) Employee Agreements | |
| 10. Legal Matters (See Binders) | |
| 10.1. Cases before The Public Service Commission of the State of Missouri | |
| a) Pleadings In the matter of Missouri Gas Energy's Cost Adjustment Tariff Revisions to be viewed in its 1996-1997 Annual Reconciliation Adjustment Account GR96-450 [1 vol] | |
| b) Depositions in GR96-450 case above [1 vol] | |
| c) Testimony in GR96-450 case above [1 vol] | |
| d) Data Requests and Response in GR96-450 case above [    vol] e) Rebuttal Testimony – GR96-450 Case [vol] | |
| 10.2. Cases before the Circuit Court of Cole County, Missouri | |
| a) State of Missouri ex rel. Riverside Pipeline Company, L.P. and Mid-Kansas Partnership v. Public Service Commission of Missouri – Case No. CV-199-53CC [1 vol] | |
| b) State of Missouri ex rel. Riverside Pipeline Company, L.P. and Mid-Kansas Partnership, Realtors v. The Missouri Public Service Commission – Case No. CV-198-1505-CC [1 vol] | |
| 10.3. Federal Energy Regulation Commission Consolidated Docket Nos: | |
| a) CP96-152-000 -- Riverside Pipeline Company, L.P. [9 vol] | |
| b) CP97-738-000 -- Transok, Inc. [2 vol] | |
| c) RP95-212-000 -- KansOk Partnership et.al.   [3 vol] | |
| d) RP95-395-000  – Williams Natural Gas Co. v. KPOC et.al. [4 volumes] | |
| e) PR94-3000 -- KansOk Partnership [4 vol] | |
| f) Request for Rehearing [1 vol] | |
| g) Transcript of Proceedings [2 vol] | |
| h) FERC Data Requests [1 vol] | |
| 10.4. OneOk, Inc. d/b/a its division, Kansas Gas Service Company v. Kansas Pipeline Company; Syenergy Pipeline Company, L.P.; Bishop Pipeline Company; and Bishop Gas Transmission Company - Case No. 99 C 06574- Johnson County, Kansas; Case No. 99-2268-KHV-Federal Court, Kansas City, Kansas | |

KPI1088

ENB-DOJ-020884



| | | | |
|---|---|---|---|
| 10.5. | | List of regulatory proceedings in which Kansas Pipeline Company is an intervenor or party | |
| 10.6. | | Key Orders and Pleadings granted in Kansas Corporation Commission (KCC) and Federal Energy Regulatory Commission Dockets | |
| | a) | Trial Brief of Kansas Pipeline Partnership and Kansas Natural Partnership dated December 19, 1994 with Appendix | |
| | b) | March 17, 1995 KCC Order Regarding Application of KPP/KNP | |
| | c) | June 16, 1995 KCC Order | |
| | d) | November 6, 1995 KCC Order Regarding Petitions for Reconsideration | |
| | e) | December 30, 1996 KCC Order on Remand | |
| | f) | March 5, 1997 Initial Comments of RPCLP in FERC Docket | |
| | g) | March 25, 1997 Reply Comments of RPCLP in FERC Docket | |
| | h) | October 3, 1997 FERC Order Granting and Denying Rehearings, Issuing Certificates and Establishing Refunds | |
| | i) | November 3, 1997 Request for Rehearing of KPC, KPP, KP, RPCLP and KPOC | |
| | j) | April 29, 1998 FERC Order on Rehearing | |
| | k) | April 2, 1999 FERC Order | |
| | l) | June 18, 1999 FERC Order | |
| | m) | Accounting Order of Kansas Pipeline Partnership issued October 30, 1991 | |
| | n) | Accounting Order of Kansas Natual Partnership issued October 30, 1991 | |
| 11. | | Insurance/Risk Management | |
| | a) | Summary of Insurance Coverage for Combined Property, Business Interruption and Boiler Coverage; Commercial General Liability, Business Automobile, Workers' Compensation, Excess Liability and Binders for Coverages | |
| | b) | Loss Reports for Workers Compensation and Automobile for policy periods 7/1/96 to 7/1/97 and 7/1/97 to 7/1/98 | |

KPI1089

C01DOCS/440984.01
8/8/1999 4:01 PM

ENB-DOJ-020885

| 12. | Kansas Pipeline Company FERC Transition, May 11, 1998 | |
|---|---|---|
| | 12.1    Rights-of-Way,    Easements    Leases    and    Personal    Property Conveyances by County: | |
| | a)   Anderson County | |
| | b)   Barber County | |
| | c)   Butler County | |
| | d)   Cass County, MO | |
| | e)   Chase County | |
| | f)   Coffey County | |
| | g)   Comanche County | |
| | h)   Cowley County | |
| | i)   Elk County | |
| | j)   Franklin County | |
| | k)   Harper County, OK | |
| | l)   Harper County, KS | |
| | m)  Harvey County | |
| | n)   Jackson County, MO | |
| | o)   Johnson County | |
| | p)   Kingman County | |
| | q)   Lyon County | |
| | r)   Marion County | |
| | s)   McPherson County | |
| | t)   Miami County | |
| | u)   Osage County, OK | |
| | v)   Pawnee County, OK | |
| | w)  Platte County, MO | |
| | x)   Rice County | |
| | y)   Sedgwick County | |
| | z)   Woods County, OK | |
| | aa) Wyandotte County | |
| | bb) Greenwood County | |

ENB-DOJ-020886



| 12.2 | FERC Transition Documents | |
|---|---|---|
| a) | Agreement between Bishop Pipeline Company, Syenergy Pipeline Company, L.P., Kansas Pipeline Partnership, KansOk Partnership, Riverside Pipeline Partnership and Riverside Pipeline Company, L.P. dated May 11, 1998 | |
| b) | General Partnership Agreement of Kansas Pipeline Company dated May 11, 1998 | |
| c) | Operating Agreement between Kansas Pipeline Company and Kansas Pipeline Operating Company dated May 11, 1998 | |
| d) | Assignments of Gas and Transportation Contracts | |
| e) | Conveyance of all Personal Property | |
| | i.)    KansOk Partnership | |
| | ii.)   Kansas Pipeline Partnership | |
| | iii.)  Riverside Pipeline Company, L.P. | |
| f) | Authorizations | |
| | i.)    Consent Minutes of Syenergy Pipeline Company, L.P. dated May 11, 1998 | |
| | ii.)   Consent Minutes of Kansas Pipeline Partnership dated May 11, 1998 | |
| | iii.)  Consent Minutes of KansOk Partnership dated May 11, 1998 | |
| | iv.)   Consent Minutes of Riverside Pipeline Partnership dated May 11, 1998 | |
| | v.)    Consent Minutes of Riverside Pipeline Company, L.P. dated May 11, 1998 | |
| g) | Recording Index | |

KPl1091

ENB-DOJ-020887

Name: _LEE M. HUBER_
Name of Company: _ENRON_

## DOCUMENT REQUEST LIST

| Document | Index # | Out | In | Copy |
|---|---|---|---|---|
| 1. | 1.10⁻¹ | IKON | | ✓ |
| 2. | 1.11⁻¹ | | | ✓ |
| 3. | 6.1a-8 | | | ✓ |
| 4. | b1 c-1 d-1 | IKON | | ✓ |
| 5. | 6.1 f | not checked only | | ✓ ✓ |
| 6. | | | | |
| 7. | 7(a)-(f) | | | ✓ |
| 8. | (K) | | | ✓ ✓ |
| 9. | b(i)-(iv) | | | ✓ ✓ |
| 10. | | | | ✓ |
| 11. | 7 N | | | ✓ ✓ |
| 12. | 7 0 | | | ✓ ✓ |
| 13. | 7 P 7 q | | | ✓ ✓ |
| 14. | 7 R | | | ✓ ✓ |
| 15. | 7(a) (e) | | | not |
| 16. | | | | copy |
| 17. | 7(m) | | | ✓ |
| 18. | 10.5 | | | ✓ |
| 19. | 10.6 (a) | | | ✓ |
| 20. | (b) (c) (d) (e) (m) (n) | | | |

KPI1168

KC01DOCS/401837.01

ENB-DOJ-020963

OPERATIONS

Name: _BILL KENDRICK_
Name of Company: _ENRON_

## DOCUMENT REQUEST LIST

| | Document | Index # | Out | In | Copy |
|---|---|---|---|---|---|
| 1. | Copies all attached | | | | ✓ pulled to |
| 2. | | | | | GS 400 |
| 3. | | | | | 8/10 |
| 4. | | | | | |
| 5. | | | | | |
| 6. | | | | | |
| 7. | | | | | |
| 8. | | | | | |
| 9. | | | | | |
| 10. | | | | | |
| 11. | | | | | |
| 12. | | | | | |
| 13. | | | | | |
| 14. | | | | | |
| 15. | | | | | |
| 16. | | | | | |
| 17. | | | | | |
| 18. | | | | | |
| 19. | | | | | |
| 20. | | | | | |

KPI1169

KC01DOCS/201937.01

ENB-DOJ-020964

# OPERATIONS DOCUMENT REQUESTS

3.2  Assets excluded from transaction

3.3  Miscellaneous Equipment and Telephone Leases/Agreements

3.4  Copy of Leases and titles on all motor vehicles

3.5  Registration of 1973 Cessna Golden Eagle 421B and Promissory Note

4.1  Rebuild Estimate from Panco Stewart and Stevenson - dated 1/23/96 for Kansas Pipeline

4.3  Copy of Kansas, Oklahoma and Missouri One Call Tickets received for 1st quarter, 1999

4.4  List setting forth Engine hours for period of 5/1/98 to 5/1/99 for Pawnee, Ottawa and Beaumont

4.5  Peak Pressure Flow listings of delivery and receipt points

4.6  Drawings of Compressor Stations

4.9  Kansas Pipeline Company Gas Pipeline Operating and Maintenance Manaul

4.10  Kansas Pipeline Company Standard Operating Procedures

4.13  Remedial efforts to procedures and/or policies resulting from DOT audit with Letter of Concern from DOT to KPC

4.18  Copy of The Bishop Group, Ltd. Employee Policies and Procedures

4.19  Detailed System Map  In filecopy box

4.20  Assignment of all Assets to Kansas Pipeline Company

4.21  Year 2000 Statements Issued

5.1  Existing Corporate Office Leases

5.2  Lease Agreement between Kansas Pipeline Partnership and Jack Bennett, dated 11/30/90 (Ottawa Shop Lease)

5.3  Lease Agreement between Landweht and Kansas Pipeline Operating Company, dated 11/1/95 (Medicine Lodge Shop Lease)

KPI1170

1

ENB-DOJ-020965

 Part 70 Permit Application for the KansOK Partnership, Pawnee Compressor Station, Pawnee County, OK, September 1996 and Authorization to Operate effective 9/11/98

 40 CFR Part 70 General Operating Permit Application for the Kansas Pipeline Partnership, Beaumont Compressor Station, Greenwood County, Kansas, October 1996

 40 CFR Part 70 General Operating Permit Application for the Kansas Pipeline Partnership, L.P., Ottawa Compressor Station, Franklin County, Kansas, October 1996

 Class I Operating Permit for Beaumont Compressor Station issued 7/31/97

 Class I Operating Permit for Ottawa Compressor Station issued 7/31/97

KPI1171

2

ENB-DOJ-020966

Name: _LEE HUBER_
Name of Company: _ENRON_

## DOCUMENT REQUEST LIST

| Document | Index # | Out | In | Copy |
|---|---|---|---|---|
| 1. | 1. 6 | | | ✓ |
| 2. | 1. 7 | | | ✓ |
| 3. | 1.9 (a) | ⟩IKON | | ✓ |
| 4. | (b) | | | ✓ |
| 5. | | | | |
| 6. | | | | |
| 7. | | | | |
| 8. | | | | |
| 9. | | | | |
| 10. | | | | |
| 11. | | | | |
| 12. | | | | |
| 13. | | | | |
| 14. | | | | |
| 15. | | | | |
| 16. | | | | |
| 17. | | | | |
| 18. | | | | |
| 19. | | | | |
| 20. | | | | |

KPI1172

KC01DOCS/401837.01

ENB-DOJ-020967

Name: _Bill Kendrick_

Name of Company: _____

## DOCUMENT REQUEST LIST

| Document | Index # | Out | In | Copy |
|---|---|---|---|---|
| 1. ACP | 4.19 | to 66 | | ✓ |
| 2. | 4.15 | | | ✓ |
| 3. | 4.14 | | | ✓ |
| 4. | 4.10 | | | ✓ |
| 5. | | | | |
| 6. | | | | |
| 7. | | | | |
| 8. | | | | |
| 9. | | | | |
| 10. | | | | |
| 11. | | | | |
| 12. | | | | |
| 13. | | | | |
| 14. | | | | |
| 15. | | | | |
| 16. | | | | |
| 17. | | | | |
| 18. | | | | |
| 19. | | | | |
| 20. | | | | |

**KPI1173**

KC01DOCS/101877.01

ENB-DOJ-020968

Name: _Alicia Goodrow_

Name of Company: _Enron_

## DOCUMENT REQUEST LIST

| | Document | Index # | Out | In | Copy |
|---|---|---|---|---|---|
| 1. | | 9.3(a),(c) | | | ✓ |
| 2. | | 9.2 | | | ✓ |
| 3. | | | | | |
| 4. | | 9.6(a) | | | ✓ |
| 5. | | 9.6(b) | | | ✓ |
| 6. | | 9.5(d) | | | ✓ |
| 7. | | 9.5(c) | | | ✓ |
| 8. | | 9.4 | | | ✓ |
| 9. | | | | | |
| 10. | | | | | |
| 11. | | | | | |
| 12. | | | | | |
| 13. | | | | | |
| 14. | | | | | |
| 15. | | | | | |
| 16. | | | | | |
| 17. | | | | | |
| 18. | | | | | |
| 19. | | | | | |
| 20. | | | | | |

KPI1174

KC01DOCS/401837.01

ENB-DOJ-020969

Name: _Bob Chandler_

Name of Company: _Evrin_    bGS  31⁰

## DOCUMENT REQUEST LIST

| | Document | Index # | Out | In | Copy |
|---|---|---|---|---|---|
| 1. | MARGASCO AUDITED F/S 96-98 | 2.2c | | | 1 ✓ |
| 2. | BISNOI EXP " " 96-98 | 2.1a | | | 1 ✓ |
| 3. | SYGNERLY P/L 95-97 | 2.1b | | | 1 ✓ |
| 4. | MARGASCO PTRS " " 96-98 | 2.1c | | | 1 ✓ |
| 5. | KPOC et al A/R DETAL 3/31/98 | 2.4a | | | 1 ✓ |
| 6. | SYGNERLY BAD DEBTS 12/98 | 2.4b | | | 1 ✓ |
| 7. | KPOC ~~SYGNERLY~~ PPD EXP 3/99 | 2.4c | | | 1 ✓ |
| 8. | SFC + BISNOI GP A/P DETAL 3/99 | 2.4d | | | 1 ✓ |
| 9. | CORP ANNUAL RPTS BISNOI COS. 97 ONLY | 2.6 | | | 1 ✓ |
| 10. | TAX DDA FORECAST 1998-2017 | 2.10 | | | 1 ✓ |
| 11. | "GAP 7,000 STATEMENTS | 4.23 | | | 1 ✓ |
| 12. | EXISTING CORP OFFICE LEASES | 5.1 | | | ①  |
| 13. | OTTAWA SHOY LEASE | 5.2 | | | ①  |
| 14. | MEDICINE LODGE + LANDWEHR LEAS | 5.3 | | | ①  |
| 15. | INSURANCE COVERAGE SUMMARY | 11.a | | | 1 ✓ |
| 16. | LOSS REPORTS W.C. + AUTO | 11.b | | | 1 ✓ |
| 17. | | | | | |
| 18. | | | | | |
| 19. | | | | | |
| 20. | | | | | |

KPI1175

KC01DOCS/401837.01

Name: _Bob Chandler_
Name of Company: _Enbca_[1]

## DOCUMENT REQUEST LIST

| Document | Index # | Out | In | Copy |
|---|---|---|---|---|
| 1. ORG. STRUCTURE | 1.4 | ✓ 1 | | |
| 2. ASSET LIST | 3.1 | ✓ 1 | | |
| 3. EXCLUDED ASSETS | 3.2 | ✓ 1 | | |
| 4. TARIFF | 4.17 | ✓ 1 | | |
| 5. | | | | |
| 6. | | | | |
| 7. | | | | |
| 8. | | | | |
| 9. | | | | |
| 10. | | | | |
| 11. | | | | |
| 12. | | | | |
| 13. | | | | |
| 14. | | | | |
| 15. | | | | |
| 16. | | | | |
| 17. | | | | |
| 18. | | | | |
| 19. | | | | |
| 20. | | | | |

**KPI1176**

KC01DOCS/401837.01

ENB-DOJ-020971

Name: _LEE HUBER_
Name of Company: _ENRON_

## DOCUMENT REQUEST LIST

| Document | Index # | Out | In | Copy |
|---|---|---|---|---|
| 1. | 10 1 | | | |
| 2. | 10.2 | | | |
| 3. | ~~10.4~~ | | | |
| 4. | | | | |
| 5. | | | | |
| 6. | | | | |
| 7. | | | | |
| 8. | | | | |
| 9. | | | | |
| 10. | | | | |
| 11. | | | | |
| 12. | | | | |
| 13. | | | | |
| 14. | | | | |
| 15. | | | | |
| 16. | | | | |
| 17. | | | | |
| 18. | | | | |
| 19. | | | | |
| 20. | | | | |

**KPI1177**

ENB-DOJ-020972

Name: _Drew Fossum_
Name of Company: _Enron_

## DOCUMENT REQUEST LIST

| Document | Index # | Out | In | Copy |
|---|---|---|---|---|
| 1. | 10.1 (a)-(i) | ✓ | | |
| 2. | | | | |
| 3. | | | | |
| 4. | | | | |
| 5. | | | | |
| 6. | | | | |
| 7. | | | | |
| 8. | | | | |
| 9. | | | | |
| 10. | | | | |
| 11. | | | | |
| 12. | | | | |
| 13. | | | | |
| 14. | | | | |
| 15. | | | | |
| 16. | | | | |
| 17. | | | | |
| 18. | | | | |
| 19. | | | | |
| 20. | | | | |

KPI1178

ENB-DOJ-020973

Name: _LEE  HUBER_
Name of Company: _ENRON_

## DOCUMENT REQUEST LIST

| Document | Index # | Out | In | Copy |
|---|---|---|---|---|
| 1. | 10.1 (a) | | | ✓ |
| 2. | # 22 | | | ✓ ✓ |
| 3. | # 37 | | | ✓ ✓ |
| 4. | # 42 | | | ✓ ✓ |
| 5. | # 43 | | | ✓ ✓ |
| 6. | # 49 | | | ✓ ✓ |
| 7. | # 52 | | | ✓ ✓ |
| 8. | # 54 | | | ✓ ✓ |
| 9. | # 55 | | | ✓ ✓ |
| 10. | | | | |
| 11. | | | | |
| 12. | | | | |
| 13. | | | | |
| 14. | | | | |
| 15. | | | | |
| 16. | | | | |
| 17. | | | | |
| 18. | | | | |
| 19. | | | | |
| 20. | | | | |

KPI1179

PIPELINE SAFETY

OPS HAS SEC. 4

Name
Name

<u>DO</u>

| | Document | | | | |
|---|---|---|---|---|---|
| 1. | Regulatory Annual | | | | ⌐ U |
| 2. | " " | 2.5b | | | X ✓ |
| 3. | Assets Lists | 3.1 | | | X ✓ |
| 4. | OPERATIONS AND ADMIN. | 4.0 ALL | | | Ⓧ |
| 5. | SERVICE AGREEMENTS .... | 7.0 a) | | | X ✓ |
| 6. | " " | d | | | Ⓧ |
| 7. | " " | e | | | Ⓧ |
| 8. | " " | f | | | Ⓧ |
| 9. | " " | J | | | X ✓ |
| 10. | " " | K | | | X ✓ |
| 11. | " " | m | | | X ✓ |
| 12. | " " | o | | | X ✓ |
| 13. | " " | P | | | X ✓ |
| 14. | " " | q | | | X ✓ |
| 15. | " " | r | | | X ✓ |
| 16. | LIST of regulatory | 10.5 | | | X ✓ |
| 17. | | | | | |
| 18. | | | | | |
| 19. | | | | | |
| 20. | | | | | |

KPI1180

KC01DOCS/401877.01

ENB-DOJ-020975

Name of Company: Enron
Date: 8/10

### Sign-In Sheet

| | Name | Firm/Company | Office # | Time in | Time Out |
|---|---|---|---|---|---|
| 1. | Alicia Goodrow | Enron | ta | | |
| 2. | James Sanford | Enron | | | |
| 3. | Bill Kendrick | Enron | | | |
| 4. | Bob Chandler | Enron | | | |
| 5. | Lee Huber | Enron | | | |
| 6. | | | | | |
| 7. | | | | | |
| 8. | | | | | |
| 9. | | | | | |
| 10. | | | | | |

**KPI1181**

ENB-DOJ-020976

Name: _Bob Chandler_

Name of Company: _Enron_



## DOCUMENT REQUEST LIST

| | Document | Index # | Out | In | Copy |
|---|---|---|---|---|---|
| 1. | KCC Reports 1996 + 1997 | 2.5 a | | | 2 |
| 2. | FERC Form 2 1998 | 2.5 b | | | 2 |
| 3. | | | | | |
| 4. | | | | | |
| 5. | | | | | |
| 6. | | | | | |
| 7. | | | | | |
| 8. | | | | | |
| 9. | | | | | |
| 10. | | | | | |
| 11. | | | | | |
| 12. | | | | | |
| 13. | | | | | |
| 14. | | | | | |
| 15. | | | | | |
| 16. | | | | | |
| 17. | | | | | |
| 18. | | | | | |
| 19. | | | | | |
| 20. | | | | | |

KPI1182

KC01DOCS/401837.01

ENB-DOJ-020977

Name: Alicia Goodrow

Name of Company: _____

## DOCUMENT REQUEST LIST

| Document | Index # | Out | In | Copy |
|---|---|---|---|---|
| 1.                                    aut | 4.18 | Being | copied | for Bui |
| 2. | 9.36 | ✓ | | ✓ |
| 3. | 9.4 | ✓ | | |
| 4. | 9.5 (all) | ✓ | | |
| 5. | 9.6 (all) | ✓ | | |
| 6. | | | | |
| 7. | | | | |
| 8. | | | | |
| 9. | | | | |
| 10. | | | | |
| 11. | | | | |
| 12. | | | | |
| 13. | | | | |
| 14. | | | | |
| 15. | | | | |
| 16. | | | | |
| 17. | | | | |
| 18. | | | | |
| 19. | | | | |
| 20. | | | | |

KPI1183

Name: Alicia Goodrow

Name of Company: Enron

## DOCUMENT REQUEST LIST

| | Document | Index # | Out | In | Copy |
|---|---|---|---|---|---|
| 1. | 1.1 (d) — (r) | | ✓ | | d ✓e |
| 2. | | | | | m ✓ |
| 3. | | | | | |
| 4. | | | | | |
| 5. | | | | | |
| 6. | | | | | |
| 7. | | | | | |
| 8. | | | | | |
| 9. | | | | | |
| 10. | | | | | |
| 11. | | | | | |
| 12. | | | | | |
| 13. | | | | | |
| 14. | | | | | |
| 15. | | | | | |
| 16. | | | | | |
| 17. | | | | | |
| 18. | | | | | |
| 19. | | | | | |
| 20. | | | | | |

**KPI1184**

KC01DOCS/401837.01

ENB-DOJ-020979

Name: _James Sanford_
Name of Company: _Enron_

## DOCUMENT REQUEST LIST

| | Document | Index # | Out | In | Copy |
|---|---|---|---|---|---|
| 1. | Asset Lists | | | | |
| 2. | | 3.1 | ✓ | | ✓ |
| 3. | | 3.2 | ✓ | | ✓ |
| 4. | | 3.3 | ✓ | | |
| 5. | | 3.4 | | | |
| 6. | | 3.5 | | | |
| 7. | Operations & Administration | | | | |
| 8. | | 4.2 | ✓ | | |
| 9. | Office Leases | | | | |
| 10. | Service Accounts | | | | |
| 11. | | 7c | ✓ | | |
| 12. | | 7f | ✓ | | ✓ |
| 13. | Rights of Way | | | | |
| 14. | | 12.1 | box ✓ | | box 1st  COPY 12.1(a) |
| 15. | | A-66 | box ✓ | | box  12.1(u) |
| 16. | | 12.6 | | | yes ✓  12.1(c) |
| 17. | | | | | |
| 18. | | | | | |
| 19. | | | | | |
| 20. | | | | | |

KPI1185

ENB-DOJ-020980

Name: _James Sanford_
Name of Company: _Enron_

## DOCUMENT REQUEST LIST

| Document | Index # | Out | in | Copy |
|---|---|---|---|---|
| 1. _Ele  to  KN_ | 1 10 | ✓ | | |
| 2. _Purchase & Sale  Retro Service_ | 1. 11 | ✓ | | |
| 3. | | | | |
| 4. | | | | |
| 5. | | | | |
| 6. | | | | |
| 7. | | | | |
| 8. | | | | |
| 9. | | | | |
| 10. | | | | |
| 11. | | | | |
| 12. | | | | |
| 13. | | | | |
| 14. | | | | |
| 15. | | | | |
| 16. | | | | |
| 17. | | | | |
| 18. | | | | |
| 19. | | | | |
| 20. | | | | |

KPI1186

KC01DOCS/401837.01

ENB-DOJ-020981

Name: BILL KENDRICK
Name of Company: ENRON

## DOCUMENT REQUEST LIST

| | Document | Index # | Out | In | Copy |
|---|---|---|---|---|---|
| 1. | review attached | | ✓ | | |
| 2. | | 4.3 | ✓ | | |
| 3. | | | | | |
| 4. | | | | | |
| 5. | | | | | |
| 6. | | | | | |
| 7. | | | | | |
| 8. | | | | | |
| 9. | | | | | |
| 10. | | | | | |
| 11. | | | | | |
| 12. | | | | | |
| 13. | | | | | |
| 14. | | | | | |
| 15. | | | | | |
| 16. | | | | | |
| 17. | | | | | |
| 18. | | | | | |
| 19. | | | | | |
| 20. | | | | | |

KPI1187

KC01DOCS/401817.01

ENB-DOJ-020982

08/05/99

## KPC Data Room Document Requests

4.10   Kansas Pipeline Company Hazard Communication Procedure

4.14   Kansas Pipeline Company Safety Manual

4.15   Kansas Pipeline Company Emergency Response Manual

4.19   Detailed System Map

7b   Letters to Greenwood County RWD, dated 12/5/90, requesting water services for Beaumont Compressor Station dated 12/5/90 and 1/10/91

7c   Agreement between Fairfax Drainage District of Wyandotte County, Kansas and Riverside Pipeline Company, L.P. dated 8/2/89

7d   Construction or Field Services Agreement between Kansas Pipeline Operating Company and Odle Aviation for aerial patrol services

7e   Aerial Patrol Agreement between Philips Pipeline Company and Kansas Pipeline Operating Company, dated 9/26/84

8.1a   Letter from State of Missouri, Department of Natural Resources date 6/24/94 regarding ID numbers for Hazardous Waste Activity

8.1b   Letter from State of Kansas, Department of Health and Environment dated 6/9/94 regarding Notification of Hazardous Waste Activity

8.1c   Letter from State of Kansas Department of Health and Environment regarding Petroleum Storage Tank Plan for Beaumont Compressor Station dated 9/11/90

8.1d   Letter from Franklin County Health Department County Sanitarian dated July 31, 1990 regarding septic tank

8.1e   Letter from Kansas Department of Health & Environment dated 7/20/90 regarding petroleum storage tank plan

8.1f   Compressor Station Noise Study prepared for KPC by Burns and McDonnell in March, 1997 with Letter from Helller, Ehrman to FERC on May 17, 1999 setting forth compliance on noise levels;  List of alternatives for noise reduction measures.

8.1g(i)   Environmental Assessment of the Phenix Transmission Company for Bishop Pipeline Company by Environmental and Safety Services, Inc. dated September 27, 1989

8.1g(ii)   Supplement to the Environmental Assessment of the Phenix Transmission Company for Bishop Pipeline Company by Environmental and Safety Services, Inc. dated October 16, 1989

8.1g(iii)   Preliminary Environmental Review for KansOk Pipeline by Environmental and Safety Services, Inc. dated April 18, 1990

8.1.g(iv)   Environmental Risk Assessment of Kansas Pipeline Company and Kansas Natural, Inc. prepared for Vinson and Elkins dated May, 1990

**KPI1188**

1

ENB-DOJ-020983

08/05/99

8.1g(v)   Internal Memorandum dated June 24, 1991 addressing Pilko Report recommendations

8.1.g(vi)   Environmental Assessment of Syenergy Pipeline Company, L.P. prepared by Pilko & Associates, Inc. dated May 22, 1992

8.1g(vii)   Addendum to Environmental Assessment of Syenergy Pipeline Company, L.P. prepared by Pilko & Associates, Inc. dated May 22, 1992 dated May 29, 1992

8.2a   Part 70 Permit Application for the KansOK Partnership, Pawnee Compressor Station, Pawnee County, OK, September 1996 and Authorization to Operate effective 9/11/98

8.2b   40 CFR Part 70 General Operating Permit Application for the Kansas Pipeline Partnership, Beaumont Compressor Station, Greenwood County, Kansas, October 1996

8.2c   40 CFR Part 70 General Operating Permit Application for the Kansas Pipeline Partnership, L.P., Ottawa Compressor Station, Franklin County, Kansas, October 1996

8.2d   Class I Operating Permit for Beaumont Compressor Station issued 7/31/97

8.2e   Class I Operating Permit for Ottawa Compressor Station issued 7/31/97

8.2f   Pawnee Compressor Station Semi Annual Report for Authorization No. 96-404-TV for Air Quality Division

8.2g   Air Emissions Inventory Forms submitted to Kansas Department of Health and Environment, Bureau of Air and Radiation on May 25, 1999 (2 reports for Ottawa Compressor Station)

8.2h   Annual Emission Inventory forms for Pawnee Compressor Station submitted to Emissions Inventory and Fee Development Unit, Air Quality Division, Oklahoma Dept. of Environmental Quality on March 29, 1999

8.2i   Annual reports (Summary of total operating hours per location per Title V permit requirements for Ottawa Station, Beaumont Station) submitted on May 25, 1999 to Kansas Department of Health and Environment, Bureau of Air and Radiation

8.2j   Annual Compliance Forms for Ottawa Station and Beaumont Station submitted on May 25, 1999 to Kansas Department of Health and Environment, Bureau of Air and Radiation

8.2k   Johnson County Industrial Solid Waste disposal Authorization dated 1/19/96

8.2l   Butler-Greenwood Bi-County Health Department sewage facility construction approval

8.2m   Letter dated 5/20/96 from Kansas Department of Health and Environment regarding Permit No. I-WA23-N001

8.2n   Letter from Office of Zoning Administration dated 6/20/90 regarding Septic System/Building permit 276

8.2o   Letter from Kansas Department of Health & Environment dated 9/1/95 regarding Kansas Water Pollution Control Permit No.

9.1   Organization Charts (Job Titles for all Employees)

KPI1189

2

ENB-DOJ-020984

**Tino M. Monaldo, Chartered**

Attorney at Law

335 North Washington
Corporate Square/Suite 130
P.O. Box 728
Hutchinson, Kansas 67504-0728
316 669-9338
Fax 316-665-5961

Tino M. Monaldo



July 15, 1999

<u>**VIA FEDERAL EXPRESS**</u>

Lee M. Huber
Enron Corporation
Suite 4781
1400 Smith Street
Houston, TX 77002

RE:   <u>ONEOK, Inc. vs. Kansas Pipeline Company, et.al.</u>
      Case No. 99 C 06574

Dear Ms. Huber:

Vean Gregg of Chase Securities asked me to forward to you all of the existing pleadings with respect to the above-referenced lawsuit. Therefore, enclosed please find all of said documents in my files through the date first written above, including the attached index attached hereto.

If you should have any questions, please do not hesitate to contact me.

Sincerely,

Tino M. Monaldo

TMM:slh

cc:   Yvette Korb (correspondence only)
      Vean Gregg (correspondence only)

KPI1099

ENB-DOJ-020895

## MUTUAL CONFIDENTIALITY AGREEMENT

AGREEMENT made as of the 14th day of July, 1999 between **The Bishop Group, Ltd.** ("Company") and **Enron  Pipeline Company** ("Enron").

WHEREAS, Enron is in the business of developing, owning and operating interstate and/or intrastate natural gas transmission lines, the transportation of natural gas and other energy related projects; and

WHEREAS, Company is in the business of developing, owning and operating interstate and/or intrastate natural gas transmission lines, the sale and/or transportation of natural gas and other energy related projects; and

WHEREAS, Company is the ultimate corporate owner of 100% of the general partnership interests in Kansas Pipeline Company, a Kansas general partnership (the "Pipeline"); and

WHEREAS, Enron and Company may have provided and may in the future provide each other with certain information for the purpose of discussing the possible merger and/or consolidation of the Company and Enron and/or the sale and/or acquisition of certain assets or stock of the Company by Enron (hereafter collectively referred to as the "Purpose"); and

WHEREAS, Company and Enron desire to establish certain conditions with respect to information disclosed to each other.

NOW THEREFORE, the parties, intending to be legally bound hereby, do agree as follows:

1.      **Restricted Information.**  The term "Restricted Information" shall include all information that is not known by or available to the public and that concerns the business or affairs of Company or Enron, including existing Company or Enron projects and those in development; the identity of Company's and Enron's business partners or prospective business partners; the terms, conditions, and prices or the proposed terms, conditions and prices of any contract between Enron and Company; the financial records of Enron and/or the Company; and any other information identified by Enron or Company as confidential.  Company and Enron each acknowledge and agree that in the course of, or incident to, the Purpose, Enron and Company may provide to each other or Company and Enron each may otherwise become exposed to the Restricted Information and that Company's and Enron's access to the Restricted Information is necessary to enable Company and Enron to perform the Purpose. Company and Enron each agree that any Restricted Information disclosed to it by the other party in 1999, but prior to the execution date of this Agreement shall be subject to this Agreement.  The party disclosing Restricted Information hereunder makes no warranty, express or implied, regarding the accuracy, completeness or usefulness of the Restricted Information furnished hereunder and the receiving party shall use the Restricted  Information at its own risk and discretion. At the request of Company, Enron will promptly deliver to Company or destroy all such Restricted ...

**KPI1068**

ENB-DOJ-020864

Information (including all copies thereof made by Enron) and Enron will certify, in writing, to Company that Enron has so complied.  Company agrees to the same with respect to Restricted Information provided by Enron.

2.    **Non-Disclosure.**  Company and Enron each agree that at all times:  (a) it will protect the Restricted Information from disclosure to persons not authorized herein by exercising at least the same care with respect thereto as it exercises with respect to its own confidential information of like kind, except if disclosure is required pursuant to a subpoena or court order (in which event the party receiving such subpoena or order shall promptly give the other party written notice), however, the party subject to such subpoena or court order will provide all the other parties a reasonable opportunity to seek a protective order or other remedy to prohibit or limit disclosure of Restricted Information and shall offer all reasonable cooperation  for any such efforts to prohibit or limit the disclosure of any such Restricted Information; (b) it will restrict dissemination of the Restricted Information within its organization and the organizations of its subsidiaries and affiliates to those persons who have a need to know such information in performing the Purpose; and (c) it will not employ the Restricted Information for any purpose other than the Purpose.  The foregoing shall not prohibit or limit Company's or Enron's use of information (including, but not limited to, ideas, concepts, know-how, techniques and methodologies) which:  (a) was previously known to it; (b) was independently developed by it; (c) was rightfully acquired by it from a third party without continuing restriction on use of which it is aware; or (d) is or becomes part of the public domain through no breach by Company or Enron of this Agreement. Enron recognizes that certain Restricted Information of the Company that will be disclosed pursuant to this Agreement is highly competitively-sensitive, and Enron agrees, therefore, that any use of such information by Enron to interfere with or participate in current or potential business relationships of the Company is strictly prohibited.

3.    **No Transaction Obligated.**  This Agreement shall in no way be deemed to require the disclosure by either party of any Restricted Information, which shall solely be at the discretion of the disclosing party, or to require either party to proceed with any proposed transaction which is disclosed herein.

4.    **Restricted Dissemination.**  The parties agree to restrict the dissemination of Restricted Information within its organization and/or that of their respective affiliates and those persons having a need to know such information in the performance of duties related to this Agreement.  Company and Enron each agree to take such actions as are necessary, including appropriate  instructions to its subsidiaries, affiliates, officers, directors and employees, to enable it to perform its obligations hereunder.  At the other party's request, Enron or Company will cause any of its or its subsidiaries' or affiliates' officers, directors or employees participating in a project to acknowledge in writing their obligations hereunder; however, failure of either party to so request shall not affect the other party's obligations hereunder.

5.    **No Intervention.**  The parties recognize that, in any matter before the Federal Energy Regulatory Commission, there is a high risk of unauthorized use of certain Restricted Information disclosed to Enron pursuant to this Agreement.   As additional material consideration, Enron agrees that it shall not, at any time, intervene for any reason in any matter, which was either pending as of the date first written above or was filed by the Company or the

2

KPI1069

ENB-DOJ-020865

Pipeline before the Federal Energy Regulatory Commission from and after the date first written above through the three-year period thereafter, including, but not limited to, any rate cases of Company and/or Pipeline; provided however, in the event at any time Dennis M. Langley should own less than Twenty-Five Percent (25%) of the voting stock of the Company, then the provisions of this Section 5 shall become null and void.

6.    **Assignment.** This Agreement may not be assigned by either party hereto without the prior written consent of the other party, which consent may be withheld for any reason or no reason at all. Any assignment or delegation of any portion of this Agreement consented to in writing by the non-assigning party, shall only become effective upon Notice of such assignment to the other party being consented to by the non-assigning party.

7.    **Notices.** All notices and other correspondence required or made necessary by the terms of this Agreement shall be delivered to the respective parties hereto by registered mail, return receipt requested at the following addresses:

COMPANY:            The Bishop Group, Ltd.
                    8325 Lenexa Drive, Suite 400
                    Lenexa, KS 66214
                    Telephone: 913-888-7139
                    Fax: 913-599-5645

ENRON:              Enron Pipeline Company
                    1400 Smith Street
                    Houston, TX 77002
                    Attn: Michael P. Moran, Vice President,
                       General Counsel and Secretary
                    Telephone: 713-853-6009
                    Fax: 713-646-2738

or to such other addresses as either party hereto may unilaterally designate in writing to the other. Duplicate notices may also be given by any of the following forms: telegram, telex, telecopy and/or personal delivery. A notice shall be deemed received when the first form of notice or duplicate notice is actually received by the party to whom it is addressed.

8.    **Waiver.** Each party reserves the right to waive, in whole or in part, any provision hereof which is for the benefit of that party, and such waiver shall not be construed as creating a course of conduct which prevents it from refusing to waive other provisions and/or the same provision thereafter. Any party's failure or delay in protesting, or contending breach pursuant to Section 9 or taking legal and/or equitable action is no waiver of that cause of action, unless that party's delay to take action exceeds a reasonable time under the circumstances, exceeds a time frame limitation set forth elsewhere herein or exceeds the statute of limitations. Any party's failure or delay in protesting, or contending breach pursuant to Section 9 or taking legal and/or equitable action upon the other party's breach is not to be considered as being a waiver of that party's cause of action for any subsequent breach of the same or of a different nature.

KPI1070

3

ENB-DOJ-020866

9.    **Breach, Notice and Cure.** In the event that either party believes the other party is in breach of the terms hereof for any reason(s), it shall provide written notice of such purported breach(s) describing such breach(s) with particularity (in fact and in legal impact) and the purported breaching party shall be granted ten (10) days from its actual receipt of such notice to cure said breach(s) if it concurs that the acts or omissions described in the notice(s) constitute breach(s), or it may elect to provide a cure to the complaining party's contended breach(s) even if the purported breaching party is of the belief that the acts or omissions described in the notice(s) do not constitute a breach(s) hereof, and if so cured by the purported breaching party to the reasonable satisfaction of the complaining party, the breach(s) shall be deemed to have never occurred. In the event the parties cannot agree as to whether the acts or omissions described in the notice(s) constitute a breach(s) of the terms hereof, and the purported breaching party does not elect to cure the alleged breaches to the reasonable satisfaction of the complaining party, then the parties may elect to resolve the same by any legal remedies available. All reasonable costs of court proceedings shall be borne by the losing party in litigation. The losing party shall be the party designated as such by the Court. In the event both parties prevail on certain issues and lose on others, the costs shall be apportioned between the parties in any manner the Court orders. Such costs shall include, but are not limited to, the following:

a.    Court costs;

b.    Legal expenses of both parties during the course of and in preparation for the court proceedings;

c.    Travel and out-of-pocket expenditures of either party in preparation for the court proceedings;

d.    Accounting, professional and/or expert witness fees actually expended by either party in preparation for or during the course of court proceedings, etc.

In the event there is any dispute regarding what constitutes such an expense or cost or the reasonableness of a particular item of expense submitted, the Court shall resolve the same.

10.    **Termination of Agreement.** Either party to this Agreement may terminate the Agreement upon thirty (30) days written notice to the other at the addresses provided below or at such other address as may be substituted in writing. The provisions of this Agreement shall survive the termination of this Agreement for a period of three (3) years from the date of termination with regard to any Restricted Information disclosed prior to the date of termination.

11.    **Miscellaneous.** It is understood that the covenants of this Agreement and the Restricted Information disclosed hereunder are special, unique and of an extraordinary character, and that disclosure of any such Restricted Information will cause irreparable harm to the party whose Restricted Information has been disclosed; and the use of the Restricted Information for the business purposes of any party other than the owner of the Restricted Information would enable such party to compete unfairly with said other party. The parties agree that monetary damages are an insufficient remedy for any actual or anticipatory breach of this Agreement, and

4

KPI1071

ENB-DOJ-020867

that injunctive relief is an appropriate remedy to prevent the unwarranted disclosure of any Restricted Information. In addition, a party hereunder shall be entitled to any remedy to which it may be entitled by law, including, but not limited to, injunctive relief, specific performance and damages. The parties hereto agree to indemnify and hold the other harmless from any breach of this Agreement, including the non-breaching party's reasonable attorney's fees and costs incurred in enforcing the agreement.

12.     **Agreement Governed by the Laws of Delaware.** This Agreement and the obligations of the parties hereunder, shall be interpreted, construed, and enforced in accordance with the laws, and not the laws pertaining to choice or conflict of laws, of the state of Delaware.

13.     **Amendments.** Except as otherwise provided for herein, any changes in the provisions of this Agreement made subsequent to its execution shall be made by formal, written and mutually executed amendments. It is stipulated that oral modifications and amendments hereto or other parole evidence shall not be binding and that no evidence of oral amendments or modifications shall be admissible during arbitration or other adjudication.

14.     **Agreement Subject to Laws.** If any provision of this Agreement or the application thereof to any party or any circumstance shall be found to be contrary to, or inconsistent with or unenforceable under any law, rule, regulation or order, the latter shall control and this Agreement shall be deemed modified accordingly, but in other respects the Agreement shall continue in full force and effect, subject to the modifications necessary to preserve the intent and considerations due the parties as set forth in this Agreement.

15.     **Titles of Articles, Sections and Subsections.** The title and subtitles of articles, paragraphs and subparagraphs of this Agreement are for convenience only, are not part of the terms of this Agreement, are without legal or contractual significance, and as such shall not govern the terms of or in any way influence the interpretations of this Agreement.

16.     **Counterparts.** This Agreement may be executed in multiple counterparts, each of which shall be in an original, but all of which shall be deemed to constitute one instrument. This Agreement or any document executed in connection herewith shall be binding upon such signator party, if said signature is delivered by telecopier or other like transmission.

17.     **Further Assurances.** The parties hereby agree to execute, acknowledge and deliver to each other any further writings, documents, transfers, acknowledgments, instruments, powers of attorney, authorizations, filings, applications, reports, etc. that may be reasonably required to give full force and effect to the provisions of this Agreement, and to take such further actions reasonably required in fulfillment of obligations set forth herein or in furtherance of the intent hereof.

18.     **Independent Legal Counsel.** The law firm of Tino M. Monaldo, Chartered has represented Company exclusively in the negotiation, drafting and execution of this Agreement. Enron has been represented by its own independent legal counsel or has had the opportunity for said independent counsel and has waived that opportunity.

KPI1072

5

ENB-DOJ-020868

IN WITNESS WHEREOF, the undersigned, with full authority of their respective parties to bind them, have executed this Agreement as of the date first above written.

**ENRON PIPELINE COMPANY**

By: _____
Name: John N. Goodpasture
Title:   Vice President, Business Development

**THE BISHOP GROUP, LTD.**

By: _____
Name: Dennis Langley
Title:   President

KPI1073

6

H:\Legal\MMORAN\1998-99\contracts\CA-Enron4.doc

ENB-DOJ-020869



**Interoffice
Memorandum**

To:  Lee Huber

From:  Alicia Goodrow and Tony Jarrett

Department:  Enron Corp. Tax Research and Planning

Subject:  Project Elvis: Tax Due Diligence Checklist

Date:  August 6, 1999

The following is our tax due diligence checklist for the proposed acquisition of the stock of Kansas Pipeline Company.

Except as otherwise provided, **"Tax"** or **"Taxes"** shall include, without limitation, all income, franchise, corporation, capital gains, VAT, sales and use, unemployment compensation, excise, severance, property, gross receipts, payroll, and withholding tax relating to any foreign, federal, state or local tax, assessment, impost, duty, levy or charge of any nature, whatsoever;

**"Entity"** or **"Entities"** shall include Kansas Pipeline Company and any entities in which Kansas Pipeline Company holds 50% or more of the vote or value of any class of equity interest, collectively as well as any other entities which own directly or indirectly, interests in the above named entities.

**"Open Year"** means, with respect to any Entity, any partial or full tax year as established by any federal, state, local or foreign taxing authority for which such Entity has or will be required to file a tax return and for which either (i) the statute of limitations for review of such tax return remains open either by statute or by extension of the statutory review period; or (ii) issues remain outstanding either in audit or litigation for which such taxing authority has the right to pursue a settlement or judgment against such Entity.

A.  Provide a description of all material Tax issues, including a listing by description and amount of all significant audit exposure items related to the Entities for each Open Year.

B.  Provide detailed support for Tax liability reserves and deferred Taxes for each Open Year and the current stub period related to each Entity.

C.  Provide a listing of all Tax disputes by Taxing authority and amount in controversy, together with all documentation concerning any deficiencies or ongoing Tax disputes, including revenue agents' reports and correspondence or complaints with regard to federal, state, or local Tax proceedings related to the Entities.

D.  Provide copies of all Tax sharing or Tax allocation agreements and any other agreements relating to the payment of income or other Taxes, including any contracts pursuant to which the Entities, or any other Entity or person, may be obligated to indemnify the Tax liability of another taxpayer.

KPI1058

Respect          Integrity          Communication          Excellence

Form 000-469-1 (7/92)

FNB-DOJ-020855

extent an Entity is obligated to indemnify the Tax liability of another taxpayer, provide copies of all indemnity agreements and workpapers (if any) related to the calculation of the potential Tax indemnification.

Provide a listing of the fair market value, Tax basis and cost recovery schedule for each item of tangible and intangible assets of the Entities.

G. Provide copies of Tax returns (federal, state and local) and related worksheets for the Entities for all Open Years.

H. Provide copies of all agreements in force extending the time for filing federal, state and local Tax returns or waiving statutes of limitation and a schedule of periods for which Tax assessments of any type are not barred by the statute of limitations.

I. Provide copies of all Tax rulings received or pending (or requests for rulings withdrawn prior to receipt of a ruling) from any Taxing authority relating to any Tax issue currently relevant to the Entities.

J. Provide a schedule of all property which is Tax-exempt use property (within the meaning of section 168(h) of the Code) or Tax-exempt bond financed property (within the meaning of section 168(g)(5) of the Code), showing each item of such property and its Tax basis as of December 31, 1998.

K. Provide a schedule of any indebtedness to which the Entities may be subject, showing the principal amount, interest rate, maturity, and date of incurrence. Additionally, provide a schedule detailing whether any Entity debt exceeds the Tax basis in that Entity.

L. Provide a schedule detailing the status of any property Tax audit issues, including federal and state environmental Taxes.

M. Provide copies of any tax treaties, or similar agreements, with any Taxing authority or jurisdiction related to the reduction or abatement of any Tax (or any other preferential Tax treatment) relevant to the Entities.

N. Provide a tax basis balance sheet on each Entity.

O. Provide a listing of all tax attributes available to the Entities either individually or as a consolidated group. Include descriptions of any credits, losses or similar attributes, the date such attributes were created and any restrictions on the use of the attributes.

P. Described any excess loss accounts (ELAs), if any.

Q. Describe whether any partnerships in which any Entity owns any interest has made or is required to make a Section 754 election.

R. Describe any foreign activities of the Entities. Provide copies of any foreign tax returns.

S. Provide copies, if any, cost sharing agreements or similar agreements entered into between or among affiliated entities. For each qualified retirement plan (including pension plans, profit-sharing plans, and 401(k) plans) and each ERISA welfare plan (including cafeteria plans, health plans, dental plans, severance plans, long- and short-term disability plans, group life and AD&D plans) , provide copies of the following documents, as applicable:

KPI1059

1. Plan document and amendments thereto. (For prototype plans, please forward both the prototype plan document and the adoption agreement).

2. IRS determination letter.

3. Most recent summary plan description.

4. Trust document.

5. Discrimination testing results (for the past three years).

6. Form 5500 filings (for the past three years).

7. A list of the amount of each plan loan outstanding.

8. As applicable, the name, telephone number, and address of the plan administrator, claims administrator, trustee, recordkeeper, and insurer.

T. For each nonqualified deferred compensation plan (including salary deferral plans, bonus deferral plans, option plans, restricted stock plans, stock appreciation rights plans), copies of the following documents (as applicable):

1. Plan document and amendments thereto.

2. IRS private letter rulings.

3. Written employee communications describing or summarizing the plan.

4. Trust document.

5. A list of plan participants' names.

6. Sample election forms.

7. Top-hat filings.

8. As applicable, the name, address, and telephone number of the plan administrator, trustee, and recordkeeper.

U. Provide a copy of the most recent employee handbook.

V. Provide a description of any golden parachutes or similar bonus plans which may be triggered by a sale.

KPI1060

ENB-DOJ-020857

BENEFITS DUE DILIGENCE REQUEST LIST

A.  For each qualified retirement plan (including pension plans, profit-sharing plans, and 401(k) plans) provide copies of the following documents or information:

   1.  Plan document and all amendments thereto.  (For prototype plans, please forward both the prototype plan document and the adoption agreement).

   2.  Summaries of material modification for the last three years.

   3.  IRS determination letter.

   4.  Most recent summary plan description.

   5.  Trust agreement.

   6.  Discrimination testing results (for the past ~~three~~ years).

   7.  Forms 5500 and 5358  (for the past three years).

   8.  A list of the amount of each plan loan outstanding.

   9.  Sample forms for salary deferral elections, plan loans, and spousal consent, and distribution elections (including hardship withdrawals).

   10. Qualified domestic relations orders procedures.

   11. Services agreement with third party administrator/recordkeeper.

   12. For each plan, the name, telephone number, and address of the plan administrator, claims administrator, trustee, and recordkeeper.

   13. For defined benefit plans only, the most recent actuarial statement and the name, address, and telephone number of the plan's actuary.

   14. A statement indicating whether any plans have been or are currently under audit or investigation by any governmental agency.

   15. A description of all self-audits of any qualified plan and copies of all documents (including findings and recommendations) relating thereto.

   16. A list of party-in-interest transactions and loans or other transactions between the employer and each trust or qualified plan.

**KPI1061**

ENB-DOJ-020858

B. For each ERISA welfare plan (including cafeteria plans, health plans, dental plans, severance plans, long- and short-term disability plans, group life, and accidental death and dismemberment plans), provide copies of the following documents or information:

   1. Plan document and all amendments thereto.

   2. Summaries of material modification for the last three years.

   3. Most recent summary plan description.

   4. Group insurance policy.

   5. For the past three years, forms 990 and 990T for any trusts used to fund welfare benefit payments.

   6. Sample forms used to make cafeteria plan elections and COBRA elections.

   7. Qualified medical child support orders procedures.

   8. Services agreement with third party administrator/recordkeeper.

   9. For each plan, the name, telephone number, and address of the plan administrator, claims administrator, trustee, and insurance company, insurance broker, and recordkeeper.

   10. A statement indicating whether any plans have been or are currently under audit or investigation by any governmental agency.

C. For each nonqualified deferred compensation plan (including salary deferral plans, bonus deferral plans, option plans, restricted stock plans, stock appreciation rights plans), provide copies of the following documents or information:

   1. Plan document and amendments thereto.

   2. IRS private letter rulings.

   3. Written employee communications describing or summarizing the plan.

   4. Trust agreement.

   5. A list of plan participants' names.

KPI1062

ENB-DOJ-020859

6.  Sample forms for deferral elections, spousal consent, and distribution elections.

7.  Top-hat filings.

8.  As applicable, the name, address, and telephone number of the plan administrator, trustee, and recordkeeper.

9.  A statement indicating whether any plans have been or are currently under audit or investigation by a governmental agency.

D.  Indicate the aggregate dollar amount of accrued paid leave.  Please separate according to the nature of the leave (i.e. vacation, maternity/paternity, PTO, sick leave, etc.)

E.  Provide a copy of the most recent employee handbook.

KPI1063

# BRYAN CAVE LLP

ST. LOUIS, MISSOURI
WASHINGTON, D.C.
NEW YORK, NEW YORK
JEFFERSON CITY, MISSOURI
OVERLAND PARK, KANSAS
PHOENIX, ARIZONA
SANTA MONICA, CALIFORNIA
IRVINE, CALIFORNIA

3500 ONE KANSAS CITY PLACE
1200 MAIN STREET
KANSAS CITY, MISSOURI 64105-2100
(816) 374-3200
FACSIMILE: (816) 374-3300

LONDON, ENGLAND
RIYADH, SAUDI ARABIA
KUWAIT CITY, KUWAIT
ABU DHABI, UNITED ARAB EMIRATES
DUBAI, UNITED ARAB EMIRATES
HONG KONG
ASSOCIATED OFFICE IN SHANGHAI

DIANNA L. WOOD
LEGAL ASSISTANT

(816) 374-3200

August 12, 1999

**Via FedEx**

Lee M. Huber
Senior Counsel
Enron Transportation & Storage
1400 Smith Street
Houston, TX 77002-7361

Re: Kansas Pipeline Company

Dear Ms. Huber:

Enclosed are the documents you requested from the data room:

Box 1

| | |
|---|---|
| 1. | 1.6 |
| 2. | 1.7 |
| 3. | 1.9(a)-(b) |
| 4 | 1.10 |
| 5. | 1.11 |
| 6. | 6.1(a)-(d) - Box 2 and 3 |
| 7. | 6.1(f) |
| 8. | 7(a)-(f), (k) |
| 9. | 7(l)(i)-(ix) |
| 10. | 7(m)-(r) |
| 11. | 10.4 (#17 to end) |
| 12. | 10.5 |
| 13. | 10.6(a)-(e) |
| 14. | 10.6(m)-(n) |

Also enclosed are the following documents requested by Alicia Goodrow:

1. 9.2

**KPI1166**

ENB-DOJ-020961

Ms. Lee Huber
August 12, 1999
Page 2

| | |
|---|---|
| 2. | 9.3(a)(i)-(ii) |
| 3. | 9.3(c) |
| 4. | 9.4 |
| 5 | 9.5(c)-(d) |
| 6. | 9.6(a)-(b) |

Alicia Goodrow requested copies of the 1995, 1996 and 1997 Federal Partnership tax returns (IRS Form 1065) and the Missouri State Income Tax Returns which were inadvertently omitted from 2.3(a). Copies of these documents are enclosed. Ms. Goodrow further requested copies of workpapers supporting the 1998 tax provision and an allocation of NOL's. Copies of the study relied upon to allocate the basis step up from the Chase/EON partnership interest purchase transaction were provided as 4.21 and 4.22. Ms. Goodrow requested copies of the benefits plan information and they are also enclosed. They are labeled as 9.3(e)-(p).

Also enclosed are the following documents requested by Bill Kendrick:

Box 4 and 5

| | |
|---|---|
| 1. | All of Section 4 |
| 2. | 7(b)-(e) |
| 3. | 8.1(a)-(g) |
| 4. | 8.2(a)-(o) |
| 5. | 9.1 |

If you have any questions or need additional documents, do not hesitate to call me.

Very truly yours,

Dianna L. Wood
Legal Assistant

Enc.

KPI1167

444679

ENB-DOJ-020962

## Tino M. Monaldo, Chtd.

335 N. Washington, Suite 130
Hutchinson, Kansas 67501
(316) 669-9338
Fax: (316) 665-5961

August 13, 1999

Ms. Lee Huber
Enron Corp.
1400 Smith Street
Houston, TX 77002-7361

Re: Due Diligence

Dear Lee:

Drew Fossum requested from me letters I may have between Kansas Pipeline and MGE regarding the 2% escalator. As you know from reviewing the FERC pleadings, MGE is alleging it is no longer obligated under the 2% escalator clause because of prior breaches of Riverside I by KPC. However, in reviewing these letters I hope you conclude, as I have, that the allegations of breach made by MGE are without merit. Nonetheless FERC has directed, as we discussed, that if KPC desires the 2% escalator, it seek it under a limited Section 4 case.

Hopefully, these letters (May 20, 1996, June 19, 1996 (2), June 21, 1996, September 12, 1996, October 11, 1996, November 11, 1996, April 15, 1997 and May 13, 1997) are helpful to your understanding of the situation.

If you have any questions, please call me or e-mail me at lawyertm@southwind.net.

Sincerely,

Tino M. Monaldo, Chtd.

Tino M. Monaldo

**KPI1134**

ENB-DOJ-022230

# BRYAN CAVE LLP

ST. LOUIS, MISSOURI
WASHINGTON, D.C.
NEW YORK, NEW YORK
JEFFERSON CITY, MISSOURI
OVERLAND PARK, KANSAS
PHOENIX, ARIZONA
SANTA MONICA, CALIFORNIA
IRVINE, CALIFORNIA

3500 ONE KANSAS CITY PLACE
1200 MAIN STREET
KANSAS CITY, MISSOURI 64105-2100
(816) 374-3200
FACSIMILE: (816) 374-3300

LONDON, ENGLAND
RIYADH, SAUDI ARABIA
KUWAIT CITY, KUWAIT
ABU DHABI, UNITED ARAB EMIRATES
DUBAI, UNITED ARAB EMIRATES
HONG KONG
ASSOCIATED OFFICE IN SHANGHAI

DIANNA L. WOOD
LEGAL ASSISTANT

(816) 374-3200

August 13, 1999

**Via FedEx**

Lee M. Huber
Senior Counsel
Enron Transportation & Storage
1400 Smith Street
Houston, TX 77002-7361

Re:     Kansas Pipeline Company

Dear Ms. Huber:

Pursuant to your request, enclosed please find the following:

1.     Purchase and Sale Agreement between Phillips Pipe Line Company and Kansas Pipeline Company dated February 21, 1984 and related documents of that transaction.

2.     Revised Phenix Purchase Agreement dated September 19, 1984 between Chapman Energy, Inc. et al and Bishop Pipeline Company.

3.     Purchase and Sale Agreements between Kansas Pipeline Company and Kansas Pipeline Joint Venture and related documents dated August, 1988.

4.     Letter and attachments from Tino Monaldo regarding the letters between Kansas Pipeline and MGE.

If you have any questions or need additional documents, do not hesitate to call me.

Very truly yours,

Dianna L. Wood
Legal Assistant

Enc.

**KPI1119**



**Chase Securities Inc.**
600 Travis, 20ᵗʰ Floor
Houston, TX 77002

August 18, 1999

**PRIVATE AND CONFIDENTIAL**

Mr. John Goodpasture
Vice President, Business Development
Enron Gas Pipeline Group
1400 Smith Street
Houston, TX 77002-7361

Dear John:

On behalf of Dennis Langley (the "Seller") and The Bishop Group Ltd. ("Bishop"), a company which is wholly-owned by the Seller, thank you for your continuing interest in Kansas Pipeline Company, a wholly-owned subsidiary of Bishop.  As you know, Chase Securities Inc. ("Chase") has been retained as financial advisor in connection with a sale of Bishop.

This letter sets forth the procedures for the submission of a definitive, fully financed, binding offer (the "Offer") for the acquisition of Bishop (the "Transaction").  Enclosed please find the proposed form of the Agreement and Plan of Merger (the "Agreement") which reflects the terms upon which the Seller is prepared to consummate the Transaction with the prospective purchaser ("Purchaser").

I.  <u>Timing</u>.  The Offer must be received by Chase no later than 5:00 P.M. (Noon, Central Time) on Monday, August 30, 1999.

II.  <u>Contents of the Offer</u>.  The Offer should include the following (please submit the Offer in the same numbered format as outlined below):

   (i)  **Proposed Purchaser** - the identity of the Purchaser submitting the Offer, including other participants in the Transaction, if any.

   (ii)  **Primary Offer Value** - the total value Purchaser is prepared to pay for 100% of the Bishop common stock that is wholly owned by the Seller.  The Offer should consist of the Stock Purchase Price, including assumption of the balance sheet, including all debt and working capital, as outlined in Appendix 1 – Pro Forma Balance Sheet projected for September 30, 1999 ("Appendix 1").

KPI1270

ENB-DOJ-022438

August 18, 1999
Page 2

(iii) **Supplemental Offers** – In addition to the primary Offer outlined in II (ii) above, Purchaser may submit additional alternative bids or structures to purchase the pipeline system held by Bishop, which will be reviewed and considered by the Seller.

(iv) **Consideration** - a detailed description of the form of consideration that the Purchaser is prepared to pay for the stock of Bishop. As discussed, this consideration will be adjusted at closing in order to reconcile with the balance sheet in Appendix 1.

(v) **Value for MarGasCo** – please indicate the implicit value from within the total bid that is attributed to MarGasCo. While MarGasCo is intended to be part of the sale, the Seller may consider retaining MarGasCo if this entity does not have meaningful value to the Purchaser.

(vi) **Approvals and Conditions to Close** - a summary of the approvals and any other conditions required in connection with the Offer and consummation of the Transaction. Purchaser should note that the Seller expects that all required corporate approvals for the Transaction, including the authorization of Purchaser's Board of Directors, will be obtained prior to the submission of the Offer. Any conditions to closing, in addition to those set forth in the Agreement, must be clearly identified and detailed in the Offer, including any required consents and government approvals and the timing for obtaining such approvals.

(vii) **Financing** - details regarding the proposed financing of the Transaction, including, as appropriate, the proposed amount of senior debt, subordinated debt and equity, and the type of financing (e.g. bridge, bank, private and/or public capital markets), as well as the identity of all institutions involved and copies of any commitment letters or financing agreements. Please note that the Seller will look favorably on an Offer that does not contain a financing contingency.

(viii) **The Agreement** - the terms upon which the Purchaser is prepared to consummate the Transaction should be provided with the Offer in the form of the attached Agreement. Please indicate in the Offer that Purchaser is prepared to execute promptly the Agreement in the form submitted (including any redlined revisions). Any proposed revisions to the Agreement should be presented in the form of redlined changes to this version.

(ix) **Timing** - an estimate of the time needed to close the Transaction taking into account all necessary regulatory approvals. This estimate should include a list any additional due diligence items which the Purchaser wishes to conduct prior to executing the Agreement and closing the Transaction.

(x) **Other** - any additional information that may assist the Seller in its evaluation of the Offer; and

KPI1271

FNB-DOJ-022439

August 18, 1999
Page 3

    (xi) **Contacts** - the name(s) and telephone number(s) of the person(s) the Seller and Chase should contact in clarifying and responding to the Offer.

III. Transmittal of the Offer and Agreement. The Offer and Agreement should be transmitted as follows:

    (i) if these items are transmitted by fax, the Offer and Agreement should be faxed (including any redlined revisions of the Agreement) to:

> Vean Gregg
> Chase Securities Inc.
> Global Oil and Gas
> 600 Travis, 20th Floor-CTH 86
> Houston, TX 77002
> Facsimile: (713) 216-8882

    (ii) if these documents are transmitted by fax, an original version of the Offer should be received by the above (by hand or overnight mail) no later than 10:30 a.m. the following morning.

    (iii) absent a transmittal by fax, an original version of the Offer and Agreement should be received by the above no later than 5:00 P.M. (Noon, Central Time) on Monday, August 30, 1999.

    (iv) Please also submit the Agreement by e-mail in electronic form (including any redlined revisions) to the attention of Vean Gregg as follows:
> vean.gregg@chase.com

IV. Selection of the Purchaser. After receipt of the Offer, the Seller and Chase will contact each prospective purchaser, as necessary, to clarify the terms of such Offer or proposed revisions to the Agreement. The Seller, with the assistance of Chase, intends to evaluate such Offers as expeditiously as practicable. Although the foregoing reflects the Seller's present intentions concerning the process, the Seller reserves the right, in its sole discretion, to evaluate the terms and conditions of any Offer and to accept or reject any such Offer for further consideration without specifying reasons therefor and to alter the procedures set forth herein or terminate the process at any time without prior notice.

The existence and contents of this letter are subject to the terms of the confidentiality agreement that was previously executed by you and Bishop.

Chase continues to be available to respond to your questions and requests for supplementary information and to coordinate questions with respect to the Offer or Agreement. Should you have any questions regarding the procedures detailed in this letter, please feel free to call Vean

KPI1272

ENB-DOJ-022440

August 18, 1999
Page 4

Gregg (713) 216-8848 or me (713) 216-6386.  **In no event should either the Seller or Bishop be contacted directly.**

The Seller and Chase appreciate your interest in Bishop and look forward to hearing from you.

CHASE SECURITIES INC.
on behalf of The Bishop Group Ltd.

Bill Manias
Vice President
/encl.

KPI1273

August 18, 1999
Page 5

### Appendix 1. Pro Forma Balance Sheet projected for September 30, 1999

| Assets | ($ in Millions |
|---|---|
| Utility Plant, Net | $61.64 |
| Other Assets, Net | 12.51 |
| Current Assets | |
|     Cash Reserve for LTD | 10.00 |
|     Accounts Receivable | 4.96 |
|     Other Prepaid Expenses | 0.79 |
|     Total Current Assets | 15.76 |
| **Total Assets** | **89.90** |
| **Capitalization and Liabilities** | |
| Partners Capital | $13.37 |
| Long-Term Debt | 62.39 |
| Revolving Credit Facilities | 6.00 |
| Restricted Pipeline Royalties | 3.09 |
| Current Liabilities | |
|     Accounts Payable | 2.20 |
|     Accrued Interest | 1.50 |
|     Accrued Property Taxes | 0.42 |
|     Other Accrued Liabilities | 0.94 |
|     Total Current Liabilities | 5.06 |
| **Total Capitalization and Liabilities** | **89.90** |
| **Unencumbered Working Capital at 9/30/99** | **$0.70** |

KPI1274

ENB-DOJ-022442



KANSAS PIPELINE COMPANY
7425 LENEXA DRIVE • SUITE 400
LENEXA  KANSAS 66214
913 888 2130 • FAX 913 599 2533

August 21, 1999

Lee M. Huber
Senior Counsel
Enron Transportation & Storage                    VIA OVERNIGHT MAIL
1400 Smith Street
Houston, TX  77002-7361

Dear Ms. Huber:

Please find enclosed a copy of the Operating and Maintenance budgets for the years 1996, 1997
and 1998.  Please advise if you should have any questions.

Sincerely,

Kansas Pipeline Company

Yvette C. Korb
Vice President, Administration

**KPI1115**

ENB-DOJ-020911

Syenergy Pipeline Company, L.P.
Consolidated Operating Budget
For The Period January 1, 1996 through December 31, 1996

| | | |
|---|---|---:|
| Compensation and benefits | $ | 5,407,823 |
| Rent | | 374,760 |
| Professional services | | 2,073,500 |
| Travel and entertainment | | 325,203 |
| Data processing | | 137,057 |
| Other general and administrative | | 1,028,779 |
| Property taxes | | 2,450,500 |
| Insurance | | 222,136 |
| Compression | | 158,428 |
| Pipeline Maintenance | | 1,173,211 |
| Measurement and regulating | | 206,384 |
| Gas purchases | $ | 52,555,796 |
| Pipeline transportation/lease agreements | | 3,643,359 |
| Compressor fuel, TOK fuel in gas purchases | | 856,088 |
| | | |
| Total | $ | 70,613,024 |

KPI1116

ENB-DOJ-020912

Syenergy Pipeline Company, L.P.
Consolidated Operating Budget
For The Period January 1, 1997 through December 31, 1997

Controlled Expenses:

| | | | |
|---|---|---|---|
| Compensation and benefits | $ | 5,457,693 | |
| Rent | | 431,400 | |
| Professional services | | 1,921,604 | |
| Travel and entertainment | | 270,297 | |
| Data processing | | 253,581 | |
| Other general and administrative | | 874,988 | |
| Property taxes | | 2,667,000 | |
| Insurance | | 213,524 | |
| Compression | | 452,476 | |
| Pipeline Maintenance | | 1,020,474 | |
| Measurement and regulating | | 207,805 | |
| Total Controlled Expenses | $ | 13,770,842 | $ 13,770,842 |

Direct Expenses: (1)

| | | | |
|---|---|---|---|
| Gas purchases | $ | 52,555,796 | |
| Pipeline transportation/lease agreements | | 3,643,359 | |
| Compressor fuel, TOK fuel in gas purchases | | 856,088 | |
| Total Direct Expenses | $ | 57,055,243 | $ 57,055,243 |

| | | |
|---|---|---|
| Total Operating Budget | | $ 70,826,085 |

(1) Direct expenses are the same as 1996. Cash flows for 1997 assume only firm transportation net margins. Direct
expenses are shown to cover interruptible sales and firm sales during transition to FERC jurisdiction.

THIS BUDGET DOES NOT INCLUDE ADDITIONAL EXPENSE AMOUNTS ASSOCIATED WITH THE PIPELINES BECOMING
REGULATED BY THE FEDERAL ENERGY REGULATORY COMMISSION.

**KPI1117**

ENB-DOJ-020913

Syenergy Pipeline Company, L.P.
Consolidated Operating Budget
For the period January 1, 1998 through December 31, 1998

| Controlled Expenses | | |
|---|---|---|
| Compensation and Benefits | $5,457,693 | |
| Rent | 431,400 | |
| Professional Services | 1,921,604 | |
| Travel and Entertainment | 270,297 | |
| Data Processing | 253,581 | |
| Other general and administrative | 874,988 | |
| Property Taxes | 2,667,000 | |
| Insurance | 213,524 | |
| Compression | 452,476 | |
| Pipeline Maintenance | 1,020,474 | |
| Measurement and regulating | 207,805 | |
| Total Controlled Expenses | $13,770,842 | $13,770,842 |
| | | |
| Direct Expenses (1) | | |
| Gas Purchases | $52,555,796 | |
| Pipeline Transportation/lease agr. | 3,643,359 | |
| Compressor fuel, TOK fuel in gas purchases | 856,088 | |
| Total Direct Expenses | $57,055,243 | $57,055,243 |
| | | |
| Total Operating Budget | | $70,826,085 |
| | | |

(1) Direct expenses are the same as 1997. Cash flows for 1998 assume only firm transportation net margins. Direct expenses are shown to cover interruptible sales and firm sales during transition to FERC jurisdiction.

KPI1118

ENB-DOJ-020914

THE BISHOP GROUP, LTD.

8325 Lenexa Drive - Suite 400
Lenexa, Kansas 66214
(913) 888-7139 / Fax (913) 599-5645

August 21, 1999

Mr. James Sanford
Enron Gas Pipeline Group
1400 Smith Street
Houston, TX 77002

Dear Mr. Sanford:

Enclosed please find copies of the Easements for Right-of-Way that you have requested from Joan Schnepp. If you should have any questions, please advise.

Sincerely,

The Bishop Group, Ltd.

Yvette C. Korb
Corporate Secretary

*KPI1100*

ENB-DOJ-020896